PAGES 1 - 89

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE

LATARA BIAS, ET AL.,                )
                                    )  NO. C-12-0664 YGR
                                    )
          PLAINTIFFS,               )  TUESDAY, NOVEMBER 6, 2012
                                    )
   VS.                              )  OAKLAND, CALIFORNIA
                                    )
WELLS FARGO & COMPANY,              )
ET AL.,                             )
                                    )
          DEFENDANTS.               )
_____)
                                    )
GLORIA STITT, ET AL.,               )
                                    )
          PLAINTIFFS,               )
                                    )
   VS.                              )  NO. C-12-3892 YGR
                                    )
CITIBANK, N.A., ET AL.,             )
                                    )
          DEFENDANTS.               )
_____)
                                    )
DIANA ELLIS, ET AL.,                )
                                    )
   VS.                              )  NO. C-12-3897 YGR
                                    )
J.P. MORGAN CHASE & CO.,            )
                                    )
          DEFENDANTS.               )
_____)


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

(APPEARANCES ON NEXT PAGE)

REPORTED BY:          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                      OFFICIAL COURT REPORTER
        TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

```
 1    APPEARANCES:

 2    FOR PLAINTIFFS:          BARON & BUDD, P.C.
                               15910 VENTURA BLVD., STE. 1600
 3                             ENCINO, CALIFORNIA 91436
                          BY:  ROLAND TELLIS, ESQUIRE
 4                             MARK PIFKO, ESQUIRE
                               DANIEL ALBERSTONE, ESQUIRE
 5
      FOR DEFENDANT            SEVERSON & WERSON
 6    WELLS FARGO:             ONE EMBARCADERO CENTER, 26TH FLOOR
                               SAN FRANCISCO, CALIFORNIA 94111
 7                        BY:  MARK D. LONERGAN, ESQUIRE
                               MICHELLE T. MCGUINNESS, ESQUIRE
 8

 9    FOR DEFENDANT            MAYER BROWN, LLP
      CITIBANK:                350 SOUTH GRAND AVENUE, 25TH FLOOR
10                             LOS ANGELES, CALIFORNIA 90071
                          BY:  STEVEN E. RICH, ESQUIRE
11

12    FOR DEFENDANT            BINGHAM MCCUTCHEN LLP
      J.P. MORGAN:             THREE EMBARCADERO CENTER
13                             SAN FRANCISCO, CALIFORNIA 94111
                          BY:  PETER OBSTLER, ESQUIRE
14                             ZACHARY J. ALINDER, ESQUIRE

15

16

17

18

19

20

21

22

23

24

25
```

```
1    TUESDAY, NOVEMBER 6, 2012                          2:02 P.M.

2                        P R O C E E D I N G S

3          THE CLERK:  YOU CAN BE SEATED.

4          THE COURT:  LET'S GO AHEAD AND CALL ALL OF THE CASES,

5    BUT WHY DON'T WE -- WHY DON'T YOU CALL THEM ONE AT A TIME AND

6    WE WILL HAVE APPEARANCES ONE AT TIME.

7          THE CLERK:  OKAY.

8        SO FIRST I WILL CALL CASE CIVIL ACTION 12-664 BIAS VERSUS

9    WELLS FARGO & COMPANY.  AND WOULD COUNSEL IN THAT CASE PLEASE

10   STATE YOUR APPEARANCES.

11         MR. TELLIS:  GOOD AFTERNOON, YOUR HONOR.

12       ROLAND TELLIS WITH BARON & BUDD ON BEHALF OF THE

13   PLAINTIFFS.

14         THE COURT:  GOOD AFTERNOON, MR. TELLIS.

15         MR. ALBERSTONE:  GOOD AFTERNOON, YOUR HONOR.

16       DAN ALBERSTONE OF BARON & BUDD FOR PLAINTIFFS.

17         MR. PIFKO:  GOOD AFTERNOON, YOUR HONOR.

18       MARK PIFKO OF BARON & BUDD ALSO FOR THE PLAINTIFFS.

19         THE COURT:  OKAY.

20         MR. LONERGAN:  GOOD AFTERNOON.

21       MARK LONERGAN OF SEVERSON & WERSON FOR WELLS FARGO.

22         MS. MCGUINNESS:  GOOD AFTERNOON.

23       MICHELLE MCGUINNESS HE IS FOR WELLS FARGO.

24         THE COURT:  GOOD AFTERNOON.

25         THE CLERK:  CALLING CIVIL ACTION 12-3892 STITT VERSUS
```

```
1   CITIBANK.  AND COUNSEL IN THAT CASE, WOULD YOU PLEASE STATE

2   YOUR APPEARANCES.

3           MR. TELLIS:  GOOD AFTERNOON, YOUR HONOR.

4       SAME APPEARANCE FOR THE PLAINTIFFS.

5           MR. RICH:  GOOD AFTERNOON, YOUR HONOR.

6       STEVEN RICH OF MAYER BROWN FOR CITIMORTGAGE AND CITIBANK.

7           MR. TELLIS:  I CAN PUT IT ON THE RECORD IF YOU WOULD

8   LIKE.

9           THE COURT:  THAT'S FINE.

10          THE CLERK:  AND THEN IN CIVIL CASE 12-3897 ELLIS

11  VERSUS J.P. MORGAN CHASE.

12      COUNSEL, PLEASE STATE YOUR APPEARANCES IN THIS CASE.

13          MR. TELLIS:  GOOD AFTERNOON, YOUR HONOR.

14      ROLAND TELLIS, SAME APPEARANCE FOR THE PLAINTIFFS.

15          THE COURT:  OKAY.

16          MR. OBSTLER:  PETER OBSTLER AND ZACHARY ALINDER,

17  BINGHAM MCCUTCHEN FOR J.P. MORGAN CHASE BANK, N.A. AND CHASE

18  HOME FINANCE, LLP.

19          THE COURT:  COUNSEL, GOOD AFTERNOON.

20          MR. OBSTLER:  GOOD AFTERNOON.

21          MR. PIFKO:  GOOD AFTERNOON.

22          THE COURT:  THE WAY I AM GOING TO ORGANIZE THE

23  ARGUMENT TODAY IS AS FOLLOWS:  WE WILL START WITH THE BIAS

24  CASE AGAINST WELLS FARGO.  I AM GOING TO HAVE YOU -- BECAUSE

25  THERE'S CERTAIN OVERLAP IN THESE CASES, NOT ENTIRELY, BUT
```

```
1    SOME, I HAVE SELECTED THE ISSUES THAT I WANT ADDRESSED, AND I
2    WILL IDENTIFY THOSE FOR EACH OF THE CASES.  AND THEN AT THE
3    END, BECAUSE THEY ARE GOING TO BE SELECTIVE, I WILL ALLOW SOME
4    TIME FOR ADDITIONAL ARGUMENT TO THE EXTENT THAT YOU ARE NOT
5    REPEATING -- THIS IS REALLY TO DEFENSE COUNSEL -- YOU ARE NOT
6    REPEATING EVERYTHING THAT YOUR COLLEAGUES ON THAT SIDE OF THE
7    BENCH MAY HAVE ALREADY SAID.
8        I CAN TELL YOU THAT I AM JUST BEGINNING NOW TO FAMILIARIZE
9    MYSELF WITH THE VARIOUS ISSUES THAT HAVE BEEN RAISED.  I DID
10   CONSIDER BUMPING THIS CASE YET AGAIN TODAY, BUT THOUGHT IF
11   NOTHING ELSE, I WOULD GET THE ARGUMENT AND WE WOULD GET YOU IN
12   CUE.
13       SO, THAT WAS MY PLAN.  SO, LET'S GO AHEAD AND GET DEFENSE
14   COUNSEL UP HERE FOR BIAS VERSUS WELLS FARGO.
15       I ALSO WILL HAVE HOUSEKEEPING ISSUES I WILL ADDRESS WITH
16   YOU ALL AT THE END.
17       BUT I THINK WITH RESPECT TO THIS MOTION, I WILL LET
18   DEFENSE COUNSEL START.  IT'S YOUR MOTION.  FOCUS ON THE
19   LOUISIANA LAW APPLYING AND THE UCL CLAIMS.  LEAVE THE OTHERS
20   FOR NOW.  OKAY?
21           MR. LONERGAN:  THANK YOU, YOUR HONOR.
22       THE STARTING AND ENDING POINT, FRANKLY, FOR THE QUESTION
23   OF CHOICE OF LAW HAS TO DO WITH THE CONTRACTUAL CHOICE OF LAW
24   PROVISION IN THE PLAINTIFFS' MORTGAGES AND DEEDS OF TRUST.
25       AND QUITE SURPRISINGLY IT IS REALLY AN ISSUE THAT
```

1    PLAINTIFFS DON'T ADDRESS IN THEIR OPPOSITION TO THE MOTION.

2    THE BASIC RULES, WHICH ARE NOT IN DISPUTE, ARE SPELLED OUT IN

3    THE PAPERS AND I WON'T GO INTO GREAT DETAIL AS A RESULT, ARE

4    THAT IF THERE IS A CONTRACTUAL CHOICE OF LAW PROVISION AGREED

5    TO BY THE PARTIES AND IT BEARS A SUBSTANTIAL RELATIONSHIP TO

6    THE PARTIES IN THE TRANSACTION, AS THIS ONE DOES WITHOUT

7    DOUBT, IT IS ENFORCED HERE IN CALIFORNIA.  THIS COURT WILL

8    APPLY CALIFORNIA CHOICE OF LAW PROVISIONS.  AND THE CALIFORNIA

9    SUPREME COURT HAS ISSUED A NUMBER OF DECISIONS WHICH GO

10   THROUGH THIS TEST, WHICH YOUR HONOR IS BOUND TO FOLLOW.

11       IT IS ENFORCED UNLESS THE PARTY OPPOSING ENFORCEMENT OF

12   THAT PROVISION, IN THIS CASE PLAINTIFFS, CAN ESTABLISH THAT

13   THERE IS A VIOLATION OF A FUNDAMENTAL POLICY OF CALIFORNIA,

14   WHICH THESE PLAINTIFFS DO NOT EVEN ATTEMPT TO ARGUE.

15       SO BECAUSE THAT CONTRACTUAL CHOICE OF LAW PROVISION

16   EXISTS, IT HAS A CLEAR RELATIONSHIP AND IT IS ENFORCEABLE,

17   LOUISIANA LAW APPLIES AND, THEREFORE, THESE PLAINTIFFS HAVE NO

18   CLAIM UNDER CALIFORNIA UNFAIR COMPETITION LAW.  THAT IS THE

19   BEGINNING AND END OF THE ISSUE.

20          **THE COURT:**  ALL RIGHT.  THAT'S IT.

21       GO AHEAD.

22          **MR. PIFKO:**  THANK YOU, YOUR HONOR.

23       I THINK TO START WITH, THE FIRST THING TO LOOK AT ACTUALLY

24   IS SETTING ASIDE WHETHER IT'S APPROPRIATE TO DEAL WITH THAT

25   ISSUE RIGHT NOW, AND WHETHER THESE CLIENTS CAN ASSERT CLAIMS

```
1    ON BEHALF OF OTHER STATES.

2       FUNDAMENTALLY, IF YOU LOOK AND ACCEPT THEIR ARGUMENTS, AND

3    YOU LOOK AT THE CONTRACT WHERE IT SAYS "GOVERNING LAW", THE

4    LAW THAT THEY ARE SAYING TO APPLY, IT DOES NOT SAY IN THE

5    CONTRACT THAT YOU CAN ONLY APPLY LOUISIANA LAW.

6       WHAT THE CONTRACT ACTUALLY SAYS IS:

7           "ALL RIGHTS AND OBLIGATIONS CONTAINED IN THIS

8           SECURITY INSTRUMENT ARE SUBJECT TO ANY REQUIREMENTS

9           AND LIMITATIONS AS APPLICABLE LAW."

10      AND IF YOU GO FORWARD INTO THE DOCUMENT, YOU SEE WHAT

11   APPLICABLE LAW IS DEFINED AS, IT SAYS:  "ALL CONTROLLING

12   APPLICABLE FEDERAL, STATE, AND LOCAL STATUTES."

13      SO, IT DOESN'T SAY ANYWHERE IN THERE THAT IT IS ONLY

14   LOUISIANA LAW THAT WOULD APPLY.

15         THE COURT:  ALL RIGHT.  STOP FOR A MOMENT.  GO AHEAD.

16      WHERE DOES IT SAY LOUISIANA?

17         MR. LONERGAN:  IN PARAGRAPH 16, YOUR HONOR, OF THE

18   MORTGAGE THERE'S A CLAUSE THAT STATES THAT "THE AGREEMENT

19   SHALL BE GOVERNED BY FEDERAL LAW AND THE LAW OF THE

20   JURISDICTION IN WHICH THE PROPERTY IS LOCATED".

21         THE COURT:  OKAY.  STOP.

22      RESPOND.

23         MR. PIFKO:  THERE'S ACTUALLY TWO SENTENCES IN THAT

24   SENTENCE.

25         THE COURT:  RESPOND SPECIFICALLY TO --
```

1     **MR. PIFKO:** RIGHT. SO THE FIRST SENTENCE TALKS ABOUT

2   THE SECURITY INSTRUMENT. WHAT THAT'S TALKING ABOUT IS IF YOU

3   ARE GOING TO DO A FORECLOSURE OR SOMETHING LIKE THAT. OF

4   COURSE, YOU CAN IMAGINE THERE'S DIFFERENT RULES ABOUT -- IN

5   CALIFORNIA WE HAVE A NONJUDICIAL FORECLOSURE. YOU CAN IMAGINE

6   DIFFERENT JURISDICTIONS THERE WOULD BE DIFFERENT LAW THAT YOU

7   WOULD NEED TO USE.

8     SO WHEN YOU ARE TALKING ABOUT THE SECURITY INSTRUMENT,

9   THAT'S WHAT THAT PROVISION DISCUSSES. BUT THE SECOND SENTENCE

10   SAYS WHAT I JUST READ TO YOU.

11     **THE COURT:** OKAY. SO WHERE IS APPLICABLE LAW

12   DEFINED, WHAT PARAGRAPH?

13     **MR. PIFKO:** IT'S IN PARAGRAPH H, IN THE VERY

14   BEGINNING. IT'S ON THE SECOND PAGE OF THE DOCUMENT.

15     **THE COURT:** OKAY. RESPOND TO THAT.

16     **MR. LONERGAN:** WELL, YOUR HONOR, THE ARGUMENT THAT'S

17   BEING MADE WHICH IS THAT THESE CLAIMS DON'T FALL WITHIN THE

18   SCOPE OF THAT CLAUSE, WHICH WE HAVE ALREADY READ INTO THE

19   RECORD, ARE REALLY REBUTTED BY TWO CASES, I THINK, THAT ARE OF

20   PARAMOUNT IMPORTANCE.

21     THE FIRST CASE IS THE CALIFORNIA SUPREME COURT IN THE

22   NEDLOYD DECISION, N-E-D-L-O-Y-D, WHICH EXPLAINS, I THINK, VERY

23   LOGICALLY THAT YOU CAN'T HAVE A CHOICE OF LAW PROVISION SUCH

24   AS THIS AND DECIDE THAT ONLY A BREACH OF CONTRACT CLAIM IS

25   GOVERNED BY IT, BUT TORT OR OTHER CLAIMS ARE EXCLUDED BECAUSE

1    THE LOGICAL CONCLUSION IS THAT WHEN PARTIES CHOOSE A

2    PARTICULAR STATE CLAUSE INTENDED TO APPLY TO ALL DISPUTES

3    ARISING OUT OF THE TRANSACTIONAL RELATIONSHIP.  THAT'S

4    3 CAL.4TH AT 459.

5        MORE ON POINT OR EQUALLY ON POINT IS THE WASHINGTON MUTUAL

6    SUPERIOR COURT DECISION IN THE CALIFORNIA SUPREME COURT -- AND

7    THESE ARE ALL CITED IN THE PAPERS -- WHICH INTERPRETED THIS

8    VERY PROVISION, THE CHOICE OF LAW PROVISIONS THAT ARE FOUND IN

9    THE STANDARD MORTGAGES AND DEEDS OF TRUST WHICH ARE USED

10   THROUGHOUT THE UNITED STATES, AND FOUND THAT THESE CHOICE OF

11   LAW PROVISIONS ARE BROAD ENOUGH TO INCLUDE ESSENTIALLY ALL

12   CONTRACTS, STATUTORY AND TORT CLAIMS ARISING OUT OF THE

13   PARTIES' MORTGAGE RELATIONSHIP.

14       THERE CAN BE NO REASONABLE DISPUTE, YOUR HONOR, IN THIS

15   CASE THAT THE ENTIRETY OF THE DISPUTE BETWEEN MY CLIENT WELLS

16   FARGO AND THESE BORROWERS HAS TO DO WITH THE CONTRACTUAL

17   AUTHORIZATION IN THE MORTGAGES OR THE DEEDS OF TRUST FOR MY

18   CLIENT TO RECOUP BPO FEES OR PROPERTY INSPECTION FEES IN THE

19   EVENT OF DEFAULT.  THAT'S THE VERY HEART OF THE DISPUTE.  AND

20   IT CLEARLY FALLS WITHIN THE SCOPE OF THE STANDARD MORTGAGE

21   CHOICE OF LAW PROVISION.

22           **THE COURT:**  RESPONSE?

23       **MR. PIFKO:**  WELL, I THINK HE'S RESPONDING TO AN

24   ARGUMENT THAT ESSENTIALLY WE ARE JUST NOT MAKING.  HE'S SAYING

25   THAT, OH, WELL, IF YOU HAVE A CHOICE OF LAW CLAIM, YOU CAN'T

1   BREAK IT OUT AND SAY WELL, IT IS THIS KIND OF CLAIM OR THIS

2   KIND OF CLAIM.

3       I THINK WE HAVE VERY CLEARLY SHOWN THAT IF YOU ACCEPT THE

4   CHOICE OF LAW IN HERE, IT CAN -- STILL THERE'S NOTHING THAT

5   BARS THE CALIFORNIA LAW FROM FITTING INTO THIS DEFINITION OF

6   APPLICABLE LAW.

7       SO, OUR ARGUMENT ISN'T THAT WE'RE ASSERTING A DIFFERENT

8   KIND OF CLAIM AND IT DOESN'T APPLY.  EVEN IF YOU APPLY THIS

9   CHOICE OF LAW PROVISION, IT DOESN'T BAR CALIFORNIA LAW.

10      AND I WOULD LIKE TO ADD TO SAY THAT IT'S UNDISPUTED THAT

11  THESE ARE CONTRACTUAL CLAIMS.  I THINK AS YOU'VE SEEN IN THE

12  PAPERS, THAT'S ACTUALLY HIGHLY IN DISPUTE.  WE DISAGREE THAT

13  THIS IS JUST A BREACH OF CONTRACT CASE.  I THINK WHAT IS GOING

14  ON HERE IS A LOT MORE THAN BREACH OF CONTRACT.

15          **THE COURT:**  OKAY.  ANYTHING ELSE ON THOSE ISSUES?

16          **MR. LONERGAN:**  NOT ON THE CONTRACTUAL CHOICE OF LAW

17  ISSUE, YOUR HONOR.

18      THE POINT I MADE AT THE OUTSET, THE ISSUE BEGINS AND ENDS

19  HERE IS, OF COURSE, CONDITIONED UPON YOUR HONOR AGREEING WITH

20  ME.

21      IF YOUR HONOR DID NOT AGREE WITH THE ARGUMENT THAT WELLS

22  FARGO JUST PRESENTED, THEN YOU GET TO THE NEXT LEVEL OF

23  ANALYSIS, WHICH IS WHETHER UNDER CONSTITUTIONAL DUE PROCESS

24  GROUNDS AND CALIFORNIA'S GOVERNMENTAL INTEREST TEST, WHETHER

25  IT WOULD NEVERTHELESS STILL BE TRUE THAT LOUISIANA LAW GOVERNS

```
1    THE CLAIMS OF THESE BORROWERS.  AND, IN FACT, IT IS STILL TRUE

2    THAT EVEN IF THERE WAS NO CHOICE OF LAW PROVISION, LOUISIANA

3    LAW WOULD STILL GOVERN.

4         THE COURT:  WHAT IF I FOUND THIS WAS PRIMARILY A

5    FRAUD CASE AND NOT A CONTRACT CASE?

6         MR. LONERGAN:  IT WOULD HAVE NO IMPACT ON THE

7    RESOLUTION OF CHOICE OF LAW.  THE FRAUD CLAIMS, THESE

8    PLAINTIFFS WOULD BE GOVERNED BY LOUISIANA LAW, NOT CALIFORNIA

9    LAW.

10        THE COURT:  OKAY.  DO YOU WANT TO RESPOND?

11        MR. PIFKO:  I WOULD JUST LIKE TO ADD THAT THE

12   APPROPRIATE TIME TO DEAL WITH THIS ISSUE IS AT CLASS

13   CERTIFICATION.  I THINK WE SUBMITTED A NUMBER OF CASES IN OUR

14   BRIEF THAT DISCUSS THAT ISSUE.

15      IF YOU LOOK AT THE YOUNG CASE, THAT IS THE SOMEWHAT

16   SIMILAR CASE THAT IS PENDING IN IOWA, THAT'S WHAT THE COURT

17   DID THERE.

18      AND HE JUST MENTIONED SOMETHING ABOUT DUE PROCESS, TOO.

19   AND THERE'S ACTUALLY A NUMBER OF CASES, INCLUDING THERE'S --

20   IN THIS -- I BELIEVE IT WAS IN THE CENTRAL DISTRICT RECENTLY,

21   A POST-MAZZA CLASS CERT OPINION IN A CASE AGAINST PALM

22   WONDERFUL WHERE THEY SAID IF A CORPORATION IS BASED IN

23   CALIFORNIA, IT DOESN'T OFFEND DUE PROCESS TO APPLY CALIFORNIA

24   LAW.  AND THAT WAS A CLASS CERT OPINION WHERE THEY VALUED THE

25   CHOICE OF LAW BASED ON WHO THE LAST REPRESENTATIVES WERE AND
```

1    DISCUSSING WHETHER THERE WERE ADEQUATE REPRESENTATIVES TO

2    ASSERT THOSE CLAIMS AT THE TIME OF CLASS CERTIFICATION, NOT ON

3    THE PLEADINGS.

4        IF YOU LOOK AT THE BODY OF LAW AND THESE CHOICE OF LAW

5    ISSUES, IT IS VERY CLEAR THAT THIS IS A DETAILED ANALYSIS THAT

6    SHOULD BE PERFORMED, AND IT'S NOT APPROPRIATE TO DO IT ON THE

7    PLEADINGS.

8            **THE COURT:**  OKAY.  RESPONSE?

9            **MR. LONERGAN:**  THAT IS NOT THE LAW, YOUR HONOR.

10           **THE COURT:**  DO YOU WANT TO DISTINGUISH THE YOUNG

11   CASE?

12           **MR. LONERGAN:**  IT WAS WRONGLY DECIDED.  THAT IS THE

13   DISTINGUISHING FACTOR.  THAT WAS AN IOWA CASE.  AND HERE IN

14   THIS DISTRICT AND IN THE NINTH CIRCUIT, THE LAW IS VERY CLEAR

15   THAT YOU HAVE TO DECIDE THESE ISSUES OF STANDING TO PURSUE A

16   CLAIM AT THE OUTSET.

17       THE CASES THAT WE CITED WOULD BE THE NINTH CIRCUIT'S

18   DECISION IN EASTER VERSUS AMERICAN WEST FINANCIAL WHERE THE

19   NINTH CIRCUIT AGREED THAT THE DISTRICT COURT PROPERLY

20   ADDRESSES THIS ISSUE OF STANDING TO PURSUE A CLAIM PRIOR TO

21   CLASS CERTIFICATION.  AND MORE RECENTLY, JUDGE WHITE IN THE

22   DITROPAN ANTITRUST LITIGATION REACHED THE SAME CONCLUSION.

23       IT MAKES SENSE IF THESE LOUISIANA PLAINTIFFS JUST DO NOT

24   HAVE STANDING TO PURSUE A CLAIM HERE IN CALIFORNIA UNDER

25   CALIFORNIA'S LAW, THEN IT IS AN ARTICLE III ISSUE, AND THEY

1     SHOULDN'T BE ALLOWED TO LITIGATE THE CASE BEYOND THE MOTION TO

2     DISMISS STAGE.

3          THAT IS WHERE WE ARE AT AT THIS POINT, YOUR HONOR.  AND

4     BEYOND THAT, THE VARIOUS FACTORS THAT SHOW NUMBER ONE, THAT

5     CALIFORNIA CAN'T CONSTITUTIONALLY APPLY ITS LAW TO THE CLAIMS

6     OF THESE LOUISIANA BORROWERS, AND THAT UNDER CALIFORNIA'S

7     GOVERNMENTAL INTEREST ANALYSIS TEST, THE INTEREST OF LOUISIANA

8     TO APPLY ITS LAWS TO THAT TRANSACTION UNDER LOUISIANA ARE

9     PARAMOUNT TO CALIFORNIA'S, AND WOULD BE MORE SUBSTANTIALLY

10    IMPAIRED IF THIS COURT WERE TO APPLY CALIFORNIA LAW.

11         THOSE FACTORS ARE ALL FOUND IN THE FOUR CORNERS OF THE

12    COMPLAINT.  YOU DON'T NEED TO GO BEYOND THAT.

13              **THE COURT:**  YOUR RESPONSE?

