UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA ELLIS, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>J.P. MORGAN CHASE & CO., et al.,<br><br>    Defendants. | Case No. 12-cv-03897-YGR (JCS)<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO COMPEL**<br><br>Re: Dkt. No. 76 |

## I. INTRODUCTION

In this putative class action, Plaintiffs Diana Ellis, James Schillinger, and Ronald Lazar ("Plaintiffs") request the production of a letter that Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("Chase") sent to Chase's vendors ("Vendors") on December 18, 2013. The Vendors are not parties to this action. This discovery dispute was initially presented to the judge presiding in this case, Judge Gonzalez Rogers, in a joint letter brief dated January 14, 2014. *See* Dkt. No. 69, ¶ IV. Judge Gonzalez Rogers subsequently referred the matter to a magistrate judge. *See* Dkt. No. 74, ¶ 6. Having been referred the matter, this Court ordered additional briefing. *See* Dkt. No. 75. Plaintiffs filed an opening brief, which serves as a Motion to Compel. *See* Dkt. No. 76 ("Mot."). Chase filed an Opposition and Plaintiffs filed a Reply. *See* Dkt. Nos. 79 ("Opp'n"), 81 ("Reply"). With leave of the Court, Plaintiffs also filed a Sur-Reply. *See* Dkt. Nos. 83, 84 ("Sur-Reply"). For the reasons set out below, the Court DENIES Plaintiffs' Motion to Compel.

## II. BACKGROUND

The underlying case challenges Chase's alleged practices of charging borrowers marked-up and unnecessary fees for certain default-related services. *See generally* Compl. These default-

related services—such as property inspections, broker price opinions, title searches, and winterizing—are performed at Chase's request by various third-party vendors, including the Vendors involved in this discovery dispute. *See, e.g.*, *id.* ¶ 3. Plaintiffs allege that Chase's practices are prohibited under its loan agreements with borrowers, and that these practices date back to at least 2001. *See, e.g.*, *id.* ¶ 42; Mot. at 2. Although no third-party vendors are named as defendants, Plaintiffs have alleged that these vendors are part of an "enterprise" under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). *See, e.g.*, *id.* ¶ 106. Upon Chase's motion to dismiss, Judge Gonzalez Rogers dismissed the RICO claims with leave to amend "if future discovery in this action reveals a factual basis for a RICO claim." *See* Dkt. No. 31 at 34, 38.

In early December 2013, Plaintiffs sent Chase twenty-six subpoenas directed to Vendors who performed default-related services for Chase. *See* Decl. of Andrew Cvitanovic in Supp. of Mot. ¶ 2 ("Cvitanovic Decl."); Decl. of Jee Young You in Supp. of Opp'n ¶ 2 ("You Decl."). The subpoenas requested production by early January 2014. You Decl. ¶ 2. Chase's counsel, Jee Young You, declares that in the days immediately following Chase's distribution of the subpoenas, she began to receive calls from Vendors about whether Chase would be taking any action in response to the subpoenas. *Id.*

On December 13, 2013, Chase requested an in-person meet and confer with Plaintiffs to discuss Chase's objections to the subpoenas. *Id.* ¶ 4. The parties met and conferred on December 17, 2013, but they failed to resolve their disputes and decided to raise these disputes with the court in a joint letter brief, which would include Chase's motion for protective order. *Id.* ¶ 5. However, the parties agreed that some categories were not in dispute, and they decided to send a joint letter to the Vendors that would inform them of these undisputed categories ("Joint Letter to Vendors"). *Id.* ¶ 6; Decl. of Mark Pifko in Supp. of Mot. ¶ 4 ("Pifko Decl."). The Joint Letter to Vendors would also defer production of documents responsive to the subpoena categories still in dispute until the court ruled on the joint letter brief. You Decl. ¶ 6; Pifko Decl. ¶ 4. The Plaintiffs prepared the Joint Letter to Vendors, which was sent on January 3, 2014. *See* Cvitanovic Decl. ¶ 3, Ex. 2.

Meanwhile, on December 18, 2013, Chase sent a separate letter to Vendors ("12/18

Letter"). You Decl. ¶ 10. Chase explains that the purposes of the 12/18 Letter were:

> (1) to provide the current status of Chase's efforts to work with Plaintiffs to limit the scope of the Subpoenas, including informing Vendors that a letter would be forthcoming from Plaintiffs regarding an agreement to defer production of certain materials until after a ruling by the Court on Chase's motion for protective order; (2) to remind the Vendors of their contractual obligations arising under the servicing agreements for the production of sensitive NPPI [nonpublic personal information] borrower information to third parties; and (3) to request that the Vendors enter into a written joint defense agreement in light of the shared interests between the parties with regard to the litigation.

