UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DIANA ELLIS, ET AL.**,<br><br>  Plaintiffs,<br><br>  v.<br><br>**J.P. MORGAN CHASE & CO., ET AL.**,<br><br>  Defendants. | Case No. 12-cv-03897-YGR<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND** |

In July of 2012, named plaintiffs Diana Ellis, James Schillinger, and Ronald Lazar filed a Class Action Complaint against defendants J.P. Morgan Chase & Co., J.P. Morgan Chase Bank, N.A., and Chase Home Finance LLC (collectively, "Chase" or "defendants"). (Dkt. No. 1.) Plaintiffs allege that Chase engaged in fraudulent practices by charging unnecessary fees in connection with defendants' home mortgage loan servicing businesses. By Order dated June 13, 2013, the Court granted in part and denied in part defendants' First Motion to Dismiss and provided plaintiffs leave to amend their complaint. (Dkt. No. 31 ("Order").) On May 27, 2014, the Court granted plaintiffs' unopposed Motion for Leave to Amend (Dkt. No. 96), and plaintiffs promptly filed their First Amended Complaint ("FAC") (Dkt. No. 97).

Now before the Court is defendants' motion to dismiss plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO") claims. Having carefully considered the papers submitted and the pleadings in this action, oral argument at the hearing held on September 30, 2014, relevant case law, and for the reasons set forth below, the Court hereby **GRANTS** defendants' motion without leave to amend.[1]

---

[1] In conjunction with their motion to dismiss, the Chase defendants filed a request for judicial notice of two documents: excerpts from the hearing on November 11, 2012, and the Ellis

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts alleged in plaintiffs' original complaint are well-known to the parties and are set forth in substantial detail in the Court's previous Order. For the sake of efficiency, the Court will not repeat them here. Rather, because the substance of the instant motion concerns the sufficiency of plaintiff's allegations vis-a-vis their civil RICO claims, the Court will briefly review the deficiencies it identified in plaintiffs' original complaint with respect to only those claims. The Court will then summarize plaintiffs' amended factual allegations, which represent their attempt to cure the identified deficiencies after discovery.

In dismissing plaintiffs' original RICO claims with leave to amend, the Court stated as follows:

> [. . .] Plaintiffs have not sufficiently identified the structure of the enterprise, nor that Defendants have engaged in enterprise conduct distinct from their own affairs. Throughout the Complaint, Plaintiffs allege that the enterprise includes "subsidiaries," "affiliated companies," "intercompany divisions," and third-party property preservation vendors and real estate brokers. (Compl. ¶¶ 2, 4, 9, 33, 46, 106.) Defendants "order[ed] default-related services from their subsidiaries and affiliated companies, who, in turn, obtain[ed] the services from third-party vendors." (Id. ¶ 40.) These vendors charged Defendants for services, but Defendants marked-up the fees in excess of any amounts actually paid. (Id.) Defendants "provided mortgage invoices, loan statements, payoff demands, or proofs of claims to borrowers" to "demand" payment of fees, but these documents "fraudulently concealed" the true nature of the fees, some of which were "never incurred" at all by Defendants. (Id. ¶¶ 93, 112, 114 & 143.) Defendants also falsely represented to borrowers in statements and other documents that the fees were "allowed by [their] Note and Security Instrument." (Id. ¶¶ 53 & 115.) Plaintiffs allege that the enterprise's common purpose was to "limit[ ] costs and maximiz[e] profits by fraudulently concealing assessments for unlawfully marked-up and/or unnecessary third party fees for default-related services on borrowers' accounts." (Id. ¶ 107.)
>
> These allegations stand in contrast to those alleged in a related action, *Bias, et al. v. Wells Fargo & Co., et al.*, Case No. 12–cv–00664–YGR. Here, Plaintiffs repeatedly state that subsidiaries, affiliated companies, and intercompany divisions are members of

---

Deed of Trust.  (Dkt. No. 102.)  The Court did not need to consider these documents in resolving the motion to dismiss.  The request for judicial notice is **DENIED** as moot.

