Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Michael Isaac Miller (SBN 266459)
imiller@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:   (818) 839-2333
Facsimile:   (818) 986-9698

Attorneys for Plaintiffs
DIANA ELLIS, JAMES SCHILLINGER,
and, RONALD LAZAR, individually, and on
behalf of other members of the public
similarly situated

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA ELLIS, JAMES SCHILLINGER, and, RONALD LAZAR, individually, and on behalf of other members of the public similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>J.P. MORGAN CHASE & CO., a Delaware corporation, J.P. MORGAN CHASE BANK, N.A., a national association, and CHASE HOME FINANCE, LLC, a Delaware limited liability company,<br><br>Defendants. | Case Number: 4:12-cv-03897-YGR<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          June 7, 2016<br>Time:          2:00 PM<br>Location:     Oakland Division<br>                   1301 Clay Street<br>Judge:        Hon. Yvonne Gonzalez Rogers<br><br>Trial Date:   None Set |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ................................................................................................. 1

II.     DEFENDANTS CANNOT MEET THEIR BURDEN UNDER RULE 56(c) ......... 2

III.    DEFENDANTS FAIL TO PRESENT ANY BASIS TO GRANT
        SUMMARY JUDGMENT ON PLAINTIFFS' UNJUST ENRICHMENT
        CLAIMS ............................................................................................................... 3

        A.      Plaintiffs Lazar and Schillinger Never Should Have Been Charged for
                Property Inspection Fees Because they Were Not in "Default on their
                Repayment Obligations" During the Relevant Time Period ......................... 3

        B.      Defendants' *Post-hoc* "Charge-by-Charge Analysis" Is Both
                Misleading and Irrelevant and Lacking in Factual Support ........................... 4

        C.      Plaintiffs' Unjust Enrichment Claims Are not Barred by Mortgages ............. 6

        D.      Defendants' "Out-of-Pocket" Reimbursement Argument Fails .................... 8

        E.      Plaintiffs Lazar and Schillinger Conferred a "Benefit" on Defendants ........ 10

        F.      Property Inspection Fees Are *Not Per Se* "Reasonable or Appropriate"
                As a Matter of Law ...................................................................................... 11

        G.      Plaintiffs Are *Not* Attempting to Improperly Enforce the Fannie Mae
                Servicing Guides ......................................................................................... 13

IV.     SUMMARY JUDGMENT ON PLAINTIFFS' FRAUD AND UCL CLAIMS
        IS NOT WARRANTED ...................................................................................... 16

V.      SUMMARY JUDGMENT ON PLAINTIFF ELLIS'S ROSENTHAL ACT
        CLAIM IS NOT WARRANTED .......................................................................... 20

VI.     DEFENDANTS AGAIN FAIL TO ESTABLISH THAT PLAINTIFFS'
        CLAIMS ARE PREEMPTED .............................................................................. 22

        A.      Defendants' Previously Asserted NBA and OCC Preemption
                Arguments Were Rejected by the Court, and Therefore, they Are
                Precluded by the Law-of-the-Case Doctrine ................................................ 22

        B.      The Home Owners' Loan Act Does Not Preempt Plaintiffs' Claims ........... 24

VII.    CONCLUSION ................................................................................................... 25

i                          Case No.: 4:12-cv-03897-YGR

# <u>TABLE OF AUTHORITIES</u>

CASE                                                                                                    PAGE(S)

*American Movie Classics v. Rainbow Media Holdings*,
   508 Fed. Appx. 826 (10th Cir. 2013)................................................................ 8, 9

*Anderson v. Liberty Lobby, Inc*.,
   477 U.S. 242 (1986)................................................................................ 2, 3

*Arevalo v. Bank of America Corp.*,
   850 F. Supp. 2d 1008 (N.D. Cal. 2011)................................................... 23

*Azzini v. Countrywide Home Loans*,
   2010 WL 962856 (S.D. Cal. Mar. 15, 2010) ........................................... 20

*Bennett v. Visa U.S.A. Inc.*,
   198 S.W.3d 747 (Tenn. Ct. App. 2006)............................................. 8, 9, 11

*Celotex Corp v.Catrett*,
   477 U.S. 317 (1986).................................................................................. 2

*Cirino v. Bank of America*,
   Case No. 2:13-cv-08829-PSG-MRW, Dkt. 41 (C.D. Cal. Oct. 1, 2014) ............... 13, 14

*In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practice Litig.*,
   601 F. Supp. 2d 1201 (S.D. Cal. Feb. 5, 2009) ......................................... 6

*Ellis v. J.P. Morgan Chase & Co.*,
   950 F. Supp. 2d 1062 (N.D. Cal. 2013)......................................... 6, 10, 22

*Ellis v. J.P. Morgan Chase & Co.*,
   Case No. 4:12-cv-3897-YGR, Dkt. 100, 101 (N.D. Cal. July 30, 2014) ..................... 14

*Esquivel v. Bank of America*,
   2013 WL 5781679 (E.D. Cal. Oct. 25, 2013)............................................ 20

*Fenning v. Glenfed, Inc.*,
   40 Cal. App. 4th 1285 (1995) ........................................................... 24, 25

*Freeman Indus., LLC v. Eastman Chemical Co.*,
   172 S.W.3d 512 (Tenn. 2005) ............................................................... 11

*Ghirardo v. Antonioli*,
    14 Cal. 4th 39 (1996) ........................................................................ 10

*Gibson v. World Savins & Loan Assn.*,
    103 Cal. App. 4th 1291 (2002) .................................................... 24, 25

*Gumbs v. Litton Loan Servicing*,
    2010 WL 1992199 (E.D. Cal. May 13, 2010) ................................... 21

*Gutierrez v. Wells Fargo Bank, N.A.*,
    704 F.3d 712 (9th Cir. 2012) ............................................................ 23

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
    61 Cal. 4th 988 (2015) ................................................................... 7, 26

*Hirsch v. Bank of America, N.A.*,
    107 Cal. App. 4th 708 (2003) ............................................................. 7

*Huy Thanh Vo. v. Nelson & Kennard*,
    931 F. Supp. 2d 1080 (E.D. Cal. 2013) ........................................... 21

*Jefferson v. Chase Home Finance*,
    2008 WL 1883484 (N.D. Cal. Apr. 29, 2008) ................................. 23

*Komarova v. National Credit Acceptance, Inc.*,
    175 Cal. App. 4th 324 (2009) .......................................................... 21

*Lectrodryer v. SeoulBank*,
    77 Cal. App. 4th 723 (2000) ............................................................... 8

*Miller v. Yokohama Tire Corp.*,
    358 F.3d 616 (9th Cir. 2004) ...................................................... 16, 17

*Siegel v. Amer. Savings & Loan Assn.*,
    210 Cal. App. 3d 953 (1989) ............................................................ 25

*Sklodowski v. Countrywide Home Loans, Inc.*,
    358 Ill. App. 3d 696 (2005) ........................................................ 14, 15

*Stegall v. Citadel Broad. Co.*,
    350 F.3d 1061 (9th Cir. 2003) ............................................................ 3

*Stitt v. Citibank, N.A.*,
    942 F. Supp. 2d 944 (N.D. Cal. 2013) ............................................. 13

PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Stitt v. Citibank, N.A.*,
   Case No. 4:12-cv-3892-YGR, Dkt. 70 (N.D. Cal. July 18, 2014) ................................ 14

*Susilo v. Wells Fargo Bank, N.A.*,
   796 F. Supp.2d 1177 (C.D. Cal. 2011) ................................................................... 24

*In re TFT-LCD (Flat Panel) Antitrust Litg.*,
   2011 WL 4501223 ................................................................................................... 9

*U.S. v. Alexander*,
   106 F.3d 874 (9th Cir. 1997) ......................................................................... 23, 24

*Valverde v. Wells Fargo Bank, N.A.*,
   2011 WL 3740836 (N.D. Cal. 2011) .................................................................... 24

*Vega, et al. v. Ocwen Financial Corp., et al.*
   (9th Cir. Case No. 15-55885)................................................................................ 11

*Vega v. Ocwen*,
   2015 WL 3441930 (C.D. Cal. May 28, 2015)....................................................... 11, 16

*Walker v. Countrywide Home Loans, Inc.*,
   98 Cal. App. 4th 1158 (2002) .................................................................. 12, 13, 16

*Walters v. Fidelity Mortg. of CA*,
   730 F. Supp. 2d 1185 (E.D. Cal. 2010) ................................................................ 20

*Young v. Wells Fargo*,
   671 F. Supp. 2d 1006 (S.D. Iowa 2009) .......................................................... 13, 23

**Statutes**

California Civivl Code § 1788.2 .......................................................................... 20

California Civil Code §1788.30 ........................................................................... 21

12 Code of Federal Regulations section 545.2 ................................................... 24

12 Code of Federal Regulations sections 560.2................................................... 24

## I.    INTRODUCTION

Defendants' motion falls far short of satisfying the high burden required for summary judgment.  As a preliminary matter, Defendants do not and cannot establish that Plaintiffs' claims are barred as a matter of law or that each of the material facts contained in their Separate Statement are undisputed.  Moreover, Plaintiffs raise additional disputed material facts that also compel denial of Defendants' motion.

Critically, in moving for summary judgment, Defendants ignore the fact that Plaintiffs Lazar and Schillinger were not in default at the time the property inspections at issue were ordered and charged to their accounts, and, therefore, there was no basis for Defendants for charge for property inspections in the first place.  Defendants also erroneously claimed as "undisputed"  numerous facts concerning the circumstances giving rise to the individual property inspections at issue.  In particular, Defendants claim that the Court may grant their motion because the following facts are "undisputed": (1) that the inspections at issue were permissible under the terms of the Defendants' Uniform Mortgage Contracts; (2) Plaintiffs incurred delinquencies and were unwilling to commit to bringing their loans current; and (3) the property inspections at issue were ordered by Defendants as a result of such delinquencies and Plaintiffs' lack of commitment to cure.  However, as discussed in Plaintiffs' Responsive Separate Statement of Undisputed Material Facts, the evidence demonstrates Defendants never even took Plaintiffs' alleged delinquencies and lack of commitment into consideration before ordering the inspections, opting instead to employ a system that eschewed all of the legally required considerations.

Additionally, to defeat Plaintiffs' claims, Defendants curiously rely on rehashed arguments concerning the viability of Plaintiffs' unjust enrichment claims, and federal preemption, which were previously considered and rejected by this Court.  Defendants' motion  also takes the Court through a clever "charge-by-charge" analysis of the property inspection fees at issue to demonstrate that those charges were "reasonable or appropriate" to protect lenders' interests in Plaintiffs' properties.  But, Defendants' after-the-fact analysis is illusory because they did not take these alleged circumstances into

consideration when they were required to do so, *before* charging Plaintiffs' accounts for property inspection fees.  In short, Defendants now try to satisfy their burden by attempting to prove what they *would have found* had they done what they were supposed to do prior to charging Plaintiffs' accounts for property inspection fees.  In any event, rather than supporting their arguments, Defendants' flawed demonstration shows that Defendants were capable of considering the individual circumstances of each loan prior to charging for property inspection fees, but they failed to do so.

Finally, Defendants' suggestion that Chase's "policies and procedures with respect to charging borrowers for property inspections are designed to prevent Chase from charging for inspections if the borrower's loan agreements prohibit such charges" and "go through multiple levels of review intended to confirm that [its] charging practices align with the underlying loan documents," is belied by the fact that ███████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████

## II.   DEFENDANTS CANNOT MEET THEIR BURDEN UNDER RULE 56(c)

As the moving party, Defendants bear the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *See Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986).  Under Rule 56(c),[1] Defendants can only satisfy that burden by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.  Here, Defendants have not done so.  If, and only if, Defendants meet their initial burden, Rule 56(e) requires Plaintiffs, the nonmoving party, to "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *See id.* at 324.  A genuine dispute as to a material fact exists "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] All citations to the Rules are to the Federal Rules of Civil Procedure, unless otherwise noted.

To this end, "'the evidence of the [Plaintiffs, the nonmoving] party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in the light most favorable to'" the Plaintiffs. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (quoting *Lindahl v. Air France*, 930 F.2d 1434, 1437 (9th Cir. 1991)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## III. DEFENDANTS FAIL TO PRESENT ANY BASIS TO GRANT SUMMARY JUDGMENT ON PLAINTIFFS' UNJUST ENRICHMENT CLAIMS

### A. Plaintiffs Lazar and Schillinger Never Should Have Been Charged for Property Inspection Fees Because they Were Not in "Default on their Repayment Obligations" During the Relevant Time Period

As a threshold issue, Defendants' motion must be denied with respect to Plaintiffs Lazar and Schillinger because Defendants cannot make even the most basic threshold showing. Specifically, before even analyzing whether it was "reasonable or appropriate" for Defendants to charge for property inspection fees, Defendants must establish that Plaintiffs were in default. Here, with respect to Plaintiffs Lazar and Schillinger, who were not in default during the relevant time period, Defendants had no right to charge them for property inspection fees.

The declaration submitted by Defendants in support of their motion establishes that Defendants are only permitted to charge for property inspection fees if Plaintiffs are in "default[] on [their] repayment obligations." (Dkt. 243-38, Declaration of Joseph G. Define, Jr. in Support of Defendants' Opposition to Class Certification ("Devine Decl.") at ¶¶ 41 and 72.) However, Plaintiffs Lazar and Schillinger were not in "default[] on [their] repayment obligations."

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Accordingly, Defendants' motion must be denied because Defendants have not and cannot meet their burden to establish the requisite factual predicate necessary for them to charge for property inspections in the first place.

**B.    Defendants' *Post-hoc* "Charge-by-Charge Analysis" Is Both Misleading and Irrelevant and Lacking in Factual Support**

After establishing that Plaintiffs were in default on their repayment obligations, Defendants then must establish, both factually and legally, that all of the property inspection fees charged to Plaintiffs' accounts were "reasonable or appropriate." Defendants have not, and for purposes of summary judgment, cannot make that showing.

