Robert D. Wick (*pro hac vice* / rwick@cov.com)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

David M. Jolley (SBN 191164 / djolley@cov.com)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

*Attorneys for Defendants JPMorgan*
*Chase & Co. and JPMorgan Chase Bank, N.A.,*
*individually and as successor by merger to*
*Chase Home Finance LLC*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| DIANA ELLIS, JAMES SCHILLINGER, and RONALD LAZAR, individually, and on behalf of other members of the public similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>JPMORGAN CHASE & CO., a Delaware corporation, JPMORGAN CHASE BANK, N.A., a national association, for itself and as successor by merger to Chase Home Finance, LLC, and CHASE HOME FINANCE LLC, a Delaware limited liability company,<br><br>     Defendants. | Civil Case No.: 4:12-cv-03897-YGR<br><br>[Related to Case Nos. C-12-00664-YGR, C-12-3892-YGR]<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: June 7, 2016<br>Time:      2:00 PM<br>Judge:     Hon. Yvonne Gonzales Rogers<br>Courtroom:  1, 4th Floor |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 1

I.    PLAINTIFFS' RESPONSIVE STATEMENT OF FACTS SHOULD BE STRICKEN.... 1

II.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL. ................................. 1

      A.   The Unjust Enrichment Claims Are Barred By Plaintiffs' Loan Agreements........ 1

      B.   Lazar And Schillinger Never Paid A Property Inspection Fee. ............................. 2

      C.   Any Fee Payments Only Reimbursed Chase For Expenses Caused By
           Plaintiffs. ....................................................................................................... 3

      D.   Plaintiffs' Inspection Charges Were Authorized By Their Mortgage
           Agreements. .................................................................................................... 3

           1.   All Three Plaintiffs Were Delinquent At The Time of Their
                Inspections. ............................................................................................. 3

           2.   Plaintiffs' Inspection Charges Are Categorically Reasonable................... 5

           3.   Plaintiffs' Charges Are Reasonable Under An Individualized Review...... 6

           4.   Fannie Mae Servicing Guidelines Are Irrelevant. ..................................... 9

III.  PLAINTIFFS' FRAUD AND UCL CLAIMS FAIL.......................................... 10

IV.   ELLIS'S ROSENTHAL ACT CLAIM FAILS. ............................................... 12

V.    FEDERAL BANKING LAW PREEMPTS PLAINTIFFS' CLAIMS. .......................... 13

      A.   Plaintiffs' Claims Are Preempted By The National Bank Act. ........................... 13

      B.   Ellis's and Lazar's Claims Are Preempted By The Home Owners' Loan Act..... 15

CONCLUSION................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abels v. Bank of Am.*,
   2011 WL 1362074 (N.D. Cal. 2011) .................................................................13

*In re Actiq Sales & Mktg. Practices Litig.*,
   2015 WL 1312015 (E.D. Pa. Mar. 23, 2015) ........................................................7

*Ademiluyi v. PennyMac Mortg. Inv. Holdings I, LLC*,
   929 F. Supp. 2d 502 (D. Md. 2013) ......................................................................7

*Arevalo v. Bank of America*,
   850 F. Supp. 2d 1008 (N.D. Cal. 2011) ...............................................................14

*Azzini v. Countrywide Home Loans*,
   2010 WL 962856 (S.D. Cal. Mar. 15, 2010) .......................................................13

*Bearden v. Honeywell Int'l Inc.*,
   2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010) ....................................................7

*Benner v. Bank of Am., N.A.*,
   917 F. Supp. 2d 338 (E.D. Pa. 2013) .....................................................................2

*Burley v. JPMorgan Chase Bank, N.A.*,
   2014 WL 2511306 (W.D. Mich. June 4, 2014) ......................................................7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................11

*Cirino v. Bank of America*,
   2014 WL 9894432 (C.D. Cal. Oct. 1, 2014) ..........................................................5

*In re Countrywide Fin. Corp. Mortg. Marketing & Sales Practice Litig.*,
   601 F. Supp. 2d 1201 (S.D. Cal. 2009) ..................................................................2

*Coyer v. HSBC Mortg. Services, Inc.*,
   701 F.3d 1104 (6th Cir. 2012) .............................................................................11

*Cross v. Wells Fargo Bank, N.A.*,
   2014 WL 4929276 (S.D. Tex. Sept. 30, 2014) .......................................................4

*Freeman Indus. LLC v. Eastman Chemical Co.*,
   172 S.W.3d 512 (Tenn. 2005) ................................................................................3

*Galvin v. EMC Mortg. Corp.*,
   2014 WL 4980905 (D.N.H. Oct. 3, 2014) ..............................................................6

*Gibson v. World Savings & Loan Ass'n,*
   103 Cal. App. 4th 1291 (2002) ...................................................................15

*Gumbs v. Litton Loan Servicing,*
   2010 WL 1992199 (E.D. Cal. May 13, 2010) ...........................................13

*Gutierrez v. Wells Fargo Bank, NA,*
   704 F.3d 712 (9th Cir. 2012) ..............................................................14, 15

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.,*
   61 Cal. 4th 988 (2015) .............................................................................2

*Hill v. Nationstar Mortg. LLC,*
   2015 WL 4478061 (S.D. Fla. July 6, 2015) .............................................2

*Hirsch v. Bank of America,*
   107 Cal. App. 4th 708 (2003) ..................................................................2

*Hitchcock v. Delaney,*
   86 P.3d 73 (Or. Ct. App. 2004) ...............................................................7

*Jefferson v. Chase Home Finance,*
   2008 WL 1883484 (N.D. Cal. Apr. 29, 2008) ........................................14

*Johnson v. JPMorgan Chase Bank,*
   2009 WL 382734 (E.D. Cal. Feb. 13, 2009) ...........................................13

*Lamb v. ITT Corp.,*
   2010 WL 376858 (D. Neb. Jan. 26, 2010) ..............................................7

*Mannello v. Residential Credit Solutions, Inc.,*
   2016 WL 94236 (C.D. Cal. Jan. 7, 2016) ...............................................13

