1  Daniel Alberstone (SBN 105275)
   dalberstone@baronbudd.com
2  Roland Tellis (SBN 186269)
   rtellis@baronbudd.com
3  Mark Pifko (SBN 228412)
   mpifko@baronbudd.com
4  Michael Isaac Miller (SBN 266459)
   imiller@baronbudd.com
5  BARON & BUDD, P.C.
   15910 Ventura Boulevard , Suite 1600
6  Encino, California  91436
   Telephone:      (818) 839-2333
7  Facsimile:      (818) 986-9698
8
   Attorneys for Plaintiffs
9  DIANA ELLIS, JAMES SCHILLINGER,
   and, RONALD LAZAR, individually, and
10 on behalf of other members of the public
   similarly situated
11

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14

15 DIANA ELLIS, JAMES SCHILLINGER,          Case Number:  4:12-cv-3897-YGR
   and, RONALD LAZAR, individually, and on
16 behalf of other members of the general public   **CLASS ACTION**
   similarly situated,
17                                                 **PLAINTIFFS' AMENDED RESPONSIVE**
            Plaintiff,                             **SEPARATE STATEMENT OF UNDISPUTED**
18                                                 **MATERIAL FACTS RE DEFENDANTS'**
                                                   **MOTION FOR SUMMARY JUDGMENT**
19    vs.

20 J.P. MORGAN CHASE & CO., a Delaware       Date:           June 7, 2016
   corporation, J.P. MORGAN CHASE BANK,      Time:           2:00 pm
21 N.A., a national association, and CHASE    Location:       Oakland Division
   HOME FINANCE LLC, a Delaware limited                      1301 Clay Street
22 liability company,                         Judge:          Hon. Yvonne Gonzalez
                                                              Rogers
23          Defendants.

24                                            Action Filed:   July 24, 2012
                                             Trial Date:     None Set
25

26

27            **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

28

In compliance with the paragraph 9(c)(2) of the Court's Standing Order in Civil Cases, Plaintiffs DIANA ELLIS, JAMES SCHILLINGER and RONALD LAZAR ("Plaintiffs") submit this Amended Responsive Separate Statement in connection with Defendants JPMORGAN CHASE & CO and CHASE HOME FINANCE LLC's ("Defendants") Motion for Summary Judgment:

