1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

8

9

10

11

12

13

| | |
|---|---|
| DIANA ELLIS, *et al.*,<br><br>         Plaintiffs,<br><br>         vs.<br><br>J.P. MORGAN CHASE & CO., *et al.*,<br><br>         Defendants. | Case No.: 12-cv-03897- YGR<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 243 |

14

15

16

17

18

19

        Now before the Court is defendants J.P. Morgan Chase & Co.'s, J.P. Morgan Chase Bank, N.A.'s, and Chase Home Finance, LLC's (collectively, "Chase") motion for summary judgment on the named plaintiffs' individual claims.  (Dkt. No. 243.)[1]  Plaintiffs Diana Ellis, James Schillinger, and Ronald Lazar oppose.  Having carefully considered the papers submitted and the pleadings in this action, oral argument held on September 6, 2016, and for the reasons set forth below, the Court hereby **GRANTS** defendants' motion.

20

**I.     BACKGROUND**

21

22

23

        This case arises out of $287.15 in fees Chase assessed[2] to plaintiffs' mortgage accounts for property inspections performed when plaintiffs were deemed in default on their mortgage payments.

24

25

26

27

28

----

        [1]  The Court resolves the administrative motions to seal documents submitted in connection with the substantive motion through separate orders entered this date.

        [2]  With respect to plaintiff Ellis, it is undisputed that she made payments to Chase totaling $63.15 for the property inspection fees assessed to her account.  (*See* SUMF 18–19.)  As discussed in Section III.A, *infra*, Chase argues that plaintiffs Lazar and Schillinger did not pay Chase for any property inspection fees.  It is undisputed, however, that Chase assessed Lazar's and Schillinger's accounts for $168 and $58 in property inspection fees, respectively.  (*See id.* at 36–37, 57–58.)

United States District Court<br>Northern District of California

United States District Court
Northern District of California

1    (*See* SUMF[3] 18–19, 36–37, 57–58.)  Plaintiffs' claims have narrowed significantly since their lawsuit

2    was filed.  Plaintiffs originally accused Chase of assessing borrowers for property inspections[4] Chase

3    marked-up from the cost it paid a third-party vendor.  (Dkt. No. 1 ¶ 2.)  While the complaint also

4    accused Chase of assessing borrowers for purportedly "unnecessary" fees, the gravamen of plaintiffs'

5    original complaint was Chase's alleged mark-up of the fees being passed along to borrowers.

6    Plaintiffs abandoned their mark-up theory after discovery revealed that Chase never marked-up

7    property inspection fees.  Chase, in its role servicing home mortgage loans, has always charged the

8    borrower exactly what they are billed by the third-party vendor performing a property inspection.

9           Plaintiffs' first amended complaint removed all mark-up allegations.  (*See* Dkt. No. 97,

10   "FAC.")  The FAC limited its allegations to Chase charging borrowers for allegedly "unnecessary"

11   property inspections and then fraudulently concealing the charges by using cryptic descriptions such

12   as "miscellaneous fees" or "corporate advances."  (*Id*. ¶¶ 2–4, 10.)  The FAC asserted class

13   allegations on behalf of a proposed nationwide class defined as: "All residents of the United States . .

14   . who had a loan serviced by [Chase] . . . and whose accounts were assessed fees for default-related

15   services, including . . . inspection fees . . . ."  (*Id*. ¶ 79.)  The FAC further asserted class allegations

16   on behalf of a California only class.  Only plaintiffs' common law claims for fraud and unjust

17   enrichment, and California plaintiff Ellis's claims under California's Unfair Competition Law

18   ("UCL") and the Rosenthal Unfair Debt Collection Practices Act survived Chase's motion to dismiss

19   the FAC.  (*See* Dkt. No. 154.)

20          On June 9, 2015, plaintiffs moved to certify a broad nationwide unjust enrichment class, a

21   California injunctive relief class, a California fraud/UCL/Rosenthal Act class, an Oregon fraud class,

22   and a Tennessee fraud class.  (Dkt. No. 169.)  The Court denied plaintiffs' motion.  (Dkt. No. 224.)

23   The Court found that plaintiffs failed under Rule 23(a)(2) as they had not proposed a common

---

[3] All references to defendant's Statement of Undisputed Material Facts, or "SUMF," refer to the fact number stated therein as well as the supporting evidence cited therein for that fact.  Unless otherwise noted, the facts cited to herein were undisputed by plaintiffs.

[4] Plaintiffs' complaints on behalf of a nationwide class and certain subclasses also alleged the same conduct with respect to Broker Price Opinions ("BPOs").  (*See* Dkt. Nos. 1, 97.)  Plaintiffs have since dropped their claims concerning BPOs entirely.

2

United States District Court
Northern District of California

1    question that would lead to a common answer as to any class.  More particularly, the Court found

2    plaintiffs did not show that Chase had a policy to which all class members were subject uniformly for

3    the entire proposed class period.  Chase presented evidence that their practices varied over time,

4    depending on heritage institution,[5] depending on investor, and from borrower to borrower.  As such,

5    the Court declined to certify plaintiffs' proposed classes.  The Court also denied plaintiffs' request

6    for leave to file a renewed motion to certify modified classes.  (Dkt. No. 236.)