14         IS IT MR. PIFKO?

15              **MR. PIFKO:**  YES.  THAT'S CORRECT.

16         WELL, ONE OF THE KEY FACTORS IN THE ANALYSIS OF CHOICE OF

17    LAW WOULD BE WHERE THE OFFENDING CONDUCT TOOK PLACE.  AND AT

18    THIS POINT WE DON'T HAVE FULL DISCOVERY.  WE HAVEN'T TAKEN

19    DEPOSITIONS.  WE HAVEN'T SEEN THE DOCUMENTS.  AND ALL THOSE

20    FACTORS ARE THINGS -- YOU KNOW, WE HAVE ALLEGED IN OUR

21    COMPLAINT THAT THEY ARE HEADQUARTERED HERE AND THE EXECUTIVES

22    MADE THE DECISIONS HERE.

23         WE ARE ENTITLED TO DO DISCOVERY TO FURTHER PROVE THOSE

24    POINTS, AND THAT WOULD BE ADDRESSED AT CLASS CERTIFICATION

25    WHEN WE HAVE THE ACTUAL FACTS IN DISCOVERY TO SHOW WHERE THE

```
 1    OFFENDING CONDUCT OCCURRED.
 2            THE COURT:  DO YOU WANT TO RESPOND TO --
 3    MR. LONERGAN?
 4            MR. LONERGAN:  YES, YOUR HONOR.
 5            THE COURT:  -- TO HIS RELIANCE ON THE NINTH CIRCUIT
 6    CASE OF EASTER?
 7            MR. PIFKO:  WELL, HE WAS TALKING ABOUT, I BELIEVE,
 8    DUE PROCESS AND APPLYING CALIFORNIA LAW, AND WHETHER IT'S
 9    APPROPRIATE TO MAKE THE DETERMINATION AT CLASS CERT AND ALSO
10    SOME ARTICLE III ISSUES.
11       ACTUALLY, THE CENTRAL DISTRICT IN A CASE JUST DISCUSSED
12    SOME OF THESE ISSUES.  THE CASE IS PORTADELLI V. HIGHLANDS,
13    AND --
14            THE COURT:  DID IT DISTINGUISH THE NINTH CIRCUIT
15    CASE?
16            MR. PIFKO:  WELL, IT BASICALLY -- THE COURT SAID
17    THAT -- A COUPLE OF ISSUES.  WELL, IT SAID THAT -- IT WAS
18    CHIEF JUDGE KING THERE.  AND HE SAID THAT IT WAS A MISTAKE TO
19    CONSIDER THESE KINDS OF ARGUMENTS A STANDING ISSUE, AND THEY
20    ARE REALLY MORE ABOUT ADEQUACY.
21            THE COURT:  WHAT DID EASTER SAY FROM YOUR
22    PERSPECTIVE?  WHY DOESN'T EASTER CONTROL?  IT'S A NINTH
23    CIRCUIT CASE.
24            MR. PIFKO:  I DO NOT HAVE THAT CASE IN FRONT OF ME.
25            THE COURT:  OKAY.
```

```
1        IF I DECIDE THAT THERE IS -- THE CHOICE OF LAW ANALYSIS

2    NEEDS TO BE DONE, WHAT GOVERNMENTAL INTEREST DOES CALIFORNIA

3    HAVE IN ADJUDICATING CASES RELATING TO LOUISIANA SECURITY

4    INSTRUMENTS?

5        MR. PIFKO:  ONE OF THE THINGS WE DISCUSSED IS

6    FUNDAMENTALLY UNDER LOUISIANA LAW, THERE IS NO RIGHT TO CLASS

7    ACTION PROCESS.  AND I THINK THAT OFFENDS THE PUBLIC POLICY OF

8    CALIFORNIA TO PROHIBIT PEOPLE FROM -- WHEN YOU HAVE THESE

9    KINDS OF CLAIMS WHERE THEY ARE SMALL DOLLAR AMOUNTS AND YOU

10   ARE TALKING ABOUT A FEW HUNDRED DOLLARS PER CLAIMANT, IT

11   EFFECTIVELY TAKES AWAY THE RIGHT TO LITIGATE THE CASE --

12        THE COURT:  WHY AREN'T THERE ANY CALIFORNIA

13   PLAINTIFFS IN THIS CASE?

14        MR. TELLIS:  THERE ARE.

15        THE COURT:  WHY AREN'T THERE ANY CALIFORNIA

16   PLAINTIFFS?

17        MR. PIFKO:  I MEAN, WE HAVE SOME IN THE OTHER CASES,

18   BUT WE JUST HAVE THE LOUISIANA ONES RIGHT NOW.  IF WE NEEDED

19   TO AMEND TO DO SUBCLASSES, THEN WE CAN DO THAT AT THE

20   APPROPRIATE TIME.

21        I WANTED TO POINT OUT THAT THEY SAY IN THEIR PAPERS

22   BASICALLY THAT MAZZA HOLDS THAT YOU CAN'T HAVE A 50-STATE

23   CLASS.  AND THAT'S THE NEXT POINT IN THEIR ARGUMENT.  THEY

24   SAY, OKAY, IF YOU HAVE LOUISIANA LAW, THEN EFFECTIVELY THERE

25   IS NO CASE HERE.
```

1        BUT THAT'S NOT TRUE EITHER.  THERE'S PLENTY OF CASE LAW

2   SINCE MAZZA THAT HAS SAID YOU CAN CERTIFY A CASE UNDER THE 50

3   DIFFERENT STATES CONSUMER PROTECTION ACT EVEN POST MAZZA, AND

4   THAT IS COMPLETELY APPROPRIATE.

5        AND, AGAIN, THE WAY YOU ANALYZE THAT IS UNDER ADEQUACY AT

6   THE TIME OF CLASS CERTIFICATION.

7             **THE COURT:**  YOU WANT TO ADDRESS THAT ISSUE?

8             **MR. LONERGAN:**  YES, YOUR HONOR.

9        IT'S FAR TOO EARLY TO TALK ABOUT CERTIFICATION.  THAT'S

10  NOT WHAT WE ARE HERE ARGUING ABOUT.  IT IS A STANDING ISSUE.

11  AND WHAT IS ALLEGED IN THE COMPLAINT TO TRY TO TETHER THE

12  CLAIMS OF THESE LOUISIANA CITIZENS TO CALIFORNIA IS VERY

13  LITTLE.

14       IT'S ALLEGED THAT WELLS FARGO IS HEADQUARTERED HERE.  AS A

15  MATTER OF LAW THAT IS NOT SUFFICIENT TO SAY THAT CALIFORNIA

16  LAW CAN APPLY TO NONRESIDENT CLAIMS.  THAT WAS DECIDED BY

17  JUDGE ALSUP IN THE IN RE GRAPHICS CASE EVEN WHERE THERE WAS A

18  HEADQUARTERS HERE AND THERE WAS CONDUCT IN CALIFORNIA.  THE

19  NINTH CIRCUIT, AGAIN, IN THE SULLIVAN VERSUS ORACLE CASE THAT

20  THE PLAINTIFFS HAVE CITED SPECIFICALLY FOUND THAT EVEN THOUGH

21  ORACLE WAS HEADQUARTERED HERE, THE CLAIMS OF NONRESIDENT

22  EMPLOYEES WOULD BE DECIDED BY THEIR OWN STATES, NOT

23  CALIFORNIA.

24       HERE, WHILE THEY TRY TO ALLEGE THAT THIS DIVISION OF WELLS

25  FARGO AS PREMIERE HAD SOME INVOLVEMENT IN THE ORDERING OF

1    THESE SERVICES, THEY ACTUALLY NEGATE THAT BY SAYING IN

2    PARAGRAPH 52 THAT PREMIERE DOES NOT ACTUALLY PERFORM THESE

3    BPO'S THAT ARE AT ISSUE.  THEY ARE PERFORMED BY LOCAL REAL

4    ESTATE AGENTS THERE IN LOUISIANA.

5        SO YOU'VE GOT A MORTGAGE EXECUTED THERE, PROPERTY THERE,

6    LOUISIANA RESIDENCE INSPECTIONS CONDUCTED THERE, STATEMENTS

7    MAILED THERE, THERE IS NO CONDUCT ALLEGED HERE EVEN THOUGH

8    THEY ARGUE IN THEIR BRIEFS -- THEY ACTUALLY SAY ALL OF THE

9    WRONGFUL CONDUCT ALLEGED OCCURRED WITHIN THE STATE OF

10   CALIFORNIA.  THEY SAY THAT IN THEIR OPPOSITION ON PAGE 7.

11   THERE IS NO ALLEGATION IN THE COMPLAINT TO SUPPORT THAT.

12       AS A MATTER OF LAW THERE ARE INSUFFICIENT ALLEGATIONS IN

13   THE COMPLAINT AT THE PLEADING STAGE FOR THIS COURT TO CONCLUDE

14   THAT CALIFORNIA CAN CONSTITUTIONALLY APPLY ITS LAWS TO THE

15   EXCLUSION OF LOUISIANA LAW, OR THAT LOUISIANA LAW DOESN'T

16   OVERCOME CALIFORNIA LAW UNDER THE GOVERNMENTAL INTEREST TEST.

17       **MR. PIFKO:**  I WOULD LIKE TO ADD THAT THE LOUISIANA

18   CASES, AS YOUR HONOR IS WELL AWARE, WERE TRANSFERRED HERE

19   EXPRESSLY BECAUSE WELLS FARGO IS HEADQUARTERED HERE.  THAT IS

20   WHERE A LOT OF CONDUCT IN THESE CASES OCCURRED.

21       **THE COURT:**  UPON WELLS FARGO'S REQUEST, NO?

22       **MR. TELLIS:**  NO.

23       **THE COURT:**  NO.

24       **MR. PIFKO:**  IT WAS UPON THE PLAINTIFFS' COUNSEL

25   REQUEST IN THAT CASE.  AND THE LOUISIANA JUDGE FOUND THAT IT

```
1    WAS MORE APPROPRIATE TO HAVE THOSE CLAIMS DEALT WITH IN

2    CALIFORNIA THAN LOUISIANA.

3            THE COURT:  I THOUGHT ABOUT THAT TODAY.  ALL RIGHT.

4      ANYTHING ELSE?

5            MR. LONERGAN:  THE ONLY OTHER POINT I WOULD MAKE AND

6    I NEGLECTED TO RESPOND TO IT EARLIER, THE POINT ABOUT

7    LOUISIANA LAW NOT PERMITTING CLASS ACTIONS.  THAT IS A

8    PROCEDURAL POINT.  THAT IS NOT A BASIS FOR THIS OR ANY COURT

9    TO CONCLUDE THAT CALIFORNIA HAS A STRONGER INTEREST IN

10   ADJUDICATING THE CLAIMS APPLYING ITS LAWS.

11     BECAUSE IF THAT WERE THE RULE, ALL WOULD BE CLASS ACTIONS

12   FROM LOUISIANA OR ANY OTHER STATE THAT MAY NOT HAVE CLASS

13   ACTION PROCEDURE OR MAY HAVE A SHORTER STATUTE OF LIMITATIONS

14   THAN CALIFORNIA, OR MAY NOT HAVE A CONSUMER PROTECTION STATUTE

15   THAT THE PLAINTIFFS' LAWYER THINKS IS AS STRONG AS THE UCL

16   WOULD ALL COME TO CALIFORNIA SO THAT YOU AND OTHER JUDGES CAN

17   APPLY CALIFORNIA LAW.

18     THAT'S NOT THE TEST.  THAT'S NOT THE WAY THE GOVERNMENTAL

19   INTEREST TEST WORKS.  THAT'S NOT THE WAY THE CONSTITUTIONAL

20   DUE PROCESS TEST UNDER SHUTS (PHONETIC) WORKS, AND --

21           THE COURT:  WOULD ALL OF THIS BE DIFFERENT IF THEY

22   HAD A CALIFORNIA PLAINTIFF?

23           MR. LONERGAN:  IF THEY HAD A CALIFORNIA PLAINTIFF

24   THAT SIGNED A MORTGAGE WITH A CALIFORNIA CHOICE OF LAW

25   PROVISION, WE WOULD NOT BE HERE ARGUING THAT LOUISIANA OR ANY
```

OTHER STATE LAW APPLIED.  THAT'S EXACTLY RIGHT.

**THE COURT:**  WOULD YOU LIKE TO RESPOND?

**MR. PIFKO:**  I WOULD LIKE TO CORRECT THE STATEMENT
THAT ALL CASES WOULD NOT END UP IN CALIFORNIA.  WE ARE HERE
BECAUSE WELLS FARGO IS HEADQUARTERED HERE.  IT'S NOT JUST ANY
CASE WOULD HAVE ANY -- YOU WOULD BRING IT TO CALIFORNIA
BECAUSE WE HAVE DIFFERENT RIGHTS.

   I THINK CALIFORNIA HAS AN INTEREST IN ENSURING THAT
CORPORATIONS HEADQUARTERED HERE BEHAVE IN A MANNER THAT IS
APPROPRIATE.  IF YOU HAVE -- SAYS IT IS A PROCEDURAL
MECHANISM, BUT AS I EXPLAINED, WHEN YOU HAVE SMALL CLAIMS LIKE
THIS, IT'S MORE THAN A PROCEDURAL MECHANISM, IT'S SOMETHING
THAT EFFECTIVELY CUTS OFF PEOPLE'S RIGHTS TO ENFORCE --
PROTECT THEMSELVES FROM FRAUDULENT CONDUCT.

   AND I THINK CALIFORNIA CERTAINLY HAS AN INTEREST IN
ENSURING THAT COMPANIES BASED HERE DON'T EXERT FRAUDULENT
BEHAVIOR AROUND THE COUNTRY.

**THE COURT:**  OKAY.  ONE LAST RESPONSE ON THAT?

**MR. LONERGAN:**  NONE, YOUR HONOR.

**THE COURT:**  OKAY.  LET'S MOVE ON TO ANOTHER MOTION.
I WILL GIVE YOU AN OPPORTUNITY LATER TO FOLLOW UP IF YOU WOULD
LIKE.

**MR. LONERGAN:**  THANK YOU, YOUR HONOR.

**THE COURT:**  CITIBANK.

**MR. RICH:**  GOOD AFTERNOON, YOUR HONOR.  STEVEN RICH,

```
1    YOUR HONOR.
2              THE COURT:  GOOD AFTERNOON.
3         DID YOU FIND THE ATTORNEY LOUNGE?
4              MR. RICH:  I DID, YOUR HONOR.  THANK YOU FOR THE
5    ADVICE.
6              MR. TELLIS:  YOUR HONOR, JUST FOR YOUR BENEFIT, MY
7    COLLEAGUES AND I HAVE DIVIDED UP OUR ARGUMENTS DEPENDING ON
8    THE SUBJECT MATTER OF YOUR HONOR'S QUESTIONS.  SO WE WILL SIT
9    BACK AND WAIT AND SEE WHAT YOU WOULD LIKE TO TALK ABOUT.
10             THE COURT:  SO ON THIS ONE, I WOULD LIKE THE ISSUE OF
11   RICO TO BE ARGUED.
12        SO I HAVE MR. RICH FOR CITIBANK DEFENDANTS AND....
13             MR. PIFKO:  THAT WILL BE ME AGAIN, YOUR HONOR.
14             THE COURT:  OKAY.
15             MR. RICH:  YOUR HONOR, I THINK A GOOD STARTING POINT
16   MIGHT BE SAYING WHAT THIS CASE IS ABOUT.  AND THIS CASE IS
17   ABOUT WHERE THE NAMED PLAINTIFFS UNFORTUNATELY DEFAULTED ON
18   THEIR LOANS AND ARE NOW TRYING TO MANUFACTURE CLAIMS,
19   INCLUDING RICO CLAIMS, AGAINST CITI THAT HAS NO BASIS.
20        AND THERE ARE A HOST OF REASONS WHY THE PLAINTIFFS' CLAIMS
21   FAIL.  AND I WILL LOOK AT THE RICO SPECIFICALLY REAL BRIEF,
22   BUT JUST TO HIGHLIGHT OUR MOTION.
23        THE BIGGEST PROBLEM WITH THE COMPLAINT, WHICH IS FILED BY
24   PLAINTIFFS WHO WERE ADMITTEDLY IN DEFAULT, IS THEY DON'T
25   ALLEGE CITI DID ANYTHING WRONG.  THERE'S THREE MAIN AREAS THAT
```

```
1    THEY TALK ABOUT:  PROPERTY INSPECTIONS, BPO FEES, AND

2    DELINQUENCY EXPENSES.

3        AS FAR AS PROPERTY INSPECTIONS, THE COMPLAINT SAYS THAT

4    THE MONTHLY INSPECTIONS OCCURRED TOO FREQUENTLY.  BUT AFTER WE

5    POINT OUT IN OUR PAPERS THAT COURTS LIKE THE WALKER CASE AND

6    MANY OTHERS, ALLOW THESE INSPECTIONS TO OCCUR MONTHLY, AND IN

7    FACT ARE VERY COMMON IN THE INDUSTRY -- I WILL BE HITTING RICO

8    VERY BRIEFLY -- THEY CHANGED THEIR TUNE.  AND SAID, WELL, IT

9    HAPPENED TOO OFTEN.  THEY NOW SAY THEY ARE MARKED UP INSTEAD

10   IN THEIR BRIEF NOT IN THEIR COMPLAINT.  AND THEIR PROBLEM

11   THERE IS AGAIN NO ALLEGATION IN THE COMPLAINT AND THERE IS NO

12   FACTUAL BASIS FOR THE ASSERTION THAT THE INSPECTION FEES ARE

13   MARKED UP.

14       THE BPO FEE, THE BROKER PRICE OPINION FEE ISSUE IS THAT

15   THE COMPLAINT DOESN'T ALLEGE THAT THE NAMED PLAINTIFFS

16   THEMSELVES PAID OR WERE ASSESSED THOSE SPECIFIC FEES.  THE

17   COMPLAINT DOES NOT ALLEGE THAT BPO FEES WERE MARKED UP AND THE

18   PLAINTIFFS DON'T DISPUTE THAT CITI, IN FACT, INCURS INTERNAL

19   COSTS TO ARRANGE FOR BPO SERVICES AFTER DEFAULT, AND THEY ARE

20   ENTITLED TO RECOVER THOSE FEES WHICH ARE ALIGNED WITH FANNIE

21   MAE GUIDELINES.

22       IN THE LAST QUICK KIND OF OVERVIEW POINT ABOUT THE

23   DELINQUENCY EXPENSE ISSUE, IS THE PLAINTIFFS DO NOT AND CANNOT

24   POINT TO A CONTRACTUAL PROVISION OR OTHER BASIS THAT REQUIRES

25   DETAILED ITEMIZED ITEMIZATION.
```

1     AT BOTTOM HERE, YOUR HONOR, CITI HAD NO DUTY TO PROVIDE A

2   DETAILED ACCOUNTING OF THESE EXPENSES.  AND BECAUSE OF THAT,

3   THERE CANNOT BE A FRAUDULENT CONCEALMENT CLAIM.

4     AS FAR AS -- SO THEY TAKE THESE FACTS AND THEY TRY TO MAKE

5   IT TO MANUFACTURE A RICO CLAIM AGAINST CITI BASED ON THINGS

6   THEY WERE CONTRACTUALLY ALLOWED TO DO THAT ARE COMMON IN THE

7   INDUSTRY.

8     THE RICO CLAIMS HAVE A WHOLE HOST OF PROBLEMS.  THE FIRST

9   ONE, AND IT'S THE BIGGEST ONE PERHAPS IS STANDING.  BECAUSE

10   THEY DON'T ALLEGE THAT THE FEES WERE MARKED UP, INSTEAD THEY

11   SAY THE FEES MAY CONTAIN MARKUPS.  THAT'S SPECULATION.  AND

12   SPECULATION CANNOT CONFER STANDING.  THE FEES DON'T

13   DEMONSTRATE RICO INJURY, THEY REFLECT MARKET PRACTICES

14   REQUIRED BY THE INDUSTRY.

15     ALSO AS TO STANDING, THE PURPORTED INJURIES ARE TWO,

16   DAMAGE TO CREDIT SCORES AND LATE PAYMENT FEES.  BUT THEY SAY

17   THOSE WERE, THOSE WERE INJURIES SUSTAINED BY UNIDENTIFIED

18   BORROWERS, NOT THE NAMED PLAINTIFFS HERE.  AND THAT'S REQUIRED

19   TO ESTABLISH RICO STANDING.

20     TURNING TO RICO SUBSTANTIVELY, THEY DON'T ALLEGE CONDUCT

21   OF A RICO ENTERPRISE AS REQUIRED, THEY MERELY ALLEGE ORDINARY

22   BUSINESS CONDUCT EMPLOYED BY LOAN SERVICERS.

23     FURTHER, THEY DON'T DISTINGUISH BETWEEN THE CONDUCT OF

24   CITIMORTGAGE AND CITIBANK AS REQUIRED.  THEY ARE JUST LUMPED

25   TOGETHER.  UNDER RULE 9 THAT WON'T SUFFICE FOR A FRAUD CLAIM

1    OR A RICO CLAIM.  THEY TALK ABOUT HOW CITIBANK RATIFIES THE

2    ACTIONS OF CITIMORTGAGE; THEY DON'T BOTHER SAYING WHAT ACTIONS

3    ARE EXACTLY BEING RATIFIED.  IN OTHER WORDS, THE ENTERPRISE

4    ALLEGATIONS ARE CONCLUSORY AND THEY DESCRIBE ANY FOR-PROFIT

5    ENTITY LIKE THE DEFENDANTS HERE.

6         FURTHER BRIEFLY, THEY DON'T SATISFY THE RACKETEERING

7    ACTIVITY ELEMENT.  THE PREDICATE ACTS THEY CLAIM ARE MAIL AND

8    WIRE FRAUD, BUT RULE 9(B) REQUIRES SPECIFICITY.  AGAIN, THEY

9    HAVE THE LUMPING PROBLEM.

10        TURNING TO THE 1962(D) CLAIM, WHICH IS A CONSPIRACY, THAT

11   CLAIM FAILS BECAUSE THEIR 1962(C) CLAIM FAILS.  THE LAW IS

12   CLEAR ON THAT.  ONCE MORE, THERE IS, AGAIN, CONCLUSORY

13   ALLEGATIONS THAT CITIBANK AND CITIMORTGAGE AND OTHERS AGREED

14   TO CONSPIRE BUT THERE ARE NO FACTS ALLEGED TO SUPPORT THAT.

15            **THE COURT:**  YOU CAN RESPOND GENERALLY, MR. PIFKO.  I

16   GUESS WHAT I AM PARTICULARLY INTERESTED IN HEARING ABOUT IS

17   WHY IS THIS RICO?  WHY ISN'T THIS JUST AN UCL CLAIM?  IT'S

18   WHAT IT SOUNDS LIKE IN THE COMPLAINT, I HAVE TO TELL YOU.  I

19   DON'T UNDERSTAND WHY THIS RISES TO THE LEVEL OF RICO.

20        AND WHAT I NEED TO HEAR FROM YOU IS WHETHER YOU HAVE

21   ANYTHING THAT YOU CAN AMEND THE COMPLAINT WITH, BECAUSE I AM

22   TRYING TO UNDERSTAND IF I NEED TO BE GIVING LEAVE TO AMEND.

23        I DON'T UNDERSTAND HOW THIS IS ANYTHING MORE THAN PERHAPS

24   A UCL CLAIM.  GO AHEAD.

25            **MR. PIFKO:**  WELL, TO BEGIN WITH, I WOULD LIKE TO SAY

1    WE ACTUALLY WERE TALKING ABOUT THIS.  IF -- JUST BECAUSE YOU

2    HAVE A CONTRACT DOESN'T MEAN THAT ANYTHING THAT YOU DO IS

3    GOVERNED BY THAT CONTRACT.

4        IF YOU AND I HAVE A CONTRACT ABOUT SOME SORT OF BUSINESS

5    THAT WE ARE RUNNING, AND THEN I GO AND STEAL FROM YOU, IT

6    DOESN'T MEAN THAT THE CONTRACT IS -- IT'S ONLY A BREACH OF

7    CONTRACT ACTION.  IF YOU'VE GONE AND DONE SOMETHING MORE

8    AGGRESSIVE THAN JUST VIOLATE THE CONTRACT, THEN IT'S

9    APPROPRIATE TO CALL THAT CONDUCT OUT FOR WHAT IT IS AND TO USE

10   STATUTES AND CLAIMS THAT WOULD ADDRESS IT.  THAT'S WHY THIS IS

11   A CASE THAT IS PRIMARILY A FRAUD CASE.

12          **THE COURT:**  BUT FRAUD IN AND OF ITSELF DOES NOT

13   CREATE RICO.  OTHERWISE I WOULD HAVE RICO CASES IN HERE EVERY

14   TIME I HAD A BUSINESS DISPUTE.

15          **MR. BARRY:**  THIS IS MORE THAN THAT.  AS WE NOTED IN

16   OUR PAPERS, THIS IS A SCHEME THAT IS DESIGNED FROM THE HIGHEST

17   LEVELS OF THE COMPANY AND THEY CAME UP WITH THIS WHOLE

18   FRAUDULENT CONCEALMENT THING TO DEFRAUD BORROWERS --

19          **THE COURT:**  HOW DO YOU KNOW THAT?  HOW DO YOU KNOW

20   THAT?

21          **MR. PIFKO:**  WE -- IT'S VERY CLEAR THAT THIS WAS NOT

22   JUST SOMETHING THAT WAS DESIGNED AT THE BOTTOM LEVELS OF THE

23   COMPANY.

24          **THE COURT:**  HOW DO YOU KNOW?