*Id.* Chase asserts that the 12/18 Letter is attorney work product prepared for the purposes of the instant litigation, and that it was intended to be confidential. *Id.* ¶ 11. Chase also asserts that it sent the 12/18 Letter in order to further the common interests of Chase and the Vendors in sharing legal advice about the litigation. *Id.* The 12/18 Letter is marked "JOINT DEFENSE COMMUNICATION: JOINT DEFENSE PRIVILEGE APPLIES." *Id.* Chase asserts that the 12/18 Letter was not sent with the intent of obstructing the lawful production of documents in response to the subpoenas. *Id.* As a result of the 12/18 Letter and subsequent telephone conversations, Chase maintains that it has a joint defense agreement ("JDA") with sixteen Vendors. *Id.* ¶ 13.

Plaintiffs were not aware of the 12/18 Letter while it was being drafted, and only learned about it for the first time after it was sent to Vendors. Pifko Decl. ¶ 6. Plaintiffs learned about the 12/18 Letter based on "conversations with numerous [V]endor representatives who had received both [Plaintiffs'] subpoena and the [12/18 Letter] and enclosed [JDA] from Chase's counsel." Cvitanovic Decl. ¶ 4. Plaintiffs assert that if they had known about Chase's plan to send out the 12/18 Letter, they would not have sent out the Joint Letter to Vendors. Pifko Decl. ¶ 6. Plaintiffs assert that by sending out the 12/18 Letter, Chase was "campaigning" Vendors to enter into JDAs, and Chase "induced at least some of the vendors to change their minds to now object and refuse to produce documents until the Court ruled on Chase's motion for protective order." Cvitanovic Decl. ¶ 6. Plaintiffs allege that Chase thus "violated the purpose behind the [Joint Letter to Vendors]." *Id.*

3

On January 6, 2014, Plaintiffs demanded that Chase produce the 12/18 Letter. You Decl. Ex. C. at 5. Chase refused, citing the joint defense privilege, also known as the common interest privilege. *Id.* ¶ 14. Chase also suggested that the parties meet and confer before raising the issue in a joint letter brief to the Court. *Id.* At that point, the joint letter brief, including Chase's motion for protective order, had not yet been filed by the parties. *See id.* Plaintiffs refused to meet and confer, asserting that such a meeting was not necessary because the existing draft joint letter brief encompassed issues related to the subpoenas broadly. *Id.* ¶ 14, Ex. C at 1.

On January 14, 2014, the parties submitted a joint letter brief to Judge Gonzalez Rogers that included the instant issue of the 12/18 Letter, and the issue was subsequently referred to this Court. Dkt. Nos. 69, 74. Pursuant to the Court's order, Chase submitted a copy of the 12/18 Letter for the Court's *in camera* review. *See* Dkt. No. 75.

## III.     DISCUSSION

Plaintiffs seek to compel production of the 12/18 Letter. Chase argues that Plaintiffs have failed to meet their burden to show that the 12/18 Letter is relevant. *See* Opp'n at 13. Chase also argues that the common interest privilege applies here. *See id.* at 1, 8 n.2. As explained in more detail below, the Court DENIES Plaintiffs' Motion to Compel because the 12/18 Letter is irrelevant and because it is protected by the work product and common interest privileges.

### A.     Relevance

The "party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)" of the Federal Rules of Civil Procedure. *Trejo v. Macy's, Inc.*, 5-13-CV-02064-LHK-PSG, 2014 WL 1091000, at *1 (N.D. Cal. Mar. 17, 2014) (quoting *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 3:09-cv-03529-JSW-LB, 2012 WL 5519199, at *3 (N.D. Cal. Nov. 14, 2012) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (noting that "in general the party seeking to compel discovery bears the burden of showing that his request satisfies the relevance requirement of Rule 26.")). Evidence is relevant if it tends to make "more or less probable" a fact "of consequence to the determination of the action." Fed. R. Evid. 401. "In turn, the party opposing discovery has the burden of showing that the discovery should not be allowed" by, for example,

4

asserting that the information is privileged. *See Trejo*, 2014 WL 1091000, at *1 (quoting *Louisiana Pac.*, 2012 WL 5519199, at *3 (citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)).