> the enterprise. However, Plaintiffs fail to specifically identify these members or to provide any factual allegations to detail their involvement or make their involvement in the enterprise plausible. Plaintiffs vaguely allege that unidentified subsidiaries, affiliated companies, and/or intercompany divisions order default-related services from third-party vendors and brokers. No specific factual allegations explain how this occurs, and without this information, the Court cannot ascertain the structure of the alleged enterprise. Nor can the Court determine whether Defendants have engaged in conduct of the enterprise, as opposed to their own affairs.
>
> In addition, the Court notes that the "common purpose" here is the same as that alleged against Wells Fargo in *Bias*—to limit costs and maximize profits by fraudulently concealing marked-up and/or unnecessary third party fees. However, an associated-in-fact enterprise must consist of "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 552 (quoting *Turkette*). Plaintiffs' Complaint lacks factual allegations that show that the unidentified enterprise members associated together with Defendants for that alleged common purpose. This is unlike in *Bias*, where plaintiffs alleged that Wells Fargo had associated with third party Premiere Asset Services for a common purpose.

*Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1089-90 (N.D. Cal. 2013).

In their FAC, plaintiffs have made adjustments to their original allegations. Notably, plaintiffs no longer appear to allege improper fee mark-ups as a basis for their RICO claims.[2] Instead, plaintiffs contend only that defendants have engaged in charging class members for unnecessary default-related services, such as property inspections.

With respect to the existence of a RICO association-in-fact enterprise, plaintiffs allege that the Chase entities, their "property preservation" vendors, and the real estate brokers "formed an enterprise and devised a scheme to defraud borrowers and obtain money from them by means of false pretenses." (FAC ¶ 44.) In particular, plaintiffs allege (i) J.P. Morgan Chase & Co., (ii) J.P. Morgan Chase Bank, N.A., (iii) Chase Home Finance LLC, including their directors, employees, and agents, along with (iv) "property preservation" vendors – including Safeguard

---

[2] Although the FAC still contains errant and conclusory references to mark-ups, the substantive allegations that are offered in support of plaintiffs' RICO claim turn almost exclusively on allegedly unnecessary property inspections.

Real Estate Properties, LLC d/b/a Safeguard Properties, LLC ("Safeguard"), Mortgage Contracting Services, LLC ("MCS"), and LPS Field Services, Inc. ("LPS") – and (iv) the real estate brokers who provide BPOs for Chase, "together conducted the affairs" of this enterprise. (*Id*. ¶ 108.) Plaintiffs specifically allege the enterprise is an "ongoing, continuing group or unit of persons and entities associated together for the common purpose of routinely, and repeatedly, ordering, conducting, and assessing borrowers' accounts for unnecessary default-related services." (*Id*. ¶ 109.) Although the members of the Chase enterprise participate in the enterprise, plaintiffs allege that they nonetheless "have an existence separate and distinct from the enterprise. The Chase Enterprise has a systematic linkage because there are contractual relationships, agreements, financial ties, and coordination of activities between defendants, the real estate brokers who perform BPOs, and the vendors that perform property inspections, including Safeguard, MCS, and LPS." (*Id*. ¶ 110.)

The crux of plaintiffs' theory concerns the Chase executives' alleged decision to institute a programmed automatic loan management system that performs functions automatically in the event a loan falls into default. The enterprise allegedly operates according to policies and procedures developed and established by the Chase executives. (*Id*. ¶ 111.) These executives "control and direct" the enterprise and use the other members of the enterprise to carry out Chase's fraudulent scheme. (*Id*.) On a nightly basis, Chase's automated loan management system reviews all loans and then orders inspections of the delinquent properties, without any human intervention. (*Id*. ¶ 113.) Upon receiving the property inspection orders, third-party vendors conduct inspections of the delinquent properties and generate a report to upload to Chase's database. (*Id*. ¶ 114.) After a property inspection is completed by the vendors, borrowers are assessed fees for the inspection. (*Id*. ¶ 115.) Chase cryptically identifies these fees on borrowers' monthly statements as "Miscellaneous Fees" or "Corporate Advances." (*Id*.)

In the pending Motion, defendants make only one argument: that plaintiffs have again failed to state a claim upon which relief can be granted for defendants' alleged RICO violations. Plaintiffs, naturally, oppose. The Court now addresses this claim.