In particular, to support their motion, Defendants present a "charge-by-charge analysis" purportedly demonstrating the reasonableness or appropriateness of the property inspection fees charged on Plaintiffs' accounts.  (MSJ at 11-13.)  Notably, absent from Defendants' analysis, however, is any evidence to show that Defendants performed such analysis before charging Plaintiffs for the property inspection fees.  Instead, Defendants misleadingly *intimate* that the analysis they now, for the first time, provide was conducted contemporaneously as part of their decision making process.  But, there are no facts to support Defendants' suggestion.  Instead, the truth is that *Defendants do not and cannot actually assert* that this analysis (or anything similar) was ever performed at, or before, the time when the property inspection fees were assessed or collected, as Plaintiffs contend was required.  Thus, with respect to evaluating Plaintiffs' claims, Defendants'

*post-hoc* analysis is of no moment.  A determination of whether a charge is reasonable or appropriate must be judged *as of the time the decision was made* by Defendants to assess the charge, not years later during litigation.

Defendants point to the status of Plaintiff Diana Ellis's loan to support their contention that all six of the property fees charged to her account were reasonable and appropriate.  (MSJ at 11).  Defendants claim that at the time these inspections were conducted, Plaintiff Ellis was delinquent and she failed to either respond to attempts to contact her or failed to make a commitment to cure the delinquency, had bounced two consecutive payment checks, and Defendants were forced to advance money in past-due property taxes to avoid a tax lien on Ellis's property.  However, Defendants' argument is pure folly because they have not and cannot present to this Court ***any*** evidence that, even if these facts were true, that they were ever considered contemporaneously and influenced Defendants' *automated decision* to charge her for these six property inspections.

With respect to Plaintiff Lazar, Defendants argue that property inspection fees were "reasonable or appropriate" because Lazar was delinquent for 63 months, his request for loan modification was denied, and he had made no commitment to resolve the delinquency.  (MSJ at 12.)  Defendants make similar arguments with respect to Schillinger, also adding that he had a water leak.  (*Id*. at 13.)  Plaintiffs dispute these facts.  (*See* PSUMF at nos. 31-33, 60-61.)  Moreover, factual disputes aside, Defendants also make no showing to establish that they considered such information at the time, before ordering and charging Plaintiffs for the property inspection fees at issue.

In fact, Defendants shamelessly confirm that, unless they are "forc[ed]" on "pain of liability under state law," they will not engage in this type of "highly burdensome, manual review of each individual property inspection before charging borrowers for the costs of such inspections."  (MSJ at 20; Defs' SUMF 90.)  As Defendants reason:  "Forcing Chase to engage in onerous, individualized review practices . . . would impose substantial costs and burdens on Chase's servicing activities."  But, nobody forced Chase to take on the servicing obligations of millions of loans.  Chase's obligations to each borrower,

including Plaintiffs, does not change or depend upon whether Chase is servicing five or five million loans.  The issue here is not automation, crude or otherwise, but rather, Defendants' failure, as required, to take into consideration the circumstances of Plaintiffs' loan and property in deciding whether to charge them property inspection fees whether it requires manual review or not.

Simply put, Defendants' *post hoc* analysis, which they admit was prepared solely for purposes of this motion, has no bearing on Plaintiffs' claim that Defendants were required to determine that the inspections were warranted under the circumstances of the particular loan ***prior to charging the property inspection fees***.  The "charge-by-charge" review does not, and cannot, demonstrate that summary judgment is warranted.

### C.    Plaintiffs' Unjust Enrichment Claims Are not Barred by Mortgages

Attempting to reframe this action as a simple breach of contract case, Defendants contend that Plaintiffs' "unjust enrichment claims are barred because their mortgage agreements expressly address the question of when they may be charged for delinquency-related property inspections."  (MSJ at 5.)

But, the Court previously rejected this exact argument.  In their first motion to dismiss, Defendants unsuccessfully argued that, because Plaintiffs' unjust enrichment claims are "based upon the [mortgage] contract[s]" and the "mortgage contracts 'permit' the charges at issue," those claims fail.  *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1090 (N.D. Cal. 2013) (denying motion to dismiss unjust enrichment claims).  In rejecting that argument, the Court held, consistent with California precedent, that the existence of a loan agreement is of no moment where, as here, the claims asserted are *not* for breach of such an agreement.[2]  *See In re Countrywide Fin. Corp. Mortg. Marketing and Sales Practice Litig.*, 601 F. Supp. 2d 1201, 1220-21 (S.D. Cal. Feb. 5, 2009)

---

[2] The lone case Defendants' cite for the proposition that "[Plaintiffs] have no right to sue for unjust enrichment" is non-binding precedent from another Circuit, which has not been cited by a single court in the Ninth Circuit.  (MSJ at 5:15-19 (citing *Hill v. Nationstar Morg. LLC*, 2015 WL 4478061 (S.D. Fla. July 2015).)

("Although there are contracts at issue in this case, none appears to provide for the specific recovery sought by Plaintiffs' unjust enrichment claim.")

Nevertheless, Defendants now seek to set aside the Court's prior ruling solely on grounds that one of several cases cited by the Court -- *Hirsch v. Bank of America, N.A.*, 107 Cal. App. 4th 708 (2003) -- purportedly involved "excessive [*i.e.*, marked-up] fees," which are no longer at issue here.  (MSJ at 6-7.)  But, contrary to Defendants' motion, *Hirsch* did not include any allegations of "marked-up" fees.  Rather, in *Hirsch*, the plaintiffs (a group of property owners) brought suit against several banks alleging that the banks' "charging and retention of excessive fees" associated with offering and maintaining escrow accounts for plaintiffs was "unjustified."  *Hirsch*, 107 Cal. App. 4th at 722.  In particular, as in this case, the *Hirsch* plaintiffs alleged that the entire amount of the "excessive" escrow fees constituted an unlawful "financial advantage," which was sufficient to state an unjust enrichment claim.  *Id.*  Therefore, contrary to the arguments asserted in Defendants' motion, *Hirsch* supports Plaintiffs' unjust enrichment claims.

In addition to *Hirsch*, the propriety of Plaintiffs' unjust enrichment claims is supported by the recent decision in *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988 (2015), which reversed a trial court's dismissal of an insured's claim for reimbursement based on an unjust enrichment theory.  Hartford, an insurer, was ordered to provide a defense for its insureds, and specifically, to pay the law firm Squire Sanders' reasonable and necessary charges for that defense.  In response to Hartford's claim for unjust enrichment based on the alleged unreasonableness of the legal bills, Squire Sanders argued that "relief for unjust enrichment is unavailable here because Hartford's claim is already addressed by an on-point, express contract between Hartford and its insureds."  *Id.* at 1001.  But, in rejecting that argument, the court reasoned that Hartford did not accept a bargain binding it to *excessive* charges.  *Id.*  "As such," the California Supreme Court reasoned, "Hartford's claim against Squire Sanders for reimbursement of alleged overcharges does not contravene or alter any term of the contracts between Hartford and its insureds."  *Id.*  Here, too, Plaintiffs' recoupment of the overcharges on their mortgage

accounts, in the form of unlawful property inspection fees charged by the loan servicer, does not contravene Plaintiffs' contracts with their lenders.