*Martinez v. Wells Fargo Bank, N.A.,*
   2007 WL 963965 (N.D. Cal. Mar. 30, 2007) ..........................................14

*Martinez v. Wells Fargo Home Mortg., Inc.,*
   598 F.3d 549 (9th Cir. 2010) ..................................................................14

*McKenzie v. Wells Fargo Bank, N.A.,*
   931 F. Supp. 2d 1029 (N.D. Cal. 2013) ...................................................9

*Meyer v. One West Bank, F.S.B.,*
   91 F. Supp. 3d 1177 (C.D. Cal. 2015) ...............................................11, 15

*Miller v. Yokohama Tire Corp.,*
   358 F.3d 616 (9th Cir. 2004) ..................................................................10

*Munoz v. Fin. Freedom Senior Funding Corp.,*
   567 F. Supp. 2d 1156 (C.D. Cal. 2008) ..................................................15

iv

*Nymark v. Heart Fed. Savings & Loan Ass'n*,
   231 Cal. App. 3d 1089 (1991) ...................................................................11

*Perryman v. Litton Loan Servicing, LP*,
   2014 WL 4954674 (N.D. Cal. Oct. 1, 2014)..............................................11

*Silvas v. E*Trade Mortgage*,
    514 F.3d 1001 (9th Cir. 2008) ..................................................................15

*Sklodowski v. Countrywide Home Loans, Inc.*,
   832 N.E.2d 189 (Ill. App. Ct. 2005) ...........................................................9

*Stitt v. Citibank, N.A.*,
   942 F. Supp. 2d 944 (N.D. Cal. 2013) ........................................................5

*Susilo v. Wells Fargo Bank, N.A.*,
   796 F. Supp. 2d 1177 (C.D. Cal. 2011) ....................................................15

*Tomada v. Home Depot USA, Inc.*,
   2014 WL 2538792 (N.D. Cal. June 3, 2014) ...............................................1

*Tran v. Select Portfolio Servicing, Inc.*,
   2015 WL 1739370 (N.D. Cal. Apr. 14, 2015) ...........................................13

*Valverde v. Wells Fargo Bank, N.A.*,
   2011 WL 3740836 (N.D. Cal. 2011) ..........................................................15

*Vega v. Ocwen Fin. Corp.*,
   2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) ...................................5, 6, 13

*Vega v. Ocwen Fin. Corp.*,
   2015 WL 3441930 (C.D. Cal. May 28, 2015) ..............................................9

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ..................................................................7

*Walker v. Countrywide Home Loans, Inc.*,
   98 Cal. App. 4th 1158 (2002) ..............................................................6, 13

*Walters v. Fidelity Mortg. of CA*,
   730 F. Supp. 2d 1185 (E.D. Cal. 2010).....................................................13

*Williams v. Wells Fargo Bank, N.A.*,
   560 F. App'x 233 (5th Cir. 2014) ................................................................4

*Yang v. Dar Al-Handash Consultants*,
   250 F. App'x 771 (9th Cir. 2007) ............................................................1, 2

*Young v. Wells Fargo*,
   671 F. Supp. 2d 1006 (S.D. Iowa 2009) ...............................................5, 14

**Statutes**

Cal. Civ. Code § 1788.30(f)..................................................................................................13

**Regulations**

12 C.F.R. § 7.4002(a)..........................................................................................................14

12 C.F.R. § 34.4............................................................................................................14, 15

12 C.F.R. § 34.4(a)(9)....................................................................................................10, 14

12 C.F.R. § 34.4(a)(10).......................................................................................................14

12 C.F.R. § 560.2.................................................................................................................15

12 C.F.R. § 560.2(b)............................................................................................................15

**INTRODUCTION**

Nowhere in their opposition or their 44-page responsive statement of facts do Plaintiffs identify a genuine dispute of material fact that prevents summary judgment against their claims.  Plaintiffs submitted no affidavits or evidence disputing the factual circumstances of their inspections; their experts agree that inspections are reasonable under the circumstances that existed here; and their argument that so-called "forbearance agreements" cured their defaults on their mortgage loans is defective as a matter of law.  The Court should therefore grant summary judgment on all $287 in inspection fees at issue.

**ARGUMENT**

**I.    PLAINTIFFS' RESPONSIVE STATEMENT OF FACTS SHOULD BE STRICKEN.**

Plaintiffs' responsive statement of facts (Doc. 256-1) should be stricken because, at 44 pages, it is more than *double* the length permitted by this Court's rules.  *See* Standing Order in Civil Cases ¶ 9(c)(2).  Furthermore, when Plaintiffs purport to dispute a fact, they typically do not "cite to evidence in the record which establishes the dispute," *id.*, but instead argue about the *significance* of the fact to circumvent the page limit that governs their opposition, *see* Civ. L.R. 7-3(a), 7-4(b).[1]  This Court should therefore strike Plaintiffs' statement and deem Chase's facts undisputed.  *See Tomada v. Home Depot USA, Inc.*, 2014 WL 2538792, at *6 n.4 (N.D. Cal. June 3, 2014) ("The Court does not take lightly any party's violation of a duly promulgated page limit and, indeed, routinely strikes excess pages.").

**II.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL.**

**A.    The Unjust Enrichment Claims Are Barred By Plaintiffs' Loan Agreements.**

Plaintiffs' unjust enrichment claims "fail as a matter of law" because there is "a valid express contract covering the same subject matter" of those claims.  *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 773 (9th Cir. 2007); *see also* Mot. at 5-7.  Because Sections 9 and 14 of Plaintiffs' loan agreements address when Plaintiffs may be charged for property inspections, "unjust enrichment is not

---

[1]    *See, e.g.*, Fact 6 ("disputing" quotation of Plaintiffs' mortgage documents with Plaintiff's law professor expert's interpretation of those documents); Facts 15, 20, 90 ("disputing" facts without any citation to evidence); Facts 21-28, 39-41, 43, 45-52, 60-63 (responding to facts with template assertions that charges were "neither reasonable nor appropriate"); Fact 68 (citing a case to "dispute" a fact); *see also* Add'l Facts 1-9, 12, 14, 16, 18 (making legal arguments).