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issue 1 (Written agreement bars unjust enrichment claims) | Fact 1. Ellis's "Deed of Trust" is attached as Exhibit A to the Declaration of Joseph Devine. *See* Devine Decl. ¶ 9; DEVINE0001-16. | Undisputed. |
| Issue 1 | Fact 2. Lazar's "Deed of Trust" is attached as Exhibit B to the Declaration of Joseph Devine. *See* Devine Decl. ¶ 9; DEVINE00017-41. | Undisputed. |
| Issue 1 | Fact 3. Schillinger's "Deed of Trust" is attached as Exhibit C to the Declaration of Joseph Devine. *See* Devine Decl. ¶ 9; DEVINE00057-71. | Undisputed. |
| Issue 1 | Fact 4. Plaintiffs' deeds of trust each address when Plaintiffs may be charged for property inspections. *See* DEVINE0008 (§ 9), 10 (§ 14); 24-25 (§ 9), 28 (§ 14), 63-64 (§ 9), 66 (§ 14). | Undisputed. |
| Issue 1 | Fact 5. Section 9 of each Plaintiff's deed of trust provides in relevant part: "If . . . Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument." *See* DEVINE0008, 24-25, 63-64. | Undisputed. |
| Issue 1 | Fact 6. Section 14 of each Plaintiff's deed of trust provides in relevant part: "Lender | Disputed. *See* Plaintiffs Additional Undisputed Material Facts ("PAUMF") |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." *See* DEVINE0010, 28, 66. | nos. 1-3. |
| Issue 1 | <u>Fact 7</u>. Section 16 of each Plaintiff's deed of trust provides in relevant part that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located." *See* DEVINE0011, 28, 67. | Undisputed. |
| Issue 1 | <u>Fact 8</u>. Ellis's mortgaged property is located in California. *See* DEVINE0003. | Undisputed. |
| Issue 1 | <u>Fact 9</u>. Lazar's mortgaged property is located in Oregon. *See* DEVINE0019. | Undisputed. |
| Issue 1 | <u>Fact 10</u>. Schillinger's mortgaged property is located in Tennessee. *See* DEVINE0059. | Undisputed. |
| Issue 1 | <u>Fact 11</u>. Section 20 of each Plaintiff's deed of trust provides in relevant part: "If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser." *See* DEVINE0012, 30, 68. | Undisputed. |
| Issue 2 (Ellis's inspection charges were permitted by her loan documents) | <u>Fact 12</u>. Ellis failed to make the mortgage payment due on June 1, 2008, and was therefore delinquent as of that date. *See* Devine Decl. ¶ 19; DEVINE1102. | Undisputed. |
| Issue 2 | <u>Fact 13</u>. Ellis has been delinquent on her mortgage loan for at least 67 months. *See* Devine Decl. ¶ 38. | Undisputed. |
| Issue 2 | <u>Fact 14</u>. During that 67-month period of delinquency, Washington Mutual and | Undisputed. |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
|  | Chase collectively ordered 27 inspections of her property.  *See* Devine Decl. ¶¶ 19, 22, 25, 27, 29, 32, 34-37; DEVINE0812-21; *see also* Devine Decl. ¶ 38. |  |
| Issue 2 | <u>Fact 15</u>.  One of the 27 inspections referenced in Fact 14 was cancelled before the inspection occurred after Ellis promised to make a mortgage payment. Ellis was not charged for this inspection. *See* Devine Decl. ¶ 24; DEVINE0819. | Disputed.  The evidence presented by Defendants does not support the inference that the inspection was cancelled as a direct result of Ellis's promised payment. The evidence does not show that the two events are related. |
| Issue 2 | <u>Fact 16</u>.  Of the remaining 26 inspections referenced in Fact 14, Washington Mutual and Chase collectively charged Ellis for eight of those inspections—the inspections referenced in Facts 21-28.  *See* Devine Decl. ¶¶ 20, 23, 26, 28, 30, 33-37; *see also id.* ¶ 38. | Undisputed. |
| Issue 2 | <u>Fact 17</u>.  For the eight inspections referenced immediately above, Ellis was charged only the actual cost of conducting the inspections ($8.90, $10.85, $10.85, $10.85, $10.85, $14.00, and $14.00).  *See* Devine Decl. ¶¶ 20, 23, 26, 28, 30, 33, 35, 36; DEVINE0817-20. | Undisputed. |
| Issue 2 | <u>Fact 18</u>.  Ellis paid Washington Mutual for one of her eight inspection charges in the amount of $8.90.  *See* Devine Decl. ¶ 20. | Undisputed. |
| Issue 2 | <u>Fact 19</u>.  Ellis paid Chase for five of the eight inspection charges, for a total of $54.25.  *See* Devine Decl. ¶¶ 23, 26, 28, 30, 33. | Undisputed. |
| Issue 2 | <u>Fact 20</u>.  Chase waived two of the eight property inspection charges initially assessed to Ellis in connection with her loan modification.  *See* Devine Decl. ¶¶ 35, 36. | Disputed.  The evidence does not show that the two events are related. |
| Issue 2 | <u>Fact 21</u>.  On July 11, 2008, after Ellis missed her June 1, 2008 mortgage payment and did not make a commitment to bring her account current, an inspection of her property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 19-20; DEVINE0820. | Disputed.   There is no evidence presented indicating Defendants considered the missed payment and alleged lack of commitment to bring the account current, before ordering the property inspection. Rather, ███████████████ █████████████████████████████ ████████████████████ |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | ████████████████████████<br>████████████████████████<br>██████████████████████<br>██████████████████████<br>████████████████████████<br>███████████████████████<br>███████████████████████████<br>█████████████████████████<br>████████████████████████████<br>████████████████████████████<br>████████████████████████<br>████████████████████ |
| | | Pifko Decl.,  ¶ 3, Exh. 2 [Peace Report] at 48, 50-51.**;** *Id.,* ¶ 21, Exh. 20 [Evans Depo] at 409-414. |
| Issue 2 | Fact 22.  On December 19, 2008, after Ellis missed her November 1, 2008 payment and did not make a commitment to bring her account current, an inspection of her property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 22-23; DEVINE0820. | Disputed.  *See* Plaintiffs' Response to Statement of Undisputed Material Fact ("PRSUMF") no. 21. |
| Issue 2 | Fact 23.  On February 18, 2009, at which point Ellis still had not made her November 1, 2008 payment, had not made a commitment to bring her account current, and had two payments returned for insufficient funds, an inspection of her property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 25-26; DEVINE0819. | Disputed.  *See* PRSUMF no. 21. |
| Issue 2 | Fact 24.  On March 28, 2009, at which point Ellis still had not made her November 1, 2008 payment, had two payments returned for insufficient funds, and had not made a commitment to bring her account current, an inspection of her property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 27-28; DEVINE0819. | Disputed.  *See* PRSUMF no. 21. |
| Issue 2 | Fact 25.  On April 24, 2009, at which point Ellis still had not made her | Disputed.  *See* PRSUMF no. 21. |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | November 1, 2008 payment, had three payments returned for insufficient funds, had a $26,713.21 tax delinquency that Chase advanced funds to cover to avoid a tax lien, and had not made a commitment to bring her account current, an inspection of her property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 29-30; DEVINE0819. | |
| Issue 2 | Fact 26.  On February 26, 2010, at which point Ellis had not made a mortgage payment since May 1, 2009, had cancelled a February 2010 appointment to obtain an opinion about the value of the property necessary to process her request for a loan modification, had not responded to several attempts to contact her in February 2010, had a request for a loan modification denied in February 2010, and had not made a commitment to bring her account current, an inspection of her property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 32, 33; DEVINE0818. | Disputed.  *See* PRSUMF no. 21. |
| Issue 2 | Fact 27.  On July 20, 2010, at which point Ellis had not made a mortgage payment since May 1, 2009, and had not made a commitment to bring her account current, an inspection of her property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶ 35; DEVINE0817. | Disputed.  *See* PRSUMF no. 21. |
| Issue 2 | Fact 28.  On August 25, 2010, at which point Ellis had not made a mortgage payment since May 1, 2009, and had not made a commitment to bring her account current, an inspection of her property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶ 36; DEVINE0817. | Disputed.  *See* PRSUMF no. 21. |
| Issue 2 | Fact 29.  All of the inspections referenced in Facts 21-28 above were conducted by a third-party vendor, and the results of each inspection were transmitted to Chase's mortgage servicing system (or in the case | ██████████████████████ ██████████████████████ █████████████████████ ███████████████████ ████████ |