7          Only the named plaintiffs' individual claims remain.  Plaintiffs' claims are based on Chase's

8    practice of assessing the accounts of delinquent borrowers for the cost of property inspection fees

9    Chase paid to its third-party vendor.   Underlying all of plaintiffs' claims is the assertion that Chase

10   was not authorized to assess plaintiffs for the cost of property inspection fees.  The claims sounding

11   in fraud – the common law fraud claims and plaintiff Ellis's UCL claim – rely on two theories arising

12   out of the mortgage statements Chase sent to the named plaintiffs.[6]  First, plaintiffs allege they were

13   misled by the representation that the property fee inspection charges were valid and due.  Plaintiffs

14   Lazar and Schillinger base this affirmative misrepresentation theory on statements Chase sent to

15   them explicitly claiming that these categories of fees were "allowed by your Note and Security

16   Instrument," when those fees were not authorized by their mortgage agreements.  (*See* Dkt. Nos. 243-

17   61 [Lazar], 243-76 [Schillinger].)[7]   As to plaintiff Ellis, she asserts that loan statements including

18   property inspection fee amounts contained an implicit statement that Chase was contractually

19   authorized to assess the fees to her.  Second, the three named plaintiffs assert Chase concealed the

20

21   _____

22   [5] Chase today is comprised of three relevant heritage institutions: Heritage Chase, EMC
     Mortgage Company, and Washington Mutual Bank ("Washington Mutual").

23   [6] Plaintiffs' opposition brief conflated these two distinct theories, framing plaintiffs' fraud
24   claims as one affirmative misrepresentation vis-à-vis Chase cryptically identifying property
     inspection fees on mortgage statements and then demanding payment even though the fees were not
     authorized by plaintiffs' mortgage agreements.  (*See* Dkt. No. 31 at 28, n.5.)  At oral argument,
25   plaintiffs clarified that they are pursuing the two distinct theories of fraud described above.  (*See* Dkt.
     No. 278, "Hearing Tr.," at 5:23–24.)

26
27   [7] Unlike plaintiffs Lazar and Schillinger, there is no evidence in the record that Chase
     represented to Ellis that the $63.15 in property inspection fees were "allowed by [her] Note and
28   Security Instrument" on any statement.  (*See* Hearing Tr. at 7:6–12.)

property inspection fees on their mortgage statements by using cryptic labels such as "miscellaneous fees," "advances," and "corporate advances."  (*See*, *e.g.*, Dkt. Nos. 243-53 [Ellis], 243-61 [Lazar], 243-76 [Schillinger].)

Chase now moves for summary judgment on the totality of plaintiffs' claims based on: unjust enrichment under the laws of California, Oregon, and Tennessee; fraud under the laws of California, Oregon, and Tennessee; violation of the UCL brought by plaintiff Ellis only; and violation of the Rosenthal Act brought by plaintiff Ellis only.

## II.   LEGAL STANDARD ON SUMMARY JUDGMENT

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 324–25; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed. R. Civ. P. 56(c), (e).  The opposing party's evidence must be more than "merely colorable" and must be "significantly probative."  *Anderson*, 477 U.S. at 249-50.  Further, the opposing party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence showing there is a genuine dispute of material fact for trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

///

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Nevertheless, when deciding a summary judgment motion, a court must view the evidence in

2    the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

3    *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  A district

4    court may only base a ruling on a motion for summary judgment upon facts that would be admissible

5    in evidence at trial.  *In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 385 (9th Cir. 2010); Fed. R. Civ. P.

6    56(c).  Further, it is not a court's task "to scour the record in search of a genuine issue of triable fact,"

7    but is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence

8    that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal

9    quotations omitted); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th

10   Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine

11   issue of fact, where the evidence is not set forth in the opposing papers with adequate references so

12   that it could conveniently be found").

13   The parties agree that the laws of California, Oregon, and Tennessee govern plaintiffs'

14   claims.  Section 16 of each plaintiff's deed of trust provides in relevant part that it "shall be governed

15   by federal law and the law of the jurisdiction in which the Property is located."  (SUMF 7.)

16   Accordingly, California law governs plaintiff Ellis's mortgage, Oregon law governs plaintiff Lazar's

17   mortgage, and Tennessee law governs plaintiff Schillinger's mortgage.  (SUMF 8–10.)  The Court

18   thus evaluates the parties' arguments on their common law claims for fraud and unjust enrichment

19   based on the relevant law.

20   **III.    DISCUSSION**

21   Chase moves on all remaining claims.  The Court begins with a summary of the named

22   plaintiffs' individual claims and then addresses the parties' arguments with respect to each cause of

23   action in turn.

24   **A.  Summary of Plaintiffs' Individual Claims**

25   Plaintiff Ellis's loan originated with Washington Mutual, which serviced her loan until 2008

26   when Chase acquired the mortgage servicing portfolio of Washington Mutual.  (Dkt. No. 243-39 at 2;

27   *see* Dkt. No. 224 at 10, n. 6.)  Ellis was delinquent on her mortgage loan for at least 67 months.