25          **MR. PIFKO:**  WELL, IT IS A FRAUDULENT CONCEALMENT

```
 1    CASE.  I THINK IT IS APPROPRIATE TO ALLOW US TO DO DISCOVERY

 2    TO FIND OUT MORE ABOUT THAT INFORMATION AND TAKE SOME

 3    DEPOSITIONS --

 4              THE COURT:  SO YOU DON'T KNOW.

 5              MR. PIFKO:  WE DON'T HAVE ALL OF THE DETAILS OF THAT

 6    KIND OF CONDUCT.

 7              THE COURT:  WHAT DETAILS DO YOU HAVE?

 8              MR. TELLIS:  YOUR HONOR, MIGHT I JUMP IN HERE FOR A

 9    MOMENT?

10              THE COURT:  YOU MAY NOT.

11       YOU CAN SEND HIM NOTES, BUT ONLY ONE PER ISSUE.

12              MR. PIFKO:  AS WE ALLEGED IN THE COMPLAINT, THESE

13    POLICIES AND PROCEDURES WERE DEVELOPED AND ESTABLISHED BY THE

14    EXECUTIVES AT BOTH THE BANK AND THE MORTGAGE COMPANY.

15       AND FUNDAMENTALLY GOING BACK TO WHERE A LOT OF THIS --

16    THESE ISSUES CAME TO LIGHT WAS BACK IN LOUISIANA IN THE

17    BANKRUPTCY COURT JUDGE OPINION, WHICH IS CITED IN OUR PAPERS,

18    THE IN RE STEWART OPINION WHERE THE JUDGE FOUND OUT ABOUT

19    THESE POLICIES THAT IT'S A SYSTEMWIDE PRACTICE THAT ALL THESE

20    BANKS ARE DOING, AND THEY HAVE THESE COMPUTER SYSTEMS.  AND IT

21    GOES UP TO THE HIGHEST LEVELS OF THE COMPANY TO HAVE DESIGNED

22    THESE THINGS.

23       IT'S NOT JUST A SIMPLE BRIEF BREACH OF CONTRACT.  IT'S A

24    COMPLEX SYSTEM THAT THE BANKS DESIGNED TO DEFRAUD PEOPLE AND

25    ESSENTIALLY SCARE THEM INTO PAYING THESE EXTRA FEES THAT THEY
```

 1   ARE NOT OBLIGATED TO PAY.  IT IS PRECISELY WHAT RICO IS

 2   DESIGNED TO PROTECT.

 3       BY SENDING OUT THESE STATEMENTS -- IF YOU THINK ABOUT IT,

 4   IF YOU HAVE A MORTGAGE WITH SOMEBODY, IF THEY SEND OUT A

 5   STATEMENT, YOU ARE NOT GOING TO LOSE YOUR HOUSE IF THEY TELL

 6   YOU THAT YOU HAVE TO PAY CERTAIN MONEY.  AND THEY PUT THESE

 7   VAGUE AND AMBIGUOUS THINGS, AND DELINQUENCY EXPENSES.  YOU

 8   DON'T KNOW WHAT IT IS.  YOU ASSUME I AM SUPPOSED TO PAY THIS.

 9   IT IS CONCEALED FROM YOU THAT YOU DON'T ACTUALLY HAVE TO PAY

10   IT.

11       IN THE CASE OF CITIBANK, THEY ACTUALLY GO SO FAR AND SAY

12   THESE ARE THINGS THAT WE'RE ALLOWED TO CHARGE YOU UNDER THE

13   NOTE, WHICH IS A COMPLETE LIE.  IT WAS DESIGNED USING THESE --

14   LIKE I SAID, THEY HAVE -- I AM TRYING TO REMEMBER THE NAME OF

15   THE CITI SYSTEM, THEY HAVE A COMPUTER SYSTEM, THEY DESIGNED

16   THIS TO JUST CHURN THROUGH ALL THESE FEES AND CHARGE THEM TO

17   PEOPLE AND INFLATED THESE MARKUPS, WHICH HE SAYS WE DON'T

18   ALLEGE THAT, BUT IT IS VERY CLEAR WE ALLEGE THROUGH THESE

19   UNLAWFUL MARKUPS -- THROUGH THESE UNLAWFUL ENTERPRISES

20   DEFENDANTS MARK UP THE FEES CHARGED BY VENDORS OFTEN BY A

21   HUNDRED PERCENT OR MORE.

22       IT DOESN'T SAY THEY MAY BE MARKED UP.

23           **THE COURT:**  THEN WHAT ABOUT THE -- THANK YOU.  SO WE

24   WILL LOWER THE MIC A LITTLE BIT SO YOU CAN MOVE YOUR PAPERS.

25   WE ARE STILL TRYING TO GET THIS COURTROOM TWEAKED, AND ONE OF

THE THINGS -- THE ISSUE EXACTLY WHAT YOU ARE SEEING HERE OR

HEARING WHEN THE OTHER SIDE ISN'T TALKING AND FLIPPING

THROUGH, EVERYBODY INCLUDING JURORS CAN HEAR.  SO IT'S A

DESIGN DEFECT THAT WE ARE --

**MR. RICH:**  I WILL TRY TO RUFFLE MY PAPERS LESS, AND I

APOLOGIZE.

CAN I HAVE A CHANCE TO RESPOND TO THE ARGUMENTS BEFORE WE

GO TO A NEW ISSUE?

**THE COURT:**  YOU WILL, BUT NOT RIGHT NOW.

THE OTHER QUESTION I HAD IS, THERE IS REFERENCES IN THE

PAPERS ABOUT THE ACTS BETWEEN THE BANK ON THE ONE HAND AND

BROKERS OR OTHERS, BUT NONE OF THESE OTHER THIRD-PARTY

ENTITIES ARE DEFENDANTS.  AND HOW DO YOU RESPOND TO THE ISSUE

OF BEING ABLE TO ALLEGE A RICO CLAIM FOR ONLY INTERNAL

CONDUCT?

**MR. PIFKO:**  WELL, THE RICO CASE LAW IS ACTUALLY CLEAR

THAT YOU DON'T HAVE TO SUE EVERYBODY WHO IS INVOLVED IN THE

ENTERPRISE.  AND, IN FACT, SOME MEMBERS OF THE ENTERPRISE CAN

BE PEOPLE WHO DIDN'T NECESSARILY DO ANYTHING WRONG.  THEY CAN

BE UNWITTING PARTICIPANTS IN THE SENSE OF THESE PROPERTY

PRESERVATION COMPANIES ARE ESSENTIALLY A PAWN IN THE GAME OF

THE SCHEME TO DEFRAUD PEOPLE.

SO THEY MAY NOT -- WE MAY LEARN IT THROUGH DISCOVERY THAT

THEY DID KNOW ABOUT THESE THINGS AND DID THEM, BUT AT THE

MOMENT, THEY MIGHT BE -- THE RICO CASES TALK ABOUT CRIMINAL

1    AFTER SORT OF TAKING OVER A COMPANY AND/OR SOME OTHER SORT OF

2    LEGITIMATE OPERATION AND USING THAT OPERATION TO FURTHER THEIR

3    ILLEGITIMATE INTEREST.  THAT'S EXACTLY WHAT THE BANKS HERE

4    HAVE DONE.  THEY HAVE USED THESE PROPERTY PRESERVATION

5    COMPANIES TO FURTHER THEIR ILLEGITIMATE INTEREST OF CHARGING

6    BORROWERS THESE MARKED-UP FEES FOR THINGS THAT ARE

7    INCONSISTENT WITH THE NOTE.

8             **THE COURT:**  ALL RIGHT.  YOU MAY RESPOND.

9             **MR. RICH:**  THANK YOU, YOUR HONOR.

10    I WILL TRY AND GO IN ORDER OF THE POINTS I HEARD JUST REAL

11    BRIEFLY IN THE INTEREST OF TIME.

12    YOUR HONOR MENTIONED UCL CLAIMS.  HERE THERE ISN'T ONE

13    AGAINST CITIBANK AND CITIMORTGAGE.  THEY ARE CONCEDING NOW

14    THEY DON'T HAVE THOSE FACTS.  YOU ASKED WHY ISN'T THIS JUST A

15    BASIC RUN-OF-THE-MILL CONTRACT CLAIM.  IT IS.  THEY DON'T EVEN

16    HAVE THE FACTS FOR THAT.

17    RICO GETS THEM TREBLE DAMAGES.  THAT'S WHAT'S GOING ON

18    HERE.

19    YOU MENTIONED -- COUNSEL MENTIONED THERE'S TWO BANKRUPTCY

20    COURT CASES.  IN THEIR PAPERS THEY TALK ABOUT HOW COURTS HAVE

21    ALREADY FOUND THESE ALLEGED ACTIONS ARE IMPROPER.  IT'S

22    IMPORTANT TO LOOK CAREFULLY AT THOSE TWO CASES THEY RELY ON

23    BECAUSE THEY LEND PLAINTIFFS ZERO SUPPORT.  THEY ARE

24    BANKRUPTCY CASES OUT OF LOUISIANA AND TEXAS, AND THEY ARE

25    COMPLETELY INAPPOSITE.

1    THERE THEY TALK ABOUT HOW THE BANKS FAIL TO SATISFY AN

2    EVIDENTIARY BURDEN UNDER BANKRUPTCY RULE 3001, WHICH CONCERNS

3    PROOF OF CLAIM WHERE UNDER THE RULES OF BANKRUPTCY YOU HAVE TO

4    SUBMIT SOME KIND OF FOUNDATION OR SUPPORT FOR YOUR PROOFS OF

5    CLAIMS, WHICH DON'T HAVE ANYTHING TO DEAL WITH THIS RICO CASE

6    WHATSOEVER.

7    THE COURT DID NOT HOLD THAT BPO FEES SOUGHT BY A LOAN

8    SERVICER MUST BE LIMITED TO THE AMOUNT PAID TO A THIRD PARTY

9    HELD THAT THE BANKS DON'T SATISFY THEIR PROOF OF CLAIM

10   REQUIREMENT IN THE BANKRUPTCY.

11   COUNSEL ALSO TALKED ABOUT HOW ALLEGEDLY WE ARE CONCEALING

12   THE ITEMIZED EXPENSES IN OUR MORTGAGE STATEMENTS.  THERE, IT

13   IS IMPORTANT TO -- I HAVE TWO RESPONSES THERE.  THE FIRST ONE,

14   AS WE SAY IN OUR PAPERS AND AS WE ATTACH TO OUR REQUEST FOR

15   JUDICIAL NOTICE, IF YOU LOOK AT OUR MORTGAGE STATEMENTS, WE

16   GIVE THE BORROWERS A PHONE NUMBER TO CALL IF YOU WANT MORE

17   INFORMATION.  THERE IT IS.  IF YOU WANT THE ADDRESS FOR MORE

18   INFORMATION, THERE IT IS.

19   THAT'S GOING BEYOND WHAT WE NEED TO DO BECAUSE OF THE

20   MARTINEZ CASE, A NINTH CIRCUIT CASE WHICH DIRECTLY APPLIES

21   HERE.  AND THERE IS NO GOOD RESPONSE FROM PLAINTIFFS IN THEIR

22   PAPERS ABOUT HOW THEY DEAL WITH MARTINEZ WHICH SAYS THAT UNDER

23   NINTH CIRCUIT CONTROLLING LAW, THE FAILURE TO DISCLOSE ALLEGED

24   OVERCHARGES AND MARKUPS IS NOT AN UNLAWFUL BUSINESS PRACTICE

25   BECAUSE UNDER OCC REGULATIONS, NATIONAL BANKS LIKE CITI ARE

1   EXEMPTED FROM STATE LAWS IMPOSING DISCLOSURE REQUIREMENTS ON

2   THEIR MONTHLY STATEMENTS.

3          **THE COURT:**  ALL RIGHT.  WHY DON'T YOU RESPOND TO

4   THOSE TWO POINTS, MR. PIFKO.

5      THE ISSUE OF MARTINEZ, TO THE EXTENT YOU WANT TO SAY

6   ANYTHING AND WHETHER OR NOT -- WHY IS IT THAT YOU'VE GOT --

7   YOU HAVE NOT ALLEGED AN UCL CLAIM AGAINST CITIBANK.

8          **MR. PIFKO:**  I WANTED TO RESPOND TO THE ISSUE OF -- HE

9   WAS TALKING ABOUT HOW THE CONDUCT ISN'T UNLAWFUL.  AND I WANT

10  TO RESPOND TO THIS ISSUE OF THESE BANKRUPTCY COURT CASES

11  BECAUSE I THINK IT IS ACTUALLY QUITE INSTRUCTIVE TO UNDERSTAND

12  MORE ABOUT WHAT THESE CASES ARE ABOUT.  MAYBE OUR PAPERS DON'T

13  FULLY EXPLAIN THE DETAILS.

14     MR. RICH SAID THAT THEY ARE INAPPOSITE BECAUSE THEY DIDN'T

15  TALK ABOUT PROOF OF CLAIM.  FUNDAMENTALLY, WHAT HAPPENED IN

16  THESE CASES, THE ONE AGAINST CITI IS CALLED IN RE PRIVO, WHICH

17  IS 394 BR 847.

18     WHAT HAPPENED IN THESE CASES, WHICH IS THE SAME THING THAT

19  HAPPENED IN WELLS FARGO CASE, BORROWERS STARTED -- YOU WOULD

20  GO INTO BANKRUPTCY.  AND THEY WOULD FILE PROOF OF CLAIM.  WE

21  ARE ENTITLED TO THIS MUCH OF YOUR DEFAULT AND ALL THESE EXTRA

22  FEES.  AND BORROWER'S COUNSEL STARTED CHALLENGING THE BANKS

23  AND SAYING WHAT FEES ARE THESE?  I WANT TO SEE RECEIPTS.  I

24  WANT TO SEE DOCUMENTS.  I AM NOT GOING TO JUST WRITE YOU A

25  CHECK BECAUSE YOU SUBMIT A PROOF OF CLAIM AND SAY, OH, FEES.

```
1        WHEN IT CAME DOWN TO IT, THEY COULDN'T PRODUCE ANY
2   DOCUMENTS SHOWING THAT THESE FEES WERE OWED.  AND THIS
3   PARTICULAR CASE WITH CITI, AFTER THE BANKRUPTCY COURT
4   CHASTISED THEM AND SAID I WANT TO SEE THE DOCUMENTS, CITI
5   DECIDED RATHER THAN EXPOSE THE FRAUD, TO JUST DROP THE REQUEST
6   FOR FUNDS.  AND THE BANKRUPTCY COURT NOTED THAT THIS IS A
7   PRACTICE THAT'S GOING ON RAMPANTLY IN THE BANKING INDUSTRY.
8        IN THE CASE OF WELLS FARGO, WHAT ENDED UP HAPPENING WAS
9   THEY PRODUCED FAKE RECEIPTS.  AND WHEN THE RECEIPTS WERE THEN
10  CHALLENGED AGAIN, IT CAME TO LIGHT THAT THEY WERE CHARGING THE
11  ACTUAL COSTS OF THESE THINGS WERE SUBSTANTIALLY LESS, AS MUCH
12  AS 300 PERCENT LESS THAN WHAT THE ACTUAL COST WAS.
13       SO THE BANKRUPTCY COURT ORDERS -- THIS IS -- THAT WAS THE
14  GROUND LEVEL WHERE THESE KIND OF FRAUDS WAS DISCOVERED BECAUSE
15  THAT'S BEFORE GOING INTO DEFAULT AND THE PRACTICES BEING
16  CHALLENGED.
17            THE COURT:  WHAT ABOUT CHASE.  YOU TOLD ME ABOUT
18  CITIBANK AND WELLS FARGO, SINCE WE ARE ON THAT TOPIC, WHAT DID
19  CHASE DO?
20            MR. PIFKO:  I DON'T HAVE A PARTICULAR CITE FOR A
21  BANKRUPTCY COURT GOING AFTER CHASE IN THESE SITUATIONS, BUT
22  IT'S THE SAME EXACT PRICES.  IT'S THE SAME EXACT CONDUCT.
23  THEY USE -- CHASE AND WELLS FARGO USE THE SAME EXACT COMPUTER
24  SYSTEM.  IF YOU LOOK AT THE DOCUMENTS AND THE WAY THEY CHARGE
25  THESE THINGS, IT IS EXACTLY THE SAME PRACTICE.
```

```
1              THE COURT:  OKAY.

2         MARTINEZ, ARE YOU GOING TO COMMENT ON MARTINEZ, YES OR NO?

3              MR. PIFKO:  I WAS GOING TO ALLOW MR. TELLIS TO

4    COMMENT ON MARTINEZ BECAUSE SOME OF THAT OVERLAPS THE ISSUE

5    WITH THE OCC JURISDICTIONAL ISSUES THAT HE WAS GOING TO

6    HANDLE.

7         WHAT I CAN SAY IS --

8              THE COURT:  WHAT ABOUT THE UCL CLAIM AGAINST CITIBANK

9    OR THE LACK THEREOF?

10             MR. PIFKO:  A LOT OF THESE CASES THEY TALK ABOUT

11   WALKER, MARTINEZ, A LOT OF THESE CASES AND THERE WAS A

12   DISCUSSION EARLIER ABOUT HOW THE CASES HAVE SAID IT'S NOT

13   UNLAWFUL TO CHARGE FOR PROPERTY INSPECTIONS.  THAT'S NOT --

14   THAT MISUNDERSTANDS WHAT OUR CLAIM IS.

15        OUR CLAIM IS THAT THEY -- THERE'S A DUTY TO ONLY CHARGE

16   FOR WHAT THEY ACTUALLY -- WHAT THEY WERE CHARGED BY THE THIRD

17   PARTIES.  THAT'S WHY WE BRING UP THE CONTRACT.  THAT'S WHERE

18   THE DUTY DERIVES FROM.  RATHER THAN DO THAT, THEY DECIDED TO

19   MARK IT UP.

20        IN THESE OTHER CASES, LIKE IN THE CASE OF MARTINEZ IT WAS

21   ABOUT -- THERE WAS NO DUTY.  IT WAS SOMETHING IN THE HUD, AND

22   IT WAS CLEARLY OUTLINED TO PEOPLE BEFORE THEY EVEN GOT THE

23   LOAN WITH THE BANK.  THERE WAS AN ITEMIZED STATEMENT AND YOU

24   COULD SEE IT SAID $800 FOR CERTAIN FEES.  AND, YOU KNOW, CALL

25   IT WHAT YOU WILL, BUT YOU DIDN'T HAVE TO GO OUT OF POCKET
```

```
1    UNTIL YOU SIGNED THE THING AND IT WAS FULLY DISCLOSED TO YOU.

2        AND WE'RE NOT HERE -- LATER A LAWYER SAID THAT WAS TOO

3    MUCH MONEY TO PAY FOR SOMETHING LIKE THAT, AND WHAT DID THEY

4    DO FOR THAT MONEY.

5        THAT'S NOT WHAT OUR CASE IS.  WE ARE NOT CHALLENGING -- IF

6    THE THIRD PARTY CHARGED A MILLION DOLLARS FOR A PROPERTY

7    INSPECTION, OUR CASE ISN'T SAYING IT'S UNFAIR TO CHARGE A

8    MILLION DOLLARS FOR A PROPERTY INSPECTION.  THAT'S NOT WHAT

9    OUR CASE IS ABOUT.

10       OUR CASE IS SAYING THAT THE PROPERTY INSPECTION VENDOR

11   CHARGED $5 AND THE BANK WENT ON TO CHARGE THE BORROWER 20.

12   THAT'S THE PROBLEM.  IT'S NOT THE AMOUNT OF THE FEE; IT'S THE

13   FACT THAT THERE WAS A DUTY TO ONLY CHARGE FOR THE ACTUAL

14   COSTS, AND THEY CHARGED A MARKUP.

15           THE COURT:  AND EACH OF THEM DID THAT IN YOUR VIEW?

16           MR. PIFKO:  YES.

17           THE COURT:  OKAY.

18           MR. RICH:  MAY I BRIEFLY RESPOND TO THAT, YOUR HONOR?

19           THE COURT:  NOT YET.

20       MR. RICH HAS SAID A COUPLE OF TIMES, AND I WANT YOU TO

21   RESPOND TO THE BASIC ISSUE THAT YOU'RE LUMPING ALL OF THE

22   CITIBANK DEFENDANTS TOGETHER WITH YOUR ALLEGATIONS, AND YOU

23   CAN'T DO THAT.

24       DO YOU HAVE A QUICK RESPONSE ON THAT ISSUE?

25           MR. PIFKO:  YES.  THERE ARE A NUMBER OF OCCASIONS
```

1    WHERE WE DO SEPARATELY BREAK OUT THE DEFENDANTS, INCLUDING A

2    DISCUSSION OF THE ENTERPRISE REQUIREMENT AND OTHER PARTS IN

3    THE INTRODUCTION OF THE CASE WHERE WE TALK ABOUT WHAT THE

4    DIFFERENT COMPANIES DID.

5            THE COURT:  SO YOU DISAGREE?

6            MR. PIFKO:  I WAS GOING TO SAY, FUNDAMENTALLY IF YOU

7    LOOK AT THE LC -- I CAN'T REMEMBER, LCD, THERE'S A COUPLE OF

8    LCD, TFT ANTITRUST CASES REGARDING SCREENS.  AND WHAT THEY

9    SAID IN THOSE CASES AND THE CASES OF FRAUDULENT CONCEALMENT

10   ACTION, SUCH AS THIS, IT'S APPROPRIATE AT THE PLEADING STAGES,

11   YOU DON'T HAVE TO ITEMIZE EVERY LITTLE ACTION OF EVERY

12   DEFENDANT.  AND IT'S ENTIRELY APPROPRIATE TO PLEAD IT AS BEST

13   YOU CAN WITH THE INFORMATION THAT YOU ARE AWARE OF.

14           THE COURT:  OKAY.  ALL RIGHT.

15       MR. RICH, YOU WANTED TO ADD ONE MORE THING?

16           MR. RICH:  THANK YOU, YOUR HONOR.  JUST REAL BRIEFLY.

17       THE PLAINTIFFS, IN FACT, DO NOT MEANINGFULLY DISTINGUISH

18   AT ALL BETWEEN CITIBANK AND CITIMORTGAGE --

19           THE COURT:  I GOT THAT FROM YOUR BRIEFS --

20           MR. RICH:  -- NOT --

21           THE COURT:  STOP.

22           MR. RICH:  -- ANTITRUST CASES.

23           THE COURT:  I GOT THAT FROM YOUR BRIEFS.

24       ANYTHING ELSE NEW?

25           MR. RICH:  NO, YOUR HONOR.

1        **THE COURT:**  OKAY.  LET'S MOVE TO THE LAST MOTION

2    THEN.

3        THIS IS THE CHASE MOTION WHERE I WOULD LIKE THE ARGUMENT

4    TO FOCUS ON THE APPLICABILITY OF THE CONSENT ORDER AND

5    PREEMPTION.

6        **MR. OBSTLER:**  GOOD AFTERNOON, YOUR HONOR.