Here, the Court agrees with Chase's argument that the 12/18 Letter is irrelevant. *See* Opp'n at 13. Plaintiffs do not make any argument as to the relevance of the 12/18 Letter to the issues in this case. For example, Plaintiffs do not assert that the 12/18 Letter contains any evidence that would make it more probable that Chase assessed borrowers' accounts for unnecessary fees for default-related services, or that these fees were deceptively labeled. *See, e.g.*, Compl. ¶¶ 39, 49. The Court has conducted an *in camera* review of the 12/18 Letter, including the attached proposed JDA, and it has not identified any information that is relevant to the underlying claims. To the extent that the 12/18 Letter reveals the possible existence of contractual relationships between Chase and the Vendors during the relevant time period for the underlying action, the Court notes that Plaintiffs are already aware of the possibility of such relationships; Chase sent the 12/18 Letter only to Vendors that were served with Plaintiffs' subpoenas. You Decl. ¶ 11. Thus, the 12/18 Letter is not relevant to the underlying claims. *See, e.g.*, *McLane Foodservice, Inc. v. Ready Pac Produce, Inc.*, CIV. 10-6076 RMB/JS, 2012 WL 1981559 at *7 n.7 (D.N.J. June 1, 2012) (refusing to order production of "documents regarding the drafting of the [Common Interest and Confidentiality] Agreement" because they were irrelevant) (citing *Warren Distributing Co. v. InBev USA LLC*, 2008 WL 4371763, at *4 (D.N.J. September 18, 2008) (refusing to order production of joint defense agreement between defendants because it was irrelevant)).

Because the 12/18 Letter is not relevant as to the underlying claims, Plaintiffs must give another reason for its relevance. The crux of Plaintiffs' argument is that Chase, by sending the 12/18 Letter, "induced at least some of the [V]endors to change their minds to now object and refuse to produce" documents, including documents responsive to categories listed as undisputed in the Joint Letter to Vendors. *See* Cvitanovic Decl. ¶ 6. Essentially, Plaintiffs argue that by sending the 12/18 Letter, Chase violated the purpose of the parties' agreement to send the Joint Letter to Vendors, and Chase obstructed the lawful production of evidence. *See* Mot. at 4. If true, Chase's actions could potentially constitute wrongdoing by Chase. *See, e.g.*, *Navarro v. Gen.*

*Nutrition Corp.*, C-03-0603-SBA-EMC, 2004 WL 2648373, at *22 (N.D. Cal. Nov. 19, 2004) *report and recommendation adopted in part*, C 03-0603 SBA, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) (obstruction of discovery without substantial justification can be the basis of monetary sanctions under Rule 37 of the Federal Rules of Civil Procedure). However, the Court's *in camera* review of the 12/18 Letter reveals that Chase did not request Vendors to refrain from producing the undisputed documents, nor did Chase make any improper or inaccurate representations regarding the subpoenas.

The Court notes that to the extent the 12/18 Letter had any causal effect on Vendors' decisions to object to producing documents in response to the subpoenas, the Court is not convinced that such an effect, in this case, indicates any wrongdoing on the part of Chase. Moreover, the parties agree that the Vendors are entitled to raise any objections to the subpoenas. *See* J. Letter to Vendors at 3 ("Chase defendants agree that the following documents are not in dispute . . . and may be produced by you . . . *subject to any objections you may raise . . . .*") (emphasis added). Indeed, at least one Vendor objected to the subpoena independently, before receiving the 12/18 Letter. *See* You Decl. ¶ 12 (declaring that on or about December 16, 2013, Chase's counsel received a set of objections to the subpoenas from Mortgage Contracting Services, LLC, one of the Vendors).

Further, to the extent that Plaintiffs assert that Chase "campaigned" Vendors to enter into a JDA, Plaintiffs do not explain why seeking participation in a JDA is not allowed. The Court's *in camera* review of the 12/18 Letter did not reveal any improper representations with regards to a potential JDA.

**B.     Attorney Work Product Doctrine**

Even if the Court were to find that the 12/18 Letter was relevant, the Court agrees with Chase that it should still not be produced. The 12/18 Letter is privileged as attorney work product, and this privilege has not been waived.

The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, and it protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." *See In re Grand*

6

1  *Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004)). The Ninth Circuit has adopted the "because

2  of" standard for determining whether a document was prepared "in anticipation of litigation." *In re*

3  *Grand Jury Subpoena*, 357 F.3d at 907. That is,

> a document should be deemed prepared "in anticipation of litigation" and thus eligible for work product protection under Rule 26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Fed. Practice & Proc. § 2024 (2d ed. 1994) . . . The "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]" [*United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)].