4

## II. FAILURE TO STATE A CLAIM

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

### A. Substantive RICO Violation: 18 U.S.C. Section 1962(c) ("Section 1962(c)")

Under Section 1962(c), "[i]t shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). As explained in this Court's original Order, to state a claim, plaintiffs must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (*en banc*).

Section 1962(c) requires plaintiffs to allege two distinct entities: a "person" and an "enterprise." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 166 (2001). Section 1962(c) liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 163 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). An enterprise that is not a legal entity, such as a corporation, is commonly known as an "association-in-fact" enterprise. *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 871 F. Supp. 2d 933, 939 n.6 (N.D. Cal. 2012). The Ninth Circuit holds "an association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Odom*, 486 F.3d at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *Boyle v. United States*, 556 U.S. 939, 944 (2009). To show an association-

in-fact enterprise, plaintiffs must allege facts to establish three elements: (1) a common purpose of engaging in a course of conduct; (2) an ongoing organization, either formal or informal; and (3) facts that provide sufficient evidence the associates function as a continuing unit.[3]  *Odom*, 486 F.3d at 553 (citing *Turkette*, 452 U.S. at 583).

Defendants contend that plaintiffs' RICO claims should be dismissed for two independent reasons: (1) failure to allege an association-in-fact enterprise insofar as the FAC lacks allegations that members of that enterprise shared a common purpose, and (2) failure to establish that the conduct giving rise to the alleged enterprise is distinct enterprise conduct.  Because the Court finds that plaintiffs have again failed to allege an association-in-fact enterprise, it necessarily finds that plaintiffs have failed to allege distinct enterprise conduct.

### 1. Common Purpose

As stated above, the Ninth Circuit holds "an association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  *Odom*, 486 F.3d at 552 (quoting *Turkette*, 452 U.S. at 583); *Boyle*, 556 U.S. at 944.  Defendants contend that the FAC fails to provide sufficient facts to substantiate the common purpose alleged therein, especially vis-a-vis the non-Chase members of the enterprise.  Plaintiffs contend that "[m]embers of an enterprise need only have a purpose that is in common – there is no requirement that the common purpose be fraudulent."  (Dkt. No. 103 at 2 (Opposition).)

The Court finds that plaintiffs have not sufficiently identified the existence of an association-in-fact enterprise united for the as-alleged common purpose.  While it is true an enterprise only needs to share a common purpose and that the purpose does not need to be fraudulent, here the alleged common purpose at issue is fraudulent in nature.  The FAC alleges specifically that the Chase entities, their "property preservation" vendors, and the real estate brokers "formed an enterprise and ***devised a scheme to defraud borrowers and obtain money from them by means of false pretenses***."  (FAC ¶ 44 (emphasis supplied).)  The FAC further alleges that the members of the enterprise associated for the common purpose of routinely, and

---

[3] Because the Court finds the "common purpose" element not satisfied, it does not consider the other elements for an association-in-fact enterprise.

repeatedly, ordering, conducting, and assessing borrowers' accounts for **unnecessary default-related services**." (*See id.* ¶ 109 (emphasis supplied).) That the members of the enterprise "associated together for the common purpose" of executing and charging for "unnecessary" property inspections carries with it an implication of fraudulent intent on the part of the members of the enterprise – the Chase entities, the real estate brokers, and the inspection vendors. Fairly construed, the FAC alleges that the enterprise was formed for the common purpose of effectuating the fraud.[4] Accordingly, plaintiffs' protestations that there need not be a fraudulent purpose, while an accurate statement of the legal doctrine, is inapposite. *Cf. Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 992 (C.D. Cal. 2008) ("Plaintiffs need not allege [the vendors] shared Defendant's fraudulent purpose in order for there to be sufficient allegation of an association-in-fact. To require a common fraudulent purpose would essentially require each member of the enterprise to possess a fraudulent intent"); *see also United States v. Feldman*, 853 F.2d 648, 657-59 (9th Cir. 1988) (finding a criminal RICO enterprise even though no other members of the enterprise shared the defendant's *mens rea*).