### D.    Defendants' "Out-of-Pocket" Reimbursement Argument Fails

Defendants argue that they "ha[ve] not been enriched in the slightest," because the property inspection fees charged to Plaintiffs merely restored Defendants "to the position [they] occupied ex ante," (*i.e.*, before Defendants incurred any default-related costs). (MSJ at 7.)  However, the mere fact that Defendants paid third-party vendors to conduct inspections does not, in and of itself, entitle them to reimbursement from Plaintiffs.  To the contrary, because Defendants repeatedly ordered and assessed fees for property inspections, without first conducting the requisite analysis of whether inspections were "reasonable or appropriate" to protect the lender's interest, Defendants were not entitled to reimbursement and their retention of such fees was unjust.  *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 725 (2000) (affirming finding of liability for unjust enrichment where there was substantial evidence SeoulBank retained for itself funds to which it was not legally entitled).

Moreover, the cases Defendants cite in support of their "out-of-pocket" reimbursement argument are inapposite.  In *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 756-57 (Tenn. Ct. App. 2006), the plaintiffs alleged defendants unjustly received indirect benefits from their "tying arrangement," which forced Tennessee merchants to pay an artificially inflated price for defendants' credit processing services that the merchants then passed on to plaintiffs.  *Id.* at 756.  Unlike here, the defendants in *Bennett* agreed to repay the inflated costs to the merchants as a part of a settlement agreement.  *Id.*  Therefore, the Court of Appeals reversed the Chancery Court's finding that plaintiffs sufficiently alleged an unjust enrichment claim.  *Id.* at 757.

Defendants' other case, *American Movie Classics v. Rainbow Media Holdings*, 508 Fed. Appx. 826 (10th Cir. 2013), is further afield.  In *American Movie Classics*, a cable network brought an unjust enrichment claim against an advertiser for the cost of advertising that had appeared on the network.  *Id.* at 833.  The network's claim failed

because the advertiser paid the network's agency for the advertising, and it was the agency that failed to remit payment to the network.  *Id.*  Like *Bennett*, *American Movie Classics* is readily distinguishable from this case and fails to advance Defendants' argument.

Finally, Defendants' argument that they have *not* been unjustly enriched is contradicted by ████████████████████████████████████████████████ ██████████████

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████

████████████████████████ Defendants claim that under their servicing agreements that they were required to perform these inspections.  But, in so arguing, Defendants ignore a critical fact, which is undisputed -- even if Defendants were obligated to *conduct* these inspections that does not mean that Plaintiffs were obligated to *pay* for them.  Defendants were "unjustly enriched" each time that they were paid by a Plaintiff for a property inspection to which they were not entitled to reimbursement.  ██████████████████ ████████████████████████████████████████████████████████████████████ ██████████████

Under the Restatement's definition of unjust enrichment, a plaintiff is "require[d]…to show the receipt of a benefit whose retention without payment would result in the unjust enrichment of the defendant at the expense of the claimant."  *In re TFT-LCD (Flat Panel) Antitrust Litg.,* 2011 WL 4501223, at *7.  With respect to the "benefit" requirement, the Restatement explains that:

> Restitution is concerned with receipt of benefits that yield a
> measurable increase in the recipient's wealth.  Subject to that

9

> limitation, the benefit that is the basis of a restitution claim may take ***any form, direct or indirect.*** It may consist of services as well as property. ***A saved expenditure or a discharged obligation is not less beneficial to the recipient than a direct transfer.***

*See* Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011) (emphasis added).[3]

Therefore, under the Restatement, "a benefit is conferred not only when one adds to the property of another, but also when one ***saves the other from expense or loss.***" *Ghirardo v. Antonioli,* 14 Cal. 4th 39, 51 (1996) (quoting Restatement (First) of Restitution § 1 com. B. (1937)).

Here, applying this standard, it is indisputable that the "benefit" requirement is satisfied here. It is Plaintiffs' contention that Defendants engaged in an institutional practice of charging homeowners for property inspection fees in order to avoid absorbing the fees themselves, and in order to avoid charging the investors for whom they service loans. (*See Ellis v. J.P. Morgan Chase & Co.,* Case No. 4:12-cv-03897 YGR, Dkt. 7 (First Amended Complaint) at ¶¶ 4, 7, 9 & 10.) Using this strategy, Defendants were "able to ***avoid the costs of [the] default-related service fees at the expense of struggling consumers.***" (*Ellis,* Dkt. 97 at ¶ 4 (emphasis added).)

### E. Plaintiffs Lazar and Schillinger Conferred a "Benefit" on Defendants

Defendants assert that Plaintiffs Lazar and Schillinger's unjust enrichment claims fail because neither has conferred a "benefit" on Defendants. (MSJ at 7.) But, contrary to Defendants' argument, the facts show that Plaintiffs Lazar and Schillinger did confer benefits on Defendants.

███████████████████████████████████

███████████████████████████████

████████████████████████████████████████

███████████████████████████████

---

[3] All emphasis added, unless otherwise noted.

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ██████████████████████████████████ Plaintiff Lazar's

4 payment which included amounts for "corporate advances" for the property inspection

5 fees, indisputably conferred a benefit on Defendants.

6     Plaintiff Schillinger similarly conferred a "benefit" on Defendants.  Under

7 Tennessee law, a "benefit," for purposes of unjust enrichment, includes "any form of

8 advantage that has a measurable value including the advantage of being saved from an

9 expense or loss." *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 525

10 (Tenn. 2005).  Moreover, "to recover for unjust enrichment, a plaintiff need not establish

11 that the defendant received a direct benefit from the plaintiff." *Id.* (citing *Hirsch*, 107 Cal.

12 App. 4th at 722 (to confer a benefit, the plaintiff need not pay the money directly to the

13 defendant)); *Bennett*, 198 S.W.3d at 756 ("[A] plaintiff may recover for unjust enrichment

14 against a defendant who receives *any benefit* from the plaintiff if the defendant's retention

15 of the benefit would be unjust.") ███████████████████████████

16 ████████████████████████████████████████████████████

17 █████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████████

19 ████████████████████████████

20     In the end, Plaintiff Lazar and Schillinger's inspection fee payments indisputably

21 "saved [Defendants] from an expense or loss." *Freeman*, 172 S.W.3d at 525.  Thus,

22 Defendants' lack of "benefit" argument fails as to Schillinger and Lazar.

23     **F.**    **Property Inspection Fees Are *Not Per Se* "Reasonable or Appropriate" As a Matter of Law**

24     Quoting from *Vega v. Ocwen*, 2015 WL 3441930 (C.D. Cal. May 28, 2015), which

25 is currently on appeal before the Ninth Circuit,[4] Defendants assert that "[w]hen

26

---

27 [4] *Vega, et al. v. Ocwen Financial Corp., et al.* (9th Cir. Case No. 15-55885) is fully

28 briefed and awaiting an oral argument schedule or a decision without oral argument.

Paragraphs 9 and 14 are read together, it appears that [Plaintiffs'] mortgage *defines* property inspections as reasonable acts." (MSJ at 8.)  Setting aside the impropriety of Defendants' reliance on a district court opinion which is under appeal, a simple reading of Section 14 belies that notion.  In particular, in addition to generally authorizing charges for property inspection and valuation fees, that section also includes an authorization to charge for "attorney fees."  Under any fair interpretation of that section, it cannot be read to mean that the charging of attorney fees escapes the scrutiny of  a reasonableness test. To accept Defendants' interpretation of that section would require the Court to also find, as a matter of law, that Defendants may charge homeowners in default for any amount for attorney fees, regardless of whether such fees are reasonable either in amount or scope of services.  That is not the law, and this example demonstrates that property inspections are not *per se* reasonable acts as Defendants would have this Court believe.

Defendants also rely on *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1177 (2002), an opinion which is equally inapplicable here.  (MSJ at 9-10.)  In *Walker*, the only issue presented to the California Courts of Appeal was whether it is *ever* appropriate for a loan servicer to charge a delinquent borrower a property inspection fee. *See*, *e.g.*, *Walker*, 98 Cal. App. 4th at 1164-78.  Indeed, the *Walker* court relied on the fact that, unlike here, Countrywide's property inspection practices were in compliance with the Fannie Mae guidelines, and it was on that basis that the *Walker* court held that Countrywide's practices were permissible.  *Id*. at 1176.

In contrast, Plaintiffs' claims concern Defendants' practice of charging for property inspection fees without first making the requisite analysis of whether they are warranted under the circumstances of a particular loan, and then, demanding payment under the guise that such fees are authorized by Plaintiffs' mortgage contracts.  This practice, which, among other things, is expressly prohibited by the Fannie Mae uniform mortgage contracts and Section 203.04 of the Fannie Mae servicing guidelines, was not at issue in *Walker*.  ***In fact, Section 203.04 was not even included in the Fannie Mae guidelines until November 1, 2004, two years <u>after</u> the Walker opinion was published***.  Had the

12

*Walker* court been presented with the factual circumstances and Fannie Mae guidelines at issue here, the outcome of *Walker* would have been different.

Notably, ***no other court*** addressing allegations that a loan servicer violated California law by indiscriminately charging homeowners for property inspection fees has ever held that *Walker* is dispositive, as Defendants suggest.  In fact, the opposite is true. *See Cirino v. Bank of America*, Case No. 2:13-cv-08829-PSG-MRW, Dkt. 41 at 10-11 (C.D. Cal. Oct. 1, 2014) ("Defendants aver that their property inspection practices have been endorsed by the California Court of Appeal in *Walker*. . . . Defendants are over-reading the holding of *Walker*. . . . [N]othing in the *Walker* opinion suggests that the *Walker* plaintiffs raised the argument Plaintiff is advancing here -- that Defendants' automated practices are fraudulent and unfair, because Defendants order property inspections without regard to whether those inspections are reasonable or necessary.  As a result, the *Walker* court did not reach that issue.") (internal citations omitted); *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 953 (N.D. Cal. 2013) (rejecting argument that, under *Walker*, Citibank's practice of assessing borrowers fees for monthly, indiscriminately ordered property inspections was not "improper or illegal," and, thus, that the complaint "fails to allege any wrongdoing"); *Young v. Wells Fargo*, 671 F. Supp. 2d 1006, 1024-25 (S.D. Iowa 2009) ("[U]nlike in *Walker*, [p]laintiffs do not challenge the imposition of property inspection fees in general, but rather, [p]laintiffs assert that the manner in which Wells Fargo charged the property inspection fees is unreasonable. . . . The Court concludes on the record before it that Plaintiffs' UCL claim [is] not barred by *Walker* and will not be dismissed on this ground.")

As in *Cirino*, *Stitt*, and *Young*, this Court should decline Defendants' invitation to over-read, and misapply, the holding in *Walker*.

### G.   Plaintiffs Are *Not* Attempting to Improperly Enforce the Fannie Mae Servicing Guides

Defendants suggest that here, Plaintiffs improperly seek to enforce the Fannie Mae servicing guidelines via their unjust enrichment claims.  (MSJ at 10.)  But, contrary to

Defendants' arguments, Plaintiffs make reference to the servicing guidelines because (1) they set forth Fannie Mae's intended interpretation of the governing provisions of the Fannie Mae/Freddie Mac uniform mortgage contract, in particular, the provisions concerning the limited authority of the noteholder (and, in turn, the loan servicer) to conduct and assess fees for property inspections, including charges for multiple property inspections; and (2) they provide evidence of Defendants' state mind in that they were told not to charge property inspection fees under certain circumstances, yet they did it anyway.  (*See*, *e.g.*, First Amended Complaint ("FAC") ¶¶ 3, 40-43, 118, 153.)

       Contrary to the position Defendants take in their motion, there is ample support for the proposition that Fannie Mae's servicing guidelines can be used to determine whether the challenged property inspection fees are unauthorized.  In fact, earlier in this case, Defendants themselves relied on the Fannie Mae servicing guidelines as the intended interpretation of the Fannie Mae/Freddie Mac uniform mortgage contract.  *See*, *e.g.*, *Ellis v. J.P. Morgan Chase & Co.*, Case No. 4:12-cv-3897-YGR, Dkt. 100 at 10-11 n. 5, Dkt. 101 at Ex. 5 (N.D. Cal. July 30, 2014) (relying on Fannie Mae Servicing Guide §§ 103.04, 110.04, 202.04, 303-4, 303-5 in support of motion to dismiss); *see also*, *Stitt v. Citibank, N.A.*, Case No. 4:12-cv-3892-YGR, Dkt. 70 at 12-14, Exs. B, C (N.D. Cal. July 18, 2014) (relying on the Fannie Mae servicing guidelines as the intended interpretation of the same Fannie Mae/Freddie Mac uniform mortgage contract); *Cirino*, Case No. 2:13-cv-08829-PSG-MRW, Dkt. 41 at 9-10 (granting defendant's request for judicial notice of excerpts of the Fannie Mae servicing guidelines cited in support of Bank of America's argument that fees for property inspections ordered indiscriminately, by means of Bank of America's automated system, are "reasonable or appropriate" under the Fannie Mae/Freddie Mac uniform mortgage contract).

       Defendants, Citibank, and Bank of America are not alone in asserting that the Fannie Mae servicing guidelines are probative of the intended interpretation of the Fannie Mae/Freddie Mac uniform mortgage contract.  In *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696 (2005), Countrywide Home Loans, Inc. ("Countrywide")

14

attached the Fannie Mae servicing guidelines in support of its motion for summary judgment, which contended that its policy of refunding escrow account balances fourteen days after payoff of a loan complied with the requirement in the Fannie Mae uniform mortgage contract to "promptly refund" any such money upon repayment. *Id.* at 698-99. Agreeing with Countrywide, the *Sklodowski* court held that the Fannie Mae Servicing Guide provided the intended interpretation of the phrase "promptly refund" in the Fannie Mae/Freddie Mac uniform mortgage contract:

> [The Fannie Mae Servicing] guidelines interpret Fannie Mae's mortgage documents and advise the lenders, including Countrywide, to return escrow funds within 30 days. These guidelines concern the exact issue in this case, when a lender must promptly refund escrow monies, and interpret the same mortgage contract at issue here. Therefore, although these guidelines are not binding on this court, we find them ***particularly instructive in our interpretation of a term in a Fannie Mae mortgage contract***.

*Id.* at 701-02. Here, as in *Sklowdowski*, the Fannie Mae servicing guidelines are "particularly instructive" of the intended interpretation of the requirement in the Fannie Mae/Freddie Mac uniform mortgage contract that property inspection fees be "reasonable or appropriate."