1  the proper legal vehicle" to "challenge the reasonableness of those charges." *Benner v. Bank of Am.,*

2  *N.A.*, 917 F. Supp. 2d 338, 360-61 (E.D. Pa. 2013); *see also Hill v. Nationstar Mortg. LLC*, 2015 WL

3  4478061, at *3 (S.D. Fla. July 6, 2015) (dismissing unjust enrichment claim based on "alleged

4  overcharging of property inspection fees pursuant to the terms of the mortgage contract").

5         Contrary to Plaintiffs' assertion, this Court did not "previously reject[] this exact argument."

6  Opp. at 6.  Rather, this Court concluded that it was "premature" at the pleading stage "to take a position

7  on whether this action derives from the subject matter of the agreements" when Plaintiffs were still

8  pursuing their profit mark-up theory.  (Doc. 31 at 35.)  Plaintiffs have now abandoned that theory, and

9  their remaining theory indisputably turns on "the same subject matter" covered by their loan agreements.

10  *Yang*, 250 F. App'x at 773.  Indeed, Plaintiffs admit that "[t]he seminal issue in this case is whether

11  Defendants' practices violate" the "reasonable or appropriate" language in their loan agreements (Doc.

12  172-3 at 17), and their opposition repeatedly cites that language.  *See, e.g.*, Opp. at 1, 3-5, 8, 11, 14-16.

13         None of Plaintiffs' authorities requires a different result.  *Hirsch v. Bank of America* did not even

14  consider whether a written agreement covered the subject matter of the unjust enrichment claim.  107

15  Cal. App. 4th 708, 721 (2003).  In the other two cases Plaintiffs cite, no contractual agreement covered

16  the challenged practices.  *See In re Countrywide Fin. Corp. Mortg. Marketing & Sales Practice Litig.*,

17  601 F. Supp. 2d 1201, 1207, 1220-21 (S.D. Cal. 2009) (loan agreements did not address lender's

18  marketing and disclosure practices); *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1001

19  (2015) (agreement did not require insurance company "to absorb whatever defense fees and expenses

20  the insureds' independent counsel might choose to bill, no matter how excessive").  Here, by contrast,

21  Plaintiffs' loan agreements speak directly to when they may be charged for property inspections (Facts

22  4-6), thus precluding an unjust enrichment claim.

23      **B.      Lazar And Schillinger Never Paid A Property Inspection Fee.**

24         Lazar's and Schillinger's claims also fail because they never paid a single property inspection

25  fee.  *See* Mot. at 7-8.  Although Lazar argues that he paid certain inspection charges ███████████

26  █████████████████████████████████████████████████████████████████████████████

27  ████████████████████████████████████████████       (Devine Decl. ¶ 53; *see also*

28  DEVINE1185-86.).  Lazar's citation to his own deposition testimony establishes only that ████████

1    █████████████ (*see* PIFKO446-47), not that ██████████████████ Similarly,

2 the fact that ██████████████████████████████████ does

3 not alter the fact that the fees were never paid.  (*See* Fact 38; Devine Decl. ¶ 53; DEVINE1177.)

4         Schillinger likewise fails to identify any inspection fee that *he* allegedly paid.  Although █

5 ██████████████████████ (Facts 59, 68-69), that ███████████ does

6 not support a claim by *Schillinger* because in Tennessee "the underlying principle of the doctrine of

7 unjust enrichment" is that the "party who receives a benefit . . . must compensate *the provider of the*

8 *benefit*," which in this instance is ███████████.  *Freeman Indus. LLC v. Eastman Chemical Co.*, 172

9 S.W.3d 512, 525 (Tenn. 2005) (emphasis added).  Awarding a recovery to Schillinger would confer an

10 unjust windfall on him because he has no obligation to repay that sum to ███████████.  (Facts 70-71.)

### C.    Any Fee Payments Only Reimbursed Chase For Expenses Caused By Plaintiffs.

        Citing the Restatement, Plaintiffs focus on the moment before they were charged property inspection fees to argue that Chase was unjustly enriched "each time that [it was] paid by a Plaintiff for a property inspection to which [it was] not entitled."  Opp. at 9.  This argument improperly views the inspection charges "in isolation."  Restatement (Third) of Restitution & Unjust Enrichment § 62.  Contrary to Plaintiffs' assumption, "[t]he baseline from which unjust enrichment is measured . . . is not the moment before the challenged payment *but a point preceding other transactions between [the parties].*"  *Id.* § 62 cmt. b (emphasis added).  Here, the baseline is therefore the point *before* Plaintiffs defaulted and *before* inspections were conducted to protect the value of the property.  It was not "unjust" for Chase to pass its inspection costs along to the borrower whose default triggered the inspections when doing so merely restored Chase to the position it occupied before Plaintiffs' default.  *See* Mot. at 7.

### D.    Plaintiffs' Inspection Charges Were Authorized By Their Mortgage Agreements.

#### 1.    All Three Plaintiffs Were Delinquent At The Time of Their Inspections.

        Sections 9 and 14 of Plaintiffs' mortgage agreements permit Chase to inspect Plaintiffs' properties and pass the costs of those inspections along to Plaintiffs if they are in default.  *See* Mot. at 3-4, 8-10.  Plaintiffs indisputably were in default at the time they incurred inspection charges because they failed to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note."  (DEVINE0003-04, 19, 60.)

1    Lazar and Schillinger nevertheless argue that they "were not in default during the relevant time

2    period" because they entered into forbearance agreements with Chase permitting them to reduce or skip

3    mortgage payments.[2]  Opp. at 3.  This argument fails as a matter of law because a forbearance

4    agreement provides forbearance only from *foreclosure*; it does not cure a loan default or bar Chase from

5    conducting or charging for property inspections.  Indeed, Section 12 of Plaintiffs' loan agreements—

6    titled "Borrower Not Released; Forbearance By Lender Not A Waiver"—provides that "[a]ny

7    forbearance by Lender in exercising any right or remedy including, without limitation, Lender's

8    acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or

9    preclude the exercise of any right or remedy."[3]  (DEVINE0027, 66.)  Section 12 goes on to state that

10   "[n]o waiver by Lender of any right under this Security Instrument shall be effective unless in writing,"

11   *id.*, and Lazar and Schillinger fail to identify any "writing" that waives Chase's rights under Sections 9

12   and 14.  Plaintiffs' loan agreements thus "recognize that [Chase] could consider a modification or

13   forbearance while retaining its right" to conduct and charge for inspections of the mortgaged property.