Case No.: 4:12-cv-03897-YGR

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | of the inspection referenced in Fact 21, to Washington Mutual's mortgage servicing system) and used in determining whether maintenance or security measures were necessary to protect the property.  *See* Devine Decl. ¶¶ 20, 23, 26, 28, 30, 33, 35, 36; Evans Decl. ¶¶ 41-43; EVANS0021-22; JOLLEY0148-54. | ██████████████████████ ████████████████████ ████████████████ |
| Issue 2 | Fact 30.  Ellis's mortgage loan is not, and has never been, owned, guaranteed, or insured by Fannie Mae, Freddie Mac, or HUD.  *See* Devine Decl. ¶ 39. | Undisputed. |
| Issue 3 (Lazar's inspection charges were permitted by his loan documents) | Fact 31.  Lazar failed to make a mortgage payment due on July 1, 2009, and was delinquent from at least that date through October 2010.  *See* Devine Decl. ¶ 50; DEVINE1166. | Disputed. ██████████ ███████████████████████ ███████████████████████ ███████████████████████ ██████████████████████ ███████████████████████ █████████████████████ |
| Issue 3 | Fact 32.  Lazar became delinquent again as of May 1, 2011, when he failed to make a mortgage payment due that day.  *See* Devine Decl. ¶ 54; DEVINE1177. | Disputed.  *See* PRSUMF no. 31. |
| Issue 3 | Fact 33.  Lazar has been delinquent for a total of at least 63 months.  *See* Devine Decl. ¶ 69. | Disputed. *See* PRSUMF no. 31 |
| Issue 3 | Fact 34.  During that 63-month delinquency period, Chase ordered 14 inspections on Lazar's property.  *See* Devine Decl. ¶¶ 48, 50, 52, 55, 57, 60-68; DEVINE0822-25; *see also* Devine Decl. ¶ 69. | Undisputed. |
| Issue 3 | Fact 35.  One of the 14 inspections referenced in Fact 34 was cancelled before the inspection occurred after Lazar promised to make a mortgage payment. Lazar was not charged for this inspection. *See* Devine Decl. ¶ 52; DEVINE0825. | Undisputed. |
| Issue 3 | Fact 36.  Of the remaining 13 inspections referenced in Fact 34, Chase charged Lazar for 12 of those inspections—the inspections referenced in Facts 39-41, 43, and 45-52.  *See* Devine Decl. ¶¶ 49, 51, 56, 58, 60-68; *see also id.* ¶ 69. | Undisputed. |

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issue 3 | Fact 37.  Lazar was charged only the actual sum that Chase paid its inspection vendor for conducting these inspections ($14.00 each).  *See* Devine Decl. ¶¶ 49, 51, 56, 58, 60-67; DEVINE0822-25. | Undisputed. |
| Issue 3 | Fact 38.  Lazar has not paid Chase for any of these inspections.  *See* Devine Decl. ¶¶ 49, 51, 56, 58, 60-67, 69. | Disputed. ██████████████████ ██████████████████████ ██████████████████████ ████████████ ██████████████████████ █████████████████ ; SUMF nos. 31-32, 39-40. |
| Issue 3 | Fact 39.  On June 19, 2010, at which point Lazar had not made a mortgage payment since July 1, 2009, had his request for a loan modification denied by June 2, 2010, and had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 47-49. | Disputed.  There is no evidence indicating Defendants considered the ██████████ ██████████ (*see* PRSUMF no. 31), or any other factors before ordering the inspection.<br><br>Pifko Decl., ¶ 3, Exh. 2 [Peace Report ] at 48,53; *Id.,* ¶ 2, Exh. 1 [Levitin Report] at 14;  PRSUMF nos. 21, 31. |
| Issue 3 | Fact 40.  On September 3, 2010, at which point Lazar had not made a  mortgage payment since July 1, 2009, had his request for a loan modification denied by June 2010, and had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 50-51. | Disputed.  *See* PRSUMF nos. 31, 39. |
| Issue 3 | Fact 41.  On June 20, 2011, at which point Lazar had not made his May 1, 2011 mortgage payment, had not responded to multiple attempts to contact him in May and June 2011, and had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 54-56. | Disputed.  *See* PRSUMF nos. 31, 39. |
| Issue 3 | Fact 42.  The property that secured Lazar's mortgage loan consisted of two buildings, one in which Lazar resided and | Undisputed. |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | a second that was a duplex that Lazar attempted to rent to a tenant. *See* JOLLEY0167-68. | |
| Issue 3 | <u>Fact 43</u>. On July 24, 2011, at which point Lazar had not made his May 1, 2011 mortgage payment, the previous property inspection had identified the duplex on Lazar's property as being vacant, Lazar's phone had been disconnected, and Lazar had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition. *See* Devine Decl. ¶¶ 57-58; DEVINE0825. | Disputed. ████████ ████████████████████████ ████████████████ and the property was continuously occupied by Plaintiff Lazar between June, 2011, and April, 2012. Pifko Decl., ¶ 3, Exh. 2, [Peace Report] at 48,53; ████████████████████ ██████████ *Id.,* ¶ 2, Exh. 1 [Levitin Report] at 14; *Id.,* ¶ 26, Exh. 25 [Lazar Depo] at 482-486 (83:5-18, 84:2-25, 86:1-17; PRSUMF nos. 21, 39. |
| Issue 3 | <u>Fact 44</u>. Lazar's loan was in active foreclosure status from August 1, 2011, to April 20, 2012. *See* Devine Decl. ¶ 59. | Undisputed. |
| Issue 3 | <u>Fact 45</u>. On August 29, 2011, at which point Lazar's loan was in active foreclosure status, the previous property inspection had identified the duplex on Lazar's property as being vacant, and Lazar had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition. *See* Devine Decl. ¶¶ 59-60; DEVINE0824. | Disputed. *See* PRSUMF nos. 39, 43. |
| Issue 3 | <u>Fact 46</u>. On October 7, 2011, at which point Lazar's loan was in active foreclosure status, the previous property inspection had identified the duplex on Lazar's property as being vacant, and Lazar had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition. *See* Devine Decl. ¶ 61; DEVINE0824. | Disputed. *See* PRSUMF nos. 39, 43. |
| Issue 3 | <u>Fact 47</u>. On November 12, 2011, at which point Lazar's loan was in active foreclosure status, the previous property inspection had identified the duplex on | Disputed. *See* PRSUMF nos. 39, 43. |

**PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Lazar's property as being vacant, and Lazar had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶ 62; DEVINE0824. | |
| Issue 3 | Fact 48.  On December 9, 2011, at which point Lazar's loan was in active foreclosure status, the previous property inspection had identified the duplex on Lazar's property as being vacant, and Lazar had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶ 63; DEVINE0823. | Disputed. *See* PRSUMF nos. 39, 43. |
| Issue 3 | Fact 49.  On January 8, 2012, at which point Lazar's loan was in active foreclosure status, the previous property inspection had identified Lazar's duplex as being vacant, and Lazar had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶ 64; DEVINE0823. | Disputed.  *See* PRSUMF nos. 39, 43. |
| Issue 3 | Fact 50.  On February 2, 2012, at which point Lazar's loan was in active foreclosure status, the previous property inspection had identified Lazar's duplex as being vacant, and Lazar had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶ 65; DEVINE0822. | Disputed.  *See* PRSUMF nos. 39, 43. |
| Issue 3 | Fact 51.  On March 1, 2012, at which point Lazar's loan was in active foreclosure status, the previous property inspection had identified Lazar's duplex as being vacant, and Lazar had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's | Disputed.  *See* PRSUMF nos. 39, 43. |

9

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | occupancy status and condition. *See* Devine Decl. ¶ 66; DEVINE0822. | |
| Issue 3 | <u>Fact 52</u>. On April 5, 2012, at which point Lazar's loan was in active foreclosure status, the previous property inspection had identified Lazar's duplex as being vacant, and Lazar had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition. *See* Devine Decl. ¶ 67; DEVINE0822. | Disputed. *See PRSUMF nos. 39, 43.* |
| Issue 3 | <u>Fact 53</u>. All of the inspections referenced in Facts 39-41, 43, and 45-52 above were conducted by a third-party vendor, and the results of each inspection were transmitted to Chase's mortgage servicing platform and used in determining whether maintenance or security measures were necessary at the property. *See* Devine Decl. ¶¶ 49, 51, 56, 58, 60-67; Evans Decl. ¶¶ 41-43; EVANS0021-22; JOLLEY0148-0154. | Disputed. *See PRSUMF no. 29.* |
| Issue 3 | <u>Fact 54</u>. Lazar's mortgage is not, and has never been, insured by HUD. *See* Devine Decl. ¶ 70. | Undisputed. |
| Issue 4 (Schillinger's inspection charges were permitted by his loan documents) | <u>Fact 55</u>. Schillinger has been delinquent for a total of at least 43 months. *See* Devine Decl. ¶ 88. | Undisputed. |
| Issue 4 | <u>Fact 56</u>. During that 43-month period of delinquency, Chase ordered six inspections on Schillinger's property. *See* Devine Decl. ¶¶ 78, 80, 82, 85, 87, 88. | Undisputed. |
| Issue 4 | <u>Fact 57</u>. Of the six inspections referenced in Fact 56, Chase charged Schillinger for four of those inspections—the inspections referenced in Facts 60-63. *See* Devine Decl. ¶¶ 79, 81, 83, 86-87; *see also id.* ¶ 88. | Undisputed. |
| Issue 4 | <u>Fact 58</u>. Schillinger was charged only the actual sum that Chase paid its vendor to | Undisputed. |

**PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | conduct the inspections ($14.00 each). *See* Devine Decl. ¶¶ 79, 81, 83, 86; DEVINE0828, 832, 836, 840. | |
| Issue 4 | <u>Fact 59.</u>  Schillinger has not personally paid Chase for any of these inspections. *See* Devine Decl. ¶¶ 79, 81, 83, 86, 88. | Disputed.  Plaintiff Schillinger's inspection fees were paid at his direction, and he remains liable for those payments.<br><br>Pifko Decl., ¶ 3, Exh. 2, [Peace Report] at 52-53; SUMF, nos. 31-32, 69-71. |
| Issue 4 | <u>Fact 60.</u>  On September 28, 2011, at which point Schillinger had been in default on his mortgage loan obligations since May 2011 and had called Chase on September 20, 2011, to tell Chase that his home was "unlivable at the moment" due to a water leak and that he had moved out to a hotel, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 77-79; DEVINE0828. | Disputed.  Plaintiff Schillinger was not in default. Additionally, there is no evidence suggesting Defendants considered the call regarding the leak before ordering the property inspection.<br><br>Pifko Decl, ¶ 3, Exh. 2, [Peace Report] at 48, 52-53; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶ 27, Exh. 26 [Schillinger Depo] at 487-497 (7:23-8:24, 9:24-10:3, 98:15-23, 105:10-14, 116:10-19, 120:1-5, 122:11-16). |
| Issue 4 | <u>Fact 61.</u>  On October 23, 2011, at which point Schillinger had been in default on his mortgage loan obligations since May 2011, had told Chase on September 28, 2011, that he was still living at a hotel, and failed to tell Chase that he had moved back into his house, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 80-81; DEVINE0832. | Disputed.  *See* PRSUMF no. 60. |
| Issue 4 | <u>Fact 62.</u>  On February 13, 2012, after Schillinger had gone more than 30 days without making a payment under a temporary forbearance agreement, an inspection of his property was conducted to verify the property's occupancy status and condition.  *See* Devine Decl. ¶¶ 82-83; DEVINE0836. | Disputed.  *See* PRSUMF no. 60. |
| Issue 4 | <u>Fact 63.</u>  On February 9, 2013, at which | Disputed.  *See* PRSUMF no. 60. |

Case No.: 4:12-cv-03897-YGR
**PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | point Schillinger's temporary forbearance agreement had expired, he remained behind on his mortgage obligations, his request for a loan modification had been denied, and he had not made a commitment to bring his account current, an inspection of his property was conducted to verify the property's occupancy status and condition. *See* Devine Decl. ¶¶ 85-86; DEVINE0840. | |
| Issue 4 | Fact 64. All of the inspections referenced in Facts 60-63 above were conducted by a third-party vendor, and the results of each inspection were transmitted to Chase's mortgage servicing platform and used in determining whether maintenance or security measures were necessary at the property. *See* Devine Decl. ¶¶ 79, 81, 83, 86; Evans Decl. ¶¶ 41-43; EVANS0021-22; JOLLEY0148-0154. | Undisputed. |
| Issue 4 | Fact 65. Schillinger had previously abandoned a property in Ohio and fell behind on his mortgage repayment obligations. *See* JOLLEY0187-94. | Undisputed. |
| Issue 4 | Fact 66. Schillinger's mortgage is not owned, guaranteed, or insured by Fannie Mae, Freddie Mac, or HUD. *See* Devine Decl. ¶ 89. | Undisputed. |
| Issue 5 (Lazar cannot show he conferred a benefit on Chase) | Fact 67. Lazar has not paid any of the twelve property inspection charges he was assessed. *See* Fact 38. | Disputed. ████████████ ██████████████████ ████████████████<br><br>Pifko Decl, ¶ 23, Exh. 22, [Lazar Depo] at 446-447 (59:4-60:1); SUMF nos. 31-32, 39-40. |
| Issue 6 (Schillinger cannot show he conferred a benefit on Chase) | Fact 68. Schillinger did not personally pay any of the four property inspection charges he was assessed. *See* Fact 59. | Disputed. *See* PRSUMF no. 59.<br><br>Pifko Decl., ¶ 3, Exh. 2, [Peace Report] at 52-53; SUMF nos. 31-32, 69-71; *Freeman Indus., LLC v. Eastman Chemical Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). |
| Issue 6 | Fact 69. Schillinger applied for funds under a government mortgage relief program. Chase submitted to this program (the Tennessee Hardest Hit | Undisputed. |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | Fund) a Reinstatement Quote of $23,498.18—the amount that would bring Schillinger current on his loan. This amount included $42.00 for three unpaid property inspection charges referenced in Facts 60-62. The government program sent the $23,498.18 reinstatement amount directly to Chase; the money did not pass through Schillinger's hands. *See* Devine Decl. ¶ 84; JOLLEY0197. | |
| Issue 6 | Fact 70. Schillinger has no obligation to repay the $23,498.18 paid to Chase from the Hardest Hit Fund, provided he occupies his home through July 2018. *See* Devine Decl. ¶ 84; JOLLEY0195; JOLLEY0198-99. | Disputed. *See* PRSUMF no. 59. Pifko Decl., ¶ 3, Exh. 2, [Peace Report] at 52-53; SUMF nos. 31-32, 69-71. |
| Issue 6 | Fact 71. Schillinger has never indicated any plans to vacate his home before July 2018. *See* JOLLEY0198-99. | Disputed. *See* PRSUMF no. 70. |
| Issue 7 (Plaintiffs cannot show that Chase was enriched by charging them for inspections) | Fact 72. Chase charged Plaintiffs only the actual sum that Chase paid its inspection vendors for conducting the inspections at issue. *See* Facts 17, 37, 58. | Undisputed. |
| Issue 7 | Fact 73. The payments Chase received from Ellis and the Tennessee Hardest Hit Fund reimbursed Chase for payments Chase made to the that conducted the property inspections on Ellis's and Schillinger's properties. *See* Facts 17-19, 58-59, 69; *see also* Devine Decl. ¶¶ 20, 23, 26, 28, 30, 33, 79, 81, 83-84. | Undisputed. |
| Issue 7 (Chase did not knowingly or intentionally deceive Plaintiffs) | Fact 74. Chase never intentionally charged Plaintiffs for property inspections that Chase knew it had no right to charge them. *See* Slifko S.J. Decl. ¶¶ 5-7. | Disputed. Statements made by Jack Evans in response ███████████ ███████████ ███████ ███████████ ███████████ ███████████ |

**PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | ██████ |
| Issue 8 (Ellis cannot show detrimental reliance) | <u>Fact 75</u>.  Ellis only paid six of the eight property inspection charges—the charges for the inspections referenced in Facts 21-28.  *See* Facts 18-20; Devine Decl. ¶¶ 20, 23, 26, 28, 30, 33. | Undisputed. |
| Issue 8 | <u>Fact 76</u>.  Ellis has no memory of paying a property inspection charge as a result of reviewing a loan statement.  *See* JOLLEY0130; JOLLEY0132. | Disputed. ████████████ ████████████████████████ ████████████████ █████████████████████████ ███████████████ ████████████████████ ███████████████████ <br><br>Pifko Decl, ¶ 24, Exh. 23 [Deposition of Diana Ellis] at 461-477 (14:12-17, 78:23-79:14, 84:8-85:22); *Id.*, ¶ 25, Exh. 24 [Deposition of Defense Expert Gregory Nelson ("Nelson Depo")] at 478-481 (240:12-241:18); SUMF no. 19. |
| Issue 9 (Lazar cannot show detrimental reliance) | <u>Fact 77</u>.  Lazar has not paid any property inspection charges.  *See* Fact 38. | Disputed. Plaintiff Lazar paid property inspection fees by ████████ ████████████████████ <br><br>Pifko Decl, ¶ 23, Exh. 22, [Deposition of Plaintiff Lazar] at 446-447 (59:4-60:1); SUMF nos. 31-32, 39-40. |
| Issue 10 (Schillinger cannot show detrimental reliance) | <u>Fact 78</u>.  Schillinger has not personally paid any property inspection charges.  *See* Facts 59, 69. | Disputed.  *See* PRSUMF no. 70. |
| Issue 11 (Ellis cannot show a debt collection attempt within the Rosenthal Act statute of limitations) | <u>Fact 79</u>.  Five property inspection fees were unpaid as of the date Ellis's July 1, 2011 statement was sent, and these five charges correspond to the December 19, 2008, February 18, 2009, March 28, 2009, April 24, 2009, and February 26, 2010 inspections referenced in Facts 22-26.  *See* Devine Decl. ¶¶ 23, 26, 28, 30, 33. | Undisputed. |
| Issue 11 | <u>Fact 80</u>.  Ellis filed for Chapter 7 bankruptcy in September 2010; the bankruptcy court entered an order | Undisputed. |

**PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | discharging her debts on January 26; 2011, and the bankruptcy became final on June 27, 2011. *See* JOLLEY0222-29. | |
| Issue 11 | Fact 81.  Chase's July 1, 2011 statement to Ellis stated: "[I]f you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt." *See* JOLLEY0231. | Undisputed. |
| Issue 12 (Ellis's misrepresent-ations on her mortgage application) | Fact 82.  On her March 2007 application to obtain a $1.25 million mortgage loan from Washington Mutual, Ellis stated that she made $22,500 per month in employment income. *See* Devine Decl. ¶ 16; DEVINE0845. | Undisputed. |
| Issue 12 | Fact 83.  On the Federal Income Tax Summary submitted to Chase by the IRS at Ellis's request, Ellis reported that she and her then-husband made ███ in employment income in 2007 (or approximately ███ per month). *See* Devine S.J. Decl. ¶ 7; JOLLEY0119-22. | Undisputed. |
| Issue 14 (National Bank Act preemption) | Fact 84.  In September 2005, Schillinger obtained a mortgage loan from JPMorgan Chase Bank, N.A., a national bank chartered under the National Bank Act. *See* Devine Decl. ¶ 71; DEVINE0057. | Undisputed. |
| Issue 14 | Fact 85.  Schillinger's mortgage loan has always been serviced by Chase. *See* Devine Decl. ¶¶ 75-76. | Undisputed. |
| Issue 14 | Fact 86.  Since September 2008, Chase has serviced Ellis's and Lazar's mortgage loans. *See* Devine Decl. ¶¶ 17-18, 21, 44-46. | Undisputed. |
| Issue 14 (HOLA preemption) | Fact 87.  In March 2007, Ellis obtained a mortgage loan from Washington Mutual Bank, FA, a federal savings association chartered under the Home Owners' Loan Act. *See* Devine Decl. ¶ 12; DEVINE0001. | Undisputed. |
| Issue 14 | Fact 88.  In May 2003, Lazar obtained a mortgage loan from Washington Mutual Bank, FA, a federal savings association chartered under the Home Owners' Loan Act. *See* Devine Decl. ¶ 40; | Undisputed. |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | DEVINE0017. | |
| Issue 14 | Fact 89.  Ellis's and Lazar's mortgage loans were serviced by Washington Mutual until September 2008.  See Devine Decl. ¶¶ 17-18, 21, 44-46. | Undisputed. |
| Issues 13 and 14 | Fact 90.  If Chase was not entitled to use automated systems to help it determine which property inspections may be charged to borrowers but instead had to make a manual decision as to whether each individual inspection could be charged to a borrower, Chase would incur substantial costs and burdens.  Adopting such a manual process would require a substantial number of employees and significant additional expenditures to administer.  See Slifko S.J. Decl. ¶ 8. | Disputed.  The Slifko declaration provides no foundation for her statements or facts to support her sweeping conclusions.  Moreover, the issue isn't whether Chase uses an automated system, but rather Chase's failure to take into account the circumstances of each particular loan and property prior to assessment of property inspection charges regardless of whether the "decision" was made manually or by automation. |
| Issues 13 and 14 | Fact 91.  If Chase were prohibited from charging borrowers for any inspection for which the inspection results indicate that the property was "occupied," Chase would have to absorb a substantial amount of property inspection costs assessed by third-party vendors for which Chase otherwise could and would seek recoupment from borrowers.  See Slifko S.J. Decl. ¶ 9. | Undisputed. |
| **OPPOSING PARTY'S ADDITIONAL MATERIAL FACTS** | | |
| Issues 2-4 | | Additional Fact 1:  Uniform Covenant 14 ("Covenant 14")  in the Uniform Mortgage Contract states that lenders may charge homeowners  for certain default-related services performed for the purpose of protecting the lender's interest in the property, including attorney fees and property inspections.  Pfiko Decl., ¶ 3, Exh. 2 [Peace Report] at 48. |
| Issues 2-4 | | Additional Fact 2:  Covenant 14 is not a free standing authorization or disclosure of fees, but rather a savings clause for fees authorized elsewhere in the Security Instrument. |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Pifko Decl., ¶ 2, Exh. 1 [Levitin Report] at 13-14. |
| Issues 2-4 | | Additional Fact 3:  Uniform Covenant 9 in the Uniform Mortgage Contract states that loan servicers may only do and pay for whatever is "reasonable and appropriate" to protect the lender's interest in the property and rights under the Security Instrument.<br><br>Pfiko Decl., ¶ 3, Exh. 2 [Peace Report], at 48; *Id.,* ¶ 2, Exh. 1 [Levitin Report] at 11-12. |
| Issues 2-4 | | Additional Fact 4:  Fannie Mae's and Freddie Mac's servicing guidelines effectively set the standard for the mortgage servicing industry.<br><br>Pifko Decl., ¶ 2, Exh. 1 [Levitin Report] at 5-6; *Id.,* ¶ 3, Exh. 2 [Peace Report], at 43-44. |
| Issues 2-4 | | Additional Fact 5:  During the entire Class Period, the Fannie Mae guidelines instructed that, if the loan servicer has made contact with the borrower and is working with the borrower to resolve the delinquency, it should ***not*** order, let alone charge for, a property inspection.<br><br>Pifko Decl., ¶ 5, Exh. 4 [2011 Fannie Mae Servicing Guide] at 62-63. |
| Issues 2-4 | | Additional Fact 6:  The 2012 Fannie Mae Servicing Guidelines state that once a loan servicer has established Quality Right Party Contact ("QRPC") with the borrower and is working with the borrower to resolve the delinquency, inspections are no longer required.<br><br>Pifko Decl., ¶ 3, Exh. 2 [Peace Report], at 47**;** *Id.* ¶ 6, Exh. 5 [2012 Fannie Mae Servicing Guide] at 64-67. |
| Issues 2-4 | | Additional Fact 7:  The 2012 Fannie Mae Servicing Guidelines do not require a specific payment promise from the |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | homeowner in order for further property inspections to be canceled.<br><br>Pifko Decl., ¶ 3, Exh. 2 [Peace Report], at 47; *Id.* ¶ 6, Exh. 5 [2012 Fannie Mae Servicing Guide] at 64-67; *Id.,* ¶ 21, Exh. 20 [Evans Depo] at 415-417 (91:17-24, 93:23-94:5, 94:16-20)(wherein Jack Evans concedes the 2012 Fannie Mae Servicing Guidelines do not require an actual payment promise). |
| Issues 2-4 | | <u>Additional Fact 8:</u> ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████; *Id.,* ¶ 21, Ex. 20 [Evans Depo] at 415-417 (91:17-24, 93:23-94:5, 94:16-20). |
| Issues 2-4 | | <u>Additional Fact 9:</u>  FHA guidelines instruct that a property inspection may be ordered *only if* the homeowner is at least 45 days behind on payments and efforts to reach the mortgagor or occupant at least by telephone have been unsuccessful.<br><br>Pifko Decl., ¶ 7, Exh. 6 [FHA Guide], at 68-73. |
| Issues 2-4 | | <u>Additional Fact 10:</u>  FHA guidelines expressly state: "[p]rudent servicing dictates that the [loan servicer] take into consideration the servicing history and prior payment habits of the [homeowner] when determining when this inspection should be performed." |

PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED
MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | Pifko Decl., ¶ 7, Exh. 6 [FHA Guide] at 68-73. |
| Issues 2-4 | | Additional Fact 11:  HUD servicing state that loan servicers "must make an effort to determine occupancy before incurring the expense of a property inspection." <br><br> Pifko Decl., ¶ 9, Exh. 8 [HUD Guide] at 76. |
| Issues 2-4 | | Additional Fact 12:  During the class period, Fannie Mae servicing guidelines required loan servicers to have in place clearly written policies regarding assessment of default-related fees, consistent with the governing provisions of the Fannie Mae/Freddie Mac Uniform Mortgage Contracts. <br><br> Pifko Decl., ¶ 6, Exh. 5 [2012 Fannie Mae Guide], at 64. |
| Issues 2-4 | | Additional Fact 13:  Section 203.04 of the Fannie Mae servicing guidelines, which was implemented in 2004, states, "fees may be charged on a repetitive basis only when required or permitted by Fannie Mae's Guides or otherwise *clearly supported by the circumstances* relating to a particular loan (e.g., charging a delinquent borrower's account for monthly property inspections generally would not be a permissible practice unless the servicer determines that the circumstances warrant multiple inspections)." <br><br> Pifko Decl., ¶ 6, Exh. 5 [2012 Fannie Mae Guide], at 64-65(emphasis added). |
| Issues 2-4 | | Additional Fact 14:  Section 203.04 of the Fannie Mae servicing guidelines, read in conjunction with Uniform Covenants 9 and 14 of the Fannie Mae/Freddie Mac uniform mortgage contracts (as intended by Fannie Mae), indicates that the assessment of property inspection fees without consideration for the circumstances of the particular loan is |

| Issue No. | Chase's Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| | | neither "reasonable" nor "appropriate." <br><br> Pifko Decl., ¶ 6, Exh. 5 [2012 Fannie Mae Guide], at 64-65 (emphasis added); *Id.,* ¶ 2, Exh. 1 [Levitin Report] at 13-15; *Id.,* ¶ 3, Exh. 2 [Peace Report], at 43, 47-49. |
| Issues 2-4 | | Additional Fact 15:  FHA servicing guidelines state "[i]f there is evidence that the [loan servicer] knew the mortgagor was still in occupancy . . . such charges are inappropriate and must not be charged to the mortgagor." <br><br> Pifko Decl., ¶ 7, Exh. 6 [FHA guidelines], at 68-73. |
| Issues 11-12 | | Additional Fact 16: ▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮ <br><br> Pifko Decl., ¶ 24, Exh. 23 [Ellis Depo] at 461-477 (31:11-23, 41:12-24, 42:23 – 45:15). |
| Issues 11-12 | | Additional Fact 17: ▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮ <br><br> Pifko Decl., ¶ 24, Exh. 23 [Ellis Depo] at 466 (41:12-24). |
| Issue 14 | | Additional Fact 18: ▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ <br> ▮▮▮ <br><br> Pifko Decl., ¶ 25, Exh. 24 [Nelson Depo] at 478-481 (240:12-241:18); ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ |

**PLAINTIFFS' AMENDED RESPONSIVE SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1
    Pursuant to paragraph 9(c)(4) of the Court's Standing Order in Civil Cases, I can attest that the
2
evidence cited herein fairly and accurately supports the facts as asserted.
3
4
    Dated:  June 1, 2016                          BARON & BUDD, P.C.
5
                                      By:   /s/Mark Pifko
6                                          Mark Pifko
7                                          Daniel Alberstone (SBN 105275)
                                           Roland Tellis (SBN 186269)
8                                          Mark Pifko (SBN 228412)
                                           Michael Isaac Miller (SBN 266459)
9                                          BARON & BUDD, P.C.
                                           15910 Ventura Boulevard, Suite 1600
10                                         Encino, California  91436
                                           Telephone:     (818) 839-2333
11                                         Facsimile:     (818) 986-9698
12
                                           Marguerite K. Kingsmill (*pro hac vice*)
13                                         mkingsmill@kingsmillriess.com
                                           Charles B. Colvin (*pro hac vice*)
14                                         ccolvin@kingsmillriess.com
                                           KINGSMILL RIESS, L.L.C.
15                                         201 St. Charles Avenue, Suite 3300
                                           New Orleans, Louisiana  70170
16                                         Telephone:     (504) 581-3300
                                           Facsimile:     (504) 581-3310
17
18                                         Philip F. Cossich, Jr. (*pro hac vice*)
                                           David A. Parsiola (*pro hac vice*)
19                                         COSSICH, SUMICH,
                                           PARSIOLA & TAYLOR, L.L.C.
20                                         8397 Highway 23, Suite 100
                                           Belle Chasse, Louisiana  70037
21                                         Telephone:     (504) 394-9000
                                           Facsimile:     (504) 394-9110
22
23                                         Attorneys for Plaintiffs
24                                         DIANA ELLIS, JAMES SCHILLINGER, and,
                                           RONALD LAZAR, individually, and
25                                         on behalf of other members of the public similarly
                                           situated
26
27
28

                                      21                          Case No.: 4:12-cv-03897-YGR