28   (SUMF 13.)  During that time, Washington Mutual and Chase ordered a collective 27 property

5

inspections.  (SUMF 14.)  Chase and Washington Mutual charged Ellis for only eight inspections, each at the cost paid by the servicer to its third-party vendor.  (SUMF 17.)  Chase waived two property inspection charges initially assessed to Ellis.  (SUMF 20.)[8]  As to the six unwaived charges, Ellis paid $8.90 to Washington Mutual for one inspection charge and $54.25 to Chase for five inspection charges, for total payments of $63.15 in inspection charges.  (SUMF 18–19.)  Plaintiff Ellis asserts four claims under California law based on Chase's servicing practices and her payment of the approximately $63 of property inspection fees as a result thereof, namely for: (1) unjust enrichment, (2) common law fraud, (3) violation of the UCL, and (4) violation of the Rosenthal Act.

Plaintiff Lazar's mortgage similarly originated with Washington Mutual, which serviced his loan until 2008 when Chase acquired the mortgage servicing portfolio of Washington Mutual.  (Dkt. No. 243-40 at 2.)  Lazar first failed to make a mortgage payment on July 1, 2009.  (SUMF 31.)  Chase takes the position that Lazar's missed payments rendered his loan delinquent for a total of 63 months, while Lazar maintains that he negotiated a forbearance agreement with Washington Mutual that remained in place during the supposedly delinquent periods.  (SUMF 31–33.)  It is undisputed that Chase charged Lazar for 12 property inspections performed during that 63-month period at the cost of $14 each – totaling $168.  (SUMF 36–37.)  The only payment Lazar made to Chase purportedly to cover the property inspection fees is a payment of $7,152.85 submitted in October 2010 to cure his default, allegedly including $28 in property inspection fees incurred in June and September 2010.  (SUMF 67; *see* Dkt. No. 256 at 15:23–16:5.)  Chase submitted undisputed evidence that this payment did not go toward the two $14 property inspection fees, but rather that it was allocated solely to unpaid principal, interest, and other arrearages as required by Lazar's mortgage.  (Dkt. No. 243-38 ¶ 53.)  A later notice of intent to foreclose sent by Chase to Lazar also shows that the $28 in "advances" remained unpaid as of June 2011 when he was again deemed delinquent.  (Dkt. No. 243-61 at 3.)  Plaintiff Lazar asserts two claims under Oregon law based on Chase's servicing practices and his alleged payment of the approximately $28 in property inspection fees as a result thereof, namely for: (1) unjust enrichment, and (2) common law fraud.

---

[8]  The parties dispute whether the evidence shows the waiver was made in connection with Ellis's loan modification.  (*See* SUMF 20.)

United States District Court
Northern District of California

Plaintiff Schillinger's loan originated with Chase in 2005. (Dkt. No. 243-41 at 2.) The parties do not dispute that, between 2011 and 2014, Schillinger was delinquent for a total of at least 43 months, Chase ordered six property inspections during that time, and Chase has assessed Schillinger for the cost of only four inspections at its cost of $14 per inspection – totaling $56. (SUMF 56–58.) It is similarly undisputed that Chase has been reimbursed for just $42 in property inspections for the cost of three inspections. (SUMF 69.) Whether the reimbursement is attributable to Schillinger himself is disputed. (*See* SUMF 68.) The payment was made by the Tennessee Hardest Hit Fund, a government mortgage relief program to which Schillinger applied. (SUMF 69.) Specifically, in 2012, the Tennessee Hardest Hit Fund made a $23,498.18 payment – including $42 in unpaid property inspection charges – directly to Chase to bring Schillinger current on his loan. (*Id*.) Plaintiff Schillinger is obligated to repay the government for its payment if he vacates his home (*i.e.* the property securing the loan) prior to July 2018. (SUMF 70.) Plaintiff Schillinger asserts two claims under Tennessee law based on Chase's servicing practices and his alleged payment of the approximately $42 in property inspection fees as a result thereof, namely for: (1) unjust enrichment, and (2) common law fraud.

The Court now turns to plaintiffs' causes of action:

### B.  Unjust Enrichment

Chase argues the unjust enrichment claims fail as they are barred by the existence of written contracts governing the parties' relationships with respect to assessment of property inspection fees. According to Chase, the unjust enrichment claims may not proceed because the mortgage agreements expressly address the question of when plaintiffs may be charged for delinquency-related property inspections. As plaintiffs oft repeat throughout their briefing, whether Chase was authorized to pass on the cost of property inspection fees to plaintiffs necessarily requires a determination of whether Chase violated contractual terms.[9] (*See, e.g.*, Dkt. No. 217 at 10:17–18.)[10] In that regard, Chase

---

[9]  To be sure, plaintiffs and defendants disagree on the bounds of Chase's authority under the contracts. Defendants maintain they are allowed to pass along the cost of all property inspection fees conducted once a borrower becomes delinquent, irrespective of any other factors. While the Court does not resolve this issue today, the importance of contractual interpretation to the viability of plaintiffs' claims underscores that the mortgage agreements govern.

United States District Court
Northern District of California

1    argues that plaintiffs could have asserted a breach of contract claim, but they have no right to recover

2    on an unjust enrichment theory under the laws of California, Oregon, or Tennessee.

3         Chase made this same argument in its first motion to dismiss.  In opposition, plaintiffs relied

4    heavily on their allegations of mark-up, arguing the viability of their claim was unaffected by the

5    existence of the agreements because the mortgage agreements did not allow them to assess borrowers

6    for a marked-up fee.  (*See* Dkt. No. 11 at 31.)  Based on the state of the pleadings, the Court

7    determined that it was then "premature for the Court to take a position on whether this action derives

8    from the subject matter of the agreements such that a claim for unjust enrichment is unavailable."