7        **THE COURT:**  GOOD AFTERNOON.

8        **MR. OBSTLER:**  THIS IS THE FIRST TIME AND I WOULD LIKE

9    TO THANK YOUR HONOR THAT I HAVE THE OPPORTUNITY TO ARGUE THIS

10   ISSUE.  IT HAS COME UP IN A NUMBER OF TIMES AND COURTS HAVE

11   RULED BUT NOT GIVEN US ARGUMENT ON IT.

12       IN ANALYZING THE EXISTING RULINGS AND ANALYZING WHAT WE

13   HAVE DONE, I THINK THAT THERE IS AN IMPORTANT ISSUE FOR THE

14   COURT, WHICH I CAN GIVE YOU MY VIEWS ON, BUT I THINK

15   ULTIMATELY THE COURT IS GOING TO HAVE TO DECIDE ON WHAT IS THE

16   MEANING OF SECTION 1818(I).

17       SECTION 1818(I) VERY PLAINLY STATES, AND THIS IS THE

18   DEPARTURE POINT, NO COURT SHALL HAVE JURISDICTION TO EFFECT BY

19   INJUNCTION OR OTHERWISE THE ISSUANCE OR ENFORCEMENT OF ANY

20   NOTICE OR ORDER UNDER ANY SUCH SECTION OR TO REVIEW, MODIFY,

21   SUSPEND, AND I WOULD LIKE TO EMPHASIZE THE WORD "REVIEW",

22   TERMINATE OR SET ASIDE ANY SUCH NOTICE OR ORDER.

23       THE EXISTING DECISIONS ON THIS CASE HAVE COME DOWN IN

24   TWO-FOLD:  THE FIRST IS A DECISION THAT WAS RENDERED OUT OF

25   THE DISTRICT OF MASSACHUSETTS, IN RE HAMP THAT THEY RELY ON IN

```
1    THEIR ARGUMENTS THOUGH THEY DON'T MAKE IT AS THEIR PRIMARY

2    ARGUMENT.  THAT SUGGESTS THE WORD "EFFECT" MEANS YOU ACTUALLY

3    HAVE TO HAVE SOMETHING THAT DIRECTLY CONTRAVENES THE CONSENT

4    ORDER.  IN OTHER WORDS, IF YOU JUST DOUBLE DOWN ON THE CONSENT

5    ORDER AND SAY WE WANT EVERYTHING IN THE CONSENT ORDER, THAT

6    THAT WOULD BE SOMEHOW PERMISSIBLE.

7        BUT JUDGE SELNA, AND THEN RECENTLY THE BANKRUPTCY JUDGE IN

8    OWNER'S MANAGEMENT, ALTHOUGH THAT WASN'T AN UNOPPOSED MOTION,

9    I WANT TO BE CLEAR ABOUT THAT -- JUDGE SELNA, THE ONE THAT WAS

10   OPPOSED, TOOK A VERY DIFFERENT VIEW AND I THOUGHT HE DID A

11   VERY WELL-REASONED OPINION.  HE MADE THE VERY, VERY IMPORTANT

12   POINT IN THE FOOTNOTE 5 CITING AMERICAN FAIR CREDIT IN WHICH

13   HE SAID, "PLAINTIFF'S REQUEST FOR RELIEF NEED NOT BE IN DIRECT

14   CONTRAVENTION OF THE CONSENT ORDER TO EFFECT THE ENFORCEMENT

15   OF AN ORDER."  AND IN BAKENIE, IN THAT CASE, WHAT JUDGE SELNA

16   FOUND WAS THAT BECAUSE THE CONDUCT WAS REGULATED BY THE

17   CONSENT ORDER, HE WOULD BE PLACED IN A DECISION -- IN A

18   SITUATION WHERE HE WOULD HAVE TO ACTUALLY ISSUE RULINGS AND

19   ADJUDICATIONS THAT WOULD CONFLICT WITH OR AT LEAST INTERFERE

20   OR CREATE A DUPLICATIVE RULING PROCESS ON SOMETHING THAT WAS

21   GOING ON IN THE OCC CONSENT PROCESS.

22       AND I START THERE BECAUSE THIS IS A VERY UNIQUE CONSENT

23   ORDER.  USUALLY THESE CASES COME DOWN WITH WHAT ARE CALLED

24   CEASE AND DESIST ORDERS, WHERE YOU ARE TOLD STOP DOING

25   SOMETHING.  THAT'S NOT WHAT HAPPENED HERE.
```

```
1        WHAT HAPPENED HERE, AND PLAINTIFFS POINT THIS OUT IN THE
2    FIRST PART OF THEIR OPPOSITION WHEN THEY QUOTE THE TESTIMONY
3    OF MR. PIERCE FROM F.D.I.C., WAS THERE WAS AN INITIAL
4    INTERAGENCY REVIEW DONE WHICH LED TO THE INITIAL CONSENT
5    ORDERS.  AND IN THAT INITIAL INTERAGENCY REVIEW, THEY FOUND A
6    NUMBER OF UNSOUND BANKING PRACTICES, FEE SETTING WHICH IS WHAT
7    THEY DO AND SAID THE INTERAGENCY REVIEW JUST GETS TO THE
8    BEGINNING OF THIS.  WE ARE GOING TO NEED TO GET A CONSENT
9    ORDER PROCESSED THAT PROVIDES A LOOK BACK REVIEW OF ALL OF
10   THESE FILES.
11       AND THAT IS WHAT MAKES THIS CONSENT ORDER UNIQUE IS WE
12   HAVE A RETROACTIVE LOOK-BACK REVIEW, BOTH ON A SAMPLING BASIS
13   AND FOR ANY BORROWER WHO WANTS IT AS TO MANY ASPECTS OF LOAN
14   SERVICING LITIGATION.  AND IN THIS PARTICULAR CASE, IF WE
15   LOOK, AND THIS IS VERY IMPORTANT, IF WE LOOK AT SECTIONS, AT
16   SECTION 7 OF THE CONSENT ORDER AND THE INTERIM REPORT, IT IS
17   EXHIBIT A TO THE REQUEST FOR JUDICIAL NOTICE, IN SECTION 7,
18   THAT LOOK-BACK --
19               THE COURT:  HOLD ON.
20               MR. OBSTLER:  I AM SORRY.  IT IS PAGE 16, YOUR HONOR,
21   OF THE -- IF IT IS HELPFUL TO YOU, OF THE CONSENT ORDER.
22               THE COURT:  GO AHEAD.
23               MR. OBSTLER:  SECTION E, IT SAYS:
24       "WHETHER A DELINQUENT BORROWER'S ACCOUNT WAS ONLY
25       CHARGED FEES AND/OR PENALTIES THAT WERE PERMISSIBLE
```

1          UNDER THE TERMS OF THE BORROWER'S LOAN DOCUMENTS,

2          APPLICABLE STATE AND FEDERAL LAW, AND WERE REASONABLE

3          AND CUSTOMARY."

4      IF YOU LOOK AT THE DEED OF TRUST IN THIS CASE AND THEIR

5  FUNDAMENTAL CONTENTIONS IN THIS CASE, THAT IS EXACTLY, EXACTLY

6  WHAT THEY ARE ALLEGING IN THIS CASE.

7      AND THEN IT GOES ON TO SAY IN THE CONSENT ORDER:

8          "WHETHER THE FREQUENCY THAT FEES WERE ASSESSED TO ANY

9          DELINQUENT BORROWER'S ACCOUNT, INCLUDING BROKER PRICE

10         OPINIONS, WAS EXCESSIVE UNDER THE TERMS OF THE

11         BORROWER'S LOAN DOCUMENTS, AND APPLICABLE IN STATE

12         AND FEDERAL LAW."

13     WHAT THAT MEANS, YOUR HONOR, IS THERE IS A CASE-BY-CASE

14  LOOK-BACK ON EXACTLY WHETHER THESE FEES WERE PROPER THAT ARE

15  GOING ON AS WE SPEAK RIGHT NOW ON AN INDIVIDUAL BASIS.

16         **THE COURT:**  THIS ONLY APPLIES TO CHASE, CORRECT?

17         **MR. OBSTLER:**  YOUR HONOR, WE HAVE ARGUED IT.  THERE

18  ARE 14 OTHER BANKS.  I DON'T KNOW WHETHER THESE OTHER BANKS

19  ARE UNDER A SIMILAR CONSENT ORDER.  I CAN TELL YOU THAT CHASE

20  HAS BEEN MAKING THIS ARGUMENT, AND I AM NOT ARGUING ON BEHALF

21  OF THE OTHERS, ALTHOUGH I NEVER HEARD THE OTHERS SAY WE ARE

22  WRONG ABOUT THIS.

23         **THE COURT:**  THEY HAVE NOT JOINED YOUR MOTION.  I AM

24  LOOKING AT THE CAPTION.  I WANT TO MAKE SURE THAT I

25  UNDERSTAND --

1          **MR. OBSTLER:** YES. THIS IS THE CHASE CONSENT

2    ORDER -- ONLY AS TO CHASE.

3          **THE COURT:** ONLY ONE OF US CAN SPEAK AT A TIME.