*Id.* at 907–908. The work product doctrine exists because "[p]roper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

Here, Chase asserts that the 12/18 Letter is confidential attorney work product. *See* You Decl. ¶ 10 (12/18 Letter was intended to "be confidential and attorney work product prepared for the purposes of this litigation"). The Court has conducted an *in camera* review of the 12/18 Letter and finds that it is attorney work product because it is a document that was prepared by Chase's counsel in anticipation of the underlying litigation. *See* Fed. R. Civ. P. 26(b)(3); *In re Grand Jury Subpoena*, 357 F.3d at 906. The 12/18 Letter is a communication that explains the status of the litigation; specifically, the status of the parties' discussions regarding the scope of the subpoenas, as well as Chase's plan regarding the subpoenas. *See, e.g.*, *Minnesota Sch. Boards Ass'n Ins. Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, 630–31 (N.D. Ill. 1999) (finding that letter from defendant's counsel to defendant's employee regarding status of litigation, as well as letter from defendant's employee to non-party regarding communication with defendant's counsel on status of litigation, were protected by attorney work product privilege); *Pulse Eng'g, Inc. v. Mascon,*

7

*Inc.*, 08-CV-0595-JM(AJB), 2009 WL 3234177, at *2–*3 (S.D. Cal. Oct. 2, 2009) (e-mails from defendant's employee to non-party's employee containing defendant's counsel's thoughts and actions were protected by attorney work product privilege). Chase created the 12/18 Letter as a direct result of the subpoenas that Plaintiffs served upon the Vendors who are potential co-defendants of Chase in this action.[1] The 12/18 Letter would not have been created at all, let alone in its current form, but for the existence of the underlying litigation. Accordingly, considering the totality of the circumstances, the 12/18 Letter is protected by the work product doctrine.

The work product doctrine can be waived, but waiver does not occur simply by virtue of sharing the privileged information with any third party. Waiver occurs only "where disclosure of the otherwise privileged documents is made to a third party, and that disclosure enables an adversary to gain access to the information." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (quoting *United States v. Bergonzi*, 216 F.R.D. 487, 495–96 (N.D. Cal. 2003)) (emphasis added). "The work product privilege provides protection against adversaries and is not as easily waived as the attorney-client privilege." *Nidec*, 249 F.R.D. at 580.

Here, it is apparent that the Vendors are not Chase's adversaries. If anything, the Vendors are potential co-defendants, as discussed above. To the extent that Plaintiffs address the adversary issue, they argue only that the Vendors and Chase do not have a "common interest," except perhaps one that is commercial in nature. *See* Mot. at 6. In any event, the Court is not satisfied that the Vendors are adversaries such that Chase waived the work product privilege by sending them the 12/18 Letter.

---

[1] Plaintiffs contend that the Vendors are not current or threatened defendants in the underlying action. *See* Cvitanovic Decl. ¶ 10. However, Judge Gonzalez Rogers dismissed the RICO claims, which mentioned some of the Vendors by name, with leave to amend. *See* Dkt. No. 31; You Decl. ¶ 13 (listing Vendors with whom Chase now has a JDA) Compl. ¶ 106 (alleging that several Vendors were members of a RICO enterprise). This Court declines to speculate as to whether Plaintiffs will seek to or be able to add the Vendors as defendants to this case. *See also Greer v. Elec. Arts, Inc.*, C10-3601 RS JSC, 2012 WL 299671, at *3 (N.D. Cal. Feb. 1, 2012) (refusing to order production of communications between defendant and former defendant because, at time of communications, the claims against former defendant had been dismissed without prejudice and could have been reasserted; thus, both were "vulnerable to related claims by Plaintiff and therefore any communications between them regarding this matter are subject to the joint defense privilege").

### C. Common Interest Privilege

The 12/18 Letter is also protected by the common interest privilege. The common interest privilege is not a privilege in and of itself, but rather serves as an exception to waiver of the attorney-client or attorney work product privilege. *Nidec*, 249 F.R.D. at 578 (citing *Bergonzi*, 216 F.R.D. at 495–96 (discussing "the common interest exception to waiver of the attorney-client/work product privilege"); *United States v. Gonzalez*, 669 F.3d 974, 977–78 (9th Cir. 2012) ("The Ninth Circuit has long recognized that the joint defense privilege is an extension of the attorney-client privilege.") (internal quotation marks and citations omitted). Because the common interest privilege "is an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance." *Nidec*, 249 F.R.D. at 578.