Leaving aside the requirement under Federal Rule of Civil Procedure 9(b) that allegations of fraud are subject to a heightened pleading standard,[5] the Court finds that plaintiffs have failed to

---

[4] Representations by counsel at the hearing on this motion underscore the fraudulent nature of the common purpose alleged. At the hearing on this motion, plaintiffs' counsel paradoxically argued that the inspection vendors were both "unwitting" enterprise members *and* that they possessed intent to effect the common, fraudulent purpose. To that end, he stated that although they have not been named as defendants in this and the related *Stitt v. Citibank* action, Case No. 12-3892, "what we are alleging is that these unwitting property preservation vendors although **clearly knew they were probably doing unnecessary, you know,** [sic] **property inspections every month because nobody was looking at them**." (Tr. at 25:10-14 (emphasis supplied).)

[5] Because the FAC alleges that the enterprise members associated for a common fraudulent purpose, plaintiffs must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Thus, plaintiffs must allege "the who, what, when, where, and how" of the alleged fraudulent conduct that gives rise to their civil RICO fraud claims, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (*en banc*). Although plaintiffs have met this standard with respect to the named Chase defendants' fee processing actions (alleging, for example, specifics concerning Chase's computer programming, the standardization of inspections, that no person oversaw the requests for such inspections or reviewed them, and that such charges were identified cryptically on borrowers' billing statements), they have not alleged sufficiently facts supporting the formation or existence

offer sufficient factual allegations in support of their contention that the enterprise formed for the alleged common purpose even under the pleading standard of Federal Rule of Civil Procedure 8. Plaintiffs have offered no factual allegations to render plausible their claim that the enterprise members actually knew of the alleged fraudulent common purpose, or that they "formed" the enterprise to participate in performing "unnecessary property inspections" – much less that they "devised a scheme to defraud borrowers . . . by means of false pretenses." (*Cf.* FAC ¶¶ 44, 109.) Indeed, aside from these conclusory allegations, the FAC is notably lacking in the way of substantive allegations concerning the third-party enterprise members. Instead, the FAC focuses entirely on the Chase defendants' intent, knowledge, and actions. For example, it was Chase that assessed fees for inspections, allegedly concealed the true nature of those fees, and that undertook to implement a computerized automated mortgage loan management system that requested property inspections that were allegedly unnecessary. (FAC ¶¶ 46-52; 112-120.) In contrast, what factual allegations the FAC does offer relating to the non-defendant enterprise members demonstrate only that the third-party vendors had service contracts with the Chase entities and performed inspections, regardless of their necessity to Chase, according to those contracts. Thus, plaintiffs' FAC lacks allegations to support plaintiffs' conclusory assertion that the Chase defendants and their property inspection vendors shared the alleged, and fraudulent, common purpose of the enterprise.

     Again, the allegations offered by plaintiffs here stand in stark contrast to the *Bias* case, in which a common purpose was alleged sufficiently. There, the alleged "common purpose" was similarly fraudulent: to "limit[] costs and maximiz[e] profits by fraudulently concealing assessments for unlawfully marked-up fees for default related services on borrowers' accounts." *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 941 (N.D. Cal. 2013). But in *Bias*, plaintiffs alleged that defendant Wells Fargo associated with a member of the enterprise for that common

---

of the allegedly fraudulent common purpose with respect to other enterprise members. Indeed, the FAC offers nothing more than the limited, conclusory allegation that such third parties "devised a scheme to defraud [. . .]" and shared the common purpose to charge borrowers for "unnecessary default-related services." (FAC ¶¶ 44, 105, 109.)

8

purpose, and provided facts to render plausible its allegation that the enterprise member in fact shared that common, fraudulent purpose. Specifically, Wells Fargo was alleged to have established an "inter-company division" called Premiere Asset Services to "generate revenue and undisclosed profits for Defendants" because "it appear[ed] as though [it] [wa]s an independent company." *Id.* at 924 (citations omitted). Premiere, a member of the enterprise, then allegedly created fictitious invoices to substantiate fees that Wells Fargo relied on to further the scheme. *Id.* at 941. Thus, in *Bias*, the complaint alleged sufficiently that a member of the enterprise shared the stated, and fraudulent, common purpose, and provided factual allegations to render this theory plausible. Indeed, there the Court found that factual allegations established that Premiere "served a critical role" in the allegedly fraudulent scheme, one that was separate and distinct from Premiere's own affairs. *Id.* at 941.[6]

Here, unlike *Bias*, plaintiffs do not allege facts to support their claim that the third-party vendors share Chase's fraudulent purpose of performing unnecessary property inspections, or that these entities have in any way participated in the development of a scheme to achieve this end. As stated above, the FAC alleges merely that the property inspection vendors acted pursuant to their ordinary contractual obligation to perform inspections when Chase sent a request. Accordingly, as the Court noted in its prior Order, plaintiffs complaint remains deficient in terms of factual allegations that show that the non-Chase enterprise members *associated together* with the Chase defendants *for* the alleged common purpose. *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1089 (N.D. Cal. 2013).