To this end, Section 203.04 of the Fannie Mae servicing guidelines unambiguously states that "***fees may be charged on a repetitive basis only when*** required or permitted by Fannie Mae's Guides or otherwise ***clearly supported by the circumstances relating to a particular loan*** (*e.g.*, charging a delinquent borrower's account for monthly property inspections generally would not be a permissible practice unless the servicer determines that the circumstances warrant multiple inspections)." (Pifko Decl. at ¶ 6, Ex. 5 (2012 Fannie Mae Guide) at 64-65 (emphasis added).) This guideline, read in conjunction with Uniform Covenants 9 and 14 of the Fannie Mae/Freddie Mac uniform mortgage contracts (as intended by Fannie Mae), indicates that the assessment of property inspection fees without consideration for the circumstances of the particular loan is neither "reasonable"

nor "appropriate." (*Id.* at ¶ 2, Ex. 1 (Expert Report of Professor Adam J. Levitin ("Levitin Report")) at 13-15; *Id.* at ¶ 3, Ex. 2 (Expert Report of Jacqui M. Peace ("Peace Report")) at 43, 47-49.) Therefore, by ignoring these critical investor guidelines and provisions of the Fannie Mae uniform mortgage contracts, which set the standard of conduct to which Defendants are required to comply, Defendants knowingly exceeded their authority when they charged borrowers fees for property inspections, without first conducting the requisite analysis of whether multiple inspections were warranted under the circumstances.

## IV.   SUMMARY JUDGMENT ON PLAINTIFFS' FRAUD AND UCL CLAIMS IS NOT WARRANTED

Defendants contend that federal banking law preempts Plaintiffs' "non-disclosure claims," and, therefore, summary judgment is warranted. (MSJ at 13.) However, as set forth in detail below, none of Plaintiffs' claims are preempted. (*See* Section VI, *infra*.) As such, Defendants' argument necessarily fails.

With respect to Plaintiffs' "misrepresentation claims," Defendants first argue that summary judgment is warranted because they purportedly made no fraudulent statements. (MSJ at 14.) In support of this argument, Defendants rely on *Walker* and *Vega* for the assertion that "all Plaintiffs' inspection charges were authorized by their loan agreements," and, regardless, "an alleged misrepresentation of contractual authority cannot support a UCL claim." (MSJ at 14 (citing *Walker* and *Vega*).) But, Defendants over-read the holding in *Walker*, and improperly seek to apply *Vega*. (*See* Section III(F), *supra*.) As such, Defendants' argument is baseless.

Defendants next argue that Plaintiffs' claims merely assert that Chase committed misrepresentations of *law*, *i.e.,* it misrepresented its contractual authority to impose the charges at issue, which Defendants claim is not actionable as fraud. Although Plaintiffs dispute Defendants' characterization of their claims as one solely of law, Defendants' motion still fails if the Court decides otherwise.

In *Miller v. Yokohama Tire Corp.,* 358 F.3d 616, 621 (9th Cir. 2004), a case cited

by Defendants, the Ninth Circuit found that the Restatement (Second) of Torts explains that where a misrepresentation of law is only one of opinion, rather than one that includes a misrepresentation of fact, the recipient can only justifiably rely on it to the extent that he can rely on other opinions.  Here, however, Defendants' misrepresentations certainly implicated statements of fact. Nevertheless, even if Defendants' misrepresentations were solely considered a misrepresentation of law, Plaintiffs' claims are still actionable as fraud.

In that regard,  the *Miller* court explained that this rule is not without exception as the Restatement lays out four situations that would justify reliance on such a misrepresentation of law: Where the party making the misrepresentation 1) purports to have special knowledge; 2) stands in a fiduciary or similar relation of trust and confidence to the recipient; 3) has successfully endeavored to secure the confidence of the recipient; 4) or has some other special reason to expect that the recipient will rely on his opinion.

Here, there can be no doubt that Defendants stood in a position of trust and confidence to Plaintiffs and had reason to expect that Plaintiffs would rely on Defendants' representations concerning their authority to charge them for property inspections.  Of course, these issues cannot be decided on summary judgment.

Defendants further contend that the misrepresentation claims fail, because they "never knowingly or intentionally imposed any charges on Plaintiffs that it had no right to impose" and, at worst, "simply made a good-faith mistake."  (MSJ at 15.)  However, Defendants evidence does not support this disputed fact and, in any event, discovery in this case confirms that, in fact, Defendants knew their property inspection charging practices were unlawful.  In particular, Defendants rely on Issue No. 7, Fact 74 of their Statement of Undisputed Material Facts.  That "issue" is broadly framed as "Chase did not knowingly or intentionally deceive Plaintiffs", and the "fact" is framed as "Chase never intentionally charged Plaintiffs for property inspections that Chase knew it had no right to charge them."  This issue and fact are supported solely by the conclusory, self-serving Declaration of Deidre Slifko, paragraphs 5-7.

The problem for Chase, however, is that Slifko's statements in those paragraphs do not support either the issue or fact farmed by Defendants.  To the contrary, Slifko simply takes a broad brush and exclaims her lack of awareness "of any instance" in which Chase intentionally charged a borrower for a property inspection when the loan agreement prohibited such a charge.  Her lack of awareness, however, is irrelevant because her declaration does not provide the foundation that she was ever in a position to know one way or the other for each instance a property inspection charge was assessed whether Defendants' acts were intentional or not.

18

1

2

3

4

5

6

7

8

9

10

11

12

13    Next, relying on a mischaracterization of Plaintiff Ellis's deposition testimony,

14 Defendants argue that Plaintiff Ellis's fraud claim fails, because she cannot establish

15 reliance on Defendants' misrepresentations.  (MSJ at 15.)  At her deposition, however,

16 Plaintiff Ellis repeatedly testified that she reviewed her monthly mortgage statements,

17 including those with line items cryptically identifying property inspections as

18 "Miscellaneous Fees."  (*Id*. at ¶ 24, Ex. 23 (Deposition of Diana Ellis ("Ellis Depo")) at

19 461-477 (14:12-17, 78:23-79:14).)   Plaintiff Ellis further testified that it was her

20 understanding that the payments she submitted to Defendants included amounts for the

21 "Miscellaneous Fees" (*Id*. at ¶ 24, Ex. 23 (Ellis Depo) at 476-477 (84:8-85:22); *see also,*

22 *Id.* at ¶ 25, Ex. 24 (Deposition of Defense Expert Gregory Nelson ("Nelson Depo")) at

23 478-481 (240:12-241:18) (acknowledging "miscellaneous fees" as misnomer for property

24 inspection charges)), and, as Defendants concede, Plaintiff Ellis did, in fact, pay them for

25 five property inspections, (Defs' SUMF 19).  Nothing further is required to demonstrate

26 that Plaintiff Ellis paid the unlawfully assessed property inspection fees as a result of

27 Defendants' misrepresentations that such fees were authorized.

28    Finally, Defendants contend that Plaintiffs Lazar and Schillinger's  fraud claims

1  must be dismissed because they never paid an inspection charge.  (MSJ at 15-16.)

2  However, Plaintiff Lazar paid property inspection fees when he cured his default in

3  October 2010, and the property inspection fees assessed to Plaintiff Schillinger's

4  mortgage account were paid at his direction.  (*See* Sections III(A)-(E), *supra*.)  Therefore,

5  Defendants' argument fails.

6  **V.   SUMMARY JUDGMENT ON PLAINTIFF ELLIS'S ROSENTHAL ACT CLAIM IS NOT WARRANTED**

7          As with Plaintiffs' fraud and UCL claims, Defendants contend that Plaintiff Ellis's

8  Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") claim is barred because

9  all her property inspection fees were authorized by the mortgage contract and there is no

10  evidence Defendants acted "willingly and knowingly."  (MSJ at 16-17.)  These arguments

11  lack merit and should be rejected.

12          Defendants' assertion that the Rosenthal Act does not apply to mortgage loan

13  servicers is similarly unavailing.  (MSJ at 16.)  The Rosenthal Act's definition of "debt

14  collector" encompasses "any person who, in the ordinary course of business, regularly, on

15  behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code §

16  1788.2(c).  Courts regularly hold that loan servicers are included in this broad definition.

17  *Walters v. Fidelity Mortg. of CA*, 730 F. Supp. 2d 1185, 1203 (E.D. Cal. 2010) (rejecting

18  Ocwen Loan Servicing, LLC's argument that it was not a "debt collector" for purposes of

19  the Rosenthal Act where plaintiff "allege[d] that Ocwen regularly billed her and collected

20  payments on her mortgage loan debt" and the "gravamen of plaintiff's claim [was] that

21  Ocwen engaged in a pattern of improper conduct in the course of servicing her loan,

22  ultimately causing the wrongful foreclosure of the home"); *Esquivel v. Bank of America*,

23  2013 WL 5781679, at *3-4 (E.D. Cal. Oct. 25, 2013) (rejecting Bank of America's

24  argument that it was "not a 'debt collector' under the [Rosenthal Act] because loan

25  servicers who acquire servicing rights before the loan is in default do not qualify as debt

26  collectors," and denying motion to dismiss the Rosenthal Act claim); *Azzini v.*

27  *Countrywide Home Loans,* 2010 WL 962856, at *3 (S.D. Cal. Mar. 15, 2010) (denying

28

1   motion to dismiss Rosenthal Act claim based on allegations that Countrywide is a loan

2   servicer, it has collected mortgage payments from Plaintiffs, it is a debt collector under

3   the Rosenthal Act, and has engaged in acts such as 'threatening and deceptive phone

4   calls"); *Gumbs v. Litton Loan Servicing*, 2010 WL 1992199, at *5 (E.D. Cal. May 13,

5   2010) (citing *Azzini* and rejecting similar argument from loan servicer in denying motion

6   to dismiss the Rosenthal Act claim).

7       Defendants' statute of limitations argument fares no better.  (*See* MSJ at 16.)

8   Under the "continuing violation doctrine," where, as here, the allegedly unlawful practice

9   (*i.e.*, demanding property inspection fee payments in monthly mortgage statements under

10  false pretenses that such fees are authorized) "constitute[s] a 'continuing pattern and

11  course of conduct,' then suit regarding the entire course of conduct is timely if a

12  complaint is filed within one year of the most recent violation."  *Huy Thanh Vo. v. Nelson*

13  *& Kennard*, 931 F. Supp. 2d 1080, 1087 (E.D. Cal. 2013) (applying doctrine and holding

14  that statute of limitations did not bar individual plaintiff's Rosenthal Act claim).

15  "Application of the doctrine . . . [is] 'entirely consistent with the . . . [Rosenthal Act's]

16  broad remedial purpose of protecting consumers.'"   *Komarova v. National Credit*

17  *Acceptance, Inc.*, 175 Cal. App. 4th 324, 344 (2009) (quoting *Joseph v. J.J. Mac Intyre*

18  *Companies, L.L.C.*, 281 F. Supp. 2d 1156, 1162 (N.D. Cal. 2003)).  Therefore, this Court

19  should hold that the statute of limitations does not bar Plaintiff Ellis's claim.

20      This Court should similarly hold that Plaintiff Ellis's claim is not barred by her

21  alleged "intentional violation" of the Rosenthal Act.  (MSJ at 17.)  Defendants rely on

22  California Civil Code §1788.30 (g), which provides that "[a]ny intentional violation of the

23  provisions of this title by the debtor may be raised as a defense by the debt collector, *if*

24  *such violation is pertinent or relevant to any claim or defense brought against the debt*

25  *collector by or on behalf of the debtor.*"  However, the only alleged violation Defendants

26  raise is a purported discrepancy between Plaintiff Ellis's tax returns and the income

27  reported on her 2007 mortgage loan application.  (*See id.*) ███████████████

28  ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

Regardless, even assuming Defendants were correct, a potential inaccuracy in Plaintiff Ellis's loan application does not, in and of itself, establish that she *intentionally* submitted false information (a fact for which there is no evidence).  Moreover, Defendants fail to explain how this  purported violation of the Rosenthal Act in connection with an earlier loan application is "pertinent or relevant" to, and therefore, immunizes Defendants from liability for, alleged unlawful debt collection practices following a default.  Nor do Defendants cite even a single case in support of their argument.  As such, Defendants' "intentional violation" defense fails.

## VI.   DEFENDANTS AGAIN FAIL TO ESTABLISH THAT PLAINTIFFS' CLAIMS ARE PREEMPTED

### A.   Defendants' Previously Asserted NBA and OCC Preemption Arguments Were Rejected by the Court, and Therefore, they Are Precluded by the Law-of-the-Case Doctrine

In denying Defendants' motion to dismiss, the Court addressed Defendants' argument that Plaintiffs' "claim for excessive, unnecessary, or undisclosed default-related service fees are preempted." *Ellis*, 950 F. Supp. 2d at 1083.  More specifically, Defendants asserted that Plaintiffs' UCL claim was preempted by the NBA, because "any determination regarding the establishment of fees, the failure to disclose information about actual costs incurred for services, and claims regarding servicing of mortgages are preempted." *Id.*  Similarly, Defendants contended that Plaintiffs' unjust enrichment and fraud claims "are preempted because the claims are based on 'assumptions about the reasonableness of default-related fees and services, which is the exclusive province of the OCC.'" *Id.* at 1084-85.

Consistent with the weight of authority, this Court expressly rejected Defendants' NBA and OCC preemption arguments. *See Ellis*, 950 F. Supp. 2d at 1085 (citing *Gutierrez v. Wells Fargo Bank, N.A.*, 944 F. Supp. 2d 819, 821-22 (N.D. Cal. 2013)); *see*

22

*also Arevalo v. Bank of America Corp.*, 850 F. Supp. 2d 1008, 1027 (N.D. Cal. 2011) ("[W]hile the OCC regulations might well expressly preempt some state laws, Bank of America has failed to show that they preempt state consumer protection laws such as the CLRA, UCL and FAL."); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, (S.D. Iowa 2009) (holding that NBA and OCC did not preempt Plaintiffs' California "state law claims alleg[ing] that Wells Fargo perpetrated a scheme to defraud by imposing repeated drive-by property inspections and improper late fees that were unlawful, deceptive and unfair"); *Jefferson v. Chase Home Finance*, 2008 WL 1883484, at *10 (N.D. Cal. Apr. 29, 2008) (Hon. Thelton E. Henderson rejected Chase's argument that NBA and OCC regulations preempt consumer protection laws in connection with Chase's improper application of loan prepayments).

Seemingly ignoring this Court's prior ruling, Defendants renew their argument that Plaintiffs' challenges to Defendants "disclosure practices" and "servicing practices" are preempted by the NBA and OCC.  (MSJ at 17 - 21.)  Not only is Defendants' argument meritless,[5] but it is precluded under the "law of the case" doctrine.  *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case").  Defendants do not, because they cannot, demonstrate that any of the limited exceptions to the "law of the case" doctrine apply here.  *Id.* (court has discretion to depart from the

---

[5] Defendants imply that Plaintiffs' fraud claims are based on a pure omission theory. (MSJ at 19.)  However, Plaintiffs' allegation is that Defendants have affirmatively *misled* borrowers by cryptically identifying property inspection fees as "Miscellaneous Fees," "Corporate Advances," or "Advances," and then demanding payment of such fees even though they were unauthorized.  (Pifko Decl. at ¶ 25, Ex. 24 (Nelson Depo) at 478-481 (240:12-241:18).)  The Ninth Circuit held that such claims are not preempted by the NBA. *See Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 726 (9th Cir. 2012) (Wells Fargo's allegedly misleading statements regarding its posting methods were subject to state law liability, because California's unfair competition law was a statute of general applicability, and would "not significantly interfere with the bank's ability to offer checking account services, choose a posting method, or calculate fees").

doctrine only where: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) manifest injustice would otherwise result").  Absent one of those exceptions, reconsidering Defendants' preemption argument "constitutes an abuse of discretion," and, therefore, it should be summarily rejected.  *Id.*

## B.     The Home Owners' Loan Act Does Not Preempt Plaintiffs' Claims

Defendants' contention that the Home Owners' Loan Act ("HOLA") -- specifically 12 Code of Federal Regulations sections 545.2 and 560.2 -- preempts Plaintiffs Ellis and Lazar's claims is equally unavailing.  (MSJ at 22-25.)

As a threshold matter, "HOLA preemption is not as broad as [Defendants] argue[] it is." *Valverde v. Wells Fargo Bank, N.A.*, 2011 WL 3740836, *5 (N.D. Cal. 2011).  Critically, where, as here, "a plaintiff's claim is based on a defendant's failure to fulfill its general duty not to misrepresent material facts, and when the application of the law does not regulate lending activity, California district courts have found that the claims are not preempted [under HOLA]." *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp.2d 1177, 1186 (C.D. Cal. 2011).

In fact, "[i]t is well established in California that claims for relief under the UCL and related state laws are not preempted by [12 Code of Federal Regulations] section 545.2". *Gibson v. World Savins & Loan Assn.*, 103 Cal. App. 4th 1291, 1299 (2002).  For instance, in *Fenning v. Glenfed, Inc.*, 40 Cal. App. 4th 1285 (1995), as here, the plaintiff alleged that a federal savings association had engaged in deceptive business practices and sought relief for violations of the UCL, fraud, and negligent misrepresentation.  *Id.* at 1289.  In rejecting the savings association's argument that plaintiffs' claims were preempted by Section 545.2, the *Fenning* court explained that:

> [T]he Bank's argument that, by permitting fraud and unfair trade practices suits, the state is regulating the Bank's conduct, is off the mark.  Plaintiffs' ability to sue the Bank for fraud does not interfere with what the Bank may do, that is, how it may conduct its operations; it simply insists that the bank cannot

1
2
3

> misrepresent how it operates, or employ fraudulent methods in
> its operations.  Put another way, the state cannot dictate to the
> Bank how it can or cannot operate, but it can insist that,
> however the Bank chooses to operate, it do so free from fraud
> and other deceptive business practices.

4
5
6

*Id.* at 1299; *see also Siegel v. Amer. Savings & Loan Assn.*, 210 Cal. App. 3d 953, 958-64 (1989) (rejecting argument that HOLA and Office of Thrift Supervision regulations preempted UCL and numerous common-law claims).

7
8
9
10
11
12
13
14
15
16
17
18
19
20

Defendants' Section 560.2 preemption argument also fails.  In *Gibson*, the plaintiff's UCL claims alleged that the amount a savings and loan charged for certain insurance was too high because it included a charge for administrative services, in violation of the deeds of trust.  *Gibson*, 103 Cal. App. 4th at 1294-95.  The defendant lending institution argued that the claims were preempted by the HOLA and an Office of Thrift Supervision regulation closely analogous to section 560.2.  *Id.* at 1300-07.  After examining the language of the preemptive regulation and each of plaintiff's state claims, and inquiring whether "the legal duty that is the predicate of the claims constitutes a requirement or prohibition of the sort that federal law expressly preempts," the *Gibson* court ultimately rejected the preemption argument.  *Id.*  The court based its holding, in part, on the fact that "the duties on which the plaintiffs' claims are predicated govern, not simply the lending business, but anyone engaged in any business and anyone contracting with anyone else," and, therefore, "[a]ny effect they have on the lending activities of a federal savings association is incidental rather than material."  *Id.* at 1301-02.

21
22
23
24

Here, as in *Gibson*, "the types of laws that [Plaintiffs] seek to enforce are not listed in subdivision (b) of Section 560.2," because Plaintiffs "seek to enforce a general proscription of unfair business practices."  *Id.* at 1303.  Therefore, Defendants' HOLA preemption claims lack merit and should be rejected.

25

## VII.   CONCLUSION

26
27
28

For the foregoing reasons, this Court should deny Defendants' motion for summary judgment in its entirety.

Dated:  April 25, 2016                    BARON & BUDD, P.C.

                                    By:   /s/  Mark Pifko
                                          Mark Pifko

                                          Daniel Alberstone (SBN 105275)
                                          Roland Tellis (SBN 186269)
                                          Mark Pifko (SBN 228412)
                                          Michael Isaac Miller (SBN 266459)
                                          BARON & BUDD, P.C.
                                          15910 Ventura Boulevard, Suite 1600
                                          Encino, California  91436
                                          Telephone:   (818) 839-2333
                                          Facsimile:    (818) 986-9698

                                          Marguerite K. Kingsmill (*pro hac vice*)
                                          mkingsmill@kingsmillriess.com
                                          Charles B. Colvin (*pro hac vice*)
                                          ccolvin@kingsmillriess.com
                                          KINGSMILL RIESS, L.L.C.
                                          201 St. Charles Avenue, Suite 3300
                                          New Orleans, Louisiana  70170
                                          Telephone:   (504) 581-3300
                                          Facsimile:    (504) 581-3310

                                          Philip F. Cossich, Jr. (*pro hac vice*)
                                          David A. Parsiola (*pro hac vice*)
                                          COSSICH, SUMICH, PARSIOLA & TAYLOR, L.L.C.
                                          8397 Highway 23, Suite 100
                                          Belle Chasse, Louisiana  70037
                                          Telephone:   (504) 394-9000
                                          Facsimile:    (504) 394-9110

                                          Attorneys for Plaintiffs
                                          DIANA ELLIS, JAMES SCHILLINGER, and,
                                          RONALD LAZAR, individually, and on behalf of
                                          other members of the public similarly situated