14   *Cf. Cross v. Wells Fargo Bank, N.A.*, 2014 WL 4929276, at *5 (S.D. Tex. Sept. 30, 2014); *Williams v.

15   Wells Fargo Bank, N.A.*, 560 F. App'x 233, 240 (5th Cir. 2014) ("[D]elaying foreclosure and expressing

16   a willingness to modify the . . . loan agreement do not manifest an intent by [the bank] to waive" other

17   contractual rights).

18   Lazar's argument fails for the additional reason that he was not covered by a forbearance

19   agreement.  Lazar relies solely on oral conversations to prove the existence of a forbearance agreement

20   (*see* PIFKO483-85), but Section 12 requires any modification of his loan to be "in writing"

---

[2]    This argument is inconsistent with Lazar's and Schillinger's prior assertions that they were
attempting to "cure" their defaults when their properties were inspected.  (Doc. 172-3 at 9-10.)

[3]    Similar provisions appear elsewhere in Plaintiffs' loan agreements.  *See* DEVINE0019, 60
(Section 1:  Chase may "accept any payment or partial payment insufficient to bring the Loan current,
without waiver of any rights hereunder"); DEVINE0027, 66 (Section 12: "Extension of the time for
payment or modifications of amortization of the sums secured by this Security Instrument granted by
Lender to Borrower . . . shall not operate to release the liability of Borrower.").

1    (DEVINE0027).  Lazar's admission that ████████████████████████████████████

2    ██████████████████ (PIFKO484) therefore proves that no such agreement existed.

### 2. Plaintiffs' Inspection Charges Are Categorically Reasonable.

Undisputed evidence shows that Chase conducted only 45 inspections during Plaintiffs' 173

months of delinquency and charged Plaintiffs for just 24 of those inspections.  *See* Mot. at 4.

Accordingly, this Court has already found that "the Chase MSP system ordered property inspections

discriminately," not automatically.  (Doc. 224 at 11.)  The inspection charges at issue are therefore

reasonable as a matter of law:  numerous courts have upheld property inspection fees as reasonable and

appropriate even when inspections were conducted "automatically" and at far greater frequency than

those that were charged to Plaintiffs.  *See* Mot. at 8-9.  Plaintiffs never come to grips with these

decisions, instead responding by citing off-point authority that is easily distinguished.[4]

Furthermore, Section 14 of Plaintiffs' loan agreements "*defines* property inspections as

reasonable acts" so long as they are conducted to preserve the value of the loan collateral.  *Vega v.

Ocwen Fin. Corp.*, 2015 WL 1383241, at *4 (C.D. Cal. Mar. 24, 2015); *see also* Fact 6.  It is undisputed

that this was Chase's purpose:  Chase earns no profit from conducting property inspections and therefore

has no reason to conduct them other than to preserve the value of the collateral.  (Facts 17, 37, 58.)

Plaintiffs nonetheless urge this Court to ignore the plain language of Section 14 and impose

unwritten restrictions on Chase's rights under that provision, arguing that in the absence of such

restrictions, Chase would be free to "charge homeowners in default *any amount* for attorney fees."  Opp.

at 12 (emphasis added).  But even if the Court were inclined to read unwritten limits into Section 14,

Plaintiffs' argument at most would support a limit on the *amount* of Chase's property inspection fees,

---

[4]      In *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 952 (N.D. Cal. 2013), this Court observed that it
"would be premature" to decide at the pleading stage whether "marked-up" inspection fees categorically
are reasonable, but it is undisputed that Chase never added a profit mark-up to Plaintiffs' fees.  In *Young
v. Wells Fargo*, 671 F. Supp. 2d 1006, 1012, 1024 (S.D. Iowa 2009), the bank allegedly engaged in fee-
churning by "automatically charg[ing] as many property inspection fees as possible"—going so far as to
charge plaintiffs "for multiple property inspections in the same day"—but there is no evidence of such
extreme conduct here.  And in *Cirino v. Bank of America*, 2014 WL 9894432, at *1, 8 (C.D. Cal. Oct. 1,
2014), the court actually dismissed all claims challenging a servicer's inspection fees.

1   not its basic right to charge for inspections.  Plaintiffs, however, have never challenged the *amount* of

2   their inspection fees as unreasonable; nor could they do so, as it is undisputed that Chase charged them

3   only its actual, out-of-pocket costs.  (Facts 17, 37, 58.)

4          Although Plaintiffs also suggest that it is *per se* unreasonable to inspect *occupied* properties (*see*

5   Facts 22-28, 40, 43, 45-52, 60-63), they cite no decision supporting that conclusion, and many courts

6   have upheld periodic inspections of occupied properties if the loan is in default.[5]

7                        **3.      Plaintiffs' Charges Are Reasonable Under An Individualized Review.**

8          Chase's opening brief also showed that Plaintiffs' inspections were reasonable and appropriate

9   under the specific facts of each inspection.  Mot. at 11-13.  Plaintiffs counter that, even if the inspections

10  were objectively reasonable, Chase did not *know* the inspections were reasonable at the time it ordered

11  them and should be forced refund any charges for inspections that were not ordered for the right reasons.

12  *See* Opp. at 4-6.  Even if true—and Plaintiffs cite no evidence in support—this argument still fails.

13         *First*, the "reasonable or appropriate" language in Section 9 of Plaintiffs' loan agreements

14  imposes an *objective* standard of reasonableness, not the *subjective* standard that Plaintiffs seek to apply.

15  As the Georgetown law professor retained by Plaintiffs testified at his deposition, "the operative

16  language [in Section 9]. . . is reasonable and appropriate and that, to me, indicates an objective

17  standard."  (JOLLEY0233-35)  Tellingly, Plaintiffs fail to cite a single case for the proposition that

18  Chase's *subjective* reasons for ordering an inspection—rather than the objective facts and circumstances

19  of the loan and the property—are relevant under Section 9.  Furthermore, Section 14 of the loan

20  agreements *defines* property inspections as objectively reasonable so long as they are conducted "to

21  protect Lender's interest in the Property and rights under this Security Instrument."  Fact 6; *see also*

22  *Vega*, 2015 WL 1383241, at *3.  There is no genuine dispute that this was Chase's purpose.  (*See* Facts

23  5-6, 12-29, 31-53, 55-64.)

24
25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [5]      *See, e.g.*, *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1176 (2002) (13
26  inspections of occupied property conducted 30 days apart is reasonable); *Vega*, 2015 WL 1383241, at
    *1, *5 (12 inspections of occupied property automatically ordered every month is reasonable); *Galvin v.*
27  *EMC Mortg. Corp.*, 2014 WL 4980905, at *10-11 (D.N.H. Oct. 3, 2014) (26 inspections of occupied
    property over three-year period is reasonable).
28

*Second*, a claim for unjust enrichment is an equitable claim in which "*all* facts and circumstances are considered to determine whether, without a remedy, inequity would result or persist." *In re Actiq Sales & Mktg. Practices Litig.*, 2015 WL 1312015, at *16 (E.D. Pa. Mar. 23, 2015) (emphasis added); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) ("[B]efore it can grant relief on this equitable claim, a court must examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would result or persist.").[6]  Plaintiffs cannot use an unjust enrichment theory to challenge the *procedure* Chase used to order their inspections because the law of unjust enrichment concerns itself with substantive justice, not procedural justice.  *See Burley v. JPMorgan Chase Bank, N.A.*, 2014 WL 2511306, at *4 (W.D. Mich. June 4, 2014) (rejecting unjust enrichment claim that bank used improper methods to obtain money owed by borrower); *Ademiluyi v. PennyMac Mortg. Inv. Holdings I, LLC*, 929 F. Supp. 2d 502, 535 (D. Md. 2013) (rejecting unjust enrichment claim against debt collector that lacked legal authority to collect valid debt); *Lamb v. ITT Corp.*, 2010 WL 376858, at *6 (D. Neb. Jan. 26, 2010) (unjust enrichment is an "equitable claim[]" and "[e]quity looks through forms to substance").

Here, taking "all facts and circumstances" into account, there can be no genuine dispute that Plaintiffs' individual inspection charges were reasonable.  Plaintiffs provide no affidavits or evidence to controvert the facts set forth in Chase's opening brief, and their own expert agreed that property inspections are reasonable under those circumstances.  *See* Mot. at 11-13.  In particular:

Diana Ellis offers no evidence disputing the facts of her inspection charges.  Her experts never offered an opinion about the reasonableness of those specific charges, whereas Chase's expert expressly opined that the charges to Ellis were reasonable.  *See* Mot. at 11.

Ronald Lazar fails to substantiate any of the disputes of fact he purports to identify.  Although Lazar denies that he was delinquent on his loan, that his request for a loan modification was denied, and

---

[6]    *See also Hitchcock v. Delaney*, 86 P.3d 73, 76 (Or. Ct. App. 2004) ("[R]eceipt and retention [of a benefit] must be *unjust* under all of the circumstances."); *Bearden v. Honeywell Int'l Inc.*, 2010 WL 1223936, at *10 (M.D. Tenn. Mar. 24, 2010) (Tennessee law requires "examin[ation of] the particular circumstances of an individual case").

that he made no commitment to resolve his delinquency, all of those denials rest on his contention that he entered into an oral forbearance agreement with Chase.  (*See* Opp. at 5 (citing Facts 31-33)).  That contention fails as a matter of law under the integration language in his loan agreement.  *See supra* at 4.  Lazar offers no other evidence to dispute Chase's showing that he had made no commitment to resolve his delinquency when his first two inspections occurred (Facts 39-40), that he ignored multiple attempts to contact him before the next two inspections occurred (Facts 41, 43), that his loan was in foreclosure proceedings when the remaining eight inspections occurred (Facts 44-52), or that the last ten inspections found that the main building on Lazar's two-building property was vacant (Facts 42-43, 45-52).[7]  Both sides' experts agree that inspections are reasonable under these circumstances.  (*See* JOLLEY0042-44, 85-86, 106-07, 172-74, 176, 178-81.)

James Schillinger likewise fails to identify a genuine dispute of material fact.  Schillinger argues that he should not have been charged for three inspections ordered while he was covered by a forbearance agreement (Opp. at 3-4, 5, Facts 60-62), but that agreement did not bar Chase from *inspecting* Schillinger's property as opposed to *foreclosing* on the property, *supra* at 4.  Furthermore, the three inspections ordered during the alleged forbearance period were plainly reasonable.  One such inspection occurred after Schillinger went more than 30 days without making a payment under the forbearance agreement—a fact that Schillinger offers no evidence to dispute (*see* Fact 62), and that both sides' experts agree would make an inspection reasonable (*see* JOLLEY0047-48, 89, 182-83).  The two others were ordered after Schillinger told Chase that his home was "unlivable at the moment" and that he had vacated the home and was "stay[ing] at a hotel due to a water leak."  (Facts 60-61).  Once again, both sides' experts agree that inspections are reasonable when a property is vacant or when damage has been reported at the property.  (JOLLEY0044-48, 88-89, 171, 176; *see also* DEVINE0064.)  The final inspection occurred *after* Schillinger's forbearance agreement expired (Fact 63), and Schillinger offers no specific argument disputing the reasonableness of this inspection.  *See* Mot. at 13.

---

[7]     While Lazar argues that his "property was continuously occupied by Plaintiff Lazar between June, 2011, and April, 2012," he offers no evidence disputing the accuracy of those inspections' findings that the main building on Lazar's property was vacant during this time period.  (Facts 43, 45-52.)

#### 4.        Fannie Mae Servicing Guidelines Are Irrelevant.

Plaintiffs try to salvage their claims by invoking Fannie Mae servicing guidelines that allegedly "set forth Fannie Mae's intended interpretation of the governing provisions of the Fannie Mae/Freddie Mac uniform mortgage contract."  Opp. at 14.  Plaintiffs' attempt to use these guidelines as parol evidence of the meaning of their loan agreements is nothing more than an attempt to circumvent what "federal courts have uniformly concluded":  that "borrowers are neither parties nor third-party beneficiaries entitled to enforce the . . . servicing guidelines."  *McKenzie v. Wells Fargo Bank, N.A.*, 931 F. Supp. 2d 1029, 1044 (N.D. Cal. 2013) (collecting cases); *accord Vega v. Ocwen Fin. Corp.*, 2015 WL 3441930, at *4-5 (C.D. Cal. May 28, 2015) (collecting cases).  "[T]here is no authority anywhere to support Plaintiffs' position,"[8] which "play[s] semantic gymnastics to get around persuasive case law directly on point."  *Id.* (rejecting identical argument by Plaintiffs' lawyers).

There is no reason to depart from those principles here, especially since Plaintiffs fail to explain *which* servicing guidelines should inform the interpretation of their loan agreements.  As Plaintiffs concede (at Opp. at 14), the template for their loan agreements was developed by Fannie Mae *and* Freddie Mac, and Freddie Mac never adopted the Fannie Mae Section 203.04 guideline invoked by Plaintiffs (JOLLEY0068).  To make matters worse, Plaintiffs selectively rely on a defunct version of Section 203.04.  The Section 203.04 language invoked by Plaintiffs was first introduced in 2004 (PIFKO64), and therefore is not probative of the language of Sections 9 and 14 of Plaintiffs' loan agreements, which Plaintiffs acknowledge (at Opp. at 2)was adopted in 2001.  Finally, the parenthetical language in Section 203.04 that Plaintiffs rely upon was *deleted* from Fannie Mae's guidelines in November 2014.  (JOLLEY0068.)  Fannie Mae guideline language that did not exist when Plaintiffs' loan provisions were drafted—and that no longer exists today—provides no valid basis for interpreting Plaintiffs' loan agreements.

---

[8]        The lone case cited by Plaintiffs examined statutes, decisions, and servicing guidelines before concluding that a servicer complied with a requirement to "promptly refund" excess payments.  *See Sklodowski v. Countrywide Home Loans, Inc.*, 832 N.E.2d 189, 194-95 (Ill. App. Ct. 2005).

1    Finally, Plaintiffs never come to grips with the fact that the Fannie Mae guidelines are irrelevant

2    to the Ellis and Schillinger claims because the Ellis and Schillinger loans are not Fannie Mae loans.

3    (Facts 30, 66.)  Nor does Lazar come to grips with Chase's showing that his inspection charges *complied*

4    with the language of Section 203.04 he invokes, which expressly acknowledges that charges may be

5    assessed "when required or permitted by Fannie Mae's Guides" (PIFKO64), a standard that Chase easily

6    satisfied (Mot. at 12 & n.5).

7    **III.    PLAINTIFFS' FRAUD AND UCL CLAIMS FAIL.**

8    Plaintiffs' opposition fails to rehabilitate their fraud and UCL claims for several reasons.

9    *First*, the opposition confirms that Plaintiffs' fraud claims are based on non-disclosure

10   allegations, not on allegations of factual misrepresentation.  The opposition never identifies a single

11   false statement in a loan statement or other communication by Chase.  The closest Plaintiffs come to

12   identifying an alleged false statement is to assert that Chase "cryptically identifyi[ed] property

13   inspection fees as 'Miscellaneous Fees,' 'Corporate Advances,' or 'Advances'" in monthly loan

14   statements, *see* Opp. at 23 n.5, but their own expert concedes that these descriptions are not false.  (*See*

15   JOLLEY0238-41) (agreeing that such descriptions are "not inaccurate")).  Furthermore, even if Chase's

16   disclosures were deemed to be incomplete or uninformative, the fact would remain that 12 C.F.R.

17   § 34.4(a)(9) explicitly preempts any claim that Chase must include "specific statements, information, or

18   other content" in "billing statements . . . or other credit-related documents."  Controlling Ninth Circuit

19   precedent likewise holds that all challenges to the adequacy of Chase's loan and fee disclosures are

20   preempted by federal law.  *See* Mot. at 19-20; *infra* at 13-15.

21   *Second*, any assertion that Chase committed a misrepresentation of *law* by incorrectly

22   representing that it had the contractual authority to impose the charges at issue would fail because, as

23   explained above, Plaintiffs' loan agreements *did* authorize those charges.  *See supra* at 3-10.

24   *Third*, even assuming arguendo that Chase was wrong about its contractual authority to impose

25   inspection charges on Plaintiffs, a misstatement of law would not support a fraud or UCL claim.  *See*

26   Mot. at 14.  The sole case relied on by Plaintiffs confirms that "it is . . . well settled, as a general rule,

27   that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of

28   law."  *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) (quotations omitted).

10

Moreover, although Plaintiffs attempt to invoke a so-called "fiduciary" exception to the general rule on the ground that Chase supposedly "stood in a position of trust and confidence to Plaintiffs" (Opp. at 17), the law is clear that "[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991); *Coyer v. HSBC Mortg. Services, Inc.*, 701 F.3d 1104, 1008 (6th Cir. 2012) ("[T]here is generally no fiduciary relationship between a mortgagor and a mortgagee."); *Meyer v. One West Bank, F.S.B.*, 91 F. Supp. 3d 1177, 1184 (C.D. Cal. 2015) (rejecting similar argument because it "might elevate every contractual relationship to a fiduciary one"); *Perryman v. Litton Loan Servicing, LP*, 2014 WL 4954674, at *15 (N.D. Cal. Oct. 1, 2014) ("As a general matter, no fiduciary duty exists between a borrower and lender in an arm's length transaction" and "the mortgage servicers in this case were not Plaintiff's agents in any comparable way." (internal quotations omitted)).

*Fourth*, Plaintiffs have failed to come forward with any evidence that Chase acted with fraudulent intent. The only evidence in the record confirms that Chase never *intentionally* assessed inspection fees that it *knew* it had no right to charge. (*See* Fact 74.) Although Plaintiffs try to nit-pick the quality of this evidence, the fact remains that *they* bear the burden of proof on this issue and they failed to come forward with evidence to satisfy their burden. *See* Mot. at 15; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (summary judgment warranted when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."). The only evidence they cite (Opp. at 18-19) consists of wholly irrelevant assertions about a 2004 HUD audit[9] and an October 2011 Fannie Mae servicing guideline[10] that have no bearing on

---

[9] ████████████████████████████████████████████████████████████████████████████

[10] Whether Chase complied with the cited Fannie Mae guideline—which only took effect in October 2011 (*see* JOLLEY0017-18, 64, 76)—is irrelevant because Plaintiffs have no rights under those guidelines. *See supra* at 9-10. Furthermore, the Ellis and Schillinger loans are not Fannie Mae loans. (Facts 30, 66.) Lazar's loan was in foreclosure proceedings by October 2011 (Fact 44), and even Plaintiffs' expert agrees that Fannie Mae guidelines required "monthly property inspections . . . when . . . the loan is in foreclosure" (JOLLEY106).

Plaintiffs' claims.  Several respected judges have held as a matter of law that Chase *did* have the authority to impose the inspection charges at issue here.  *See, e.g.*, *Vega*, 2015 WL 1383241, at \*3*; Walker*, 98 Cal. App. 4th at 1176-77; *see also* Mot. at 8-10.  Chase cannot possibly have committed *fraud* merely by adopting the same reading of its contractual authority that was adopted by those judges.

*Finally*, Plaintiffs still lack any evidence of detrimental reliance.  Lazar and Schillinger have not demonstrated that they personally paid a property inspection fee, *see supra* at 2-3, much less offered any admissible evidence that they did so in reliance on a fraudulent statement by Chase.  Although Ellis did pay $63.15 worth of inspection fees, she unequivocally testified that she "d[id]n't know" whether she made a payment in response to a billing statement that listed "Miscellaneous Fees" (*see* JOLLEY0132), and she failed to identify any representation by Chase that supposedly caused her to pay her fees.

## IV.    ELLIS'S ROSENTHAL ACT CLAIM FAILS.

Ellis's opposition also confirms that her Rosenthal Act claim is barred by the one-year statute of limitations.  *See* Cal. Civ. Code § 1788.30(f).  Although Ellis tries to invoke the "continuing violations doctrine" (Opp. at 21), that doctrine permits a plaintiff to assert claims for violations that occurred before the statute of limitations *only* "if the action is filed within one year of the most recent date on which the defendant . . . violated the Rosenthal Act."  *Johnson v. JPMorgan Chase Bank*, 2009 WL 382734, at \*4-5 (E.D. Cal. Feb. 13, 2009) (continuing violations doctrine did not apply when no "activity prohibited by the Rosenthal Act" occurred within one-year limitations period).

Here, Ellis does not deny that she received only one loan statement—in July 2011—referencing property inspection charges within the one-year limitations period.  (*See* Fact 79.)  Nor does she dispute that *this* statement did not violate the Rosenthal Act because, in light of her bankruptcy discharge of her debt, the statement was not a "debt collection" effort covered by the Rosenthal Act.  *See* Facts 80-81; *Tran v. Select Portfolio Servicing, Inc.*, 2015 WL 1739370, at \*2 (N.D. Cal. Apr. 14, 2015).  Furthermore, she wholly ignores the fact that the statement in question explicitly provides that "if you received a bankruptcy discharge, this statement . . . is not an attempt to collect a debt."  (Fact 81; *see also* Mot. at 16.)  Because Ellis has not identified an alleged Rosenthal Act violation within the one-year limitations period, the continuing violations doctrine does not apply.

1          Ellis's other attempts to save her Rosenthal Act claim are equally unpersuasive. As Judge

2    Hamilton has observed, "a loan servicer is not a debt collector under" the Rosenthal Act, "[n]or do

3    residential mortgage loans even fall within the scope of the [Act]." *Abels v. Bank of Am.*, 2011 WL

4    1362074, at *4 (N.D. Cal. 2011); *see also Mannello v. Residential Credit Solutions, Inc.*, 2016 WL

5    94236, at *5 (C.D. Cal. Jan. 7, 2016) (quoting Ninth Circuit precedent that the Rosenthal Act does not

6    apply to a national bank absent proof "that the principal purpose of [the bank's] business is debt

7    collection"). Most of the cases cited by Ellis applying the Rosenthal Act to mortgage servicers involved

8    instances where, unlike here, the servicer did not originate the loan.[11]

9          Similarly, Ellis fails to demonstrate a genuine dispute about whether she falsified her income on

10   her loan application to obtain her $1.25 million loan. *See* Mot. at 17. The testimony cited by Ellis that

11   supposedly ███████████████████████████ (Opp. at 22), identifies only ██████ in

12   non-employment income and unspecified income from employment (*see* PIFKO465, 469). Ellis fails to

13   submit any evidence that remotely explains the gap between her claim of $22,500 in *monthly*

14   employment income on her loan application and her assertion of only ██████ in *annual* employment

15   income on her income tax return. (Facts 82-83). Her counsel's extraordinary suggestion that she might

16   have *accidentally* overstated her monthly employment income by a factor of ██████████ (Opp. at

17   21-22) lacks plausibility on its face. Ellis' falsification of her loan application is "relevant" and bars her

18   Rosenthal Act claim because she never would have obtained her $1.25 million loan, defaulted on that

19   loan, or incurred the resulting inspection charges if not for the falsification. *See* Mot. at 17.

20   **V.    FEDERAL BANKING LAW PREEMPTS PLAINTIFFS' CLAIMS.**

21        **A.    Plaintiffs' Claims Are Preempted By The National Bank Act.**

22          Plaintiffs' main response to Chase's National Bank Act preemption argument is to assert that this

23   Court already rejected it. Opp. at 22-24. That earlier ruling, however, concluded that the Act did not

24   preempt a claim that Chase "utilize[s] software that automatically *inflates* fees, charges the *inflated* fees

---

[11]    *See Walters v. Fidelity Mortg. of CA*, 730 F. Supp. 2d 1185, 1191 (E.D. Cal. 2010) (servicer did not originate loan); *Gumbs v. Litton Loan Servicing*, 2010 WL 1992199, at *5 (E.D. Cal. May 13, 2010) (same); *Azzini v. Countrywide Home Loans*, 2010 WL 962856, at *2 (S.D. Cal. Mar. 15, 2010) (same).

to borrowers, and demands payment by borrowers by stating that the fees must be paid pursuant to the mortgage agreements." (Doc. 31 at 26.) Plaintiffs abandoned that profit-markup theory long ago.

It is Plaintiffs' *current* claims that are preempted, and Plaintiffs offer no cogent argument otherwise. Requiring Chase to itemize or describe property inspection charges in a particular manner on monthly loan statements "falls squarely within the purview of federal banking regulation and is expressly preempted." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 726 (9th Cir. 2012); *see also* 12 C.F.R. § 34.4(a)(9) (preempting state laws relating to "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in . . . billing statements"); Mot. at 19-20 (collecting additional authorities). Federal banking law likewise preempts Plaintiffs' claim that Chase must engage in an individualized "manual review" of "the circumstances of Plaintiffs' loan and property in deciding whether to charge them property inspection fees." (Opp. at 6.) Imposing state-law liability unless Chase engages in a costly and cumbersome manual review would impermissibly burden Chase's exercise of its federal authority to "servic[e] mortgages," 12 C.F.R. § 34.4(a)(10), and to collect "non-interest charges and fees" for its servicing activities, 12 C.F.R. § 7.4002(a). *See also* Mot. at 20-22 (collecting cases). To be sure, an affirmative misrepresentation claim might not be preempted, *see Gutierrez*, 704 F.3d at 726, but Plaintiffs' misrepresentation allegations fail for the separate reasons set forth above, *see supra* at 10-12.

Although Plaintiffs cite district court decisions suggesting that UCL and other consumer protection claims can never be preempted, the Ninth Circuit has rejected that conclusion. *Arevalo v. Bank of America*, 850 F. Supp. 2d 1008 (N.D. Cal. 2011), and *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006 (S.D. Iowa 2009), each rely upon *Jefferson v. Chase Home Finance*, 2008 WL 1883484, at *10 (N.D. Cal. Apr. 29, 2008). *Jefferson*, in turn, held that the National Bank Act could never preempt "laws of general application" like the UCL, *see id.* at *10, and it expressly refused (*see id.* at *14) to follow *Martinez v. Wells Fargo Bank, N.A.*, 2007 WL 963965 (N.D. Cal. Mar. 30, 2007), which reached the opposite result. The Ninth Circuit subsequently rejected *Jefferson* and embraced *Martinez*, holding that 12 C.F.R. § 34.4—the same preemption regulation at issue here—preempts generally applicable state laws when those laws are applied in a manner that burdens a national bank's exercise of its federal banking powers. *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555-57 (9th Cir.

1   2010); *accord Gutierrez*, 704 F. 3d at 726 (relying on Section 34.4 to preempt UCL claim).  Plaintiffs do

2   not deny that the practices they argue Chase should have followed—manually reviewing each

3   inspection, refraining from inspecting all occupied properties, and separately itemizing each property

4   inspection charge—would impose significant burdens on Chase's exercise of its federal banking powers.

5   Nor could they do so, given Chase's undisputed evidence to the contrary.  (*See* Facts 90-91.)

6          **B.     Ellis's and Lazar's Claims Are Preempted By The Home Owners' Loan Act.**

7          Ellis and Lazar fare no better with their attempt to avoid preemption under the Home Owners'

8   Loan Act ("HOLA") and 12 C.F.R. § 560.2.  Citing *Gibson v. World Savings & Loan Ass'n*, 103 Cal.

9   App. 4th 1291 (2002), Plaintiffs argue that claims arising under generally applicable laws are not

10  preempted by HOLA or Section 560.2.  *See* Opp. at 25.  The Ninth Circuit, however, rejected that

11  argument in *Silvas v. E\*Trade Mortgage*, holding that when generally applicable laws like the UCL are

12  applied to practices covered by 12 C.F.R. § 560.2(b), "the preemption analysis ends" and the claim "is

13  preempted by federal law," 514 F.3d 1001, 1006 (9th Cir. 2008).  "[C]ourts in this district and circuit

14  have recognized *Gibson* as inconsistent with the Ninth Circuit's decision in *Silvas* and the preemption

15  framework described therein" and thus have refused to follow it.  *Meyer*, 91 F. Supp. 3d at 1181; *see*

16  *also Munoz v. Fin. Freedom Senior Funding Corp.*, 567 F. Supp. 2d 1156, 1163 (C.D. Cal. 2008)

17  (refusing to follow *Gibson* because "[i]n light of *Silvas*" the question is "whether the UCL 'as applied' is

18  a type of state law that is preempted under HOLA").

19         Aside from affirmative misrepresentation claims that fail for other reasons, *see supra* at 10-12,

20  Plaintiffs make no other attempt to show that their claims fall outside of Section 560.2(b)'s broad reach.

21  *See* Mot. at 22-24.  Furthermore, the only two federal decisions they cite confirm that HOLA field

22  preemption applies here.  *See Valverde v. Wells Fargo Bank, N.A.*, 2011 WL 3740836, at \*5 (N.D. Cal.

23  2011) (claims that institution "failed to use proper care," "comply with industry standards," or any other

24  claim that "essentially seek[s] to impose new requirements on the lender" are preempted); *Susilo v.*

25  *Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1186 (C.D. Cal. 2011) (claims seeking to "regulate

26  lending activity" or to "impose requirements to provide specific notices or disclosures" are preempted).

27

28

## CONCLUSION

The Court should grant summary judgment for Defendants on all claims.


Date:  May 17, 2016                    COVINGTON & BURLING LLP


                                       By:   /s/ David M. Jolley
                                            David M. Jolley
                                            Robert D. Wick


                                       Attorneys for Defendants