9    (Dkt. No. 31 at 35:19–21.)  In so ruling, the Court also relied on the mark-up allegations and cited

10   cases permitting an unjust enrichment claim under California law "where banks collected and

11   retained excessive fees."  (*Id*. at 35:22–28.)

12        Now, after discovery and development of a full record, the Court is persuaded that plaintiffs'

13   unjust enrichment claims are barred as their mortgage agreements squarely address the issue.  Courts

14   applying the laws of California, Oregon, and Tennessee all hold that unjust enrichment claims are not

15   available where a contract defines the rights of the parties at issue.  *See Paracor Finance, Inc. v. Gen.*

16   *Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (under California law "unjust enrichment is an

17   action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining

18   the rights of the parties"); *Prestige Homes Real Estate Co. v. Hanson*, 951 P.2d 193, 195 (Or. App.

19   Ct. 1997) (quantum meruit claim properly dismissed where there was a "valid contract" found to

20   "specifically cover defendant's obligation to plaintiff" at issue); *Shipwash v. United Airlines, Inc.*, 28

21   F. Supp. 3d 740, 756–57 (E.D. Tenn. 2014) (under Tennessee law, a plaintiff "cannot maintain an

22   action for quantum meruit/unjust enrichment where a valid and enforceable contract governs the

23   parties").  Notably, plaintiffs no longer pursue their mark-up theory.  Their only theory of injustice is

24   premised on the notion that Chase was not authorized to charge plaintiffs for the property inspection

25

26   _____

27        [10]  At the September 1, 2015, hearing on plaintiffs' motion for class certification, plaintiffs
     stated: "We're here today to enforce and bring to the Court's attention the fact that the inspections
     that they conducted indiscriminately, unlawfully were *in violation of the reasonable or appropriate*

28   *language in the contracts*."  (Emphasis supplied.)

United States District Court
Northern District of California

fees but did so anyway.  Indeed, plaintiffs frame the summary judgment analysis primarily as an evaluation of the facts in light of the terms of the mortgage agreements, *i.e.* whether plaintiffs were in default and the inspection fee charges were "reasonable and appropriate" as prescribed by plaintiffs' agreements.  (*See* Dkt. No. 256 at 31:14–17.)  As such, the Court finds that plaintiffs' unjust enrichment claims arise solely under their mortgage agreements.

Two outer-Circuit district courts have similarly concluded that, because mortgage agreements address when borrowers may be charged for property inspections, "unjust enrichment is not the proper vehicle" for borrowers to "challenge the reasonableness of those charges."  *Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 361 (E.D. Pa. 2013); *see also Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at *3 (S.D. Fla. July 6, 2015) (dismissing unjust enrichment claim based on "alleged overcharging of property inspection fees pursuant to the terms of the mortgage contracts").  Although not binding on this Court, these decisions address the precise issue the Court currently confronts.  That is, whether a claim for unjust enrichment fails as a matter of law when the alleged injustice arises out of the authorization (or lack thereof) to charge borrowers for fees pursuant to the terms of the underlying mortgage agreement.  The Court agrees with the conclusion that such claims are barred by the existence of an express contract between the parties.[11]

Plaintiffs implore the Court to reject this argument for the same reasons it did at the motion to dismiss stage.  As discussed above, however, plaintiffs' claims have changed significantly since that time and the record shows that another result is now warranted.  Plaintiffs next cite a recent decision of the California Supreme Court, *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988 (2015), to argue that their unjust enrichment claims are not barred as a matter of law.  This argument is likewise unavailing.  In *Hartford*, the California Supreme Court addressed whether an insurer could bring an unjust enrichment claim against indemnity counsel for excessive billing despite the

_____

[11]  By contrast, the only district court opinion on which plaintiffs rely is not on point.  There, the district court allowed an unjust enrichment claim to proceed where plaintiffs alleged that defendants "engaged in a scheme to steer borrowers into subprime mortgages, which were then sold as investments in the secondary mortgage market."  *In re Countrywide Fin. Corp. Mortg. Mktg. and Sales Practices Litig.*, 601 F. Supp. 2d 1201, 1207 (C.D. Cal. 2009).  There, the borrowers' claims were not limited to alleged violations of terms found in their mortgage agreements.  A different result is required here given that plaintiffs' unjust enrichment claims are based exclusively on whether Chase violated contractual terms regarding assessment of property inspection fees.

United States District Court
Northern District of California

existence of a contract between the insurer and insured obligating the insurer to pay indemnity counsel for services rendered.  The court held the claim could proceed because the insured: "did not accept a bargain binding it to absorb whatever defense fees and expenses the insureds' independent counsel might choose to bill, no matter how excessive.  As such, [the insurer's] claim against [indemnity counsel] for reimbursement of alleged overcharges does not contravene or alter any term of the contracts between [the insurer] and its insureds."  *Id*. at 1001.  Not so here.  Allowing the unjust enrichment claim to proceed between plaintiffs and Chase – the original parties to the contracts at issue – would effectively alter the terms of the mortgage agreement.  The parties dispute the bounds of Chase's authority pursuant thereto, but there is no dispute that the mortgage agreements provide that Chase can charge plaintiffs for property inspection fees in certain circumstances.  Put simply, *Hartford* does not require a different result on these facts.

Because the mortgage agreements plainly govern the relationship of the parties with respect to charging property inspection fees, plaintiffs' claims for unjust enrichment fail as a matter of law. Chase's motion for summary judgment on this ground is **GRANTED**.

### C.  Fraud and Violation of the UCL – Misrepresentation of Contractual Authority

Plaintiffs assert fraud claims and a claim for violation of the UCL based on Chase's affirmative representations it had the contractual authority to assess plaintiffs' accounts for property inspection fees.  With respect to plaintiff Ellis, this affirmative representation was made only implicitly when Chase sent her notices of amounts owed including property inspection fee assessments.  (*See, e.g.*, Dkt. No. 243-53 [Ellis].)  Plaintiffs Lazar and Schillinger both received notices from Chase explicitly stating that property inspection fees assessed to their accounts "include those amounts allowed by [their] Note and Security Instrument."  (*See* Dkt. Nos. 243-61 [Lazar], 243-76 [Schillinger].)  According to plaintiffs, Chase's explicit and implicit statements of contractual authority constitute fraudulent misrepresentations because Chase knew the mortgage agreements did not authorize assessment of these fees, but Chase assessed plaintiffs' accounts anyway.

Chase moves for judgment as a matter of law on these fraud claims (common law fraud and Ellis's UCL fraud prong claim), arguing plaintiffs cannot show a misrepresentation of fact because

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1  the implicit misrepresentation at issue is of law, not fact.[12]  As discussed above, plaintiffs base this

2  theory of fraud on Chase's misrepresentations that property inspection fees were charged in

3  accordance with the plaintiffs' mortgage agreements, when in fact the charges were neither valid nor

4  due.  Chase argues these were alleged misrepresentation of law (*i.e.* misrepresenting contractual

5  authority), which is not an actionable statement for purposes of fraud.  The Court agrees.

6        The misrepresentation that forms the basis of plaintiffs' fraud claim is Chase falsely stating

7  and/or implying to plaintiffs that it had the contractual authority to charge them for the property

8  inspection fees.  This is an opinion of law not subject to a fraud claim.  "It is . . . well settled, as a

9  general rule, that fraud cannot be predicated upon misrepresentations as to matters of law." *Miller v.*

10  *Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) (quoting *Am. Jur. 2d of Fraud and Deceit* §

11  97 (2001) (alteration in original)).  As the Ninth Circuit has highlighted, the "Restatement explains

12  that where a misrepresentation of law is only one of opinion, rather than one that includes a

13  misrepresentation of fact, the recipient can only justifiably rely on it to the extent that he can

14  justifiably rely on other opinions." *Yokohama*, 358 F.3d at 621 (citing *Restatement (Second) of Torts*

15  § 545 (1977)).

16        The Court finds that plaintiffs' challenge is to Chase's legal opinion that it was contractually

17  authorized to pass along the property inspection fees to plaintiffs under the terms of their respective

18  mortgages – as stated in the monthly mortgage statements sent to plaintiffs.  But it is well-established

19  that, "[a]s a rule, fraud cannot be predicated on misrepresentations as to the legal effect of a written

20  instrument as, for example . . . a note and mortgage . . . ." *37 Am. Jur. 2d Fraud and Deceit* § 102

21  (2016) (footnotes omitted).  Here, the misstatements relate to Chase's interpretation of its authority

22  under the mortgage agreements.  These allegedly fraudulent statements are not actionable.   They are

23  nothing more than Chase's legal opinion of the effect of the terms of the mortgage agreement.  *See*

24  *Mutual Life Ins. Co. of New York v. Phinney*, 178 U.S. 327, 342–43 (1900) (where both parties are

25

26  _____

27        [12] Chase further argues that plaintiffs cannot establish other necessary elements of their fraud
     claims.  Finding at the outset that plaintiffs cannot establish an actionable misrepresentation for

28  purposes of fraud, the Court declines to address Chase's remaining arguments.

United States District Court
Northern District of California

1  privy to the terms of a contract, one party's statement of his interpretation thereof is an "expression

2  of an opinion as to the law of the contract, and not a declaration or admission of a fact").  No fraud

3  claim may be based thereon.

4          Plaintiffs do not contest the notion that misstatements of law are not actionable.  Instead,

5  plaintiffs rely on the Ninth Circuit's decision in *Yokohama*, 358 F.3d at 618–621, *supra*, to advance

6  two general arguments why summary judgment is not warranted.  First, plaintiffs cite *Yokohama* for

7  the proposition that Chase's misstatements implicated fact and are therefore actionable as fraud.

8  *Yokohama* involved a former employee who brought an action sounding in fraud against his

9  managers for the alleged misrepresentation that he was not entitled to overtime pay because he was

10  an exempt salaried employee.  *Id*. at 618.  Plaintiffs are correct that in *Yokohama* the Ninth Circuit

11  recognized misstatements involving both fact and law can be actionable if it is the fraudulent

12  statement of fact upon which plaintiffs detrimentally relied.  *Id*. at 621.  However, the Ninth Circuit

13  unambiguously found that the managers' statements that the former employee was not entitled to

14  overtime pay "did not include express or implied misrepresentations of fact."  *Id*.  That the employee

15  was an exempt salaried employee not entitled to overtime pay certainly relied on factual assumptions.

16  Yet the Ninth Circuit focused on the core legal proposition at the center of the managers'

17  representations and not any factual assumptions on which they based their opinions.  The same result

18  is appropriate here.  The core legal proposition at the center of Chase's statements was that it had a

19  contractual right to assess plaintiffs for the property inspection fees.  Any factual assumptions

20  underlying the legal opinion – and plaintiffs fail to specify any in their papers – do not transform the

21  statement from one of law to fact.

22          Second, plaintiffs argue that the fiduciary exception applies here.  More particularly, plaintiffs

23  claim they were entitled to rely on the misrepresentation of law because Chase "stands in fiduciary or

24  similar relation of trust and confidence" to plaintiffs.  *Yokohama*, 358 F.3d at 621.  To that end,

25  plaintiffs summarily contend that "there can be no doubt that [Chase] stood in a position of trust and

26  confidence to Plaintiffs and had reason to expect that Plaintiffs would rely on [Chase's]

27  representations concerning their authority to charge them for property inspections."  (Dkt. No. 256 at

28  22:14–16.)  Contrary to plaintiffs' unsupported assertion, doubt abounds.  Courts uniformly hold that

"the relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal.App.3d 1089, 1093 n. 1 (1991) (claim for breach of fiduciary duty by lender to borrower fails as a matter of law because no such duty exists); *see Coyer v. HSBC Mortg. Svcs., Inc.*, 701 F.3d 1104, 1108 (6th Cir. 2012) (affirming dismissal of breach of fiduciary duty claim by borrower against mortgage owner and servicer because "there is generally no fiduciary relationship between a mortgagor and a mortgagee"); *Meyer v. One West Bank, F.S.B.*, 91 F. Supp. 3d 1177, 1184 (C.D. Cal. 2015) (rejecting a theory similar to plaintiffs' here because it "might elevate every contractual relationship to a fiduciary one"). Plaintiffs' reliance on the fiduciary exception fails as a matter of law.

For the foregoing reasons, the Court concludes that plaintiffs' evidence of an actionable fraudulent misrepresentation is lacking as a matter of law. Chase's motion for summary judgment on plaintiffs' common law fraud and UCL claims based on purported misrepresentations of contractual authority is **GRANTED**.

### D.  Fraud and Violation of the UCL – Concealment of Property Inspection Fees

Plaintiffs' second theory of fraud is based on concealment rather than an affirmative misrepresentation. Plaintiffs claim that Chase intended to conceal the true nature of the property inspection fees in plaintiffs' loan statements by labeling them as: miscellaneous fees, advances, and corporate advances. These labels disguised the nature of the amounts assessed, which plaintiffs argue they would not have paid if the property inspection fees had been disclosed properly.

Chase moves for summary judgment on myriad grounds. Chase argues the fraud and UCL claims premised on a concealment theory fail, *inter alia*, because: (1) plaintiffs have no evidence to establish the necessary detrimental reliance, and (2) the claims are otherwise preempted by federal banking law. Given that the Court concludes Chase is entitled to summary judgment on these two grounds, the Court does not address the balance of the arguments.

#### 1.  Detrimental Reliance

To prevail on their fraud claims and fraud-based UCL claim, plaintiffs must establish detrimental reliance on Chase's concealment of the property inspection fees. *See Alliance Mortg. Co. v. Laurie Samuel Rothwell*, 10 Cal.4th 1226, 1239 (1995) (elements of a fraud claim in California

United States District Court
Northern District of California

13

United States District Court
Northern District of California

include "justifiable reliance" and "resulting damage"); Cal. Bus. & Prof. Code § 17204 (to prevail on a UCL claim a plaintiff must have "lost money or property as a result of" the challenged conduct); *Oregon Public Employees' Retirement Bd. v. Simat, Helliesen & Eichner*, 83 P.3d 350, 359 (Or. Ct. App. 2004) (to prevail on a fraud claim under Oregon law, a plaintiff must show by clear and convincing evidence his "reliance" on the misrepresentation and "his consequent and proximate injury" resulting therefrom); *Black v. Black*, 166 S.W.3d 699, 705 (Tenn. 2005) (a common law fraud claim under Tennessee law requires a plaintiff to show that he "reasonably relied upon [the actionable] misrepresentation to his injury").  Said otherwise, plaintiffs must establish both that (i) they were misled by the deceptive terms and (ii) they would not have made payments toward the challenged fees had they known their true nature.

As a threshold matter, plaintiffs Lazar and Schillinger fail to present any evidence at all of detrimental reliance on the terms "advances" or "corporate advances" appearing on their statements. Rather than respond to Chase's argument that plaintiffs cannot show reliance, plaintiffs Lazar and Schillinger incorporate by reference their argument that they conferred a benefit on Chase for purposes of the unjust enrichment claims.[13]  This misses the mark.  Irrespective of payment, plaintiffs Lazar and Schillinger have not introduced any evidence, which construed in their favor, could show their payment was made in reliance on the concealed property inspection fees.  Nor is there any evidence that Lazar or Schillinger would not have made the payments had the property inspection fees been disclosed more explicitly.  Indeed, the evidence establishes plaintiff Schillinger cannot show detrimental reliance.  It is undisputed that the Hardest Hit Fund paid the reinstatement amount to Chase based on the reinstatement quote it received – not in reliance on loan statements Schillinger received and by which he alleges he was deceived.  (SUMF 69.)

As to plaintiff Ellis, Chase submits deposition testimony tending to show she did not rely on the term "miscellaneous fees" when she made loan payments applied to the property inspection fees. In response to being asked whether "whenever you saw 'miscellaneous fees,' did you make a

---

[13] As discussed in Section III.A., *supra*, Chase maintains that neither plaintiff Lazar nor Schillinger paid for any property inspection fees.  The Court declines to reach this argument in light of the alternate bases for judgment as discussed herein.

14

United States District Court
Northern District of California

payment on that particular loan statement?" Ellis responded simply: "I don't know." (SUMF 76.)  In

opposition, plaintiff submits a different portion of her deposition in which she testified that she

"reviewed [her] statements, and there were miscellaneous fees inserted every month that were not

explainable." (Dkt. No. 255-62 at 14:15–17.)  However, as Chase replies, this is not evidence of

detrimental reliance.  The testimony regarding her confusion over the term "miscellaneous fees"

relates to her decision to seek advice from counsel in this case in the fall of 2012.  (*Id.* at 78:23–

79:19.)  But plaintiff Ellis again responded "I don't remember" when pointedly asked whether she

"paid any of those line items you report about – the ones that say 'Miscellaneous Fees' separately

from your regular loan payment when you made payments to – on this loan?" (*Id*. at 84:8–15.)  The

admissible evidence demonstrates only that Ellis reviewed her loan statements, made loan payments,

and that $63.15 of those payments went to property inspection fees.  At most, this could support her

affirmative misrepresentation claim that she made payments based on the implicit representation that

the fees were authorized.[14]  The record does not show any detrimental reliance on the allegedly

cryptic term "miscellaneous fees" itself.

   The record is legally insufficient to show any detrimental reliance on the alleged fraudulent

concealment of the property inspection fees.  Chase's motion for summary judgment on plaintiffs'

common law fraud and UCL claims based on this theory is **GRANTED**.

## 2.  Federal Preemption

   Even if plaintiffs Ellis and Lazar could show detrimental reliance, their fraud claims based on

a non-disclosure theory are preempted under the Home Owners Loan Act ("HOLA").  The parties

agree that HOLA governs Ellis's and Lazar's mortgages as they originated with Washington Mutual,

a federal savings association.  HOLA and its implementing regulations are intended "to give federal

savings associations maximum flexibility to exercise their lending powers in accordance with a

uniform federal scheme of regulation."  12 C.F.R. § 560.2(a).  HOLA "has explicit full field

---

   [14]  Plaintiff implicitly concedes as much in her brief, limiting her argument to the deposition
testimony showing "that Plaintiff Ellis paid the unlawfully assessed property inspection fees as a
result of Defendants' misrepresentations that such fees were authorized." (Dkt. No. 256 at 24:25–
27.)  This goes only to the intentional misrepresentation theory of fraud, which fails for independent
legal reasons.  *See* Section III.C, *supra*.  Tellingly, plaintiff nowhere addresses whether she has
evidence to establish detrimental reliance for the concealment theory of fraud.

1  preemption," a type of preemption that is "so pervasive that Congress must have intended to leave *no*

2  *room* for the states to supplement it."  *Aguayo v. U.S. Bank*, 653 F.3d 912, 921 (9th Cir. 2011)

3  (emphasis in original) (internal quotations omitted). Courts must apply "a presumption of

4  preemption" which can only be overcome if a state law fits within HOLA's savings clause.  *Id.*

5      The first step in the preemption analysis is to determine if common law fraud and the UCL

6  "as applied, is a type of state law contemplated in the list [of preempted fields] under paragraph (b)

7  of 12 C.F.R. § 560.2."  *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008).[15]

8  Where claims are "based on types of laws listed in paragraph (b) of §560.2," the claims are

9  preempted and the inquiry ends.  *Id.* at 1006–07; *see also* 61 Fed.Reg. 50951, 50966–67 (Sept. 30,

10  1996) ("the first step [is] to determine whether the type of law in question is listed in paragraph (b).

11  If so, the analysis will end there; the law is preempted.").  Section 560.2(b) provides a list of state

12  laws that are preempted, including, "without limitation, state laws purporting to impose requirements

13  regarding:

14  
15      (9) Disclosure and advertising, including laws requiring specific
        statements, information, or other content to be included in . . . billing
16      statements . . .;

16  12 C.F.R. § 560.2(b).

17      Again, the first step in the HOLA preemption inquiry is focused on whether the common law

18  fraud and UCL claims *as applied* "is a type of state law contemplated in the list under paragraph (b)

19  of 12 C.F.R. § 560.2."  *Silvas*, 514 F.3d at 1006.  Plaintiffs' concealment theory is premised on the

20  notion that Chase did not disclose adequately the property inspection fees on their mortgage

21  statements.  This claim fits within Section 560.2(b)(9) because the alleged concealment is, in effect, a

22  lack of disclosure.  Plaintiffs go to great lengths to avoid their real claim, which is that Chase should

23  have specifically disclosed on the mortgage statements (*i.e.* billing statements) that the amounts were

24  

25      [15]  The Court rejects plaintiffs' reliance on a 2002 California Court of Appeals decision for

26  the proposition that "[i]t is well established in California that claims for relief under the UCL and
    related laws are not preempted" by HOLA. *Gibson v. World Savings & Loan Ass'n*, 103 Cal.App.4th

27  1291, 1299 (2002).  The Ninth Circuit's 2008 decision in *Silvas* provides the applicable framework
    under which the Court must evaluate preemption of plaintiffs' claims.  *See Silvas*, 514 F.3d 1001 at
    1006–07.  Moreover, the HOLA regulations themselves reject the approach outlined in *Gibson*.  *See*

28  61 Fed.Reg. 50951, 50966–67 (Sept. 30, 1996).

for property inspection fees.  Thus the functional effect of their concealment claims would be to place a new disclosure requirement on Chase, which HOLA indisputably preempts.  *See id.*; *Naulty v. Greenpoint Mortg. Funding, Inc.*, 2009 WL 2870620, at *4 (N.D. Cal. Sept. 3, 2009) (explaining that *Silvas* directs courts to focus not on the nature of the cause of action but rather its functional effect on the lender if plaintiffs are allowed to maintain their cause of action).  Plaintiffs' concealment claims as applied squarely fall within state laws seeking to regulate disclosures as preempted by Section 560.2(b)(9).  *See, e.g., Hughes v. Equity Plus Fin.*, 2010 WL 2836828, at *3 (S.D. Cal. July 19, 2010) ("fraudulent concealment claims are preempted by HOLA . . . because they directly concern and seek to regulate . . . disclosures" as listed in Section 560.2(b)(9)).

Consequently, HOLA preemption separately entitles Chase to summary judgment on plaintiff Ellis's common law fraud and UCL claims and plaintiff Lazar's common law fraud claim based on the concealment theory.  The motion for summary judgment is **GRANTED** on this independent basis.

### E.  Rosenthal Act

Lastly, plaintiff Ellis brings a claim for violation of the Rosenthal Act based on Chase's unlawful debt collection efforts by sending her loan statements reflecting the allegedly unauthorized property inspection fees.  Chase moves for summary judgment on grounds that there is no evidence that any debt collection efforts occurred within the limitations period.[16]  The parties agree that Rosenthal Act is subject to a one-year statute of limitations.  *See* Cal. Civ. Code § 1788.30(f) (action may be brought "within one year from the date of the occurrence of the violation").  The parties further agree that only one loan statement reflecting the property inspection fees was sent to plaintiff Ellis within the one-year statute of limitations.  (*See* Hearing Tr. at 31:4–9.)

The lone dispute is whether that one loan statement, dated July 1, 2011 (*see* Dkt. No. 243-21), constitutes a "debt collection" within the meaning of the act.  *See* Cal. Civ. Code § 1788.2(b) (defining the term as "any act or practice in connection with the collection of consumer debts").  Chase presented undisputed evidence showing that the Rosenthal Act claim is wholly time-barred

---

[16]  Chase moves for judgment in its favor on other grounds as well, including an argument that the Rosenthal Act does not apply to mortgage loan servicers.  Because the Court otherwise finds Ellis has not presented evidence that that Chase sent any debt collection efforts within the one-year statute of limitations, it need not reach the additional grounds put forth by Chase.

United States District Court
Northern District of California

United States District Court
Northern District of California

because the July 2011 statement was not a debt collection.  The July 2011 loan statement included the following disclaimer under the heading Important Bankruptcy Information: "if you received a bankruptcy discharge, this statement is for informational purposes only and is not an attempt to collect a debt."  (SUMF 81.)  Just four days prior, on June 27, 2011, the bankruptcy court entered an order discharging plaintiff Ellis's debts.  (SUMF 80.)  The Court agrees with Chase that the July 2011 statement was not a debt collection on its face.  The record contains no rebuttal evidence that could create a genuine dispute in that regard.

Plaintiff's opposition brief did not address Chase's argument and instead relied exclusively on the continuing violations doctrine.  For the first time at oral argument, plaintiff took the position that the July 2011 loan statement was itself a violation of the Rosenthal Act.  (Hearing Tr. at 29:17–25.) Plaintiff also correctly conceded that the July 2011 statement must be a debt collection under the Rosenthal Act for her claim to survive.  (*Id.* at 31:4–9.)  In support of this new position, plaintiff argued that the disclaimer on the July 2011 loan statement was inapplicable to the extent the bankruptcy did not discharge Chase's security interest in the amounts reflected in the July 2011 loan statement under the deed of trust.  Plaintiff's argument is a red herring.  She put no evidence in the record to show that the debt was not discharged through bankruptcy such that the July 2011 loan statement was seeking to collect a debt.  Even if the Court construed the July 2011 loan statement as an attempt by Chase to enforce its remaining security interest, such efforts are not unlawful debt collection practices as a matter of law.  *See, e.g., Tran v. Select Portfolio Svcg., Inc.*, 2015 WL 1739370, at *2 (N.D. Cal. April 14, 2015) (dismissing claim under analogous federal statute on defendants' Rule 12 motion).  Plaintiff's belated argument fails.

Consequently, the undisputed facts establish that no debt collection efforts occurred within the one-year statute of limitations.  Chase's motion for summary judgment on plaintiff Ellis's Rosenthal Act claim is **GRANTED**.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment on plaintiffs' claims for unjust enrichment, common law fraud, violation of the UCL, and violation of the Rosenthal Act.  (Dkt. No. 243).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Defendants shall file a proposed form of judgment approved as to form by plaintiffs within seven (7) days of the date of this Order.

This Order terminates Docket Number 243.

**IT IS SO ORDERED**.

Dated: October 5, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**