4       AND IT RELATES SPECIFICALLY IT SAYS IN THE MATTER OF J.P.

5    MORGAN CHASE BANK. SO THAT'S WHY I AM ASKING. RESPOND.

6          **MR. OBSTLER:** YES, YOUR HONOR. THIS IS AS TO CHASE

7    ONLY. THIS CONSENT ORDER ONLY GOVERNS CHASE. AND BY "CHASE",

8    I MEAN ITS AFFILIATES, SUBSIDIARIES, AND EVERYBODY RELATED TO

9    CHASE BANK.

10      JUDGE SELNA WENT SO FAR TO SAY IT ACTUALLY APPLIED TO THE

11   VENDORS AS WELL. I AM NOT HERE TO MAKE THAT ARGUMENT TO YOU.

12   THE VENDORS AREN'T A DEFENDANT. HE WENT SO FAR TO SAY HE FELT

13   HE WAS GOING TO HAVE MAKE RULINGS AND ADJUDICATIONS THAT WOULD

14   OVERLAP WITH THE CONSENT ORDER.

15      MY POINT IS, THERE IS NOT ONLY A REVIEW RELIEF HERE, BUT

16   THERE IS ALSO -- AND EVEN THE HAMP CASE MAKES THIS POINT,

17   THERE'S ALSO GOING TO BE MONETARY RELIEF, SUBSTANTIAL MONETARY

18   RELIEF.

19      IN ADDITION TO THIS SUBSTANTIAL MONETARY RELIEF, THERE IS

20   GOING BE RELIEF UNDER THE NATIONAL MORTGAGE SETTLEMENT ACT,

21   WHICH WAS RECENTLY ENTERED INTO WITH THE STATE OF CALIFORNIA

22   ATTORNEY GENERAL.

23      BOTH OF THOSE PROVISIONS ALSO HAVE WHAT IS CALLED AN

24   OFFSET PROVISION. THEY DON'T WANT PEOPLE DOUBLING DOWN AND

25   GETTING DUPLICATIVE RECOVERIES. SO IF SOMEBODY GETS $5,000

1    FROM THE NATIONAL MORTGAGE SETTLEMENT AND THEY ALSO GET MONEY

2    FROM OCC THROUGH THIS PROCESS, THERE IS GOING TO BE AN OFFSET

3    AS TO ANYTHING THAT ANYBODY CAN RECOVER FOR CONDUCT THAT'S

4    COVERED BY THIS CONSENT DECREE OR COVERED BY THE NMS.

5        THE REASON I BRING THAT UP IS BECAUSE I SOMETIMES GET THE

6    LOOK FROM JUDGES WHEN I MAKE THIS ARGUMENT THAT THIS IS A GET

7    OUT OF JAIL CARD FREE.  IT'S NOT A GET OUT OF JAIL CARD FREE.

8    WE HAVE SPENT -- WHAT I HEAR FROM MY CLIENT ON THE OTHER SIDE

9    OF THIS IS HOW MANY TIMES DO WE HAVE TO PAY FOR THE SAME

10   CONDUCT?

11       SO, I AM NOT GOING TO GET INTO WHETHER WHO IS RIGHT OR

12   WRONG, BUT WHEN WE BEGAN TO LOOK AT THIS ISSUE AND THE

13   ADMINISTRATIVE ISSUES, WE CAME ACROSS SECTION 1818(I), AND WE

14   STARTED MAKING THE ARGUMENT, WE CAME ACROSS THE AMERICAN FAIR

15   CREDIT AND WE CAME ACROSS BAKENIE, THESE CASES WITH

16   THIRD-PARTY ACTIONS, AND WE BELIEVE THAT THE INQUIRY BASED ON

17   THAT ANALYSIS IS WHETHER WHAT THEY HAVE ALLEGED, THE CONDUCT

18   THAT THEY HAVE ALLEGED, THEY CAN CALL IT WHATEVER THEY WANT,

19   BUT THE UNDERLYING ADJUDICATION OF THE CONDUCT THAT YOUR HONOR

20   AND A JURY WOULD HAVE TO ADJUDICATE IS THE SAME CONDUCT THAT

21   IS BEING SUBJECT TO A LOOK-BACK REVIEW BY THE OCC UNDER A

22   FORMAL CONSENT ORDER THAT IS GOVERNED UNDER 1818(I).

23       THIS -- WE HAVE HAD SOME CASES WHERE MOST OF THE FIGHTS

24   OVER THIS ISSUE HAVE BEEN WHETHER OR NOT THE CONDUCT IS WITHIN

25   THE CONSENT ORDER.  THIS IS A UNIQUE CASE.  THIS IS CLOSER TO

1    BAKENIE THAN IT IS TO HAMP OR OTHER CASES BECAUSE WE BELIEVE

2    THIS IS SO SQUARELY WITHIN THE CONSENT ORDER, THIS IS

3    EFFECTIVELY AN ACTION THAT SEEKS TO DOUBLE DOWN ON THE CONSENT

4    ORDER.

5        YOU TAKE THE SAME ALLEGATIONS OR THE SAME CONDUCT BEING

6    REVIEWED AND SAY, OKAY, IT'S RICO, OKAY, IT'S FRAUD, OKAY,

7    IT'S UCL.

8        IT IS TRUE, YOUR HONOR, THAT ONCE THIS CONSENT ORDER SETS,

9    WE WOULD NOT HAVE THIS ISSUE.  IN OTHER WORDS, IF IN TWO

10   YEARS, OR A YEAR, OR THREE YEARS THEY HAVE COMPLETED THE

11   LOOK-BACK REVIEW, WE KNOW EVERY CLAIMANT WHO HAS TAKEN

12   ADVANTAGE OF THIS PROCESS AND GOING AHEAD AND GOTTEN RELIEF,

13   NOT GOTTEN RELIEF, IT'S CONCEIVABLE THIS ACTION, PUTTING ASIDE

14   THE MERITS, TALKING FROM A JURISDICTIONAL STANDPOINT, COULD GO

15   FORWARD.

16       THAT'S ONE OF THE REASONS WHY I MADE THE ALTERNATIVE

17   ARGUMENT BECAUSE I THOUGHT IT WAS FAIR.  I GENUINELY THOUGHT

18   IT WAS FAIR ABOUT AN EQUITABLE STAY.  BECAUSE I CAN SEE AN

19   ARGUMENT FROM YOUR HONOR, WHICH IS, WELL, MR. OBSTLER, ONCE

20   YOUR CONSENT ORDER SETS, YOU ARE NOT DISPUTING THAT THERE

21   WOULD BE JURISDICTION, AND, THEREFORE, AS A RESULT THESE

22   PEOPLE GET BURNED BECAUSE THEY BLEW THE STATUTE OF LIMITATIONS

23   BECAUSE THE CONSENT ORDER WAS THERE DURING THE PERIOD.

24       SO AN OPTION FOR YOUR HONOR AS A RELIEF THAT DEALS WITH

25   THE 1818(I) ISSUE, AND ALSO ALLOWS US TO GET POTENTIALLY

1    APPELLATE REVIEW ON THIS ISSUE, IF IT BECOMES AN ISSUE, IS AN

2    EQUITABLE STAY WHICH IS CONSISTENT WITH YOUR HONOR'S

3    SUBSTANTIAL POWERS, SUGGESTING THAT YOU BELIEVE 1818(I)

4    PREEMPTS, BUT YOU STAY IT RATHER THAN DISMISSING THE CASE.

5        BECAUSE I DON'T WANT TO BE ACCUSED OF COMING IN HERE AND

6    SAYING, AH, AH, YOU PULLED A FAST ONE.  YOU USED THIS CONSENT

7    ORDER TO GET OUT OF ALL SORTS OF LIABILITY.

8        IT IS EXACTLY THE OPPOSITE.  WE ARE DOING OUR BEST TO

9    STRIVE TO GET RELIEF TO BORROWERS, BUT WE CAN'T DO IT WHEN WE

10   ARE GIVING $5,000 WORTH OF RELIEF AND DOING GLOBAL

11   COMPREHENSIVE RELIEF THAT DOES THIS AND YET WE'RE GETTING SUED

12   FOR $80 ON A CHARGE.  IT'S GOING TO LEAD TO AN ABSOLUTE MESS.

13   AND IT INTERFERES WITH THE CONSENT ORDER PROCESS.

14       BECAUSE IN ADDITION, YOUR HONOR, TO YOU GIVING RETROACTIVE

15   RULES ON RETROACTIVE RELIEF, THEY HAVE PLED AN OPEN-ENDED RICO

16   CLAIM.  AND THIS IS VERY IMPORTANT.  THAT MEANS THEY ARE

17   SAYING THE RICO CONSPIRACY IS GOING ON RIGHT NOW.  THAT'S

18   PARAGRAPH 122.  AND THEY ARE ASKING YOUR HONOR TO ENJOIN THE

19   RICO CONSPIRACY.

20       YOUR HONOR CAN'T ENJOIN THE RICO CONSPIRACY BECAUSE IT'S

21   ALREADY SUBJECT TO A CONSENT ORDER.  THAT'S PRECISELY, EVEN IN

22   THE HAMP CASE, IN RE HAMP, WHAT THE JUDGE SAID IN FOOTNOTE 19

23   WAS -- HE SAID EVEN THOUGH I AM GOING TO FIND THERE IS

24   JURISDICTION ON THE RETROACTIVE CLAIMS, AND, AGAIN, LET ME

25   JUST GET YOU THE CITE.  YOUR HONOR, YOU ARE GOING TO WANT TO

1  SEE THAT.  2012 WESTLAW 3059377 D.MASS ISSUED BY JUDGE STEARNS

2  BEFORE THE BAKENIE OPINION CAME OUT.

3      I THOUGHT IT WAS CURIOUS THAT HE LEFT THIS FOR A FOOTNOTE

4  BECAUSE IT'S PROBABLY THE MOST IMPORTANT PART OF THE OPINION

5  SINCE THE REST OF THE CLAIMS ARE INJUNCTIVE RELIEF.  HE DOES

6  SAY AT THE END, QUOTE:

7          "THERE IS ONE CAVEAT TO THE COURT'S FINDING OF

8          JURISDICTION.  THE COURT AGREES THAT SEVERAL OF

9          PLAINTIFFS' PRAYERS FOR INJUNCTIVE RELIEF POTENTIALLY

10         CONFLICT WITH THE TERMS OF THE CONSENT ORDER.  AS

11         CHASE ARGUES, A PRINCIPAL GOAL OF THE CONSENT ORDER

12         IS TO IMPOSE UNIFORM PRACTICES ON THE 14 AFFECTED

13         MORTGAGE SERVICERS.  THUS, IT WOULD BE IMPROPER FOR

14         THE COURT, ASSUMING THAT PLAINTIFFS PREVAIL, TO AWARD

15         ANY INJUNCTIVE RELIEF THAT RELATES TO PROSPECTIVE

16         SERVICING PRACTICES THAT ARE ANTICIPATED BY THE OCC'S

17         ORDER."

18     THIS IS A 20-PAGE CONSENT ORDER THAT HAS TURNED SERVICING

19  MAYBE FOR THE BETTER, BUT IT HAS TURNED THE WHOLE PROCESS

20  UPSIDE DOWN.  AND IT DOESN'T END WITH THE LOOK-BACKS.  ONCE

21  THE LOOK-BACKS ARE DONE, THE OCC CAN COME IN.  IF THE OCC

22  THINKS WE ARE GOING TO COMMIT FRAUD, I HAVE NO DOUBT, YOUR

23  HONOR, WE ARE ON OUR WAY TO THE JUSTICE DEPARTMENT.  NO DOUBT

24  ABOUT THAT, ALTHOUGH I FEEL FAIRLY CONFIDENT IN FACT THAT

25  WON'T HAPPEN, BUT I CAN'T GUARANTEE IT.

1       THE POINT IS WE HAVE SET UP A PROCEDURE THAT'S DE FACTO

2    CLASS ACTION IS WHAT WE'VE DONE, A COMPREHENSIVE PROCEDURE

3    WITH THE FEDERAL GOVERNMENT WITH THE NMS, AND NOW WE'RE

4    GETTING PLAINTIFFS' LAWYERS WHO ARE DOUBLING DOWN.  AND I FEEL

5    THAT THAT NOT ONLY VIOLATES THE EXPRESS TEXT OF 1818(I), IT

6    CREATES A HOST OF CASE MANAGEMENT ISSUES.  IT EFFECTIVELY IS

7    LEGISLATION BY CONGRESS.  THAT MEANS EFFECTIVELY, LEGISLATION

8    BY CONGRESS THAT LEGISLATES THE MORE DISCRETIONARY

9    JURISDICTION OF PRIMARY JURISDICTION.

10      I'M SURE YOUR HONOR HAS PROBABLY COME ACROSS THAT IN FERC

11   AND ENERGY CASES.  I KNOW WHEN I CLERKED WE HAD THIS ISSUE

12   THAT CAME UP QUITE A BIT IN FEDERAL COURT WHERE THERE WERE

13   ENERGY ISSUES THAT WERE PENDING BEFORE FERC, AND THE JUDGE I

14   CLERKED FOR REALLY HAD A PREFERENCE FOR STAYING THOSE CASES

15   AND ALLOWING FERC TO WORK THEM OUT, AND THEN COMING BACK.

16      THIS IS A LITTLE DIFFERENT BECAUSE THAT'S DISCRETIONARY

17   DOCTRINE.  THIS IS A CONGRESSIONAL STATEMENT THAT SAYS THERE

18   IS NO JURISDICTION UNDER ANY ACTION.  AND IT HAS NOT JUST BEEN

19   LIMITED, AS THE PLAINTIFF SUGGESTS, TO ACTIONS WHERE YOU ARE

20   EFFECTIVELY CHALLENGING SOME ASPECT OF THE CONSENT ORDER.

21      IN AMERICAN FAIR CREDIT, IN BAKENIE IN OWNERS MANAGEMENT

22   AND EVEN IN IN RE HAMP, THESE HAVE BEEN CASES WHERE

23   THIRD-PARTY PLAINTIFFS HAVE SOUGHT TO DOUBLE DOWN ON RELIEF

24   THAT'S ALREADY IN A CONSENT ORDER.

25      SO THIS IS A -- I DON'T WANT TO SAY IT IS AN ISSUE OF

```
 1    FIRST IMPRESSION BECAUSE WE HAVE RULINGS THAT ARE IN OUR

 2    FAVOR, BUT IT IS CERTAINLY A NEW ISSUE.  IT IS NOT MADE ITS

 3    WAY TO THE COURT OF APPEAL.

 4        AND ONE THING THAT WILL BE A PROBLEM FOR US GOING THROUGH

 5    THIS CASE, DEPENDING ON HOW YOUR HONOR WANTS TO HANDLE IT IS,

 6    I WOULD HATE TO GET TO THE END OF THIS CASE TWO, THREE, FOUR

 7    YEARS FROM NOW AND FIND OUT I DON'T HAVE SUBJECT MATTER

 8    JURISDICTION TO SETTLE THE CASE.  AND, IN FACT, I AM SURE ANY

 9    SETTLEMENT WOULD NEED APPROVAL FROM THE OCC.

10        I WANT TO RAISE ONE OTHER POINT ON THIS, YOUR HONOR,

11    BECAUSE IT JUXTAPOSES A POINT THAT THEY ARE MAKING.  THEY MAKE

12    A BIG ARGUMENT IN THEIR CASE -- SOME OF THE OTHER PLAINTIFFS

13    HAVE DONE IN OTHER CASES FAIRLY SIMILAR TO ARGUMENTS WE HAVE

14    HEARD IN OTHER CASES, THAT THE NATIONAL MORTGAGE SETTLEMENT

15    ACT, WHICH INVOLVED THE 49 ATTORNEY GENERALS PLUS THE OCC WAS

16    A SEPARATE CONSENT ORDER AND THAT THAT CONSENT ORDER, BY

17    VIRTUE OF THE FACT THAT IT WAS ENTERED INTO AND BY VIRTUE OF

18    THE FACT THE OCC SAID IT DIDN'T PRECLUDE, DIDN'T PRECLUDE --

19    WAS NOT PRECLUDED BY 1818(I) IS PROOF THAT OUR 1818(I)

20    ARGUMENT HAS TO BE WRONG BECAUSE HOW CAN YOU HAVE THE NMS.

21        HERE IS A CRUCIAL DISTINCTION.  AND I REALLY -- THIS IS

22    THE FIRST TIME I HAVE HAD AN OPPORTUNITY TO ARGUE IT.  WE

23    TRIED TO MAKE IT IN OUR PAPERS, BUT IT DOESN'T ALWAYS GET

24    PICKED IT UP.  IF YOU LOOK AT THE NMS SETTLEMENT, AND I WILL

25    GIVE YOU THE EXACT CITE TO THE SETTLEMENT.  THIS WOULD BE
```

```
 1    RJN....

 2       I AM SORRY.  ON EXHIBIT E-14 TO THE NATIONAL MORTGAGE

 3    SETTLEMENT, IT SAYS "RELATIONSHIP TO OTHER ENFORCEMENT

 4    ACTIONS".  THIS SAYS IN A CONSENT JUDGMENT THAT'S EFFECTIVELY

 5    A STIPULATED SETTLEMENT, IT SAYS:

 6              "NOTHING IN THIS CONSENT JUDGMENT SHALL AFFECT

 7              REQUIREMENTS IMPOSED ON THE SERVICER PURSUANT TO

 8              CONSENT ORDERS ISSUED BY THE APPROPRIATE FEDERAL

 9              BANKING AGENCY AS DEFINED IN 12 U.S.C. 1813(Q)",

10              WHICH IS THE SUBSET OF PART OF 1813 -- WHICH INCLUDES

11              1818(I), "AGAINST THE SERVICER.  IN CONDUCTING THEIR

12              ACTIVITIES UNDER THIS CONSENT JUDGMENT, THE MONITOR

13              AND MONITORING COMMITTEE SHALL NOT" --

14         THE COURT:  YOU ARE GOING WAY TOO FAST.

15         MR. OBSTLER:  I KNOW THAT.  I APOLOGIZE.

16              "IN CONDUCTING THEIR ACTIVITIES UNDER THIS CONSENT

17              JUDGMENT, THE MONITOR AND MONITORING COMMITTEE SHALL

18              NOT IMPEDE OR OTHERWISE INTERFERE WITH THE SERVICER'S

19              COMPLIANCE WITH THE REQUIREMENTS IMPOSED PURSUANT TO

20              SUCH ORDERS OR WITH OVERSIGHT AND ENFORCEMENT OF SUCH

21              COMPLIANCE BY THE FBA."

22       THIS IS CRUCIAL.  BECAUSE WHAT THIS WAS WAS A STIPULATED

23    SETTLEMENT.  THEY NOT ONLY HAD CHASE IN THE ROOM, THEY HAD

24    SOME OTHER SERVICERS IN THE ROOM WHO WERE BOUND BY THIS, AND

25    THEY AGREED TO A FINDING OF FACT THAT IT WOULD NOT AFFECT THE
```

```
 1    CONSENT ORDER TO ALLOW IT TO COME THROUGH BOTH PARTIES TO THE

 2    AGREEMENT.

 3        MY POINT IS, IF, AS THEY ARGUE, THE OCC WOULD ALLOW THIS

 4    ACTION TO GO FORWARD, THE OCC KNOWS HOW TO DO THAT.  YOU

 5    ACTUALLY PUT THAT STATEMENT IN.  INSTEAD WHAT THEY OFFERED,

 6    YOUR HONOR, WERE SOME FAQ'S ON A WEBSITE THAT THE HAMP OPINION

 7    RELIED ON THAT SAID SOMETHING TO THE EFFECT OF YOU CAN --

 8    NOBODY IS PRECLUDED FROM HAVING -- LET ME GET THIS QUOTE HERE.

 9                    (PAUSE IN THE PROCEEDINGS.)

10        QUOTE: "SUBMITTING A REQUEST FOR REVIEW".  AND THEY ARE

11    TALKING ABOUT ON THE LOOK-BACK PROCESS FOR ALL THESE

12    DIFFERENT -- THESE EXACT TYPES OF CLAIMS THEY ARE TALKING

13    ABOUT.

14            "SUBMITTING A REQUEST FOR REVIEW DOES NOT PRECLUDE

15             BORROWERS FROM PURSUING OTHER LEGAL REMEDIES

16             AVAILABLE RELATED TO FORECLOSURES."

17        AND THEY ARGUE THIS IS DISPOSITIVE.  WELL, TWO POINTS:  TO

18    ME THAT BEGS THE QUESTION.  SURE, NOBODY IS SAYING YOU CAN'T

19    HAVE AN AVAILABLE REMEDY AS LONG AS THERE IS JURISDICTION, BUT

20    TO ENFORCE THAT REMEDY.  ALL THEY ARE SAYING IS IT'S NOT A

21    RELEASE.  THIS WAS A HUGE ISSUE IN THE NEGOTIATIONS AND A HUGE

22    ISSUE THAT THE FEDERAL GOVERNMENT AND THE STATE GOVERNMENTS

23    WANTED, NOT JUST IN NMS, WHICH IS YOU ARE NOT GETTING A

24    RELEASE.

25        THE SECTION 1818(I) ARGUMENT IS A SEPARATE ARGUMENT IS NOT
```

1    A RELEASE ARGUMENT.  IT IS AN ARGUMENT THAT THE OCC OCCUPIES

2    THE FIELD WITH A CONSENT ORDER WHEN IT SETS UP A VERY DETAILED

3    REGULATORY PROCESS THAT IS IDENTICAL TO THE CONDUCT THAT THEY

4    HAVE ALLEGED IN THEIR COMPLAINT.  AND IN THIS CASE THEY ARE

5    ACTUALLY EVALUATING AND REVIEWING THAT CONDUCT.

6        WHAT'S GOING TO HAPPEN IF IN 15 FILES THE OCC DETERMINES

7    THESE WERE IMPROPER CHARGES.  WELL, THEY ARE GOING TO COME IN

8    AND SAY WE'RE COLLATERALLY ESTOPPED.  THEY ARE GOING TO TAKE

9    THAT LITIGATION AND WE ARE GOING TO SAY, WELL, WE DIDN'T HAVE

10   A FULL AUTHORITY TO LITIGATE, THAT'S PURSUANT TO AN ONGOING --

11           **THE REPORTER:**  COUNSEL --

12           **MR. OBSTLER:**  YOU GET THE IDEA.

13       SO THE IDEA --

14           **THE COURT:**  DID YOU GET ALL THAT?

15           **THE REPORTER:**  NO, I DIDN'T.

16           **MR. OBSTLER:**  OKAY.  WHAT I WAS SAYING IS WHAT WOULD

17   HAPPEN IF THE OCC MAKES SOME FINDINGS REGARDING THE VERY

18   CONDUCT THAT THEY HAVE GOTTEN, THAT THEY ARE ALLEGING IN THEIR

19   COMPLAINT REGARDING CERTAIN CHARGES AND CERTAIN BORROWERS, OR

20   CERTAIN BORROWERS HAVE VARIOUS SUBISSUES.  THEY WILL COME IN

21   AND THEY WILL ARGUE TO THE COURT THAT THEY WERE COLLATERALLY

22   ESTOPPED.  WE WILL ARGUE, NO, WE ARE NOT.  WE DIDN'T REALLY

23   ADJUDICATE THOSE ISSUES.  WE ARE WORKING UNDER A CONSENT ORDER

24   AND ALL OF A SUDDEN WE ARE GOING TO HAVE ORDERS THAT ARE OUT

25   THERE THAT ARE GOING TO CERTAINLY AFFECT, IF NOT INTERFERE

1    WITH THE ADMINISTRATION OF THE CONSENT ORDERS.

2        SUBSEQUENTLY, IF YOUR HONOR WERE TO ISSUE AN ORDER TO TELL

3    US TO DO SOMETHING, OR THEY ARE TALKING ABOUT TAKING THE

4    DEPOSITION OF THE GENTLEMAN FROM DELOITTE & TOUCHE, WHO IS

5    RUNNING THE CONSENT ORDER TO ME, THAT WOULD AFFECT THE CONSENT

6    ORDER.

7        WE HAVE A PROCESS IN PLACE TO DEAL WITH THESE CLAIMS.

8    PEOPLE ARE GOING TO GET RELIEF, WHICH IS THE BOTTOM LINE OF

9    WHAT WE ARE TALKING ABOUT.  AND, IN FACT, THE STANDARDS FOR

10   RELIEF ARE FAR MORE LIBERAL UNDER THE CONSENT ORDER.  THEY ARE

11   NOT GOING TO EVEN LOOK AT FINANCIAL INJURY, BUT CHASE DOES NOT

12   WANT TO BE IN THE POSITION OF HAVING TO LITIGATE CASES THAT

13   ARE IDENTICAL TO THE AGREEMENTS THAT WERE MADE AND THE

14   PROCESSES THAT ARE IN PLACE IN THE CONSENT ORDER.

15       **THE COURT:**  ALL RIGHT.

16   MR. TELLIS, RESPONSE.

17       **MR. TELLIS:**  THERE ARE TWO EXPRESSIONS THAT COME TO

18   MIND ON THIS ISSUE.

19       **THE COURT:**  LET'S FOCUS ON THE ARGUMENTS.

20       **MR. TELLIS:**  I APPRECIATE THAT, BUT THEY ARE

21   CHARACTERIZED AS EITHER A BRIGHT RED HERRING OR THE TAIL

22   WAGGING THE DOG.  AND I WANT TO FOCUS FIRST ON THIS ISSUE OF

23   THIS CONSENT ORDER AND HOW IT AFFECTS THE PLAINTIFFS IN THIS

24   CASE.

25       YOUR HONOR, IT IS VERY IMPORTANT TO UNDERSTAND THAT THE

```
1   ENTIRE CONDUCT AT ISSUE IN THE CONSENT ORDER WAS FORECLOSURES.

2   OKAY?  THIS CASE IS ABOUT FAR MORE THAN FORECLOSURES.

3       THIS LOOK-BACK THAT HE REFERS TO IS REFERRING TO THE FACT

4   THAT THERE IS UNDISPUTED THAT THIS CONDUCT AT ISSUE HERE WERE

5   FORECLOSURES PENDING BETWEEN JANUARY 1ST, 2009 AND

6   DECEMBER 31ST, 2010 SERVICED BY J.P. MORGAN CHASE BANK, NOT BY

7   ANY OTHER ENTITY.  AND AS TO THOSE, THERE IS A QUESTION ABOUT

8   WHAT WAS DONE, WHICH I WILL GET TO IN A MOMENT.

9       THIS CASE, THERE ARE POTENTIALLY MILLIONS OF CLAIMANTS

10  THAT DON'T FALL IN THAT CATEGORY.  THERE IS NO EVIDENCE THAT

11  ANY OF THE NAMED PLAINTIFFS HAD A FORECLOSURE PENDING IN THAT

12  WINDOW.

13          THE COURT:  SO HAVE YOU SPECIFICALLY EXCLUDED THAT

14  WINDOW FROM YOUR COMPLAINT?

15          MR. TELLIS:  NO, I DON'T THINK WE NEED TO.  MY POINT

16  IS SIMPLY TO UNDERSTAND THE TAIL WAGGING THE DOG HERE IS THAT

17  THIS CASE -- THEY CHARGED BPO'S AND INSPECTION FEES WHEN THERE

18  WASN'T A FORECLOSURE PENDING.  YOU NEEDED TO BE IN DEFAULT

19  STATUS --

20          THE COURT:  YOU GUYS HAVE GOT TO SLOW DOWN.

21          MR. TELLIS:  SORRY.

22          THE COURT:  I KNOW THIS -- I KNOW YOU ARE REALLY

23  PASSIONATE ABOUT EACH OF YOUR PERSPECTIVES, BUT, YOU KNOW, I

24  AM JUST A LOWLY DISTRICT JUDGE.  SOME COURT OF APPEAL PANEL

25  THAT HAS, YOU KNOW, MUCH MORE AUTHORITY THAN I DO IS GOING TO
```

1    WANT TO SEE THIS TRANSCRIPT.  AND IF YOU WANT THEM TO SEE MORE

2    THAN GOBBLEYGOOK, I SUGGEST YOU ALL SLOW DOWN.

3             **MR. TELLIS:**  YES, YOUR HONOR.

4             **THE COURT:**  GO AHEAD.

5             **MR. TELLIS:**  THE PREDICATE CONDUCT HERE, NAMELY THE

6    CHARGING OF BPO FEES AND INSPECTION FEES WERE NOT CONTINGENT

7    ON A FORECLOSURE.  THE BANKS CHARGED THESE FEES WHEN YOU WENT

8    INTO DEFAULT, NAMELY, WHEN YOU FELL BEHIND ON YOUR LOAN.

9        SO THERE ARE MILLIONS OF PEOPLE OUT THERE WHO ARE CHARGED

10   THESE FEES WHO WERE NEVER IN A FORECLOSURE THAT WAS PENDING

11   BETWEEN JANUARY 1ST, 2009 AND DECEMBER 31ST, 2010.

12       SECOND, THERE WERE CLASS MEMBERS -- THERE WILL BE CLASS

13   MEMBERS IN THIS CASE THAT WERE CHARGED FEES THAT PREDATED

14   JANUARY 1ST, 2009.  THIS IS CONDUCT THAT THE BANKS HAVE

15   UNDERTAKEN NOT RECENTLY.  THIS IS A PROFIT CENTER.  SO --

16            **THE COURT:**  REMIND ME WHAT THE CLASS, ALLEGED CLASS

17   PERIOD IS.

18            **MR. TELLIS:**  I DON'T HAVE IT IN FRONT OF ME, BUT I

19   BELIEVE -- WELL, IT DEPENDS ON THE STATUTE OF LIMITATIONS

20   NATURALLY.  FOR THE UCL CLAIM, WE'VE GOT A FOUR-YEAR PERIOD.

21   FOR A RICO CLAIM, WE'VE GOT A LARGER PERIOD BUT IT'S CERTAINLY

22   BEFORE JANUARY 1ST, 2009 AND IT'S CERTAINLY NOT PEOPLE WHO

23   WERE SOLELY IN FORECLOSURE.  IT IS ANYBODY WHO WAS CHARGED A

24   DEFAULT FEE THAT INCLUDED THE MARKUP.

25       AT THE -- LET'S JUST PLAY THIS OUT.  LET'S ASSUME HE'S

```
1    CORRECT THAT THERE ARE PEOPLE WHO WILL BE PAID FOR THIS
2    CONDUCT.  YOU CAN IMAGINE, YOUR HONOR, IN THE CLAIMS
3    ADMINISTRATION PROCESS, THEY WILL KNOW WHO GOT PAID.  IT WILL
4    BE VERY EASY FOR A CLAIMS ADMINISTRATOR TO BE PROVIDED NAMES
5    OF PEOPLE WHO RECEIVED RESTITUTION, CALL IT WHAT YOU WANT, FOR
6    MISCHARGED BPO'S.  I AM GOING TO GET TO WHY THAT'S NEVER GOING
7    TO HAPPEN UNDER THIS CONSENT ORDER.  THAT'S NOT WHAT'S COVERED
8    BY THE CONSENT ORDER.
9        LET'S ASSUME THOSE PEOPLE GET PAID.  HOW EASY WOULD IT BE
10   FOR THE CLAIMS ADMINISTRATOR TO GO THROUGH AND SAY, OFFSET,
11   YOU'VE BEEN PAID.  IN FACT, THE OCC BLESSED THAT VERY
12   POSITION.
13       WHAT MR. -- MY FRIEND MR. OBSTLER FAILED TO MENTION, HE
14   MENTIONED THESE CASES, WHICH I WILL GET TO, THAT FAQ, HE
15   SUGGESTED IT'S A WEBSITE THING, THERE'S A FEDERAL JUDGE IN
16   MASSACHUSETTS PRESIDING OVER A MDL INVOLVING CHASE'S
17   INEPTITUDE IN ITS LOAN MODIFICATION PROCESS.  IT'S CALLED IN
18   RE J.P. MORGAN CHASE MODIFICATION LITIGATION, WHO RELIED
19   SPECIFICALLY ON THOSE FAQ'S AND THE SUBSEQUENT REPORT IN WHICH
20   THE OCC MADE CLEAR THAT PARTICIPATION IN THAT PROGRAM DOES NOT
21   RESULT IN A WAIVER OF YOUR RIGHTS.
22       THAT CASE INVOLVED FRAUD, MISREPRESENTATIONS, LIKE OURS
23   DOES.  AND THE DISTRICT COURT THERE LOOKED CLOSELY AT THE
24   CONSENT ORDER AND THE FRAMEWORK AND NOTED QUOTE:
25            "THE JURISDICTIONAL BAR OF 1818(I)(1) MUST, HOWEVER,
```

1               BE READ IN THE CONTEXT OF THE ENTIRE STATUTE, THE

2               PURPOSE OF WHICH IS TO PREVENT FEDERAL COURTS FROM

3               USURPING THE OCC'S POWER TO ENFORCE ITS OWN CONSENT

4               ORDER AGAINST PARTIES TO THE ORDER.  CONGRESS DID NOT

5               INTEND TO ALSO PROHIBIT NONPARTIES FROM EXERCISING

6               THEIR SEPARATE REMEDIES AT LAW."

7          SO, LET'S GET TO THE CORE HERE.  LET'S GET TO THE HEART OF

8     THE ISSUE.  WHAT DOES THIS CONSENT ORDER COVER AND DOES IT RUN

9     AFOUL OF SECTION 1818?

10         IF YOU'VE GOT THE CONSENT ORDER OUT, BECAUSE MR. OBSTLER

11    READ IT RATHER QUICKLY, LET'S LOOK BACK TO PAGE 16 THAT HE

12    READ.  HE TURNED YOUR ATTENTION TO PARAGRAPHS E AND F.

13         LET'S TAKE F FIRST.  WHAT'S THE KEY PHRASE THERE?

14               "WHETHER THE FREQUENCY OF THE FEES WERE ASSESSED TO

15               ANY DELINQUENT BORROWER'S ACCOUNT, INCLUDING BROKER

16               PRICE OPINIONS WERE EXCESSIVE."

17         WE ARE NOT CHALLENGING THE FREQUENCY OF THIS.  EVERY

18    SINGLE BROKER'S PRICE OPINION WAS WRONG.  IT WAS DEFRAUD --

19    THEY MARKED THEM UP USING A COMPLICATED AND SOPHISTICATED

20    SOFTWARE PROGRAM.  AND WHAT'S DIFFERENT ABOUT THIS CASE AND

21    EVERY OTHER CASE THAT HE CITED IS, AND THEY TOLD PEOPLE

22    EXACTLY THE OPPOSITE.  THEY TOLD PEOPLE THAT THEY WERE GOING

23    TO PASS ON THE COST.  THEY DID NOT TELL PEOPLE THEY WERE GOING

24    TO MARK THEM UP.

25         SO WHEN AN AUDITOR SITS DOWN AND HAS THIS CONSENT ORDER IN

```
1    FRONT OF THEM --

2              THE COURT:  MIGHT I INTERJECT FOR A MOMENT AND YOU

3    CAN GO BACK.

4        WHEN YOU SAY THAT THEY TOLD PEOPLE THE OPPOSITE, WHERE DID

5    THEY TELL THEM THAT?

6              MR. TELLIS:  IN THE DEED.  IN THE DEED IT SAYS A

7    DISCLOSURE, A DISCLOSURE.  WE RESERVE THE RIGHT TO HIRE

8    THIRD-PARTY PROPERTY PRESERVATION VENDORS AND WE WILL PASS ON

9    THE COST.

10       NOW, YOU SAY WHY ISN'T THAT A BREACH OF CONTRACT?  I WILL

11   TELL YOU WHY.  IF THEY WOULD HAVE SUBMITTED A STATEMENT THAT

12   SAID HUNDRED DOLLARS PROPERTY PRESERVATION FEE, HUNDRED

13   DOLLARS MARKUP, TOTAL $200, WE WOULD HAVE A BREACH OF CONTRACT

14   CLAIM BECAUSE THEY ARE DOING SOMETHING THAT VIOLATES THE

15   DISCLOSURE THEY MADE.  THEY DIDN'T DO -- THEY DIDN'T DISCLOSE

16   THE MARKUP.

17       WHAT THEY TOLD PEOPLE IN THEIR DEEDS IS, WE RESERVE THE

18   RIGHT TO HIRE THIRD-PARTY PROPERTY PRESERVATION VENDORS AND WE

19   RESERVE THE RIGHT TO BE PAID BACK FOR THOSE COSTS.

20       THEN THEY SENT A STATEMENT TO THE BORROWER THAT SAYS BPO

21   $300.  NOWHERE DOES IT DISCLOSE THAT THAT BPO WAS NOT $300,

22   THAT BPO WAS $50.  THAT'S A FUNDAMENTAL DIFFERENCE BETWEEN

23   THIS CASE AND TAKE THE MARTINEZ CASE FOR A MOMENT.

24       THEY LOVE THAT CASE BECAUSE IT IS THE NINTH CIRCUIT AND IT

25   HAS LANGUAGE, BUT WE HAVE TO DRILL DOWN ON THAT CASE.  THAT
```

```
1    CASE DIDN'T INVOLVE A DISCLOSURE.  THAT CASE INVOLVED THE
2    DECISION BY THE BANK TO CHARGE $800 FOR AN UNDERWRITING FEE.
3    AND IT LITERALLY REQUIRED THE COURT TO DECIDE WHAT THE
4    APPROPRIATE AMOUNT WOULD BE FOR AN UNDERWRITING FEE.  COURTS
5    AREN'T IN THE BUSINESS OF DOING THAT.  THAT IS THE PROVINCE OF
6    THE OCC.  BECAUSE THERE WAS NO DISCLOSURE, THAT CASE REQUIRED
7    LITERALLY THE COURT STEPPING INTO BANKING REGULATION AND
8    DECIDING WHAT THE APPROPRIATE AMOUNT WAS.
9        THAT'S NOT THIS CASE.  THIS CASE IS ABOUT THE FRAUD.  THEY
10   TOLD PEOPLE THEY WOULD HAVE THE RIGHT TO BE PAID BACK, AND
11   THEY PASSED ON A FEE WITHOUT DISCLOSING THE PROFIT.
12        THE COURT:  LET ME ASK YOU THIS:  YOU SAID THAT --
13   WERE THE NUMBERS 350 JUST PULLED OUT OF THIN AIR OR WERE THOSE
14   REALLY GENERALLY SPEAKING THE NUMBERS THAT WERE USED?
15        MR. TELLIS:  I THINK THE BPO'S WERE SOMEWHERE IN THE
16   NEIGHBORHOOD OF BETWEEN A HUNDRED AND $200 AND THE TRUE COST
17   WAS 50.
18        THE COURT:  OKAY.  NOW YOU SAID THAT THEY MARKED THEM
19   UP USING A COMPLICATED PROGRAM.
20        WHAT DO YOU MEAN BY THAT?
21        MR. TELLIS:  I DON'T MEAN COMPLICATED, I'M SORRY,
22   SOPHISTICATED.  YOU'VE GOT 600,000 LOANS IN THE COUNTRY THAT
23   ARE IN DEFAULT STATUS.  YOU'VE GOT TO CREATE SOFTWARE THAT
24   TREATS EVERYBODY THE SAME AND SPITS OUT THESE FEES.  YOU CAN'T
25   POSSIBLY MANAGE THAT MANY.  SO THEY CREATE SOFTWARE THAT'S GOT
```

1    A VERY INTERESTING SOURCE CODE.  WHEN SOMEONE FALLS BEHIND 20

2    DAYS, ORDER A BPO, HAVE REO, REMAX GO OUT, DRIVE BY, GET AN

3    ORDER, TELL US WHAT THEY THINK THE VALUE IS, PUT ON THE NEXT

4    STATEMENT $300 FOR THAT, BUT THEY ARE CHARGED $50 FROM REMAX.

5    THAT'S HOW IT HAPPENED.

6        SO YOU TYPE IN THIS PROGRAM SO THAT ONCE SOMEONE FALLS

7    BEHIND 20 DAYS, IT SETS IN PLACE A PROCEDURE THAT ALLOWS THEM

8    TO THEN CONTINUE TO CHARGE THIS MARKED UP FEE FOR AS LONG AS

9    THAT PERSON REMAINS IN DEFAULT.

10       YOU CAN'T DO IT ON AN INDIVIDUAL-BY-INDIVIDUAL BASIS

11   BECAUSE IF THEY JUST GET TOO MANY, THE COUNTRY IS IN TROUBLE

12   AND EVERYONE IS IN DEFAULT.

13           **THE COURT:**  SO WAS THE PRICE FIXED, AND THE SOFTWARE

14   PROGRAM WAS MERELY THERE FOR TIMING PURPOSES?  AND IF IT IS

15   MERELY THERE FOR TIMING PURPOSES, DOESN'T THAT, IN FACT, GO TO

16   THE ISSUE OF FREQUENCY?

17           **MR. TELLIS:**  NO.  FREQUENCY WOULD BE WAS IT

18   APPROPRIATE FOR THEM TO CHARGE IT EVERY 20 DAYS; IN OTHER

19   WORDS, EVERY 20 DAYS AFTER THE DELINQUENCY, OR DID THEY CHARGE

20   IT TEN DAYS AFTER SOMEONE FELL INTO DEFAULT.  THE NOTES HAVE

21   DIFFERENT DEADLINES BY WHICH YOU CAN -- YOU'RE IN DEFAULT.

22       YOU ARE NOT IN DEFAULT IF YOU MISS A DAY OR TWO ON YOUR

23   LOAN, YOU ARE IN DEFAULT IF YOU ARE 20 DAYS LATE, FOR EXAMPLE.

24   SO IF THEY DON'T CHARGE EVERY 20 DAYS, BUT THEY CHARGE EVERY

25   TEN DAYS, THAT'S A FREQUENCY ISSUE.  THEY ARE CHARGING TOO

```
1    OFTEN.

2        OURS IS NOT ABOUT A FREQUENCY ISSUE.  IF I AM LATE ONE

3    MONTH, YOUR HONOR, AND THEN I MAKE IT UP THE NEXT MONTH, I'M

4    NOT PERPETUALLY BEHIND.  THEY SHOULDN'T KEEP CHARGING ME.  I

5    WAS LATE ONE MONTH.

6             THE COURT:  I UNDERSTAND.  THERE ARE DIFFERENT WAYS

7    ONE CAN THINK ABOUT FREQUENCY.  DOES THE COMPLAINT ALLEGE THAT

8    IT WAS IMPROPER -- LET'S SAY THE FIRST 20 DAYS WENT OUT.

9             MR. TELLIS:  YES.

10            THE COURT:  AND THE FEE WAS CHARGED.

11            MR. TELLIS:  YES.

12            THE COURT:  TWENTY DAYS LATER, YOU ARE STILL IN

13   DEFAULT?

14            MR. TELLIS:  ANOTHER FEE.

15            THE COURT:  AND ANOTHER FEE.

16            MR. TELLIS:  YES.

17            THE COURT:  TWENTY DAYS LATER STILL IN DEFAULT

18   ANOTHER FEE?

19            MR. TELLIS:  YES.

20            THE COURT:  ONE COULD ARGUE THAT THE CONDUCT OF

21   CHARGING EVERY 20 DAYS WAS INAPPROPRIATE.

22            MR. TELLIS:  YES.  THAT IS NOT OUR CASE.  WE COULD

23   CARE LESS WHEN THEY WERE CHARGED.  I DON'T SAY THAT -- I MEAN

24   WE DO CARE --

25            THE COURT:  I AM NOT TALKING ABOUT THE PERIOD.  I AM
```

```
 1   NOT TALKING ABOUT AN INTERVAL OF 20 DAYS.  I AM TALKING ABOUT

 2   THE FREQUENCY OF EVERY INTERVAL REGARDLESS OF WHAT THE

 3   INTERVAL IS.

 4           MR. TELLIS:  TOTALLY UNDERSTAND.

 5           THE COURT:  DOES THE COMPLAINT ALLEGE THAT THE

 6   FREQUENCY OF INTERVALS WAS INAPPROPRIATE?

 7           MR. TELLIS:  NO.  THE COMPLAINT ALLEGED EVERY TIME

 8   THEY CHARGE A FEE, THE AMOUNT WAS WRONG.  EVERY TIME.  WHETHER

 9   IT WAS A DAY AFTER, 20 DAYS AFTER --

10           THE COURT:  OKAY.  I JUST WANT TO MAKE SURE I AM

11   UNDERSTANDING.

12           MR. TELLIS:  YES.

13           THE COURT:  IF THEY HAD CHARGED $50 EVERY INTERVAL

14   PERIOD, WHETHER OR NOT THAT WAS 20 DAYS OR 30 DAYS, OR TEN

15   DAYS, OR 50 DAYS, WHO CARES, EVERY TIME THEY CHARGED $50 --

16           MR. TELLIS:  AND IF $50 WAS THE AMOUNT --

17           THE COURT:  YES.

18           MR. TELLIS:  -- YES.  WE WOULDN'T BE --

19           THE COURT:  THEN THAT WOULD BE FINE WITH YOU.

20           MR. TELLIS:  IT WOULDN'T BE FINE WITH ME, BUT THAT'S

21   A DIFFERENT CASE.  THAT'S A CASE PERHAPS IN IOWA OR SOMEWHERE

22   ELSE, BUT NOT HERE.

23           THE COURT:  ALL RIGHT.

24           MR. TELLIS:  OKAY.

25           THE COURT:  SO THE SOPHISTICATED SOFTWARE IS JUST A
```

1      PROGRAM TO MAKE SURE THAT THEY ARE CAPTURING EVERY DEFAULT

2      INTERVAL?

3              **MR. TELLIS:**  COULDN'T HAVE SAID IT BETTER MYSELF.

4              **THE COURT:**  OKAY.

5              **MR. TELLIS:**  SO LET'S NOW GO TO SECTION 1818.

6          THEY SEEM TO SUGGEST THAT SECTION 1818 PREVENTS A COURT

7      FROM TAKING JURISDICTION WHEN THE -- WHEN THE CONSENT

8      ORDERS -- WHEN THE CASE, EXCUSE ME, AFFECTS THE SUBJECT MATTER

9      OF THE CONSENT ORDER.  THAT IS FUNDAMENTALLY WRONG.

10         SECTION 1818 BY ITS OWN TERMS SAYS, COURTS SHALL HAVE

11     QUOTE "NO JURISDICTION TO AFFECT BY INJUNCTION OR OTHERWISE

12     THE ISSUANCE OR ENFORCEMENT OF SUCH ORDER."

13         SO THAT'S A TWO-PRONG INQUIRY.  IS THERE ANYTHING ABOUT

14     THIS CASE THAT AFFECTS THE ISSUANCE OF THE CONSENT ORDER?

15             **THE COURT:**  I AM SORRY, I WAS TAKING NOTES.  WHERE IS

16     THAT?

17             **MR. TELLIS:**  THAT'S SECTION 1818 OF THE NATIONAL

18     BANKING ACT.  THAT'S THE ENTIRE BASIS OF THEIR CHALLENGE TO

19     SUBJECT MATTER JURISDICTION.

20             **THE COURT:**  OKAY.  I THOUGHT YOU WERE --

21             **MR. TELLIS:**  IT'S NOT ENOUGH TO SIMPLY COMPARE THE

22     SUBJECT MATTER OF THIS CASE AND THE CONSENT ORDER.  THIS IS --

23     THIS REQUIRES DRILLING DOWN.  OKAY.

24         I HAVE ALREADY POINTED OUT THAT THIS CASE, THE SUBJECT

25     MATTER IS ABOUT FAR MORE THAN FORECLOSURES.  THEY HAVE ALREADY

```
 1      GOT A PROBLEM THERE.  THAT'S THE TAIL WAGGING THE DOG ISSUE.

 2          AND AS TO THOSE GROUP OF PEOPLE WHO MAY HAVE BEEN IN

 3      FORECLOSURE AND RECEIVED COMPENSATION, THEY CAN BE DEALT WITH

 4      AT CLASS CERT STAGE, BUT WE'RE NOT THERE YET.

 5          I DON'T EVEN THINK THAT AS TO THOSE PEOPLE WHO MIGHT BE IN

 6      THIS CASE AND WHO ALSO HAD A FORECLOSURE PENDING DURING THAT

 7      LIMITED TWO-YEAR PERIOD, THAT THEY COULD POSSIBLY, UNDER THIS

 8      CONSENT ORDER, EVER GET THE KIND OF RELIEF THAT WE ARE SEEKING

 9      HERE.  SO LET'S TALK ABOUT THAT.

10          SECTION 1818 SAYS, THE CONSENT ORDER -- THIS CASE MUST

11      AFFECT BY INJUNCTION OR OTHERWISE THE ISSUANCE OR ENFORCEMENT

12      OF THE ORDER.  I HAVE NEVER HEARD THEM TAKE THE POSITION THAT

13      THIS AFFECTS THE ISSUANCE OF THAT ORDER.  THAT ORDER HAS BEEN

14      ISSUED.  WE AREN'T SEEKING TO ENJOIN THE COURT FROM THE OCC

15      ENFORCING IT.

16          THEIR ARGUMENT IS THAT THIS HAS TO BE THAT THIS CASE

17      AFFECTS THE ENFORCEMENT OF THAT ORDER; THAT SOMETHING ABOUT

18      THE RELIEF THAT WE ARE SEEKING IN THIS CASE RUNS AFOUL OF THE

19      RELIEF THERE.

20          WHAT'S THE TEST IF IT RUNS AFOUL OR SOMETHING ELSE.  THEY

21      LIKE JUDGE SELNA'S FOOTNOTE THAT SAYS IT DOESN'T HAVE TO BE

22      DIRECT CONTRAVENTION.  HERE'S WHAT IS INTERESTING ABOUT JUDGE

23      SELNA'S FOOTNOTE.  IT CITES AMERICAN FAIR CREDIT.  AMERICA

24      FAIR CREDIT IS THE CASE IN WHICH THEY BASE A GOOD PART OF

25      THEIR BRIEF ON.
```

1    LET'S READ FROM AMERICAN FAIR CREDIT BECAUSE I THINK JUDGE

2  SELNA MAY HAVE HAD A TYPO THERE.  IT SAYS, QUOTE:

3         "PLAINTIFF'S SECOND THROUGH EIGHTH CLAIMS AGAINST

4         DEFENDANT UCNB MUST BE DISMISSED FOR LACK OF

5         JURISDICTION.  IF THIS CASE WERE TO GO FORWARD AS

6         CURRENTLY PLED AND PLAINTIFF PREVAILED, DEFENDANT

7         UCNB WOULD REQUIRE -- WOULD BE REQUIRED TO PAY MONEY

8         DAMAGES INCLUDED IN THE JUDGMENT IN DIRECT

9         CONTRAVENTION OF THE CONSENTER."

10    THAT CASE WAS ABOUT TWO PARTIES, BY THE WAY.  IT WASN'T A

11  CLASS ACTION.  I KEEP HARPING ON THIS POINT.  OUR CLIENTS

12  NEVER SIGNED A CONSENT ORDER.  THAT CASE WAS ABOUT TWO PARTIES

13  WHO DID.  THEY WERE ALL BEFORE THE COURT.  AND THE CONSENT

14  ORDER SAID TO ONE OF THE PARTIES, YOU CANNOT PAY ANY MONEY TO

15  THE PLAINTIFF FOR ANY REASON.  PERIOD.  AND THE PLAINTIFF SUED

16  TO GET MONEY.

17    MY SON, WHO IS SEVEN YEARS OLD, KNOWS THAT WHEN THE

18  GOVERNMENT SAYS YOU CAN'T PAY MONEY FOR ANY REASON AND THE

19  PLAINTIFF SUES TO GET MONEY, DIRECT CONTRAVENTION.  THERE WERE

20  SEVEN CLAIMS FOR MONEY.  OUT.

21    WHAT MR. OBSTLER NEGLECTS IS THAT THERE WAS AN EIGHTH

22  CLAIM FOR DECLARATORY RELIEF WHERE THE PLAINTIFF ASKED THE

23  COURT TO DECLARE THAT THE CONTRACT BETWEEN THE PARTIES WAS

24  VALID.

25    THE CONTRACT OF THE PARTIES SHARE THE SAME SUBJECT MATTER

```
 1    AS THE DISPUTE AND FOR WHICH THE OCC STEPPED IN.  AND THE

 2    COURT SAID BECAUSE THERE IS NO DIRECT CONTRAVENTION ON A DEC

 3    RELIEF CLAIM, THERE IS JURISDICTION.

 4        YOU'VE GOT TO LOOK AT THE CLAIM.  IT'S NOT ENOUGH TO

 5    SIMPLY SAY THE CONSENT ORDER COVERS THE SUBJECT MATTER AND,

 6    THEREFORE, WE ARE OUT.

 7        SO, THE QUESTION IS, IS THERE ANYTHING ABOUT THIS CASE

 8    THAT IS IN DIRECT CONTRAVENTION WITH THE OCC'S CONSENT ORDER.

 9        WE ARE SEEKING RELIEF FOR FRAUD.  THIS CASE CONCERNS THE

10    BANKS PADDING FEES AND NOT DISCLOSING IT.  THAT CONDUCT

11    APPEARS NOWHERE IN THE CONSENT ORDER.

12        NOW, MY FRIEND, MR. OBSTLER, PUTS IN THE ENGAGEMENT LETTER

13    FROM DELOITTE & TOUCHE IN HIS REPLY BRIEF AND SAYS, LOOK.

14    WELL, LET'S LOOK AT DELOITTE & TOUCHE'S ENGAGEMENT LETTER.

15    EVERY ACCOUNTANT THAT APPROACHES AN ASSIGNMENT HAS ASSUMPTIONS

16    THEY HAVE TO MAKE.

17        ON PAGE 15 OF THE ENGAGEMENT LETTER, WHICH IS AT HIS

18    REQUEST FOR JUDICIAL NOTICE, ALSO PAGE 15 --

19            THE COURT:  WHAT EXHIBIT?

20            MR. TELLIS:  THIS IS EXHIBIT 3 -- PARDON ME,

21    EXHIBIT A OF HIS REPLY BRIEF, HIS JUDICIAL NOTICE REQUEST IN

22    CONNECTION WITH THE REPLY BRIEF, EXHIBIT A.

23        IT'S THE ENGAGEMENT LETTER BETWEEN DELOITTE & TOUCHE AND

24    CHASE.  THEY WERE GOING TO SERVE AS THE INDEPENDENT

25    CONSULTANT.
```

1          (PAUSE IN THE PROCEEDINGS.)

2          **THE COURT:**  I DON'T HAVE THAT ONE IN THIS BOOK.  GO

3     AHEAD.

4          **MR. TELLIS:**  IN SECTION 7, WHICH HE JUST TOOK YOU TO

5     IN THE CONSENT ORDER DEALING WITH THE FREQUENCY OF THE FEES,

6     THEY SAY, QUOTE:

7               "WE ASSUME THAT ALL FEES AND PENALTIES WERE ASSESSED

8               IN ACCORDANCE WITH THE APPLICABLE LOAN DOCUMENTS."

9          WELL, HOW CONVENIENT.  WHERE IS THE ADMISSION FROM CHASE

10    TO DELOITTE THAT, HEY, WHEN YOU ARE GOING THROUGH THESE, BEAR

11    IN MIND WE MARKED THEM UP 300 PERCENT.  YOU MIGHT HAVE TO BACK

12    THOSE OUT.

13         NO, NO.  THERE IS AN ASSUMPTION HERE BY THE CONSULTANT

14    HIRED BY CHASE TO LOOK AT ITS OWN PRACTICES THAT THE FEES WERE

15    CHARGED IN ACCORDANCE WITH THE LOAN DOCUMENTS.

16         SO HOW IS THE CONSULTANT GOING TO FIND THE FRAUD?  THERE'S

17    NO ADMISSION OF LIABILITY.  IN FACT, THERE IS QUITE THE

18    OPPOSITE.  THERE IS AN EXPRESS STATEMENT THAT THERE IS NO

19    ADMISSION OF LIABILITY.

20         WHERE IS THE OCC TO SUPPORT CHASE'S POSITION?  WILD HORSES

21    COULDN'T HAVE PREVENTED THESE GUYS FROM BRINGING A DECLARATION

22    IN HERE OR, IN FACT, THE OCC AND WHY IS THAT?  BECAUSE THEY

23    HAVE ALREADY SPOKEN.  AND WE, IRONICALLY, ARE THE ONLY PARTIES

24    THAT HAVE PUT BEFORE YOU WHAT THEIR POSITION IS.

25         IT'S THEIR WEBSITE AND DISCLOSURE REPORT, WHICH IN BOTH OF

1    THEM THEY SAY, "SUBMITTING A REQUEST FOR REVIEW DOES NOT

2    PRECLUDE BORROWERS FROM PURSUING OTHER LEGAL REMEDIES

3    AVAILABLE RELATED TO THEIR FORECLOSURE."

4        BY THE WAY, THERE IS THE HOOK THAT THIS IS ABOUT

5    FORECLOSURES AND NOT ABOUT ANYTHING ELSE.

6        "SERVICERS MAY NOT ASK A BORROWER TO RELEASE ANY CLAIMS IN

7    ORDER TO RECEIVE COMPENSATION."

8        WHEN THEY CAME OUT IN JUNE WITH THEIR INTERIM REPORT,

9    WHICH IS IN THE RECORD, AGAIN, THEY WENT STRONGER.

10            "A COURT COULD DETERMINE, HOWEVER, THAT THE AMOUNT

11            RECEIVED UNDER THE INDEPENDENT FORECLOSURE REVIEW

12            SHOULD BE OFFSET" --

13        **THE COURT:**  SLOW DOWN.

14        **MR. TELLIS:**  -- "SHOULD OFFSET ANY FUTURE AMOUNT THE

15    COURT AWARDS TO A BORROWER IF THE BORROWER SEPARATELY PURSUES

16    A CLAIM AGAINST THE SERVICER."

17        THE BORROWERS IN THIS CASE WILL NOT BE COMPENSATED FOR

18    FRAUD.  AT BEST THEY WILL GET A REFUND OF CERTAIN BROKER PRICE

19    OPINIONS IF THEY WERE EXCESSIVELY CHARGED, I.E., FREQUENCY,

20    AND ONLY IF THE BORROWER IS IN A FORECLOSURE PENDING IN A

21    SHORT TWO-YEAR WINDOW.

22        AS TO THOSE PEOPLE THERE CAN BE AN OFFSET, BUT THAT ISN'T

23    A BASIS TO DISMISS THIS CASE FOR SUBJECT MATTER JURISDICTION.

24    THAT WOULD RAISE SERIOUS DUE PROCESS CONCERNS.  AND TO

25    CONCLUDE OTHERWISE IS JUST INACCURATE.  BUT THAT'S A RED

1   HERRING.

2       I THINK I COVERED THE TAIL AND RED HERRING.  I AM OPEN TO

3   QUESTIONS, YOUR HONOR.

4           **THE COURT:**  ALL RIGHT.  LET'S WE HAVE GONE AN HOUR

5   AND A HALF, SO I AM GOING TO TAKE A BREAK.  I WILL GIVE YOU AN

6   OPPORTUNITY TO RESPOND.

7           **MR. OBSTLER:**  THANK YOU, YOUR HONOR.

8           **THE COURT:**  SO THE COURT REPORTER CAN GET A LITTLE

9   SANITY BACK.

10      WHAT I AM GOING TO DO AFTER THIS, I WANT TO MAKE SURE

11  ABOUT A COUPLE OF THINGS.  YOU MENTIONED THE REQUEST FOR

12  JUDICIAL NOTICE.  ALL OF THE DEFENDANTS HAVE REQUEST FOR

13  JUDICIAL NOTICES -- THERE ARE A NUMBER OF THEM OUT THERE.

14          **MR. TELLIS:**  YES.

15          **THE COURT:**  I WANT TO MAKE SURE THAT THERE ARE NO

16  OBJECTIONS TO THE COURT REVIEWING ANY OF THOSE DOCUMENTS.  AND

17  IF THERE ARE, THEN I NEED TO KNOW WHAT THOSE OBJECTIONS ARE

18  AND WHAT THE LEGAL BASIS FOR THE OBJECTION IS.  SO I WANT TO

19  MAKE SURE THAT THOSE THINGS ARE ON THE RECORD.

20      ALSO WHEN WE GET BACK, YOU WILL EACH BE GIVEN JUST A BRIEF

21  OPPORTUNITY TO WRAP UP ANYTHING THAT I DIDN'T SPECIFICALLY ASK

22  YOU TO ADDRESS.  SO YOU CAN TAKE A LOOK AT YOUR NOTES TO DO

23  THAT.  OKAY?

24          **MR. TELLIS:**  THANK YOU, YOUR HONOR.

25          **THE COURT:**  WE WILL TAKE A TEN-MINUTE BREAK.

1        (RECESS TAKEN AT 3:30 AND RESUMED AT 3:40 P.M.)

2            **THE CLERK:**  REMAIN SEATED.  COURT IS IN SESSION.

3            **THE COURT:**  WE ARE BACK ON THE RECORD.

4        COUNSEL, GO AHEAD.

5            **MR. OBSTLER:**  YOUR HONOR, I THINK MR. TELLIS, I WANT

6    TO MAKE SURE I'VE GOT HIS ARGUMENT RIGHT BECAUSE I DON'T WANT

7    TO BE SWINGING AT A MOVING TARGET HERE.  SO IF YOU WANT TO

8    INTERPRET ME --

9            **THE COURT:**  GUESS WHAT.  I ONLY GET TO DECIDE WHO MAY

10   INTERPRET, AND YOU MAY NOT TALK TO HIM EXCEPT WHEN WE ARE OFF

11   THE RECORD.

12           **MR. OBSTLER:**  I APOLOGIZE, YOUR HONOR.

13       YOUR HONOR, HE'S SAYING THAT THE CONSENT DECREE -- HE'S

14   ARGUING THAT THE CONSENT DECREE IS JUST LIMITED TO

15   FORECLOSURES.  THAT'S THE ARGUMENT.  AND THAT'S JUST SIMPLY

16   NOT TRUE.  AND I CAN TELL YOUR HONOR THE SHORT ANSWER IS, IF

17   YOU READ IT, BUT I DO WANT TO READ TO YOU SECTION IV OF THE

18   CONSENT DECREE, THE COMPLIANCE PROGRAM.

19       "THE BANK SHALL SUBMIT TO THE DEPUTY COMPTROLLER AND THE

20   EXAMINER-IN-CHARGE" --

21           **THE COURT:**  HOLD ON.  LET ME GET THAT.

22       ALL RIGHT.  CONSENT DECREE, WHAT PAGE?

23           **MR. OBSTLER:**  PAGE 6.

24           **THE COURT:**  ALL RIGHT.

25           **MR. OBSTLER:**  AND, AGAIN, YOUR HONOR, I AM STARTING

1    FROM THE PREMISE THAT THESE ARE WHAT WE CALL DEFAULT SERVICES,

2    WHICH IS IN THEIR COMPLAINT.

3        WHAT THAT MEANS, JUST SO WE ARE CLEAR, IS WHEN SOMEONE

4    GOES INTO DEFAULT ON THE LOAN, IT'S TRUE THEY MIGHT NOT BE

5    FORECLOSED.  THEY MIGHT GO TO LOAN MITIGATION, THEY MIGHT GET

6    A HAMP REDUCTION ON THEIR PRINCIPAL.  THERE'S A LOT OF THINGS.

7    BUT THEY GO INTO THIS DISCLOSE -- THIS DEFAULT PROCESS.  AND

8    THAT'S WHAT THIS CONSENT ORDER IS AIMED AT.

9        AND IT SAYS:

10           "THE BANK SHALL SUBMIT TO THE DEPUTY COMPTROLLER AND

11           THE EXAMINER-IN-CHARGE AN ACCEPTABLE COMPLIANCE

12           PROGRAM TO ENSURE THAT THE MORTGAGE SERVICING AND

13           FORECLOSURE OPERATIONS, INCLUDING LOSS MITIGATION AND

14           LOAN MODIFICATION, COMPLY WITH ALL APPLICABLE LEGAL

15           REQUIREMENTS, OCC SUPERVISORY GUIDANCE, AND THE

16           REQUIREMENTS OF THIS ORDER AND ARE CONDUCTED IN A

17           SAFE AND SOUND MANNER."

18       AND THEN IT GOES TO ITEM H ON PAGE 8:

19       "PROCESSES TO ENSURE THAT ALL FEES, EXPENSES, AND OTHER

20   CHARGES IMPOSED ON THE BORROWER," NOT THE FORECLOSED BORROWER,

21   THE BORROWER, "ARE ASSESSED IN ACCORDANCE WITH THE TERMS OF

22   THE UNDERLYING MORTGAGE NOTE" --

23           **THE COURT:**  I WANT TO INTERRUPT YOU.

24       MR. TELLIS, ON PAGE 6 --

25           **MR. TELLIS:**  YES.

1           **THE COURT:**  -- SUBPARAGRAPH 1, UNDER ARTICLE IV, WHY

2      DOESN'T YOUR CLAIM FALL WITHIN THE PURVIEW OF QUOTE "MORTGAGE

3      SERVICING"?

4           **MR. TELLIS:**  BECAUSE ARTICLE VI REFERS TO A

5      COMPLIANCE PROGRAM THAT IS PROSPECTIVE.  WITHIN 60 DAYS, THE

6      COURT SHALL SUBMIT TO THE DEPUTY COMPTROLLER TO DO ALL THESE

7      THINGS, AND ONE OF THEM IS TO ENSURE THAT FEES ARE CHARGED IN

8      ACCORDANCE WITH THE GUIDELINES.

9           BUT LET'S GO TO ARTICLE VII, BECAUSE THAT'S WHERE HE SAID

10     THAT THE CONSULTANT IS LOOKING AT THE FEES AND GIVING OUT

11     MONEY.

12          WHAT'S THE TITLE OF ARTICLE VII?  FORECLOSURE REVIEW.  I

13     DON'T MAKE THIS UP.  THIS IS ABOUT FORECLOSURES.

14          THE FEES THAT THE INDEPENDENT CONSULTANT IS GOING THROUGH

15     TO DETERMINE IF COMPENSATION SHOULD BE HAD ARE THOSE THAT WERE

16     CHARGED WHILE THE CASE WAS PENDING IN A FORECLOSURE

17     PROCEEDING, AND PARAGRAPH 1 OF ARTICLE VII AT THE BOTTOM OF

18     PAGE 14 SAYS, "PENDING AT ANY TIME FROM JANUARY 1ST, 2009 TO

19     DECEMBER 31ST, 2011".

20          **THE COURT:**  LET ME ASK YOU THIS ONE.  I HAVEN'T READ

21     THE CONSENT ORDER FROM BEGINNING TO END --

22          **MR. TELLIS:**  RIGHT.

23          **THE COURT:**  -- BUT I AM LOOKING AT PARAGRAPH 1 OF THE

24     CONSENT ORDER ON PAGE 1.  AND IT SAYS QUOTE:

25          "THE OCC HAS IDENTIFIED CERTAIN DEFICIENCIES AND

1           UNSAFE OR UNSOUND PRACTICES IN RESIDENTIAL MORTGAGE

2           SERVICING AND" -- THAT'S CONJUNCTIVE, THE WORD AND,

3           "IN THE BANK'S INITIATION AND HANDLING OF FORECLOSURE

4           PROCEEDINGS."  CLOSE QUOTE.

5      WHY SHOULD I NOT READ THAT AS TWO SEPARATE ISSUES?  ONE,

6   RESIDENTIAL MORTGAGE SERVICING AND, TWO, AN INITIATION AND

7   HANDLING OF FORECLOSURE PROCEEDINGS?

8           **MR. TELLIS:**  BECAUSE THE SERVICING MIGHT RAISE

9   QUESTIONS ABOUT LOAN MODIFICATIONS, FOR EXAMPLE.  WERE THEY

10  DONE CORRECTLY?  WHEN SOMEBODY APPLIES FOR A LOAN

11  MODIFICATION, A SERVICER MAY GET INVOLVED, AND ARE THEY

12  PROPERLY TAKING DOCUMENTS?  LOAN SERVICING ALSO RAISES ISSUES

13  ABOUT WHETHER DOCUMENTS ARE PROPERLY NOTARIZED.  ARE THEY

14  KEPT?

15     THE FEES THAT WE ARE TALKING ABOUT HERE, THE REASON THEY

16  THINK THIS CASE RUNS AFOUL IS BECAUSE WE ARE SEEKING RELIEF

17  THAT THEY CONTEND IS PROVIDED FOR IN THIS CONSENT ORDER.

18          **THE COURT:**  WELL, AT LEAST PARTIALLY.

19          **MR. TELLIS:**  WE ARE NOT HERE COMPLAINING ABOUT LOAN

20  MODIFICATIONS OR NOT USING NOTARIZED DOCUMENTS WHEN

21  FORECLOSURES OCCUR.

22     THOSE ARE THE CASES, BY THE WAY, THAT HE POINTS TO WHERE

23  COURTS DID USE THE NATIONAL BANKING ACT TO PREEMPT IS BECAUSE

24  PEOPLE THERE WERE SEEKING INJUNCTIONS ASKING THE COURT TO TELL

25  THE BANK HOW TO CHANGE ITS FORECLOSURE PRACTICES GOING

1    FORWARD.  THAT RUNS AFOUL OF SECTION 18 (SIC) BECAUSE IT

2    AFFECTS QUOTE "THE ENFORCEMENT OF THE CONSENT ORDER".

3         WE ARE HERE ABOUT FEES.  AND THE FEES ARE COVERED IN

4    SECTION VII.

5              **MR. OBSTLER:**  YOUR HONOR --

6              **THE COURT:**  LET ME ASK THIS:  WHAT IS THE DOCUMENT

7    UPON WHICH THE -- WHAT IS THE CHARGING DOCUMENT UPON WHICH THE

8    CONSENT ORDER IS BASED?  EITHER A CIVIL CHARGING DOCUMENT OR A

9    CRIMINAL CHARGING DOCUMENT, OR A REGULATORY CHARGING DOCUMENT,

10   WHAT IS THE UNDERLYING DOCUMENT?

11             **MR. OBSTLER:**  IT WAS BASED ON AN INTERAGENCY REVIEW

12   AND A SERIES OF FINDINGS BY THE INTERAGENCY REVIEW, YOUR

13   HONOR.  IT IS AN EXCELLENT QUESTION.  AND I HAVE THE DOCUMENT,

14   BUT I DON'T HAVE IT WITH ME AND I SHOULD HAVE.

15        AND YOU ARE ABSOLUTELY RIGHT.  IT WAS NOT BASED ON A

16   FORMAL COMPLAINT UNLIKE A CEASE AND DESIST ORDER.  WHAT

17   HAPPENED AFTER THEY DID THE INTERAGENCY REVIEW, THEY

18   ESSENTIALLY SAID TO THE BANKS AND TO MY CLIENT, YOU'VE GOT A

19   CHOICE.  WE ARE EITHER GOING TO GO AFTER YOU AND ACTUALLY

20   LITIGATE THE ISSUES RELATING TO THIS OR YOU CAN STIPULATE TO A

21   CONSENT ORDER.

22             **THE COURT:**  LET ME ASK THIS:  HAVE YOU SEEN THIS

23   CHARGING DOCUMENT?

24             **MR. TELLIS:**  NO, YOUR HONOR.  ALL I CAN DO IS READ

25   THE LEAD-IN OF THE CONSENT ORDER.

1          **THE COURT:**  I KNOW.  THAT'S WHY I WANT TO UNDERSTAND

2     WHAT THE BASIS OF THE CONSENT WAS.

3          **MR. TELLIS:**  YOUR HONOR, DOESN'T IT SAY -- MY

4     READING -- IT'S AS PART OF THE INTERAGENCY -- I AM SORRY.

5          **THE COURT:**  I UNDERSTAND THAT YOU ARE READING.  WHAT

6     I AM SAYING IS THAT I COULD READ THIS IN TWO DIFFERENT WAYS.

7          **MR. TELLIS:**  COULD --

8          **THE COURT:**  YOUR READING ASSUMES THAT THE FIRST PART

9     OF THAT SENTENCE RELATES TO FORECLOSURE PROCEEDINGS.  I DON'T

10    KNOW.  I DON'T KNOW WHAT -- I DON'T KNOW IF THIS IS TALKING

11    ABOUT THE ENTIRE MORTGAGE BANKING PORTION OF THE -- OF CHASE

12    OR IF IT'S MORE LIMITED.

13       AND, AGAIN, THAT IS JUST READING THE SECOND SENTENCE OF

14    THIS CONSENT ORDER.

15         **MR. TELLIS:**  WELL, BUT THE FIRST SENTENCE,

16    RESPECTFULLY, YOUR HONOR, SAYS THAT THE INTERAGENCY HORIZONTAL

17    REVIEW OF MAJOR RESIDENTIAL MORTGAGE SERVICERS HAS CONDUCTED

18    AN EXAMINATION OF THE RESIDENTIAL REAL ESTATE MORTGAGE

19    FORECLOSURE PROCESSES OF J.P. MORGAN CHASE.

20         **THE COURT:**  ALL RIGHT.  THAT'S A GOOD POINT.

21         **MR. OBSTLER:**  THE MORTGAGE PROCESS; THAT'S WHERE WE

22    GET CONFUSED.

23         **THE COURT:**  DOES ANYBODY EVER DEFINE THAT?

24         **MR. OBSTLER:**  NO.  THE ISSUE IS THEY'VE CALLED --

25    THEY USED THE TERM "DEFAULT PROCESS".  LOOK AT THIS EXHIBIT,

```
1    YOUR HONOR.  LOOK AT EXHIBIT F TO OUR RJN.

2       JUNE 21, 2012 FINANCIAL REMEDIATION FRAMEWORK FOR USE IN

3    QUOTE, THEY ARE CALLING IT "INDEPENDENT FORECLOSURE REVIEW."

4    THEY ARE USING THAT TERM.  AND THEY SAY:

5            "IN APRIL 2011, FEDERAL BANKING REGULATORS ISSUED

6            ENFORCEMENT ORDERS AGAINST 14 LARGE MORTGAGE

7            SERVICERS FOR DEFICIENT MORTGAGE SERVICING AND

8            FORECLOSURE PRACTICES."

9       DOESN'T MEAN THAT THE PROPERTY HAS BEEN FORECLOSED.  I

10   WILL SHOW YOU EXACTLY WHY.  IT GOES ON -- THIS IS VERY

11   IMPORTANT.  IT SAYS:

12           "THE OCC AND FRB HAVE DEVELOPED A FINANCIAL

13           REMEDIATION FRAMEWORK, THE FRAMEWORK, THAT PROVIDES

14           EXAMPLES OF SITUATIONS WHERE COMPENSATION OR OTHER

15           REMEDIATION IS REQUIRED FOR FINANCIAL INJURY DUE TO

16           SERVICER ERRORS," AND HERE COMES THE FRAUD, YOUR

17           HONOR, THAT HE SAID DIDN'T EXIST,

18           "MISREPRESENTATIONS", RIGHT THERE, "OR OTHER

19           DEFICIENCIES.  THE INDEPENDENT CONSULTANTS WILL USE

20           THE FRAMEWORK TO RECOMMEND REMEDIATION FOR FINANCIAL

21           INJURY IDENTIFIED DURING THE INDEPENDENT FORECLOSURE

22           REVIEW.  THE SERVICERS WILL PREPARE REMEDIATION

23           PLANS," WHICH YOUR HONOR PICKED UP ON ON ITEM 8, HE

24           SAYS IS PERSPECTIVE, "BASED ON THE INDEPENDENT

25           CONSULTANT RECOMMENDATIONS.  THE FEDERAL BANKING
```

1          REGULATORS MUST APPROVE EACH SERVICER'S REMEDIATION

2          PLAN."

3     NOW, IF YOU GO TO THE CHART AND YOU LOOK AT ITEM 13, IT

4     SAYS:

5          "GENERAL:  ERROR CAUSED FINANCIAL INJURY, SERVICER

6          ERROR OCCURRED THAT DID NOT DIRECTLY CAUSE

7          FORECLOSURE, BUT DID DIRECTLY RESULT IN FINANCIAL

8          INJURY TO BORROWER."

9     THAT WOULD SEEM TO FIT WHAT WE ARE TALKING ABOUT HERE, AND

10    THERE'S MONEY TO BE PAID.

11         **THE COURT:**  ALL RIGHT, MR. TELLIS.  RESPONSE.

12         **MR. TELLIS:**  FIRST OF ALL, WHILE YOU HAVE GOT THAT

13    DOCUMENT IN FRONT OF YOU, AGAIN, MY FRIEND MR. OBSTLER DIDN'T

14    READ THE SECOND SENTENCE OF THE FIRST PARAGRAPH.

15    "THE ORDERS REQUIRED THOSE SERVICERS TO RETAIN INDEPENDENT

16    CONSULTANTS TO CONDUCT A COMPREHENSIVE REVIEW OF FORECLOSURES

17    THAT WERE IN PROCESS OR COMPLETED IN 2009 OR 2010," AGAIN,

18    INTERPRETING THE SCOPE OF THE ORDERS.

19         **THE COURT:**  OKAY.  ALL RIGHT.

20    FUNDAMENTALLY I NOW MORE CLEARLY UNDERSTAND YOUR VARIOUS

21    PERSPECTIVES ON THE APPLICABILITY OF THAT CONSENT ORDER.  I

22    JUST MYSELF HAVE TO GO THROUGH AND READ IT AND SEE WHAT I

23    THINK IS ITS SCOPE.  BECAUSE THAT SEEMS TO BE IN PART THE

24    ISSUE.

25    I TAKE IT, MR. TELLIS, YOU WOULD AGREE THAT IF THIS CASE

1   INVOLVED SOMETHING DIRECTLY WITHIN THE SCOPE OF THE CONSENT

2   ORDER, THAT A STAY WOULD BE APPROPRIATE.

3          **MR. TELLIS:**  BUT ONLY AS TO THOSE INDIVIDUALS WHO

4   WERE COVERED BY IT.  AGAIN, THIS CASE INVOLVES FAR MORE THAN

5   THOSE FOLKS.

6          **THE COURT:**  I UNDERSTAND THAT.

7          **MR. TELLIS:**  MAYBE WE NEED TO ADJUST THE CLASS.

8          **THE COURT:**  IF I -- IF FOR PURPOSES -- YOU ARE NOT

9   REALLY ARGUING THAT THE CASE SHOULDN'T BE STAYED FOR SOMETHING

10  SPECIFIC TO THE CONSENT ORDER, YOU ARE JUST SAYING IT DOESN'T

11  APPLY GENERALLY.

12         **MR. TELLIS:**  YES.  BUT MY POINT, THOUGH, IF IT DID,

13  IT APPLIES TO A SUBSET OF THE CLASS MEMBERS HERE.

14         **THE COURT:**  I UNDERSTAND.

15         **MR. TELLIS:**  THIS IS NOT A REASON TO STAY THE ENTIRE

16  CASE.

17    IF YOUR HONOR WAS CONCERNED THAT AFTER READING EVERYTHING

18  THAT WE HAVE PUT BEFORE YOU IN THE CASES THAT THEY HAVE MET

19  THEIR BURDEN OF ESTABLISHING THAT SECTION 1818 IS BEING

20  IMPLICATED HERE, THEN MAYBE THE REMEDY IS TO CARVE OUT THOSE

21  PEOPLE FROM THE CLASS DEFINITION, BUT IT IS NOT.

22         **THE COURT:**  IT'S HELPFUL.  BECAUSE THEN WHAT THIS

23  SAYS IS, I DON'T HAVE TO GET TOO MUCH INTO SOME KIND OF

24  PREEMPTION ARGUMENT, WE ALL AGREE ON WHAT THE LAW IS, IT'S

25  JUST THAT THE DISAGREEMENT IS ONE OVER WHAT THE SCOPE OF THIS

1    CONSENT ORDER IS.

2            **MR. TELLIS:**  YES.  ABSOLUTELY.

3            **THE COURT:**  SO THAT MAKES MY JOB EASIER.

4            **MR. TELLIS:**  I WOULD ASK YOUR HONOR, YOU KNOW, IN THE

5    BRIEFS WE CITED TO THIS IN RE CHASE MORTGAGE MODIFICATION

6    LITIGATION PENDING, THIS MDL, WHERE THE COURT DID NOT BUY

7    CHASE'S ARGUMENT AND FOUND SUBJECT MATTER JURISDICTION

8    EXISTED.

9        WHAT WAS INTERESTING IS THERE'S A FOOTNOTE THAT I CAN'T

10   PUT MY FINGER ON IMMEDIATELY THAT SAYS THAT THAT CASE INVOLVES

11   MISREPRESENTATIONS AND FRAUD THAT'S NOT COVERED.  TO THE

12   EXTENT THAT SOME ASPECT OF INJUNCTIVE RELIEF WOULD RUN AFOUL

13   OF SECTION 1818, WE'LL CARVE IT OUT AT THAT TIME.  BUT YOU

14   DON'T STAY -- IN OTHER WORDS, YOU HAVE THE DISCRETION

15   INJUNCTIVE RELIEF IS AN EQUITABLE REMEDY HERE.  WE CAN CARVE

16   OUT WHAT'S NECESSARY, BUT IT ISN'T APPROPRIATE TO PUT THE

17   BREAKS ON.

18            **THE COURT:**  THIS HAS BEEN VERY HELPFUL.  OKAY.

19       MR. OBSTLER?

20            **MR. OBSTLER:**  VERY GOOD.

21            **THE COURT:**  ANYTHING ELSE?

22            **MR. OBSTLER:**  NO, YOUR HONOR.  THERE IS AN

23   ELIGIBILITY PROVISION IN THE CONSENT ORDER THAT MAY HELP, BUT

24   JUST TO LET YOU KNOW WHERE IT IS --

25            **THE COURT:**  DID YOU HAVE COFFEE BEFORE YOU CAME IN?

```
1            MR. OBSTLER:  I DID.  I'M A LITTLE UPTIGHT ABOUT THE

2     ELECTION, AND WE ARE SEEING SOME THINGS IN FLORIDA THAT ARE A

3     LITTLE DISTRESSING RIGHT NOW.  I'M A LITTLE WIRED.  I

4     APOLOGIZE.

5            THE COURT:  THE POLES ARE NOT QUITE CLOSED ANY

6     MINUTE, BUT SPEAKING FAST ISN'T GOING TO HELP.

7            MR. OBSTLER:  YOU'RE RIGHT.

8            THE COURT:  I AM GOING TO STOP YOU.  IT WILL TAKE

9     LONGER.

10           MR. OBSTLER:  ON PAGE 7 OF EXHIBIT D TO OUR RJN IS AN

11    ELIGIBILITY PROVISION.

12           THE COURT:  PAGE 7 OF WHICH?

13           MR. OBSTLER:  EXHIBIT D TO THE RJN THAT WE SUBMITTED

14    IN SUPPORT OF THE CHASE BRIEF.

15        IT'S A DIFFERENT EXHIBIT IN THERE.

16        JUNE 2012 INTERIM STATUS REPORT.  YOU HAVE IT IN FRONT OF

17    YOU.  I JUST WANT TO ALERT YOU THERE IS AN ELIGIBILITY

18    PROVISION IN THERE.  TO THE EXTENT THAT THAT MIGHT HELP YOU

19    LOOK AT WHO IS ELIGIBLE FOR THIS AND WHO IS NOT.  THOUGHT YOU

20    MIGHT WANT TO LOOK AT THAT.

21        THE ONLY OTHER THING I WANTED TO SAY, YOUR HONOR, WAS I

22    DID CITE TO YOU IN RE HAMP.  HE CALLED IT THE IN RE J.P.

23    MORGAN CHASE LOAN MODIFICATION CASE.  WE CALL IT IN RE HAMP

24    CASE.  IT IS WHAT I CITED TO YOU AT THE BEGINNING.

25           AND THE IMPORTANT PART WAS CHASE DOESN'T CITE ANY CASES
```

1    THAT WOULD SUPPORT HIS POSITION, AND THE BAKENIE CAME OUT THAT

2    DAY.  I WOULD ASK YOUR HONOR TO READ BAKENIE BECAUSE BAKENIE

3    SAYS EXACTLY WHAT YOUR HONOR SAID, WHICH IS THERE IS NO

4    DISAGREEMENT ON THE LAW -- THERE'S--

5            **THE COURT:**  I COULDN'T HEAR THAT BECAUSE OF THE MICS.

6            **MR. OBSTLER:**  SORRY.

7            **THE COURT:**  BAKENIE SAYS --

8            **MR. OBSTLER:**  BAKENIE SAYS THERE IS NO DISAGREEMENT

9    ON THE LAW.  WHAT BAKENIE SAYS IS:

10           "HERE THE COURT MUST DETERMINE WHETHER PLAINTIFF'S

11           CLAIMS SEEK TO AFFECT ENFORCEMENT OF THE CONSENT

12           ORDER.  THE COURT FINDS THAT IT DOES.  AS DISCUSSED

13           ABOVE, PLAINTIFF'S CLAIMS IS BASED ON DEFENDANT'S

14           IMPROPER NOTARIAL PRACTICES, THEIR SOLICITING,

15           COERCING, AND INFLUENCING SUCH PRACTICES, AND THE

16           IMPROPER ENDORSEMENT AND ASSIGNMENT OF FORECLOSURE

17           DOCUMENTS.  THE OCC ADDRESSED ALL THESE IMPROPER

18           PRACTICES IN THE CONSENT ORDER.

19           "FURTHERMORE, THE OCC, ALONG WITH CHASE, ESTABLISHED

20           A DETAILED PLAN FOR CORRECTING THE IMPROPER

21           PRACTICES.  IN FACT, CHASE IMPLEMENTED THE PLAN AND

22           ESTABLISHED A SINGLE INTEGRATED CLAIMS PROCESS FOR

23           BORROWERS WHO BELIEVE THEY HAVE QUOTE 'SUFFERED

24           FINANCIAL INJURY' AS A RESULT OF SERVICER ERRORS,

25           MISREPRESENTATION OR DEFICIENCIES IN THE FORECLOSURE

1          PROCESS," CLOSE QUOTE.

2     THAT'S WHY JUDGE SELNA DID WHAT HE DID.  BUT I THINK IF

3  YOUR HONOR'S ENCAPSULATION OF THE ISSUE DOES FALL WITHIN THE

4  SCOPE, TO ME THAT IS WHAT THIS ARGUMENT IS ABOUT, AND I DON'T

5  THINK, DEPENDING ON WHAT YOU DETERMINE THAT SCOPE TO BE, IF

6  YOU CAN CREATE A CLASS OUTSIDE OF THAT SCOPE, THEN SO BE IT.

7          **MR. TELLIS:**  BAKENIE WAS IN THE CENTRAL DISTRICT OF

8  CALIFORNIA WHERE THE MISREPRESENTATION WAS WHETHER THEY HAD

9  NOTARIZED DOCUMENTS OR NOT.

10     AGAIN, THERE HAS BEEN NO ADMISSION BY CHASE, TO MY

11  KNOWLEDGE, THAT THEY MARKED UP THESE FEES IN VIOLATION OF SUCH

12  THAT THE INDEPENDENT CONSULTANT CAN GO THROUGH AND GET SOME

13  RELIEF FOR PEOPLE LIKE WE ARE TRYING TO DO.

14          **THE COURT:**  OKAY.

15     I SAID THAT I WOULD GIVE EVERYBODY A BRIEF OPPORTUNITY TO

16  RAISE ANY OTHER ISSUES BEFORE YOU LEAVE BECAUSE I DIRECTED

17  WHAT I WANTED TO HEAR ABOUT.

18     MR. OBSTLER, ANYTHING ELSE FROM YOU?

19          **MR. OBSTLER:**  NO, YOUR HONOR.  WE DIDN'T COVER, I

20  APOLOGIZE, THE PREEMPTION ISSUE.  I WOULD REFER YOUR HONOR TO

21  MARTINEZ.

22     I WOULD SAY THAT MARTINEZ MAY HELP YOUR HONOR ALSO WITH

23  UNDERSTANDING THE SCOPE OF THE CONSENT DECREE, HOWEVER,

24  BECAUSE THE WAY THAT MARTINEZ CAME DOWN, IT SAID THAT IF YOU

25  DO -- THE BANKS HAVE DISCRETION UNDER THE NATIONAL BANKING ACT

1    TO SET THEIR OWN FEES.  THAT'S WHY MARTINEZ SAID IT WAS

2    PREEMPTED.

3        IF I WERE ON MR. TELLIS' SIDE, I WOULD SAY, WELL, THAT'S

4    LIKE THE FOX WATCHING THE CHICKEN COOP, WHICH HE'S RIGHT ABOUT

5    BECAUSE WHY WOULD YOU GET A CONSENT ORDER BECAUSE IF YOU'RE

6    SETTING THOSE FEES, THEY START TO DETERMINE THEIR UNSAFE

7    PRACTICES, THEY WOULD GET THIS TYPE OF CONSENT ORDER.

8        I WOULD SAY THAT MARTINEZ IS A CASE THAT WE THINK IS ON

9    ALL FOURS.  IT'S A NINTH CIRCUIT CASE.  AND THE CASE THAT THEY

10   CITED ON PREEMPTION IS PRE-MARTINEZ.

11       WITH THAT, I HAVE TAKEN ENOUGH TIME WITH THE COURT.

12       THANK YOU VERY MUCH, YOUR HONOR.

13         **MR. TELLIS:**  YOUR HONOR, WHEN YOU GET AROUND TO

14   READING MARTINEZ, YOU WILL NOTE THAT THE ISSUE WAS WHETHER THE

15   CONDUCT THERE AND THE CLAIMS WERE UNIQUE TO THE BANKING

16   INDUSTRY.  THEY WERE CHALLENGING THE SETTING OF AN

17   UNDERWRITING FEE WITHOUT ANY PRIOR DISCLOSURES, AND NATURALLY

18   IT WAS.  BUT HERE'S WHAT THE NINTH CIRCUIT SAID ABOUT FRAUD,

19   QUOTE:

20       "STATE LAWS OF GENERAL APPLICATION WHICH MERELY REQUIRE

21   ALL BUSINESSES, INCLUDING NATIONAL BANKS, TO REFRAIN FROM

22   FRAUDULENT, UNFAIR, OR ILLEGAL BEHAVIOR DO NOT NECESSARILY

23   IMPAIR A BANK'S ABILITY TO EXERCISE ITS REAL ESTATE LENDING

24   POWERS.  SUCH LAWS ARE NOT DESIGNED TO REGULATE REAL ESTATE

25   LENDING NOR DO THEY HAVE A DISPROPORTIONATE OR OTHER

1  SUBSTANTIAL AFFECT ON LENDING.  IN FACT, THE OCC HAS

2  SPECIFICALLY CITED THE UCL IN AN ADVISORY LETTER CAUTIONING

3  BANKS THAT THEY MAY BE SUBJECT TO SUCH LAWS THAT PROHIBIT

4  UNFAIR OR DECEPTIVE ACTS OR PRACTICES.

5      THIS CASE DOESN'T ASK YOU TO DECIDE WHAT THE APPROPRIATE

6  AMOUNT OF THE FEE IS IN THE ABSTRACT.  THIS IS NOT ABOUT

7  FAIRNESS, IT'S ABOUT FRAUD.

8          **THE COURT:**  OKAY.  I WILL READ MARTINEZ AND I'M SURE

9  I CAN FIGURE IT OUT.

10     LET'S SEE.  WITH RESPECT TO CITIBANK, MR. RICH, ANYTHING

11  ELSE?

12         **MR. RICH:**  YOUR HONOR, YES, YOUR HONOR.  YOUR HONOR

13  TWO POINTS.  FIRST ONE IS OUR, CITI'S REQUEST FOR JUDICIAL

14  NOTICE WAS UNOPPOSED.  SO THOSE DOCUMENTS WE ASK TO BE

15  CONSIDERED.

16     THE SECOND POINT, THE LAST REMARK FROM OPPOSING COUNSEL

17  WAS THIS CASE WAS ABOUT FRAUD.  I WANTED TO TOUCH ON THAT

18  QUICKLY, IF I MAY.

19     THE BASIS FOR PLAINTIFFS' FRAUD CLAIM, WHAT THEIR CASE

20  REALLY IS ABOUT, IS THEY ARE SUGGESTING THAT CITI CAN ONLY

21  ASSESS FEES REPRESENTING THE BPO'S ACTUAL COSTS, BUT NOTHING

22  IN THE GOVERNING LOAN DOCUMENTS IMPOSES THAT LIMIT.  INSTEAD,

23  PLAINTIFFS AGREED TO PAY FOR WHATEVER IS REASONABLE.

24     SO WE WOULD ASK THE COURT TO TAKE A CLOSE LOOK AT THE

25  ACTUAL LOAN DOCUMENTS AND WHAT THEY SAY.  HERE'S WHAT THEY

```
1    SAY.  THEY DON'T ONLY PERMIT CITI TO PAY THIRD-PARTY VENDORS

2    AND THEN RECOVER FROM THE BORROWER QUOTE "WHATEVER IS

3    REASONABLE OR APPROPRIATE" END QUOTE TO PROTECT ITS INTEREST

4    IN THEIR PROPERTY.  WHEN PLAINTIFFS DEFAULT THEY ALSO ALLOW,

5    AGAIN, THEY ALSO ALLOW CITI TO CHARGE BORROWERS FOR SERVICES

6    CITI PROVIDES IN CONNECTION WITH THEIR DEFAULT.

7         THIS IS IN OUR DEEDS OF TRUST, IN OUR RJN AT SECTIONS 9,

8    14, AND IN ZIRLOTT THEY ARE IN SECTIONS 2, 7 AND 8.  SO

9    CONTRARY TO PLAINTIFFS' THEORY, THE DELINQUENCY EXPENSES THAT

10   CITI CHARGES ARE NOT LIMITED TO ONLY FEES CITI PAYS THIRD

11   PARTIES, INSTEAD, THEY MAY ALSO REFLECT CITI'S INTERNAL COSTS

12   ASSOCIATED WITH SERVICES THAT IT PERFORMS THAT RELATE TO THE

13   DEFAULT, INCLUDING FEES CITI ASSESSES FOR PERFORMING THOSE

14   SERVICES.

15        PLAINTIFFS THEMSELVES ACKNOWLEDGES CITI PERFORMS THOSE

16   SERVICES.  FOR EXAMPLE, THEY -- CITI IDENTIFIES WHICH

17   BORROWERS ARE IN DEFAULT AND THEY COORDINATE WITH THIRD-PARTY

18   INSPECTIONS OF PROPERTY EVALUATIONS TO TAKE STEPS TO PROTECT

19   THE PROPERTY.  AND THOSE ARE SERVICES CITI PERFORMS WHICH THEY

20   ARE ENTITLED TO COMPENSATION.

21        AND CASE LAW SUPPORTS THAT.  A FEW EXAMPLES WOULD BE SOSA

22   V. CHASE MANHATTAN, 348 F. 3D 979, ELEVENTH CIRCUIT FROM 2003.

23   AND THE MORALES V. COUNTRYWIDE HOME LOAN CASE, 531 F.SUPP.

24   SECOND, 1225 FROM CD CAL, 2008.

25        AND, FINALLY, BECAUSE THE CONDUCT -- THE CONDUCT THEY
```

```
 1    COMPLAIN OF IS EXPRESSLY PERMITTED BY THE LOAN DOCUMENTS, NO

 2    AMOUNT OF AMENDING THEIR COMPLAINT CAN CHANGE THAT FACT.  AND

 3    THAT'S WHY WE ASK FOR OUR MOTION TO BE GRANTED WITHOUT LEAVE.

 4         MR. TELLIS:  YOUR HONOR, THIS IS A 12(B) MOTION AND

 5    THE ALLEGATIONS MUST BE TAKEN AS TRUE.  THIS IS NOT SUMMARY

 6    JUDGMENT.  IN PARAGRAPH 43 OF THE COMPLAINT --

 7         THE COURT:  SLOW DOWN.

 8      ALL RIGHT.  GO AHEAD.

 9         MR. TELLIS:  WE QUOTE THE SECURITY INSTRUMENT WHICH

10    DISCLOSES TO BORROWERS THAT THEY WILL RETAIN THE RIGHT TO BE

11    PAID BACK FOR THE COSTS AND EXPENSES IN ENFORCING THE NOTE.

12    PAID BACK.  OKAY?  THAT IS NOT CARTE BRANCH TO MARK UP AND

13    CONCEAL.  THAT ALLEGATION MUST BE TAKEN AS TRUE.  IT'S IN THE

14    AGREEMENTS THAT ARE USED HERE.  SO IF MR. RICH,

15    UNDERSTANDABLY, DOESN'T LIKE IT, BUT THIS ISN'T SUMMARY

16    JUDGMENT.

17         THE COURT:  OKAY.  ANY OTHER ISSUE TO HIGHLIGHT?

18         MR. TELLIS:  I CAN'T REMEMBER --

19         THE COURT:  MR. RICH?

20         MR. RICH:  NOT FROM CITI, YOUR HONOR.

21         THE COURT:  THANK YOU.  THEN LAST --

22         MR. TELLIS:  COULD I COVER SOMETHING THAT YOU COVERED

23    WITH CITI, NAMELY, THE RICO CLAIM?

24         THE COURT:  NO.  DIDN'T HE ARGUE THAT?

25         MR. TELLIS:  I AM JUST DOING THE CLOSING.
```

1      **THE COURT:**  NO.  NICE TRY.

2          **MR. TELLIS:**  MR. PIFKO WOULD LIKE TO ADDRESS --

3      **THE COURT:**  NO.  THIS IS OTHER ISSUES.

4      LET'S SEE.  LONERGAN?

5          **MR. LONERGAN:**  THANK YOU, YOUR HONOR.

6      THE FINAL WRAP-UP POINT THAT WELLS FARGO WOULD LIKE TO

7   ADDRESS IS I THINK AN ALL-ENCOMPASSING ONE IS THERE'S A

8   RHETORICAL QUESTION WE HAVE DANCED AROUND BUT NOT DIRECTLY

9   TALKED ABOUT TODAY WHICH IS WHAT ARE THE PLAINTIFFS REALLY

10  COMPLAINING ABOUT IN THESE CASES --

11     **THE COURT:**  YOU REALLY WANT TO MAKE THAT ARGUMENT?

12  AFTER AN HOUR AND A HALF, YOU WANT TO MAKE THAT ARGUMENT?  ARE

13  YOU SURE?

14         **MR. LONERGAN:**  I AM CERTAIN, YOUR HONOR.

15     **THE COURT:**  OKAY.  YOU HAVE ABOUT TWO MINUTES.

16     **MR. LONERGAN:**  THEY ARE NOT COMPLAINING ABOUT WHETHER

17  THE BANKS CAN CONDUCT PROPERTY INSPECTIONS OR BPO'S.  THEY

18  ADMITTED.  EVEN THOUGH I READ THEIR COMPLAINT AS YOUR HONOR

19  DID AS CHALLENGING FREQUENCY AND THEY TALK ABOUT UNNECESSARY

20  CHARGES AND JUNK FEES AND CONTINUALLY ASSESS, THEY SAID VERY

21  CLEARLY HERE THEY ARE NOT CHALLENGING THAT.

22     THEY CAN'T COMPLAIN ABOUT THE AMOUNT OF THE FEES BECAUSE

23  THEY REALIZE THAT OCC REGULATIONS CONFER THAT DISCRETION ON

24  BANKS TO SET IT.

25     WHAT WE ARE LEFT WITH IS ONE THEORY WHICH IS THAT THERE IS

1    SOMETHING WRONGFUL, WE HAVE TALKED A BIT ABOUT, ABOUT BANKS

2    CHARGING A FEE WHICH IS SOMETHING OTHER THAN WHAT A THIRD

3    PARTY CHARGED TO THE BANKS.

4        THERE IS NO BASIS IN FACT OR LAW FOR THAT CLAIM.

5    PARAGRAPH 14 OF THE STANDARD DEEDS OF TRUST STATES THAT THE

6    LENDER MAY CHARGE FEES FOR SERVICES PERFORMED INCLUDING

7    PROPERTY INSPECTIONS AND VALUATION FEES.

8        IF WELLS FARGO WOULD HAVE, FOR EXAMPLE, NOT HIRED A THIRD

9    PARTY BUT SENT A WELLS FARGO EMPLOYEE OUT TO CONDUCT AN

10   APPRAISAL, AND CHARGED A HUNDRED DOLLARS TO MR. BIAS, WE

11   WOULDN'T BE HERE.  EVERYONE WOULD REALIZE THAT IS A

12   CONTRACTUALLY AUTHORIZED FEE.

13       BUT WHAT THEY ARE ESSENTIALLY ALLEGING AT THE END OF THE

14   DAY IS, AS WAS JUST MENTIONED BY COUNSEL FOR CITI, THAT

15   THERE'S SOMETHING NEFARIOUS AND ILLEGAL AND WRONGFUL ABOUT

16   CHARGING THE FEE THAT IS MORE THAN WHAT A THIRD PARTY CHARGED.

17       THERE IS NO BASIS FOR THAT.  YOU CAN'T SAY IT IS

18   ACTIONABLE BECAUSE YOU CALLED IT OTHER CHARGE.  WE HAVE

19   ADDRESSED THAT.  I WON'T REPEAT IT.  YOU CAN'T SAY IT IS

20   ACTIONABLE TO STATE OR IMPLY THAT THE CHARGE WE'RE ASSESSING

21   IS CONTRACTUALLY AUTHORIZED --

22           **THE COURT:**  YOU HAVE ABOUT 15 SECONDS LEFT.

23           **MR. LONERGAN:**  THAT IS A STATEMENT OF OPINION.

24       AND ON THE MARKUP CLAIM, BOTH MARTINEZ CASE WE TALKED

25   ABOUT NEGATE THAT AND ALSO THE GOMEZ DECISION FROM APRIL IN

1    THE EIGHTH CIRCUIT CLEARLY SAYS THAT YOU CANNOT BE ACTIONABLE

2    TO MARK UP A THIRD-PARTY CHARGE AND MAKE THE VERY POINT THAT

3    COUNSEL MADE, WHICH IS THAT BANKS ARE ALLOWED TO ALSO RECOVER

4    THEIR ADMINISTRATIVE COSTS IN HIRING THIRD PARTIES AND

5    ADMINISTERING THESE SERVICES WHICH ARE NECESSITATED BY

6    BORROWERS TO FOLLOW.  THERE IS NOTHING ACTIONABLE ABOUT THE

7    PRACTICE AT ISSUE.

8         **THE COURT:**  ANYTHING IN RESPONSE?

9         **MR. PIFKO:**  YOUR HONOR, I DON'T WANT TO TAKE TOO MUCH

10   OF YOUR TIME.  I JUST WANT TO SAY THAT THERE ARE NUMEROUS

11   CASES DISCUSSED IN OUR BRIEFS THAT DISCUSS RICO AND ALL THESE

12   SAME ISSUES.  AND, IN FACT, SOME OF THEM ARE ALMOST DIRECTLY

13   ON POINT IN DEALING WITH THE SAME INSPECTIONS.  AND I HAVE

14   READ THE COMPLAINTS IN THOSE CASES, AND OUR COMPLAINT ALLEGES

15   MORE DETAIL THAN ANY OF THOSE OTHER CASES, AND ALL THOSE CASES

16   THE RICO CLAIMS ARE FOUND TO BE SUFFICIENT.  AND SOME OF

17   THEM -- ONE OF THEIR CASES THAT THEY RELY ON, THE ONLY REASON

18   WHY THE COURT DIDN'T ALLOW THE CASE TO GO FORWARD IS BECAUSE

19   THE COURT SAID THAT WHAT THE BANKS NEEDED TO DO WAS CHARGE THE

20   ACTUAL COSTS.  THAT IS WHAT THEY ARE SAYING THEY ARE NOT DOING

21   HERE.  AND THE CHALLENGE THERE WAS THAT THEY WERE CHARGING

22   THESE THINGS AT ALL.  THAT IS NOT OUR CASE AS WE DISCUSSED.

23        MY LAST THING I WANTED TO SAY IS AT BOTTOM, THIS IS A

24   FRAUDULENT CONCEALMENT CASE.  AND AS YOU CAN UNDERSTAND, WHEN

25   WE DON'T KNOW ALL THE DETAILS OF THE FRAUD BECAUSE BY

1    DEFINITION IT IS HIDDEN FROM THE PUBLIC, THERE ARE AMPLE

2    CASES, AND THEY ARE DISCUSSED IN OUR BRIEF, THAT SAY THAT THE

3    STANDARD IS LITTLE MORE RELAXED AND WE SHOULD BE ALLOWED TO

4    GET SOME LEEWAY TO GO FORWARD WITH OUR CASE TO GET SOME

5    DISCOVERY.

6        I THINK IT IS PRETTY CLEAR FROM EVERYTHING THAT HAS BEEN

7    DISCUSSED THAT WE HAVE ALLEGED ENOUGH TO MAKE A PLAUSIBLE

8    CASE.  AND WE ARE GETTING THIS ARGUMENT ON THE ONE HAND, WE

9    HAVEN'T GIVEN ENOUGH DETAIL, BUT THEN WE HAVE A STAY ON

10   DISCOVERY.  SO, I JUST THINK THAT IF YOU LOOK AT THE CASES, I

11   THINK WE HAVE ALLEGED ENOUGH TO MOVE FORWARD TO THE NEXT

12   STAGE.

13            **THE COURT:**  OKAY.  SUBMITTED?

14            **MR. TELLIS:**  SUBMITTED, YOUR HONOR.

15            **MR. OBSTLER:**  SUBMITTED.

16            **MR. RICH:**  THANK YOU FOR YOUR TIME.

17            **THE COURT:**  SO, OKAY.  HAVE A SEAT.  JUST A COUPLE OF

18   WRAP-UP THINGS.

19       ONE, THANK YOU FOR THE ARGUMENT.  I KNOW YOU HAVE ALL BEEN

20   WAITING FOR ME TO PUT THIS ON THE CALENDAR.

21       AND AS I'VE MENTIONED TO YOU I KNOW IN PERSON, NOT ON THE

22   PHONE, I DON'T THINK, WE ARE MOVING AS QUICKLY AS WE CAN TO

23   GET THROUGH THIS BACKLOG.  SO, THIS WAS VERY HELPFUL FOR ME

24   AND I THINK WILL ALLOW ME TO GET THROUGH THIS MORE QUICKLY.

25   SO YOUR ARGUMENT WAS HELPFUL ON ALL SIDES.

1          JUST A COUPLE OF REMINDERS.

2          DO YOU HAVE EXHIBIT A, FRANCES?

3          I DON'T KNOW IF YOU SAW THIS WHEN YOU CAME IN FOR CASE

4     MANAGEMENT, THIS IS THE KIND OF DOCUMENTS THAT WE SOMETIMES

5     RECEIVE FROM FOLKS (INDICATING).

6          MY STANDING ORDER GIVES YOU A LITTLE MORE TIME TO GET ME

7     CHAMBER'S COPIES.  I WOULD APPRECIATE IT IF YOU WOULD MAKE

8     SURE THAT YOUR PARALEGALS THREE-HOLE PUNCH OUR PAPERS ON THE

9     LEFT SIDE.  IT IS REQUIRED BY THE LOCAL RULES, BUT YOU

10    WOULD -- THE AMOUNT OF PAPER THAT WE HAVE BACK THERE IS

11    OVERWHELMING.

12         I DON'T WANT TO ADD COST TO YOUR LITIGATION, I DON'T CARE

13    IF YOU PUT POST-ITS, BUT IT'S REALLY HELPFUL WHEN YOU SEPARATE

14    YOUR EXHIBITS.  THAT DID NOT ALWAYS HAPPEN IN THESE PAPERS

15    THAT WE RECEIVED.  SO, JUST TELL THEM TO PUT A POST-IT AND

16    MARK IT WITH A PEN.  AND THAT, IN AND OF ITSELF, WOULD BE

17    HELPFUL.

18         I DIDN'T HEAR ANY OBJECTIONS TO ANY OF THE REQUESTS FOR

19    JUDICIAL NOTICE, SO I WILL TAKE THAT UNDER ADVISEMENT.

20         WITH RESPECT TO THE PLAINTIFFS' RESPONSE AT DOCKET NUMBER

21    20 IN THE ELLIS V. J.P. MORGAN, THAT BRIEF IS STRICKEN.  THAT

22    IS, THERE WAS -- THE LOCAL RULES ALLOW YOU TO GIVE THE COURT A

23    STATEMENT INDICATING THAT THERE ARE RECENT AUTHORITIES.  IN

24    RESPONSE, THE PLAINTIFFS GAVE ME A PAGE AND A HALF BRIEF WHICH

25    IS NOT APPROPRIATE UNDER THE RULES.  SO, THE DEFENDANTS DID

```
 1   NOT ARGUE, THEY JUST IDENTIFIED THE AUTHORITIES THAT WERE

 2   RECENT.  THE PLAINTIFFS' BRIEF ARGUING THOSE CASES IS

 3   STRICKEN.

 4       I DON'T KNOW WHAT IT SAYS.  I DIDN'T READ IT.  BUT I

 5   EXPECT YOU WOULD HAVE MENTIONED, TO THE EXTENT IT'S RELEVANT,

 6   THE CASE LAW HERE.

 7       THE OTHER THING THAT WE WOULD ASK -- THAT I WOULD ASK IS

 8   SOMETIMES LAWYERS OR THEIR PARALEGALS TAKE THEIR BRIEFS AND

 9   SCAN THEM BEFORE PUTTING THEM ON ECF.  IT'S VERY DIFFICULT FOR

10   US WHEN YOU DO THAT.  YOU REALLY, IF YOU WOULD PLEASE -- AND

11   OUR ECF DESK IS THERE TO HELP YOU GUYS.  I THINK IT WAS

12   ACTUALLY ON THE PLAINTIFFS' SIDE, CONVERT THEM TO PDF IN THE

13   CONTEXT OF DOING THE FILING.  BY DOING THAT WE CAN SEARCH YOUR

14   DOCUMENTS, WE CAN CUT AND PASTE, WE CAN DO ALL SORTS OF THINGS

15   WITH THEM WHICH WE CANNOT DO WHEN YOU SCAN THEM BEFORE FILING

16   THEM.  IT JUST MAKES IT TOUGHER ON US.

17       THOSE ARE JUST MY LITTLE HOUSEKEEPING THINGS.  I DON'T

18   THINK WE HAVE YOU SCHEDULED FOR A CASE MANAGEMENT CONFERENCE,

19   AND THAT -- I AM NOT GOING TO SCHEDULE ANYTHING.  SO TO THE

20   EXTENT THAT I WILL JUST TRY TO GET THESE THINGS OUT, AND ONCE

21   I GET THEM OUT, THEN I WILL PUT YOU ON CALENDAR.

22       OKAY?  ANYTHING ELSE IN TERMS OF HOUSEKEEPING ONLY?

23           MR. TELLIS:  JUST THAT I'M COMPELLED TO SAY I DIDN'T

24   INTEND TO VIOLATE THE RULES, BUT THOSE CASES WEREN'T NEW, THEY

25   WERE PUBLISHED ON WESTLAW.  IT DOESN'T MAKE THEM NEW.
```

1       **THE COURT:**  OKAY.  BUT YOU STILL CAN'T ARGUE THEM.

2       **MR. TELLIS:**  I APPRECIATE THAT.

3       **THE COURT:**  ANYTHING ELSE ON HOUSEKEEPING?

4       **MR. LONERGAN:**  NOTHING FROM WELLS FARGO.

5       **MR. OBSTLER:**  YOUR HONOR, THANK YOU FOR YOUR TIME.

6       **THE COURT:**  SO RUN OUT AND CHECK FLORIDA.

7                        (LAUGHTER)

8       **MR. TELLIS:**  WE ARE FIRED UP AND READY TO GO.

9       **THE COURT:**  THANK YOU.

10              (PROCEEDINGS CONCLUDED AT 4:20 P.M.)

11

12

13

14                   <u>**CERTIFICATE OF REPORTER**</u>

15          I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

16   UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

17   CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

18   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

19

20              *Diane E. Skillman*

21          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

22              TUESDAY, DECEMBER 4, 2012

23

24

25