For the common interest privilege to apply, the party asserting the privilege must show: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *See Bergonzi*, 216 F.R.D. at 495 (citing *In re Mortgage Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997). "The privilege does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects." *Bergonzi*, 216 F.R.D. at 495 (quoting *In re Grand Jury Subpoena Duces Tecum*, 406 F. Supp. 381, 392 (S.D.N.Y. 1975)). However, the parties must have "a common legal, as opposed to commercial, interest." *Nidec*, 249 F.R.D. at 579 (quoting *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995)). "[I]t is clear that no written agreement is required, and that a JDA may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation." *Gonzalez*, 669 F.3d at 979.

As explained above, the 12/18 Letter is privileged as attorney work product. The 12/18 Letter also meets the requirements for protection by the common interest privilege as articulated in *Bergonzi*: the 12/18 Letter is a communication made by Chase to the Vendors in the course of a matter of common interest—*i.e.*, the underlying litigation—and it was intended to initiate collaboration on this matter. *See, e.g.*, *Pulse Eng'g*, 2009 WL 3234177, at *2–*3 (e-mails from

9

defendant's employee to non-party's employee containing defendant's counsel's thoughts and actions were protected by common interest privilege); *Minnesota Sch. Boards*, 183 F.R.D. at 630–31 (finding that letter from defendant's employee to non-party regarding communication with defendant's counsel on status of litigation was protected by common interest privilege). Given the amendable RICO allegations that implicate (albeit do not currently name) the Vendors, there is a legal common interest. *See, e.g.*, *Greer v. Elec. Arts, Inc.*, C10-3601 RS JSC, 2012 WL 299671, at *3 (N.D. Cal. Feb. 1, 2012) (finding sufficient common legal interest between defendant and non-party where plaintiff's dismissal of non-party was without prejudice and plaintiff could have reasserted his claims against non-party).

Plaintiffs insist that the common interest privilege cannot apply to the letters that were sent to Vendors with whom Chase does not have a JDA. *See* Reply at 3 (arguing that "the letters sent to the [ten] vendors . . . with whom Chase has no [JDA] are not protected under the joint defense privilege and should be produced"). In response, Chase argues that no written agreement is required, and that an agreement existed "at the outset." *See* Opp'n at 12 (citing *Gonzalez*, 669 F.3d at 980). *Gonzalez* could be read to imply that an agreement of some kind is always required and that this is important for determining the moment that the privilege arose or ended. *See Gonzalez*, 669 F.3d at 983 ("[W]e remand to the district court for an in camera evidentiary hearing to determine if and when the JDA ended, and when the communication at issue here . . . was made."). However, *Gonzalez* also explains that "a JDA is not necessarily an all-or-nothing proposition," and it can "be implied from conduct and situation," or exist "at the outset between parties and their counsel." *See Gonzalez*, 669 F.3d at 979, 981.

Keeping *Gonzalez* in mind, the Court declines to adopt Plaintiffs' rigid approach, *i.e.*, if there is a JDA, then all communications—including those that occurred before the exact moment of contract formation—are protected, but if there no JDA, nothing is protected. *See, e.g.*, *Costello v. Poisella*, 291 F.R.D. 224, 232 (N.D. Ill. 2013) ("Documents created prior to formation of the common interest still may be protected by that interest; it is the purpose for which the documents were disclosed, and not whether they predated or post-dated the inception of the common interest, which determines whether the common interest doctrine applies.'") (quoting *Dexia Credit Local v.*

10

*Rogan*, 231 F.R.D. 268, 274 n.2 (N.D. Ill. 2004)). *Accord Greer*, 2012 WL 299671, at *3 ("at the time of the communications at issue [non-party] and [defendant] continued to share a common interest because they were both vulnerable to related claims by Plaintiff and therefore any communications between them regarding this matter are subject to the joint defense privilege"). The 12/18 Letter was created at or near the outset of the joint defense relationship. Even at that early stage, all of the elements of the *Bergonzi* test were met. There was a common interest, and the communication was about the interest that the parties shared. Under these circumstances, there was at least an implied common interest privilege as to the first communications seeking to provide early views on matters of common concern and to negotiate a formal JDA. Accordingly, the 12/18 Letter is protected by the common interest privilege.

## IV. CONCLUSION

As explained above, Plaintiffs' Motion to Compel is DENIED because the 12/18 Letter is irrelevant, and because it is protected by the attorney work product and common interest privileges. To the extent that the parties make any other requests in their briefs on this issue, these requests are DENIED as moot.

**IT IS SO ORDERED.**

Dated: April 1, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge

11