Thus, for the reasons stated above, having construed plaintiffs' allegations in the light most

---

[6] The same distinction applies to the recent decision in *Vega v. Ocwen*, Case No. 14-4408, Dkt. No. 50, in which the district court noted specifically that there, defendants were alleged to have "funneled work" to one of their wholly owned subsidiaries named Altisource (which entity was also a member of the association-in-fact enterprise), and Altisource then ordered the allegedly unnecessary property inspection. The court in *Vega* further noted that certain individuals "still own significant shares of Defendants and Altisource, and that regulators have raised concerns about self-dealing." (Vega Dkt. No. 50 at 11-12.) Thus, the factual allegations underlying the court's finding that Vega had alleged sufficiently a RICO enterprise were more akin to those in *Bias* than those presented here. Indeed, the district court specifically cited to *Bias* in support of its decision not to dismiss Vega's RICO claim. (*Id.*)

favorable to them, the Court finds that plaintiffs have again failed to sufficiently allege that the members of the association-in-fact enterprise shared a common purpose.

### 2. Distinct Enterprise Conduct

As stated above and in the Court's original Order, Section 1962(c) requires plaintiffs to allege two distinct entities: a "person" and an "enterprise." *Cedric Kushner Promotions*, 533 U.S. at 161, 166. The Supreme Court noted that this distinctiveness requirement was consistent with a prior holding that liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 163 (quoting *Reves*, 507 U.S. at 185).

For the reasons stated above, plaintiffs have failed to allege sufficiently the existence of an association-in-fact enterprise insofar as the FAC lacks factual allegations that, if true, establish that the enterprise is comprised of members associated together for a common purpose. Therefore, plaintiffs cannot, as a logical matter, be found to have alleged distinct enterprise conduct.

### B. Conspiracy to Violate RICO: 18 U.S.C. Section 1962(d) ("Section 1962(d)")

Under Section 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). The conspiracy defendant "must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). The defendant must also have been "aware of the essential nature and scope of the enterprise and intended to participate in it." *Id.* (quoting *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)).

In *Howard*, the Ninth Circuit affirmed the "district court['s holding] that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." *Id.*; *see Turner v. Cook*, 362 F.3d 1219, 1231 n.17 (9th Cir. 2004) (affirming dismissal of RICO claims, including conspiracy, where plaintiffs failed to allege, among other things, acts of mail fraud, wire

fraud, and pattern of racketeering activity).

Accordingly, because plaintiffs have again failed to allege the requisite substantive elements of RICO under Section 1962(c), their claim for conspiracy under Section 1962(d) also fails.

### III. CONCLUSION

For the reasons set forth above, plaintiffs have failed to allege an association-in-fact enterprise and defendants' motion to dismiss is **GRANTED**. At this late juncture, near the close of discovery, no leave to amend shall be permitted. Although plaintiffs have had well over a year to engage in discovery intended to uncover facts supporting their RICO theory, the FAC offers even less in the way of substantive allegations of fraud and wrongdoing than did the original complaint. For example, the FAC's substantive allegations pertaining to plaintiffs' RICO claim omits entirely one of plaintiffs' previous theories for RICO liability – marked up fees. (*See* note 2, *supra*.) Moreover, plaintiffs no longer allege that Chase engaged in unnecessary inspections in order to capture additional undisclosed profits; the FAC does not allege that the Chase entities generated any revenue from the allegedly unnecessary inspections or BPOs. (*Compare* Compl. ¶¶ 4, 9, 39 *with* FAC ¶¶ 4, 9, 39.)

Accordingly, plaintiffs' RICO claims are **DISMISSED** without leave to amend.

This terminates Docket No. 100.

**IT IS SO ORDERED**.

Date: **January 6, 2015**

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE